UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2006 FEB -8  P 3: 23

DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>VESTMONT LIMITED PARTNERSHIP,  )<br>VESTMONT LIMITED PARTNERSHIP II,  )<br>VESTMONT LIMITED PARTNERSHIP III,  )<br>and VESTERRA CORPORATION d/b/a  )<br>MONTGOMERY SQUARE PARTNERSHIP,  )<br>)<br>Defendants.  )<br>) | CIVIL ACTION NO. 05-11614-WGY |

AFFIDAVIT OF JOHN P. FERRIE
IN SUPPORT OF PLAINTIFF
JOHN HANCOCK LIFE INSURANCE COMPANY'S
MOTION FOR PRELIMINARY INJUNCTIVE RELIEF
PROHIBITING DEFENDANTS FROM DISPOSING OF CERTAIN ASSETS

I, John P. Ferrie, hereby state under oath that:

1.  I am employed as Regional Vice President in the Real Estate Investment Group of plaintiff John Hancock Life Insurance Company ("John Hancock" of "Hancock"). I manage John Hancock's Blue Bell, Pennsylvania office, which has responsibility for the states of Pennsylvania, New Jersey and Delaware, as well as Puerto Rico. My primary duties and responsibilities consist of originating and servicing large commercial real estate loans. I have been employed by John Hancock in my present position for approximately 16 years. In that

capacity, I was involved in originating the planned $32 million loan by John Hancock for the Avenel at Montgomery Square apartment complex (the "Avenel Apartments") that forms the subject matter of this litigation, and I have had periodic, direct contact with the principals of defendant Montgomery Square Partnership, Messrs. James R. Koller, Joseph P. Kelly, and Frank C. Palopoli (collectively, "Montgomery Partners").

2.   Avenel Apartments is a new, 256 unit residential apartment complex located in North Wales, Montgomery County, Pennsylvania. Montgomery Partners began construction of the Avenel Apartments in 2003. Construction was scheduled to be finished in June 2005. To the best of my current knowledge, information and belief, the majority of the construction work on the Avenel Apartments now is complete.

3.   In the summer of 2004, Montgomery Partners negotiated and entered into a 70-page written loan commitment with John Hancock (the "Loan Commitment"), whereby Hancock agreed, subject to various standard and negotiated conditions, to provide Montgomery Partners with $32 million in permanent financing on the Avenel Apartments project at any time over the ensuing twelve months at a "locked" interest rate of 6.18% per annum. Extending the rate lock period for twelve months was highly beneficial to Montgomery Partners because it allowed Montgomery Partners to take advantage of then-existing low interest rates and protect itself from future, potentially unfavorable rate fluctuations. Montgomery Partners expressly agreed, in return, to actually "borrow the Principal Amount" set forth in the Loan Commitment from John Hancock on or before August 1, 2005, or to pay "all ... damages, losses, costs and expenses suffered or incurred by John Hancock" as a result of any default.

4.      Montgomery Partners did not borrow the Principal Amount from John Hancock on or before the scheduled closing date of August 1, 2005. Rather, Montgomery Partners elected instead to take advantage of the strong demand for apartment properties in the Pennsylvania area to enlist a buyer for the Avenel Apartment project. Beginning in May or June of 2005, Montgomery Partners began soliciting private bids on the Avenel Apartments from interested buyers. I was informed of these activities by Montgomery Partners in the spring and summer of 2005.

5.      It is my understanding, based upon my discussions with Montgomery Partners' principals, that Montgomery Partners decided to sell the Avenel Apartment project to a third-party for a substantial gain in the summer of 2005. After deciding to sell the Avenel Apartments, Montgomery Partners first attempted to unwind the Loan Commitment through negotiations with me and other representatives of John Hancock, during which Montgomery Partners' principals repeatedly acknowledged both orally and in writing their "obligations" to Hancock under the Loan Commitment. When John Hancock refused to agree to the Montgomery Partners' proposed terms, however, Montgomery Partners claimed for the first time that the Loan Commitment is "illusory" and unenforceable because it makes a loan closing dependent upon the fulfillment of certain conditions to John Hancock's satisfaction.

6.      John Hancock filed this action for damages after Montgomery Partners failed to close the loan or compensate Hancock for its resulting losses and expenses by the August 1, 2005 deadline set forth in the Loan Commitment. John Hancock estimates its current actual losses (not including attorney's fees) to be approximately $4.7 million.

7.    Shortly after commencement of this litigation, John Hancock learned that the planned sale of the Avenel Apartments to a third-party had been terminated for undisclosed reasons. More recently, however, John Hancock was informed that that sale is moving ahead and is expected to take place sometime within next 30 to 60 days.

8.    If Montgomery Partners goes forward with its plan to sell the Avenel Apartments to a third-party, Montgomery Partners' ability to pay any future judgment that John Hancock obtains in this action will be severely compromised. The Avenel Apartments represent the only marketable property owned by Montgomery Partners that is of sufficient value to satisfy a judgment in the amount of John Hancock's claimed damages. The only other significant assets currently owned by Montgomery Partners are a one-acre parcel near the Avenel Apartments which Montgomery Partners claims has a value of approximately $700,000, and an adjacent forty-five acre parcel that is encumbered by a notice of possible taking by the Pennsylvania Department of Transportation ("PennDOT") for use in a state highway project.

9.    John Hancock recently had a highly unfavorable experience with another property near the Avenel Apartments that was subject to a taking by PennDOT. The property, known as "English Village," was a shopping center located in Montgomery and Horsham Townships that served as security for a large real estate loan issued by John Hancock. The English Village site was identified as the subject of a possible taking by PennDOT as early as 1988, but the actual taking did not occur until 1994. The mere threat of a taking, however, had an immediate adverse effect on both value of the property and its leasing. By the time the taking occurred in 1994, the occupancy rate at English Village had dropped to approximately

60 percent. John Hancock's loan went into default thereafter and Hancock acquired the property at a sheriff's sale in 1997. Litigation over the compensation to be paid by PennDOT for the English Village taking was not concluded until August 2004, a full 10 years after the actual taking, and 16 years after the threat of condemnation first arose in 1988.

10. Based on John Hancock's recent, adverse experience with the English Village property, as well as my knowledge of the commercial real estate market generally, I believe that the potential for a government taking of the forty-five acre parcel adjacent to the Avenel Apartments renders that parcel effectively unmarketable at a fair price and, therefore, insufficient security for Hancock's purposes, for the foreseeable future.

11. It is my understanding, based upon documents produced in this litigation, that Montgomery Partners recently extracted $44 million in value from the Avenel Apartments through a temporary mortgage loan transaction with a third-party in late December 2005. It also is my understanding, based upon discovery in this litigation, that the net proceeds of that transaction (which was not disclosed to John Hancock beforehand) were not retained by Montgomery Partners, but rather were promptly dispersed to Messrs. Koller, Kelly and Palopoli, the principals of that partnership. John Hancock fears that Montgomery Partners promptly will disperse the proceeds of the impending sale of the Avenel Apartments in the same manner, thereby making it extremely difficult, if not impossible, for John Hancock actually to collect upon any judgment that ultimately is entered in this action.

Signed under the pains and penalties of perjury this 7th day of February, 2006.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　／s／ John P. Ferrie
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　John P. Ferrie

4041238.1

-5-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served by hand, or by electronic and regular mail, upon counsel for each other party on February 8, 2006.

_____
Brian A. Davis