UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>VESTMONT LIMITED PARTNERSHIP, et al.,<br><br>Defendants. | Civil Action No. 05-11614 WGY |

**AFFIDAVIT OF JOSEPH P. KELLY IN SUPPORT OF DEFENDANTS'
OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT
OF PLAINTIFF JOHN HANCOCK LIFE INSURANCE COMPANY**

COMMONWEALTH OF PENNSYLVANIA    )
                                )   SS:
COUNTY OF MONTGOMERY             )

JOSEPH P. KELLY deposes and says:

1. I make this Affidavit based upon my personal knowledge, information and belief. If called upon to do so, I could competently testify at hearing or trial about the matters stated herein.

2. I am a Certified Public Accountant, but my license is currently inactive. I worked for Vesterra Corporation from 1987 through June 1999 and from August 2000 through 2002. I previously worked for Price Waterhouse as a staff accountant.

3. I am a limited partner of Vestmont Limited Partnership and Vestmont Limited Partnership II, both of which are defendants in this action.

4. Construction of the apartment complex known as "Avenel at Montgomery Square," in North Wales, Pennsylvania ("Avenel") began in 2003. Construction was completed in March 2006.

5. I am also a member of Koller Kelly, LLC ("Koller Kelly"), which provides management services to the 256-unit apartment Avenel complex.

6. Koller Kelly has provided these services to Avenel since February 2005.

7. Before February 2005, Bozzuto Management Company ("Bozzuto") managed the Avenel project.

8. Koller Kelly is paid a monthly management fee for the services it provides to Avenel.

9. Koller Kelly also receives a lease-up commission fee from Montgomery Square Partnership, which is the general partnership that owns Avenel.

10. As the management company for Avenel, Koller Kelly is responsible for leasing, financial accounting and general property management. Bozzuto handled these same duties before February 2005.

11. Koller Kelly has performed numerous services while attempting to market and obtain leases for the properties at Avenel, including advertising on the Internet (e.g., www.apartmentguide.com; www.4wallsinphilly.com; www.rent.com); maintaining a website for Avenel (www.avenelapartments.com); and advertising in housing guides in the Philadelphia, suburban Philadelphia and southern New Jersey area (e.g., *Apartment Guide*, *Apartment Finders* and *Apartment Shoppers Guide*).

12. In addition, Koller Kelly has established various leasing programs in the area, including a "Preferred Employer Program" with local employers which offers rent specials, a

2

"Preferred Broker Program" where we pay a commission to any broker or agent that brings a client to Avenel for a visit and an active resident referral program. Koller Kelly has also sent out direct mailings and placed advertising in the local print media, including local newspapers and newsletters. Finally, we do a substantial amount of roadside advertising.

13. As part of the document production in this case, Koller Kelly provided more than 100 pieces of marketing and advertising material to John Hancock.

14. The leasing history at Avenel since February 2005 is as follows:

|        | Occupied | Percent Occupied |
|--------|----------|------------------|
| Feb-05 | 64       | 25%              |
| Mar-05 | 68       | 27%              |
| Apr-05 | 82       | 32%              |
| May-05 | 97       | 38%              |
| Jun-05 | 107      | 42%              |
| Jul-05 | 112      | 44%              |
| Aug-05 | 125      | 49%              |
| Sep-05 | 133      | 52%              |
| Oct-05 | 132      | 52%              |
| Nov-05 | 133      | 52%              |
| Dec-05 | 136      | 53%              |
| Jan-06 | 120      | 47%              |
| Feb-06 | 117      | 46%              |

15. In late Spring 2005, we realized that there was no possibility Avenel would be able to meet the occupancy requirements set forth in Condition 49(2) of the Loan Application.

16. Avenel was unable to achieve the leasing requirements provided in the Loan Application for a number of reasons, including construction being behind schedule, interest rates

3

continuing to be low and individuals being able to afford townhomes who would otherwise have leased apartments.

17. The anticipated cash flow or income for Avenel is to be derived primarily from its leasing.

18. Avenel would not have met either the 9% or the 10% Constant if it had endeavored to close the Loan in 2005, because it had not, and could not have, leased anywhere near the 80% minimum required by John Hancock.

19. Even with the projections it submitted to John Hancock with the Loan Application, Avenel would have not have been able to meet the 10% Constant requirement for the requested loan of $32 million.

20. Vesterra provided John Hancock with the following fees: a) $5,000 for a "Processing Fee"; b) $640,000 for an "Application Fee"; and c) $320,000 for a "Commitment Fee."

21. Vesterra provided the Application Fee by obtaining an irrevocable transferable Letter of Credit from Wilmington Trust payable to John Hancock in the amount of $640,000.

22. Vesterra provided the Commitment Fee by obtaining an irrevocable transferable Letter of Credit from Wilmington Trust payable to John Hancock in the amount of $320,000.

23. John Hancock never informed me that the 10% Constant requirement had been added to the loan disbursement requirements.

24. Vesterra would never have executed the Loan Application if it had known of the 10% Constant requirement for disbursement of the loan.

25. I have carefully read the above Affidavit and I certify under penalty of perjury that the foregoing is true and correct.

Executed by me on March 14, 2006

_____
JOSEPH P. KELLY

SWORN TO and subscribed before me this 14 day of March, 2006.

_____
Notary Public
BETTY CHERI PEARCE
Commissioner Of Deeds
Commonwealth Of Pennsylvania
My Commission Expires April 24, 2006