UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, | Civil Action No. 05-11614 WGY |
| Plaintiff, | |
| v. | |
| VESTMONT LIMITED PARTNERSHIP, et al., | |
| Defendants. | |

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF THEIR CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendants/Counterclaim Plaintiffs Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited Partnership III and Vesterra Corporation (collectively, "Vesterra") respectfully submit this Statement of Undisputed Facts in support of their Cross-Motion for Partial Summary Judgment.

**The Parties**

1. Plaintiff John Hancock Life Insurance Company ("John Hancock") is an insurance company existing under the laws of the Commonwealth of Massachusetts with its principal place of business in Boston, Massachusetts. Compl. ¶ 2; Am. Countercl. ¶ 6; Answer to Am. Countercl. ¶ 6.

2. Vestmont Limited Partnership, Vestmont Limited Partnership II and Vestmont Limited Partnership III are limited partnerships existing under the law of the Commonwealth of Pennsylvania, and each is a general partner of Montgomery Square Partnership ("Montgomery

Square"). Affidavit of James R. Koller, dated March 13, 2006 ("Koller Aff."), ¶ 5. Montgomery Square was formed to develop a tract of land in the suburban Philadelphia area. *Id* at ¶ 5. This development includes a retail shopping center and a residential apartment complex. *Id.* at ¶ 5. Vesterra's three principals are experienced and sophisticated real estate developers. Koller Aff., ¶ 4; Exhibit 3.[1]

### The Negotiation of the Loan Application

3.  Montgomery Square Partnership is the owner of a new 256-unit apartment complex known as "Avenel at Montgomery Square," in North Wales, Pennsylvania ("Avenel"). Construction of Avenel, which began in 2003, was originally scheduled have been completed in or about March 2005 but was not actually completed until in or about March 2006. Affidavit of Joseph P. Kelly, dated March 13, 2006 ("Kelly Aff."), ¶ 4; Koller Aff., ¶¶ 8-10.

4.  In the summer of 2004, Vesterra sought a forward commitment for a permanent mortgage loan of $32 million in order to repay its existing construction loan and related expenses, and John Hancock negotiated with Vesterra regarding such a commitment. Koller Aff., ¶¶ 12-14; Am. Countercl. ¶ 9; Answer to Am. Countercl. ¶ 9.

5.  John Hancock drafted and negotiated with Vesterra the terms of a document that is entitled "Application to John Hancock Life Insurance Company for a First Mortgage Loan" (the "Loan Application"). Am. Countercl. ¶ 9; Answer to Am. Countercl. ¶ 9.

6.  During the negotiations, John Hancock initially agreed to limit Vesterra's liability to 5% of the Loan amount (which would be approximately $600,000 on top of Vesterra's Application Fee and Commitment Fee), but John Hancock ultimately insisted that it be entitled to recover all "Costs" using the capitalized defined term as used in the Loan Application.

---

[1] All exhibits referenced herein are attached to the Declaration of Brian J. McCormick, Jr in Support of Defendants' Cross-Motion for Partial Summary Judgment, filed herewith.

Exhibit 2. The email from John Ferrie to Joseph Kelly, Robert Kelly, and Timothy Malik explained that John Hancock could not accept the 5% limitation because "[i]f we don't close and interest rates move against us, we could be subject to unlimited losses. . . . Therefore, you need to deliver the loan or be liable for all Costs." *Id.* There is no discussion of any "yield maintenance" remedy in this email. *Id.*

7. Vesterra understood "unlimited losses" in that email to refer to hedge losses. Koller Aff., ¶ 29; Exhibit 4 (Kelly Dep.) at 105:10-16.

8. Vesterra would never have signed the Loan Application if it had provided any kind of "yield maintenance" premium or damages related to performance of the Loan Application itself. Koller Aff., ¶ 30.

