UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

JOHN HANCOCK LIFE INSURANCE
COMPANY,

    Plaintiff/Counterclaim Defendant,

               v.

VESTMONT LIMITED PARTNERSHIP,
et al.,

    Defendants/Counterclaim Plaintiffs.
_____

Civil Action No. 05-11614 WGY

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
TO COMPEL PLAINTIFF JOHN HANCOCK TO COMPLY
WITH DEFENDANTS' RULE 30(b)(6) DEPOSITION NOTICE**

Defendants/Counter-Plaintiffs Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited Partnership III, and Vesterra Corporation ("Vesterra" or "Defendants"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion for an Order requiring immediate and thorough compliance with the outstanding Rule 30(b)(6) deposition notice at John Hancock's expense or, in the alternative, an order barring John Hancock from presenting any new evidence on the topics identified in that notice.

**INTRODUCTION**

Defendants served a Fed. R. Civ. P. 30(b)(6) deposition notice seeking testimony on several topics relating to: (a) the unfunded loan at issue in this case; (b) plaintiff John Hancock's lending practices; and (c) John Hancock's alleged damages (the "Rule 30(b)(6) Notice"). John

Hancock has produced three witnesses to serve as its Rule 30(b)(6) designees on certain topics; two were also individual fact witnesses, one was solely deposed as a corporate designee.

At each one of those depositions the designated witness testified that he or she took no steps – did nothing – to prepare for the Rule 30(b)(6) portion of their deposition. For example, during the second deposition, John Hancock's corporate designee testified that she actually met with her counsel in order to prepare for the deposition, but did not review a single piece of paper, even though there were documents present in the room with them. The third deponent, deposed last week after Defendants had already raised concerns about the previous depositions, testified that she did "[n]othing outside of [her] normal day-to-day activities" to prepare for her deposition. Uzdavinis Dep. (Exhibit H), at 13.[1]

In one of the parties' conferences on this motion, John Hancock took the position that, since it purports to have produced witnesses in other depositions who were John Hancock's employees or former employees having the most knowledge about the topics contained in the Rule 30(b)(6) Notice, they were liberated from any obligation to prepare their Rule 30(b)(6) designees to testify as to the topics for which they were designated. Thus, John Hancock's position is that it was perfectly proper for its corporate designees not to look at any documents, not to consult with any other employees and not to undertake any investigation as to whether there were any other sources of information within John Hancock that were responsive to the topics. Defendants ask this Court for an order requiring immediate and thorough compliance with the outstanding Rule 30(b)(6) deposition notice at John Hancock's expense or, in the

---

[1] All exhibits referenced herein are attached to the Declaration of Brian J. McCormick, Jr. in Support of Defendants' Motion to Compel Plaintiff John Hancock to Comply with Defendants' Rule 30(b)(6) Deposition Notice, filed herewith.

2

alternative, an order barring John Hancock from presenting any new evidence on the topics identified in that notice.

## FACTUAL AND PROCEDURAL BACKGROUND

John Hancock brought this action seeking damages for a loan that it did not fund. Defendants asserted defenses to the claim and, following the initial exchange of documents, asserted a counterclaim based on documents from John Hancock which demonstrate that John Hancock had added a new and undisclosed disbursement requirement for the Loan at the time it "approved" the Loan Application, and had manipulated the financial projections that were a part of the Loan Application, without informing Vesterra.

In January 2006, John Hancock sought a preliminary injunction to prohibit Defendants from selling the property that was the subject of the unfunded loan. At the suggestion of the Court, the parties agreed to engage in expedited discovery and to have the entire case – injunction and trial on the merits – resolved by a trial in April. On February 1, 2006, Defendants served the Rule 30(b)(6) Notice. See Exhibit A hereto. The Rule 30(b)(6) Notice sought testimony relating to 15 specific categories. Id. at 3-4 (Exhibit A thereto).[2]

**David Henderson**

On March 1, 2006, John Hancock produced David Henderson as a witness designated under Rule 30(b)(6) to testify on topics 1, 3 and 4 of the Rule 30(b)(6) Notice. In response to Defendants' questions, Mr. Henderson testified that he was unprepared to testify as a Rule 30(b)(6) witness at all. He had taken no meaningful steps to prepare as a 30(b)(6) witness or to conduct the required investigation by reviewing files or speaking with any John Hancock employees. Pertinent excerpts from Mr. Henderson's testimony are attached as Exhibit B.