### Compliance with the Loan Application and Failure of the Loan to Close

9. James R. Koller, on behalf of Montgomery Square Partnership, signed the Loan Application on July 30, 2004, and submitted it to John Hancock. Koller Aff., ¶ 15.

10. Vesterra paid several fees as specified in the Loan Application. Vesterra paid a "Processing Fee" by delivering a check in the amount of $5,000 to John Hancock's representative in Pennsylvania. Am. Countercl. ¶ 15; Answer to Am. Countercl. ¶ 15. Vesterra provided an "Application Fee" by obtaining an irrevocable transferable Letter of Credit payable to John Hancock in the amount of $640,000 and delivering it to John Hancock's representative in Pennsylvania. Am. Countercl. ¶ 16; Answer to Am. Countercl. ¶ 16. And Vesterra provided a "Commitment Fee" by obtaining an irrevocable transferable Letter of Credit payable to John Hancock in the amount of $320,000 and delivering it to John Hancock's representative in Pennsylvania. *Id.*

3

11.     John Hancock countersigned the Loan Application on August 17, 2004. Am. Countercl. ¶ 12; Answer to Am. Countercl. ¶ 12.

12.     A <u>minimum</u> requirement for closing the Loan was the 80% occupancy specified in the Loan Application (at which level Vesterra would receive a loan of only $26,620,000). *See* Exhibit 1, Condition 49(2), at JH0989; Koller Aff., ¶ 17, 26, 35. Despite Vesterra's best efforts, as of May 2005, only 38% of the apartment units were occupied, and it was apparent to Vesterra that it was not going to achieve the 80% occupancy required for John Hancock to consider disbursing the Loan proceeds. Kelly Aff., ¶¶ 15-16; Koller Aff., ¶¶ 21-22.

13.     Since the anticipated cash flow or income for Avenel is to be derived primarily from its leasing, Avenel would not have met the revenue requirements of the Loan Application, even if the closing date had been postponed by six months. Kelly Aff., ¶¶ 14, 16-18. To this day, Avenel has not achieved the rental levels required by the Loan Application and is only 52% occupied. Kelly Aff., ¶ 14; Koller Aff., ¶ 27.

14.     Vesterra did not close on the Loan with John Hancock. Compl. ¶ 16; Answer ¶ 16.

## The Terms of the Loan Application

15.     John Hancock included many specific provisions throughout the Loan Application that protected John Hancock's interests by providing for specific and detailed remedies. The Loan Application set forth provisions for, *inter alia*, late charges, (Exhibit 1, at Condition 6(a), at JH00962), a default interest rate, (*id.*, Condition 6(b), at JH00962), triggering of the default provision upon sale or assignment or indebtedness other than the Loan or misrepresentation of material facts (*id.*, Conditions 6(f), (g) & (k), 11(e), at JH00963-65, 972), post-closing administrative fees (*id.*, Condition 6(j), at JH00965), detailed provisions regarding

4

reserve funds from which to pay taxes, assessments, liens, charges, hazard insurance premiums and ground rents (*id.*, Condition 18(a), at JH00974), payment of certain maintenance or repair items (*id.*, Condition 18(d), at JH00974-75), and a processing fee (*id.*, Condition 30(a), at JH00978).

16.    Of particular relevance to the present motion, the Loan Application details the consequences of prepayment of the Loan or default on the Loan after the Loan has closed and the Note has been signed: Condition 3(g) provides a very specific "prepayment premium" in the event that, after the Loan had been made, Vesterra chose to prepay it;[2] and Condition 6(d) explicitly describes the "premium" that must be provided for in "the Note (the 'Note'), the Mortgage and all other documents evidencing or securing the Loan or otherwise pertaining thereto (collectively the 'Loan Documents')" and that would be due as a consequence of default after the Loan was funded.[3] Exhibit 1, Conditions 3(g) & 6(d), at JH00960, 962-63. These

---

[2] Condition 3(g) provides in relevant part:

> On or after the end of the **4th** Loan Year (as hereinafter defined) ... Borrower may prepay the entire principal amount together with any and all accrued interest and other sums due under the Loan Documents and subject to payment of a prepayment premium equal to the greater of:
> (i)    the positive amount, if any, equal to (aa) the sum of the present values of all scheduled payments due under the Note from the Prepayment Date to and including the maturity date of the Note, minus (bb) the principal balance of the note immediately prior to such prepayment; or
> (ii)   0.00% of the principal balance of the Note immediately prior to such prepayment.
>
> All present values shall be calculated as of the Prepayment Date, using a discount rate, compounded monthly, equal to the yield rate, converted to its monthly equivalent, of the United State Treasury Security having the closest maturity date to the maturity date of the Note ...

Exhibit 1, Condition 3(g), at JH00960.

[3] Condition 6(d) of the Loan Application provides in relevant part:

> [The Note, the Mortgage, and other documents evidencing or securing the Loan shall contain the following provisions:] A covenant to the effect that Borrower acknowledges that the Loan was made on the basis and assumption that John Hancock would receive the payments of principal and interest set forth herein for the full term of this Loan. Therefore, whenever the maturity of the Loan has been accelerated by reason of a default under the Loan Documents, which default occurs prior to the time period, if any, in which prepayment is allowed and prior to the date on which the full amount of the balance of principal and interest then remaining unpaid shall be due, including an acceleration by reason of sale, conveyance, further encumbrance or other default (which

5

"yield maintenance" premiums apply by their terms to all "payments due under the Note" and "sums due under the Loan Documents." *Id.* at JH00960, 962-63.

17. The Loan was never closed, and no note or mortgage related to the Loan was ever signed by Vesterra. Compl. ¶ 16; Answer ¶ 16; Koller Aff. ¶ 34.

18. The Loan Application also includes provisions that specify damages in the event that the Loan never closes. Exhibit 1, Conditions 30(b)-(d), at JH00978-79. Those provisions describe the situations in which John Hancock can retain the Application Fee and Commitment Fee: "In the event John Hancock accepts this Loan Application and the Loan does not Close, John Hancock will retain the entire Application Fee in addition to its other rights and remedies under the Application, and Applicant shall remain liable for all Costs," (*id.*, Condition 30(b)(v), at JH00978), and "[i]n the event the Loan does not Close, the Commitment Fee will be retained by John Hancock in addition to its other rights and remedies under the Application, and the Applicant shall remain liable for all Costs." *Id.*, Condition 30(c)(ii), at JH00979.

19. The provisions governing the Application Fee and the Commitment Fee provide that such fees will be retained or returned depending on whether the parties meet the conditions of the Loan Application. In contrast, the Processing Fee "is deemed fully earned upon receipt, is

---

acceleration shall be at John Hancock's sole option), there shall be due, in addition to the outstanding principal balance, accrued interest and other sums due under the Loan Documents, a premium equal to the greater of:
(i)   The sum obtained by adding:
    (aa)   the positive amount, if any, equal to (x) the sum of the present values of all scheduled payments due under the Note from the date of said payment to and including the maturity date of the Note, minus (y) the then outstanding principal balance of the Note, and
    (bb)   0.00% of the then outstanding principal balance of the Note; or
(ii)   An amount equal to 7.00% of the then outstanding principal balance of the Note.

All present values shall be calculated as of the date of said payment, using a discount rate, compounded monthly, equal to the yield rate, converted to its monthly equivalent, of the United State Treasury Security having the closest maturity date to the maturity date of the Note . . .

Exhibit 1, Condition 6(d), at JH00962-63.

6

non-refundable and will be retained by John Hancock whether John Hancock accepts this Application and whether or not the Loan Closes." Exhibit 1, Condition 30(a), at JH00978.

20. The provisions governing the Application Fee and the Commitment Fee, and damages for breach of the Loan Application, do *not* reference or spell out any "yield maintenance" penalty in any terms, in marked contrast to the terms used in Condition 3(g) and 6(d). Exhibit 1, Conditions 30(b)-(d), at JH00978-79. Koller Aff, ¶¶ 28-30.