---

[2] John Hancock objected to only three of the topics identified in the Rule 30(b)(6) Notice, and has refused to produce a witness regarding those topics. Those objections are not the subject of this Motion.

3

In addition, John Hancock's counsel notified Vesterra's counsel, <u>after the deposition began</u>, that Mr. Henderson, who had been put forward as a witness to testify on matters for a specific time period, would not be able to testify regarding that entire period.  <u>Id.</u> at 7-8.

Mr. Henderson's deficiencies as a Rule 30(b)(6) witness were noted in a March 3, 2006 letter to John Hancock's counsel demanding that John Hancock produce a witness fully prepared to testify as required by that rule.  <u>See</u> <u>Exhibit</u> <u>C</u>.

**<u>Patricia Coyne</u>**

On March 8, 2006, John Hancock designated Patricia Coyne as "the Hancock designee on topic #s 2, 5 and 6 and will supplement the testimony already provided on topic #3."  <u>See</u> <u>Exhibit</u> <u>D</u> (after repeated requests from Vesterra's counsel, John Hancock's counsel e-mailed the designations two days prior to the deposition).

Ms. Coyne appeared at the deposition on March 10, 2006.  In the first moments of her deposition, Ms. Coyne testified that she had taken no steps to prepare her Rule 30(b)(6) testimony.  She did not speak with any other John Hancock employee regarding the topics as to which she was designated.  She testified that she did not review any documents in preparation for her deposition.  She further testified that, during her preparation, she was in the presence of documents relating to the case, but was not shown any of the documents.  Pertinent excerpts from Ms. Coyne's testimony are attached as <u>Exhibit</u> <u>E</u>.

That same day, following Ms. Coyne's deposition, Vesterra's counsel sent a letter to Plaintiff's counsel protesting John Hancock's misconduct and refusal to abide by the Federal Rules of Civil Procedure.  <u>See</u> <u>Exhibit</u> <u>F</u>.  Vesterra pointed out that under any circumstances, John Hancock's repeated refusal to comply with Rule 30(b)(6) would be unacceptable; however,

under the circumstances of this case -- including a trial scheduled on an expedited basis -- John Hancock's failures defied any explanation or excuse.

**Joan Uzdavinis**

John Hancock designated Joan Uzdavinis, an Assistant Vice President of John Hancock, as its corporate designee for six of the 15 topics in Defendants' Notice. See Exhibit G. These topics were:

> 10. The losses allegedly suffered by John Hancock as a result of the failure of the Loan to close, as referenced in Paragraph 16 of the Complaint, including: the basis, policy and practice relating to decisions whether to invest funds in mortgage loans or other investment vehicles; the projected return on all investments by John Hancock over the ten years beginning on August 1, 2005; and the actual return on all investments by John Hancock for the 10 year period ending August 1, 2005.
>
> 11. The policies, guidelines, requirements, targets, practices, processes or methods pursuant to which John Hancock allocates assets among various types of investments such as, but not limited to, government bonds, commercial bonds, commercial real estate mortgages, other mortgages and other types of investments.
>
> 12. The steps taken by John Hancock to mitigate any losses allegedly suffered by it as a result of the failure of the Loan to close, including but not limited to: the actual use or uses to which the monies "allocated" for this loan have been put; the alternative investment vehicles which have been available to John Hancock since August 1, 2005; and the policies and practices of John Hancock that govern the choice of such alternative investment vehicles.
>
> 13. The manner in which John Hancock accounts for the application and commitment fees that John Hancock retains when a loan fails to close, to what departments or individuals such fees are credited, how such fees are recognized on John Hancock's books, and how they are thereafter invested, including the fees related to the Loan Application.
>
> 14. The decision to "allocate[] and set aside assets for the purpose of funding the Loan", as referenced in paragraph 11 of the Complaint, and the nature of such allocation and set aside, as well as any hedge costs or other costs associated therewith.
>
> 15. The "commitments made to third parties", as referenced in paragraph 11 of the Complaint.