21. The provisions of Condition 30(d)[4] entitle John Hancock to recover special damages incurred prior to the failure of the Loan to close in addition to the damages specified in Condition 30 -- the Application Fee and the Commitment Fee -- and in addition to the Processing fee and Costs (as defined in the Loan Application).[5] The special damages identified in Condition

---

[4] Condition 30(d) provides in relevant part:

> (d) If John Hancock accepts this Application, and in the event that thereafter:
> (i) Applicant or Borrower shall fail to satisfy or otherwise comply with any of the Terms and Conditions hereof in a timely fashion, or
> (ii) John Hancock shall terminate this instrument pursuant to Condition 29 hereof, or
> (iii) in any event, if the Loan shall not have been Closed by the Closing Date or . . . [the date on which] John Hancock's obligation to Close and fund shall expire,
>
> . . . John Hancock shall be entitled to recover from Applicant and/or Borrower all damages, losses, costs and expenses suffered or incurred by John Hancock as a result of any of the events described in part (i), (ii) or (iii) of this subparagraph (d), including, without limitation, all such damages, losses, costs or expenses arising from the fact that, in reliance on the agreements of Applicant and Borrower contained herein, John Hancock allocated and set aside assets for the purpose of funding the Loan and made commitments to third parties based thereon, in addition to retention of the Processing Fee, the Application Fee and the Commitment Fee, provided, however, that Applicant and/or Borrower shall also continue to remain liable for all Costs.

Exhibit 1, at Condition 30(d), at JH00979.

[5] The Loan Application provides the following definition of "Costs":

> Unless specifically stated to the contrary herein, whether or not the Loan closes, Applicant and Borrower shall be jointly and severally liable to pay on the earlier of the Closing date or termination of this Application all costs pertaining to the Loan and the Closing, including, without limitation, all Third Party Report Fees, all charges for title examination and title insurance and escrow, all survey costs, all recording and filing fees, all mortgage or similar taxes, and all attorneys' fees and costs of John Hancock (collectively "Costs") . . . The definition of "Costs" shall be deemed to include all costs pertaining to the application of all or any portion of the Rental Achievement Reserve, and the revision of the amortization schedule and the monthly payment as described in Condition 49 of this Application

30(d) are those "damages, losses, costs or expenses arising from the fact that, in reliance on the agreements of Applicant and Borrower contained herein, John Hancock allocated and set aside assets for the purpose of funding the Loan and made commitments to third parties based thereon." Exhibit 1, Condition 30(d), at JH00979.

### Absence of Evidence of Special Damages

22. John Hancock has presented <u>no evidence</u> of whether it in fact incurred any losses because it "allocated or set aside" any funds for the proposed Loan.

23. John Hancock has presented <u>no evidence</u> that it made any commitments to third parties as contemplated by Condition 30(d) of the Loan Application.

Respectfully submitted,

Dated: March 14, 2006

/s/ Robert D. Hillman
Steven J. Brooks (BBO # 059140)
Robert D. Hillman (BBO # 552637)
DEUTSCH WILLIAMS BROOKS
DeRENSIS & HOLLAND, P.C.
99 Summer Street
Boston, MA 02110-1213
Tele.: 617-951-2300

/s/ Howard D. Scher
Howard D. Scher (admitted *pro hac vice*)
C. Randolph Ross (admitted *pro hac vice*)
Brian J. McCormick, Jr.(admitted *pro hac vice*)
BUCHANAN INGERSOLL PC
1835 Market Street, Floor 14
Philadelphia, PA 19103
Tele.: 215-665-8700

Attorneys for Defendants/Counterclaim Plaintiffs Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited Partnership III and Vesterra Corporation

---

Exhibit 1, Conditions 21 & 49(5), at JH00975, 990-91.