See Exhibit A, at 3-4.  Essentially, Ms. Uzdavinis was to be John Hancock's witness on its alleged damages.

However, as with Ms. Coyne and Mr. Henderson, Ms. Uzdavinis did nothing to prepare for the deposition "except her normal day-to-day activities."  Pertinent excerpts from Ms. Uzdavinis' testimony are attached as Exhibit H.

This is where things stand.  With the pretrial conference set for March 30, John Hancock has effectively stonewalled discovery on the key issues of the case.

## ARGUMENT

John Hancock's response to the Rule 30(b)(6) Notice -- or, more accurately, failure to respond to the Notice -- is inexcusable.  John Hancock's conduct illustrates the exact sort of gamesmanship that Rule 30(b)(6) was promulgated to prevent:

> [30(b)(6) depositions] should be viewed as an added facility for discovery, one which may be advantageous to both sides as well as an improvement in the deposition process. . . .  It will curb the "bandying" by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it.

Fed. R. Civ. P. 30(b)(6), advisory committee's note (citations omitted).  The Rule 30(b)(6) Notice in the present case provided John Hancock with a list of matters upon which examination was requested, and did so with "reasonable particularity" as required by Rule 30(b)(6).  Rule 30(b)(6) required John Hancock to identify and prepare one or more witnesses who "consent to testify on [John Hancock's] behalf."  Rule 30(b)(6) further affirmatively obligated each witness designated as a 30(b)(6) deponent to "educate himself as to the matters regarding the corporation."  *Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 36 (D. Mass. 2001).  For reasons John Hancock has not articulated, it has repeatedly failed to comply with these obligations.

6

### A.     Rule 30(b)(6) Witnesses Must Be Prepared to Testify

Rule 30(b)(6) provides that the designated deponent "shall testify as to matters known or reasonably available to the organization." Accordingly, the rule requires the deponent to prepare to testify by learning about such matters:

> Rule 30(b)(6) . . . implicitly requires persons to review all matters known or reasonably available to it in preparation for the 30(b)(6) deposition. This interpretation is necessary in order to make the deposition a meaningful one and to prevent the "sandbagging" of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial. This would totally defeat the purpose of the discovery process. . . . [A company] does not fulfill its obligations at the Rule 30(b)(6) deposition by stating that it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available. . . .

*Calzaturficio*, 201 F.R.D. at 36 (quoting *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996)). Indeed, "[t]he party responding to a 30(b)(6) deposition notice 'must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits.' Even if the documents are voluminous and the review of those documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed." *Id.*, 201 F.R.D. at 37 (citations omitted).

### B.     John Hancock's Witnesses Were Woefully Unprepared, in Violation of John Hancock' s Obligations under the Rule

John Hancock did not even try to meet these requirements for its designees. None of the three witness made any inquiry with any other John Hancock employees, present or former, regarding the topics for which they were designated. The witnesses who were designated were unapologetically unprepared. Patricia Coyne was deliberately unprepared to the extent that she was in the presence of documents while preparing for her deposition, but did not bother to look at the documents. If the designated witnesses were not aware that it was incumbent upon them to

7

make inquiries and review documents, John Hancock and its attorneys were fully cognizant of these responsibilities and evidently did nothing to fulfill them.

John Hancock's conduct is unquestionably prejudicial to the Defendants. In the context of the shortened discovery and trial schedule, it was, and remains, vital to the Defendants to get the information from John Hancock to defend its claims and advance Defendants' counterclaims. In the context of this accelerated action, it is difficult not to regard this approach as calculated, particularly where John Hancock was immediately put on very explicit notice of the fact and nature of Defendants' objections to the inadequacy of Mr. Henderson's testimony. To produce a second designee in response to the Rule 30(b)(6) Notice who was even less prepared than Mr. Henderson, and then a third who also did nothing to prepare to testify on the designated topics, amply demonstrates a bad faith approach to this litigation which requires redress.

    **C.**    **Appropriate Remedies and Request for Relief**

Even in cases without the time pressure of an expedited trial, failure to comply with the facial requirements of Rule 30(b)(6) may draw appropriate sanctions, from ordering compliance with the deposition notice and imposing the cost of the redeposition to barring evidence on the topics as to which no good faith designation was made.

Rule 37(a)(2)(B) provides in relevant part, "If a deponent fails to answer a question propounded or submitted under Rules 30 or 31 . . . the discovering party may move for an order compelling an answer . . . ." Fed. R. Civ. P. 37. It appears that additional remedies are available to the Court under Rule 37(d) as well. Although *dicta* in a footnote in a fifteen year-old First Circuit decision mentions that Rule 37(d), which provides further sanctions in the event that a

8

deponent fails to appear,[3] should be strictly construed to apply "only when a deponent 'literally fails to show up for a deposition section,'" *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 15 n. 2 (1st Cir. 1991), the First Circuit in that case did not have to squarely address the issue of a party refusing to prepare a 30(b)(6) deponent. Rather the First Circuit in that case was considering a deponent who refused to answer questions as to one issue.

In contrast, recent decisions by a district court in this circuit and by other circuit courts have held that "[p]roducing an unprepared witness is tantamount to a failure to appear at a deposition." *Calzaturficio*, 201 F.R.D. at 39 (internal quotations omitted); *see also Black Horse Lane Assoc. v. Dow Chemical Corp.*, 228 F.3d 275, 303-04 (3d Cir. 2000) (stating "if a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it. Indeed, we believe that the purpose behind Rule 30(b)(6) undoubtedly is frustrated in the situation in which a corporate party produces a witness who is unable and/or unwilling to provide the necessary factual information on the entity's behalf"); *Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 197-98 (5th Cir. 1993) ("When a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent. If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the

---

[3] Rule 37(d) provides in relevant part:

> If . . . a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule.

Fed. R. Civ. P. 37(d).

appearance is, for all practical purposes, no appearance at all. . . . The district court did not abuse its discretion in awarding fees and costs under Rule 37(d)").

Accordingly, by egregiously flouting its well-established obligations in this manner, John Hancock should be found to have committed such a thorough disregard of Rule 30(b)(6) that it was tantamount to John Hancock refusing to appear at the depositions. John Hancock certainly refused to have any properly prepared witness appear on its behalf. Because, for the purposes of Rule 30(b)(6) and Rule 37(d), a prepared designee-deponent failed to appear, the Court can make "such orders in regard to the failure as are just."

## CONCLUSION

Defendants request that this Court impose the appropriate sanctions, including producing prepared witnesses at John Hancock's expense and the preclusion of any new evidence on the designated 30(b)(6) topics not testified to in those depositions, in light of the upcoming trial date and in proportion to the egregiousness of John Hancock's conduct.

Respectfully submitted,

/s/ Robert D. Hillman
Steven J. Brooks (BBO # 059140)
Robert D. Hillman (BBO # 552637)
DEUTSCH WILLIAMS BROOKS
DeRENSIS & HOLLAND, P.C.
99 Summer Street
Boston, MA 02110-1213
Tele.: 617-951-2300

/s/ Howard D. Scher
Howard D. Scher (admitted *pro hac vice*)
C. Randolph Ross (admitted *pro hac vice*)
Brian J. McCormick, Jr.(admitted *pro hac vice*)
BUCHANAN INGERSOLL PC
1835 Market Street, Floor 14
Philadelphia, PA 19103
Tele.: 215-665-8700

                                          Attorneys for Defendants/Counterclaim Plaintiffs Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited Partnership III and Vesterra Corporation.

Date:  March 29, 2006

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing document has been filed electronically today, was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and is available for viewing and downloading from the ECF system.

Dated:  March 29, 2006

                                          /s/ Brian J. McCormick, Jr.
                                          Brian J. McCormick, Jr. (admitted *pro hac vice*)