UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                                :
JOHN HANCOCK LIFE INSURANCE                 :
COMPANY,                                                   :    Civil Action No. 05-11614 WGY
                                                                :
        Plaintiff/Counterclaim Defendant        :
                                                                :
                            v.                                  :
                                                                :    JURY TRIAL DEMANDED
VESTMONT LIMITED PARTNERSHIP,          :
et al.,                                                          :
                                                                :
        Defendants/Counterclaim Plaintiffs     :
_____     :


**DECLARATION OF BRIAN J. MCCORMICK, JR.
IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PLAINTIFF
JOHN HANCOCK LIFE INSURANCE COMPANY TO COMPLY
WITH DEFENDANTS' RULE 30(b)(6) DEPOSITION NOTICE**

BRIAN J. McCORMICK, JR., of full age, hereby declares as follows:

1.      I am an attorney-at-law of the Commonwealth of Pennsylvania and an associate with the law firm of Buchanan Ingersoll PC, counsel for Defendants/ Counterclaim Plaintiffs V in the above-captioned action.  I have also been admitted *pro hac vice* to this Court pursuant to an Order entered on February 23, 2006.

2.      This Declaration is submitted in support of Defendants' Motion to Compel Plaintiff to Comply with Defendants' Rule 30(b)(6) Deposition Notice.

3.      Attached hereto as Exhibit "A" is a true and correct copy of Defendants' Notice of Rule 30(b)(6) Videotape Deposition of Plaintiff John Hancock Life Insurance Company.

4.      Attached hereto as Exhibit "B" is a true and correct copy of relevant portions of the March 1, 2006 deposition of David Henderson.

5.      Attached hereto as Exhibit "C" is a true and correct copy of a March 3, 2006 letter from Howard D. Scher, Esq. to Brian A. Davis, Esq.

6.      Attached hereto as Exhibit "D" is a true and correct copy of a March 8, 2006 e-mail from Paul Popeo, Esq. to Brian J. McCormick, Jr., Esq.

7.      Attached hereto as Exhibit "E" is a true and correct copy of relevant portions of the March 10, 2006 deposition of Patricia Coyne.

8.      Attached hereto as Exhibit "F" is a true and correct copy of a March 10, 2006 letter from Howard D. Scher, Esq. to Brian A. Davis, Esq.

9.      Attached hereto as Exhibit "G" is a true and correct copy of a March 7, 2006 e-mail from Paul Popeo, Esq. to Brian J. McCormick, Jr., Esq

10.      Attached hereto as Exhibit "H" is a true and correct copy of relevant portions of the March 21, 2006 deposition of Joan Uzdavinis.

I hereby declare under the penalty of perjury that the foregoing statements made by me are true and correct.

                                    /s/ Brian J. McCormick, Jr.
                                    Brian J. McCormick, Jr.

Dated: March 29, 2006

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed electronically today, was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and is available for viewing and downloading from the ECF system.

Dated:  March 29, 2006                /s/ Brian J. McCormick, Jr.
                                    Brian J. McCormick, Jr. (admitted *pro hac vice*)

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, | : : : | Civil Action No. 05-11614 WGY |
| Plaintiff/Counterclaim Defendant, | : : | |
| v. | : : | |
| VESTMONT LIMITED PARTNERSHIP, et al., | : : : | |
| Defendants/Counterclaim Plaintiffs. | : : | |

**DEFENDANTS' NOTICE OF
RULE 30(b)(6) VIDEOTAPE DEPOSITION OF
PLAINTIFF JOHN HANCOCK LIFE INSURANCE COMPANY**

TO:    BRIAN A. DAVIS, ESQUIRE
       Choate, Hall & Stewart LLP
       Two International Place
       Boston, MA 02110

PLEASE TAKE NOTICE THAT, pursuant to the Federal Rules of Civil Procedure,

defendants Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited

Partnership III and Vesterra Corporation ("Defendants"), by and through their undersigned

attorneys, will take the deposition via videotape oral examination of Plaintiff John Hancock Life

Insurance Company ("John Hancock") before a person duly authorized to administer oaths, at the

offices of Deutsch Williams Brooks DeRensis & Holland, P.C., 99 Summer Street, Boston, MA

02110, on Wednesday, February 22, 2006, starting at 9:30 a.m. The deposition will be recorded by

sound, sound-and-visual and stenographic means, and shall continue from day to day until

concluded.

PLEASE TAKE NOTICE THAT, pursuant to rule 30(b)(6) of the Federal Rules of Civil

Procedure, John Hancock is required to designate one or more knowledgeable persons to testify on

its behalf with respect to the matters set forth in Exhibit A attached hereto, and the person(s) so

designated shall be required to testify as to those matters known or reasonably available to John

Hancock.

You are invited to attend and participate.

DEFENDANTS VESTMONT LIMITED
PARTNERSHIP, VESTMONT LIMITED
PARTNERSHIP II, VESTMONT LIMITED
PARTNERSHIP III AND VESTERRA
CORPORATION

By their attorneys,

Dated:  February 1, 2006

Steven J. Brooks (BBO # 059140)
Robert D. Hillman (BBO # 552637)
DEUTSCH WILLIAMS BROOKS
DeRENSIS & HOLLAND, P.C.
99 Summer Street
Boston, MA 02110-1213
Tele.:  617-951-2300

Howard D. Scher (admitted *pro hac vice*)
C. Randolph Ross (admitted *pro hac vice*)
Brian J. McCormick, Jr. (admitted *pro hac vice*)
BUCHANAN INGERSOLL PC
1835 Market Street, Floor 14
Philadelphia, PA 19103
Tele.: 215-665-8700

2

## EXHIBIT A

**Definitions:** The following definitions apply to the Topics listed below.

1.    The term "John Hancock" shall mean plaintiff John Hancock Life Insurance Company, its agents, officers, directors, members, employees, subsidiaries, affiliates, employees of subsidiaries, affiliates, successors, and predecessors, and all other persons acting or purporting to act on its behalf, including its attorneys and/or other representatives.

2.    The term "Loan Application" shall mean the "Application to John Hancock Life Insurance Company for a First Mortgage Loan," application no. 6518467, by applicant Montgomery Square Partnership, dated July 30, 2004.

3.    The term "Loan" shall mean the mortgage loan applied for in the Loan Application.

4.    The term "Regatta Apartments" shall mean the Regatta Apartment Homes complex in Plymouth Meeting, Pennsylvania.

## TOPICS

1.    The decision by John Hancock to accept the Loan Application, referenced in Paragraph 10 of the Complaint, including all of the factors, requirements and guidelines that were involved in John Hancock's internal consideration of the Loan Application.

2.    The terms and conditions contained in the Loan Application, including but not limited to, any and all conditions that Defendants were required to meet for disbursement of the Loan, and the negotiation of these terms and conditions between Defendants and John Hancock.

3.    The policies, guidelines, requirements, targets, practices, processes or methods that apply to the making of mortgage loans by John Hancock, and any differences in any of the foregoing before April 28, 2004 and after April 28, 2004.

4.    The manner, method and/or process by which John Hancock approved mortgage loans during the period from January 1, 2000 through April 28, 2004.

5.    The manner, method and/or process by which John Hancock approved mortgage loans during the period from April 28, 2004 to the present.

6.    The requirements and conditions that, following John Hancock's acceptance of the Loan Application, would have to have been met by Defendants in order for John Hancock to fund or disburse the Loan applied for in the Loan Application.

7.    The draft amendment to the Loan Application prepared by John Hancock after it was signed by Defendants on July 30, 2004.

8.     The decision by John Hancock, after a mortgage loan approved by John Hancock for the Regatta Apartments failed to close, not to attempt to recover from that loan applicant more than the processing and application and commitment fees, as testified to in the deposition of Timothy Malik on January 27, 2006.

9.     The decision by John Hancock to treat differently the failure of the Loan to Defendants to close, as compared to the failure of the loan to the Regatta Apartments to close.

10.    The losses allegedly suffered by John Hancock as a result of the failure of the Loan to close, as referenced in Paragraph 16 of the Complaint, including:  the basis, policy and practice relating to decisions whether to invest funds in mortgage loans or other investment vehicles; the projected return on all investments by John Hancock over the ten years beginning on August 1, 2005; and the actual return on all investments by John Hancock for the 10 year period ending August 1, 2005.

11.    The policies, guidelines, requirements, targets, practices, processes or methods pursuant to which John Hancock allocates assets among various types of investments such as, but not limited to, government bonds, commercial bonds, commercial real estate mortgages, other mortgages and other types of investments.

12.    The steps taken by John Hancock to mitigate any losses allegedly suffered by it as a result of the failure of the Loan to close, including but not limited to:  the actual use or uses to which the monies "allocated" for this loan have been put; the alternative investment vehicles which have been available to John Hancock since August 1, 2005; and the policies and practices of John Hancock that govern the choice of such alternative investment vehicles.

13.    The manner in which John Hancock accounts for the application and commitment fees that John Hancock retains when a loan fails to close, to what departments or individuals such fees are credited, how such fees are recognized on John Hancock's books, and how they are thereafter invested, including the fees related to the Loan Application.

14.    The decision to  "allocate[] and set aside assets for the purpose of funding the Loan", as referenced in paragraph 11 of the Complaint, and the nature of such allocation and set aside, as well as any hedge costs or other costs associated therewith.

15.    The "commitments made to third parties", as referenced in paragraph 11 of the Complaint.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Deposition has this

1st day of February, 2006, been transmitted by facsimile and regular, first-class mail as follows:

Brian A. Davis
Choate, Hall & Stewart, LLP
Two International Place
Boston, MA 02110

_____
Brian J. McCormick, Jr.

Transcript of Henderson, David B. (Vol. 01) - 03/01/2006
Wednesday, March 29, 2006, 2:45:35 PM

## VESTERRA - John Hancock

Page 1

```
 1                              VOLUME:    I
                                PAGES:    1 - 88
 2                              EXHIBITS:  1 - 8
 3
                   UNITED STATES DISTRICT COURT
 4
               FOR THE DISTRICT OF MASSACHUSETTS
 5
 6

     JOHN HANCOCK LIFE            )
 7   INSURANCE COMPANY,           )
       Plaintiff/Counterclaim     )
 8      Defendant,                )
                                  )  Case No.
 9     VS.                        )  05-11614-WGY
                                  )
10   VESTMONT LIMITED             )
     PARTNERSHIP, ET AL.,         )
11     Defendants/Counterclaim    )
        Plaintiffs.               )
12
13        30(b)(6) DEPOSITION OF JOHN HANCOCK LIFE
     INSURANCE COMPANY by DAVID B. HENDERSON, a
14   witness called by and on behalf of the
     Defendants, taken pursuant to the applicable
15   provisions of the Federal Rules of Civil
     Procedure, before Sandra L. Bray, Registered
16   Diplomate Reporter, CSR Number 103593, and
     Notary Public in and for Commonwealth of
17   Massachusetts, at the offices of Deutsch
     Williams Brooks DeRensis & Holland, P.C.,
18   99 Summer Street, Boston, Massachusetts, on
     Wednesday, March 1, 2006, commencing at
19   9:03 a.m.
20
21
22
                      REPORTERS, INC.
23        GENERAL & TECHNICAL COURT REPORTING
        MERRYMOUNT ROAD, QUINCY, MA 02169
24       617.786.7783/FACSIMILE 617/786.7723
```

**VESTERRA - John Hancock**

Page 2

```
1    APPEARANCES:
2      CHOATE, HALL & STEWART, L.L.P.
            (By Paul D. Popeo, Esquire)
3            Two International Place
             Boston, Massachusetts  02110
4            for the Plaintiffs/Counterclaim
             Defendants
5
       BUCHANAN INGERSOLL, PC
6            (By Howard D. Scher, Esquire)
             1835 Market Street
7            Philadelphia, Pennsylvania  19103
             for the Defendants
8
9                    -------------
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

## VESTERRA - John Hancock

Page 3

```
 1                    I N D E X
 2   WITNESS:                        EXAMINATION
 3   DAVID B. HENDERSON
 4     (By Mr. Scher)                     4
 5
 6
 7                  E X H I B I T S
 8   NO.                           FOR IDENTIFICATION
 9   No. 1   Amended Notice of Deposition     4
10   No. 2   Defendants' Notice of
             Rule 30(b)(6) Videotape
11           Deposition of Plaintiff John
             Hancock Life Insurance
12           Company                          8
13   No. 3   John Hancock Life Insurance
             Company Documents               55
14
     No. 4   Copy of E-mails                 59
15
     No. 5   Copy of E-mail to
16           Mr. Henderson from
             Mr. Malik, dated 8-12-04        62
17
     No. 6   John Hancock Life Insurance
18           Company Documents               71
19   No. 7   Memorandum to Mr. Thomas from
             Mr. Henderson, dated 8-16-04    73
20
     No. 8   Memorandum to Mr. Malik from
21           Ms. Coyne, dated 8-17-04        74
22
23
24
```

### VESTERRA - John Hancock

Page 6

```
 1   Q.   And are you currently employed by General
 2        Electric Real Estate in Boston?
 3   A.   I am.
 4   Q.   And what are your duties and responsibilities
 5        for General Electric Real Estate?
 6   A.   My title is senior vice president.  The
 7        functional responsibility is business
 8        development manager, which means that I am
 9        charged with finding investment opportunities
10        for GE Real Estate involving acquiring
11        companies, investing in companies, and doing
12        joint venture investment with companies.
13   Q.   When you left the John Hancock, you were a
14        senior investment officer?
15   A.   That was my title, I believe.
16   Q.   And Tim Malik reported to you?
17   A.   Correct.
18   Q.   And what were your duties and responsibilities
19        as senior investment -- what were your duties
20        and responsibilities at the time you left John
21        Hancock?
22   A.   I managed a team of underwriters, including Tim
23        Malik, as well as managed a team of originators
24        in field offices -- five field offices in the
```

### VESTERRA - John Hancock

Page 7

```
 1       eastern half of the United States.
 2   Q.  One of those field offices was the office
 3       outside of Philadelphia; is that right?
 4   A.  Correct.
 5   Q.  And John Ferrie's office was within your
 6       jurisdiction, the head of that office?
 7   A.  Yes.
 8               MR. POPEO:  Howard, if we pick up too
 9       much speed, would you mind if I just put on the
10       record that I have in front of me a notice of
11       Rule 30(b)(6) deposition which was served upon
12       us by Vesterra Limited Partnership, et al., and
13       I'll note for the record that this witness will
14       be John Hancock's corporate designee with
15       respect to Topic 1, Topic 3, and Topic 4 of that
16       notice.
17               MR. SCHER:  Let's just put it on the
18       record.  Let's mark this the next one, if you
19       don't mind.
20               MR. POPEO:  Let me also do a little
21       carve-out.  Topic 3 of the notice of deposition
22       applies to -- by its terms, to certain events
23       and practices which occurred before April 28,
24       2004.  This witness will speak to those
```

### VESTERRA - John Hancock

Page 8

```
 1          practices and events.  The notice also
 2          contemplates the witness will testify to that
 3          same topic subsequent to April 28th, 2004, and
 4          we will designate a separate witness for that
 5          portion of the testimony.
 6                  (Defendants' Notice of Rule 30(b)(6)
 7                  Videotape Deposition of Plaintiff John
 8                  Hancock Life Insurance Company was
 9                  marked Exhibit Number 2 for
10                  identification.)
11   Q.     I'll show you what I've had marked as Henderson
12          Exhibit Number 2, and that is the notice to
13          which your counsel just made reference, our
14          notice -- that is, Defendants' notice of a
15          30(b)(6) videotaped deposition.  We're not
16          videotaping, and it indicates that there are
17          multiple topics in that deposition notice.  If
18          you wouldn't mind just turning to Page 1 -- the
19          second page of the -- third page of the notice,
20          which is Exhibit A.  And Topic Number 1 is the
21          decision by John Hancock to accept the loan
22          application referenced in Paragraph 10 of the
23          complaint, including all of the factors,
24          requirements, and guidelines that were involved
```

Transcript of Henderson, David B. (Vol. 01) - 03/01/2006
Wednesday, March 29, 2006, 2:45:35 PM

## VESTERRA - John Hancock

Page 9

```
 1          in John Hancock's internal consideration of the

 2          loan application.

 3                  You've been designated by John Hancock

 4          Corporation as its corporate designee on that

 5          topic.  Are you aware of that?

 6    A.    I am.

 7    Q.    What have you done to prepare for your testimony

 8          on that topic?

 9    A.    Nothing in particular.

10    Q.    Nothing at all?

11    A.    My memory is pretty good.  I remember how we

12          processed loans, what the policies and

13          procedures were.

14    Q.    Okay.  The Loan Application is capitalized.  You

15          see that?

16    A.    I do.

17    Q.    That makes specific reference to Definition 2 in

18          Exhibit A, which is the loan application to John

19          Hancock Life Insurance Company for a first

20          mortgage loan, Application Number 6518467 by

21          applicant Montgomery Square Partnership, dated

22          July 30, 2004.  And you've been designated as

23          the corporate designee on that subject; is that

24          right?
```

Transcript of Henderson, David B. (Vol. 01) - 03/01/2006
Wednesday, March 29, 2006, 2:45:35 PM

**VESTERRA - John Hancock**

Page 10

```
 1   A.   Which paragraph is that again?  I'm sorry.

 2   Q.   You see the words "loan application" are

 3        capitalized in Topic 1?

 4   A.   Yes.

 5   Q.   And if you want to see what the definition of

 6        that capitalized term is, you'd look above, and

 7        you'd see the definition for Item 2 is loan

 8        application; and that refers to the specific

 9        loan application involved in this case.  Do you

10        understand that?

11   A.   I understand.  I do.

12   Q.   And is your testimony that you have done nothing

13        to prepare for your testimony as a 30(b)(6)

14        designee on that topic?

15             MR. POPEO:  Independent from any

16        meeting which he may have had with counsel prior

17        to the time he had to show up for this

18        deposition?

19             MR. SCHER:  I didn't ask you to

20        condition his testimony.  If you have an

21        objection, you can state an objection.

22   Q.   But please, I want to know what you've done for

23        your testifying as a 30(b)(6) designee on Topic

24        Number 1, and you said nothing other than
```

Transcript of Henderson, David B. (Vol. 01) - 03/01/2006
Wednesday, March 29, 2006, 2:45:35 PM

**VESTERRA - John Hancock**

Page 11

```
 1        relying on your memory.  Then I asked you what

 2        about with respect to this very loan

 3        application, are you relying on your memory as

 4        the 30(b)(6) designee.  That's all I want to

 5        know.

 6   A.   I met with my counsel this past Friday afternoon

 7        to talk briefly about this deposition today, but

 8        I did not do anything further than have a

 9        general conversation about what would transpire

10        today.

11   Q.   Okay.  In that general conversation, were

12        documents reviewed?

13   A.   They were.

14   Q.   What documents were reviewed in preparation for

15        your 30(b)(6) testimony?

16   A.   I briefly looked at the underwriting document,

17        the loan application, and I can't recall

18        specifically what the others were.

19   Q.   So you recall looking at the underwriting

20        document and the loan application or is that one

21        and the same?

22   A.   They're not the same.

23   Q.   Okay.  So the underwriting document and the loan

24        application?
```

Transcript of Henderson, David B. (Vol. 01) - 03/01/2006
Wednesday, March 29, 2006, 2:45:35 PM

### VESTERRA - John Hancock

Page 12

```
 1   A.   Correct.

 2   Q.   And it's your testimony you can't recall

 3        reviewing any other document, but there were

 4        other documents you reviewed?

 5   A.   There were.

 6   Q.   I'd like to know what you did to prepare for

 7        your testimony as a 30(b)(6) designee.  Have you

 8        reported to me all you can recall you've done as

 9        a 30(b)(6) designee on Topic Number 1?

10   A.   Correct.

11   Q.   Let's turn to Topic Number 3 on which you have

12        now been designated the corporate designee for

13        all but the last part of that designation, the

14        topic.  So the topic for which you have been

15        designated is the policies, guidelines,

16        requirements, targets, practices, processes or

17        methods that apply to the making of mortgage

18        loans by John Hancock and any differences in any

19        of the foregoing before April 28, 2004.

20             Now, your counsel has told me that

21        you're not going to report on the after

22        April 28, 2004.  So I'm not sure what you're

23        going to report on.  What have you done to

24        prepare for Topic 3?
```

Transcript of Henderson, David B. (Vol. 01) - 03/01/2006
Wednesday, March 29, 2006, 2:45:35 PM

## VESTERRA - John Hancock

Page 13

```
 1   A.   I've not done anything in particular other than
 2        have the conversation with my counsel on Friday
 3        afternoon.
 4   Q.   Okay.  What was the duration of that
 5        conversation?
 6   A.   It was, I want to say, 90 minutes approximately.
 7   Q.   Basically, you reviewed the deposition
 8        process --
 9   A.   Correct.
10   Q.   -- do I have that right?  And you reviewed more
11        than two documents?
12   A.   Correct.
13   Q.   Can you approximate?  Was it six documents or
14        600 documents?
15   A.   It was a binder full of documents that we
16        briefly went through.
17   Q.   About how much time was spent on reviewing those
18        documents?
19   A.   I don't recall.  Fifteen, twenty minutes.
20   Q.   Among those documents, were there any documents
21        relating to the policies, guidelines,
22        requirements, targets, practices, processes or
23        methods that applied to the making of mortgage
24        loans by John Hancock before April 28, 2004?
```

## VESTERRA - John Hancock

Page 14

```
 1   A.   I don't recall seeing any documents like that.
 2        However, I lived with those processes,
 3        procedures for seven years.  It was my
 4        responsibility for seven years.  I didn't feel a
 5        need to review them.
 6   Q.   Okay.  But to answer my question -- and I
 7        appreciate your helping me out on that.  To
 8        answer my question, you did not review any
 9        documents on Topic 3?  Instead, you're relying
10        on your memory of seven years of familiarity
11        with those processes, correct?
12             MR. POPEO:  Objection.
13        Mischaracterizes the answer, but you can answer
14        it again.
15   Q.   If I mischaracterized, please correct me.
16             MR. POPEO:  He testified he did not
17        recall if those documents were in the binder,
18        but you can answer.
19   A.   I don't recall whether the documents were in the
20        binder, but I'm comfortable relying on my
21        memory.
22   Q.   And what -- can you describe the policies,
23        guidelines, requirements, targets, practices,
24        processes or methods that applied to the making
```

Transcript of Henderson, David B. (Vol. 01) - 03/01/2006
Wednesday, March 29, 2006, 2:45:35 PM

**VESTERRA - John Hancock**

Page 15

```
 1          of mortgage loans by John Hancock?  Can you

 2          describe what those documents look like?

 3                    MR. POPEO:   Objection.

 4     A.   I can because there was a manual of guidelines

 5          that we all used day to day, and I referred to

 6          them often in my work at John Hancock over the

 7          course of seven years.

 8     Q.   This manual of guidelines, it was in a binder?

 9     A.   Yes, I kept mine in a binder.  I assume most

10          people did.

11     Q.   And it was revised from time to time?  Revised

12          and updated from time to time?

13     A.   Yes, it was.

14     Q.   So there'd be inserts added to it from time to

15          time; is that right?

16     A.   Yes.

17     Q.   And it was updated up to the time that ManuLife

18          acquired John Hancock?  Do I have that right?

19     A.   Yes.

20     Q.   And it was updated after ManuLife took over John

21          Hancock?  Do I have that right?

22     A.   I don't recall because when ManuLife took over,

23          the whole procedures changed, and I'm not sure

24          what happened to the guidelines after that date.
```

CONFIDENTIAL

### VESTERRA - John Hancock

Page 16

```
 1   Q.   Okay.  In the binder you reviewed on Friday
 2        afternoon, was the manual of guidelines
 3        included?
 4   A.   I don't recall seeing it.
 5   Q.   How thick is it -- was it as of April 28th,
 6        2004?
 7   A.   I want to say about an inch.
 8   Q.   And did that manual of guidelines influence the
 9        processing of the loan application in this case?
10             MR. POPEO:  Objection.
11   Q.   In other words, did the policies, guidelines,
12        requirements, targets, practices of John Hancock
13        which existed as of April 28, 2004 affect the
14        loan application in this case?
15             MR. POPEO:  Same objection.
16   A.   I have no specific recollection of the
17        processing of the application in this case.
18   Q.   So you can't answer one way or the other?
19   A.   Correct.
20   Q.   Do you recall what policies, guidelines,
21        requirements, targets, practices, processes or
22        methods did apply to this loan application in
23        this case?
24             MR. POPEO:  Same objection.
```

CONFIDENTIAL

## VESTERRA - John Hancock

Page 17

```
 1   A.   The guidelines as they existed in the binder

 2        that I've referred to applied generally to all

 3        of the loans that were underwritten and approved

 4        by John Hancock.

 5   Q.   So by that answer, I'm hearing you say that the

 6        manual of guidelines did apply to the loan

 7        application in this case?

 8   A.   Yes, they probably did, but, again, I have no

 9        specific recollection that they did.

10   Q.   Now, the fourth topic on which you've been

11        designated as the 30(b)(6) designee is described

12        as the manner, methods and/or process by which

13        John Hancock approved mortgage loans during the

14        period from January 1, 2000 through April 28,

15        2004.

16             What have you done to prepare for your

17        testimony as the 30(b)(6) designee?

18   A.   During my meeting with counsel on Friday

19        afternoon, we discussed this topic.

20   Q.   Did you review any documents to prepare for your

21        testimony on that subject?

22             MR. POPEO:  Objection.

23   A.   Again, I reviewed -- the only documents I

24        reviewed during that meeting were the documents
```

## VESTERRA - John Hancock

Page 18

```
 1          contained in the binder that we went through.
 2    Q.    And that binder was not a John Hancock binder?
 3          It was a binder assembled by counsel?  Do I have
 4          that right?
 5    A.    Correct.
 6    Q.    And was that binder organized in chronological
 7          order?
 8    A.    I don't recall.
 9    Q.    Did you look -- how thick was that binder?
10    A.    Several inches.  Three or four inches or more.
11    Q.    And it's from -- and it's that binder that you
12          used to prepare for your testimony as the
13          30(b)(6) designee on the three topics.  Am I
14          right about that?
15               MR. POPEO:  Objection.  You can answer
16          the question.
17    A.    That's the only written information I reviewed
18          to prepare for my testimony today.
19    Q.    You don't have any documents at home outside of
20          John Hancock that relate to the processing of
21          this application?  Am I right about that?
22    A.    Correct, you are right.
23               MR. SCHER:  Well, I think we'll
24          formalize this, but we certainly should
```

# Buchanan Ingersoll PC

ATTORNEYS

**Howard D. Scher**
215 665 3920
scherhd@bipc.com

1835 Market Street, 14th Floor
Philadelphia, PA 19103-2985

T 215 665 8700
F 215 665 8760
www.buchananingersoll.com

March 3, 2006

**VIA ELECTRONIC MAIL AND REGULAR MAIL**

Brian A. Davis, Esquire
Choate Hall & Stewart, LLP
Two International Place
Boston, MA 02110

> Re:    John Hancock Life Ins. Co. v. Vestmont Limited Partnership, et al.

Dear Brian:

I write to complain about John Hancock's latest disregard for the Federal Rules of Civil Procedure and my client's time and costs.

We served a Rule 30(b)(6) Notice of Deposition on John Hancock on February 1, 2006. John Hancock still has not identified a witness for nine of the 15 topics listed in that Notice. Nor has it scheduled a deposition for such witnesses, despite our repeated requests made to you and Paul Popeo of your office.

Last Friday evening, during a conference call to discuss other discovery issues, you informed me that David Henderson, a former John Hancock employee who was scheduled to testify concerning his factual knowledge of the case on March 1, 2006, would also be the designated corporate witness on three of the topics identified in our Rule 30(b)(6) Notice. You stated that Mr. Henderson would testify regarding topics 1, 3, and 4. As we had already scheduled Mr. Henderson's fact deposition, I also prepared for the deposition assuming that Mr. Henderson would be prepared to testify as the sole corporate representative and be knowledgeable about those issues.

However, Mr. Henderson was not prepared to testify on these matters. First, Mr. Popeo told me, after the deposition commenced, that Mr. Henderson was not the designee with regard to the entire time period concerning one of the topics but instead you would designate someone else for that portion of the topic at some later date. Second, Mr. Henderson testified that he did "nothing in particular" to prepare for his deposition. He testified that he was prepared last Friday, before our call, for about 90 minutes during which much of the time was spent simply reviewing deposition procedure. Mr. Henderson did not speak with any of John Hancock's current or former employees. Nor did he review any documents that contained facts specifically related to these three particular topics in Vesterra's Rule 30(b)(6) Notice. He had no recollection of many of the subjects in the designation and explained he had processed hundreds of loan and therefore could not remember anything about this particular loan. Mr. Henderson also testified

Brian A. Davis, Esquire
March 3, 2006
Page - 2 -

that he used an underwriting manual during his time at John Hancock. This manual has never been produced in this litigation. Nor was it shown to Mr. Henderson to prepare him for his deposition.

For example, Mr. Henderson was designated to testify regarding Topic No. 1 of the Rule 30(b)(6) Notice --

> The decision by John Hancock to accept the Loan Application, referenced in Paragraph 10 of the Complaint, including all of the factors, requirements and guidelines that were involved in John Hancock's internal consideration of the Loan Application.

In response to questions regarding this topic, Mr. Henderson, John Hancock's designated witness on this issues, testified as follows -- "I have no specific recollection of the processing of the application in this case." Thus, John Hancock was unable to testify through Mr. Henderson concerning its knowledge of the Loan Application at issue in this case or the policies and guidelines that John Hancock employed in making mortgage loans during the relevant time period.

Finally, as discussed above, at the beginning of the deposition, Mr. Popeo, for the first time, informed me that Mr. Henderson would be restricted to testifying about the pre-April 28, 2004 period. The deposition topic requests a person knowledgeable about "any differences in any of the foregoing [John Hancock policies and procedures] before April 28, 2004 and after April 28, 2004." I was not told that Mr. Henderson could not testify as to these "differences" until after the deposition began. However, since Mr. Henderson met with you or someone from your office last Friday, you knew that Mr. Henderson would not be able to testify about this period during our telephone conference later that day. You chose not to tell me about this distinction at that time. This is unacceptable and outrageous.

John Hancock had an obligation to ensure that Mr. Henderson was adequately prepared to discuss the topics at issue. *See In re Vitamins Antitrust Litigation*, 216 F.R.D. 168 (D.D.C. 2003); *United Sates v. Massachusetts Indus. Fin. Agency*, 162 F.R.D. 410, 412 (D. Mass. 1995). Monetary sanctions are mandatory under Rule 37(d) for failure to appear by means of failing to educate a Rule 30(b)(6) witnesses. *See Vitamins Antitrust Litig.*, 216 F.R.D. at 174 (citing cases).

John Hancock must provide a Rule 30(b)(6) witness who can testify regarding these topics. It has failed to do so. In addition, you informed me that it would have a corporate designee available on Wednesday, and then, at the last possible moment and without warning, improperly withdrew that designation. Finally, John Hancock did nothing to prepare this witness for his testimony. This was required by the Federal Rules of Civil Procedure.

Brian A. Davis, Esquire
March 3, 2006
Page - 3 -


I demand that John Hancock compensate Vesterra for my additional preparation time and travel time to depose another John Hancock witness.  Also, John Hancock should immediately produce the documents that it used to prepare Mr. Henderson for his deposition, including the underwriting manual.  Moreover, I demand that John Hancock produce any and all materials that it uses in the future to prepare its other 30(b)(6) witnesses going forward.

Finally, John Hancock must provide us with the names of the individuals and available dates for depositions for the remaining Rule 30(b)(6) Notice topics by the close of business today.  If we have not received them by that date, we will request a telephone conference with the judge immediately.

Very truly yours,

Howard D. Scher

HDS:clp
cc:    Brian J. McCormick, Jr., Esquire (via electronic mail)
       Robert D. Hillman, Esquire

## McCormick, Brian

**From:** Popeo, Paul [PPopeo@choate.com]
**Sent:** Wednesday, March 08, 2006 2:23 PM
**To:** McCormick, Brian
**Subject:** RE: John Hancock v. Vestmont Limited Partnership

Brian: Nectow will not testify as a corporate designee. Coyne will be the Hancock designee on topic #s 2, 5, 6, and will supplement the testimony already provided on topic # 3. Call if you have questions.

Also, by way of clarification, the final portion of topic #2 (last sentence) seeks a designee with respect to the "negotiation of the [terms and conditions of the Loan Application] between Defendants and John Hancock". You have already deposed Malik and Ferrie, the Hancock individuals who negotiated that document with the defendants. Please let me know if there are legitimate areas of inquiry on that subject on which you were not able to question those witnesses. If so, I am happy to speak with you and determine whether we can make another witness available - but I think you have already spoken with the most knowledgeable people.


Paul D. Popeo

C H O A T E

Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
t 617-248-4074
f 617-248-4000
ppopeo@choate.com
www.choate.com
-----Original Message-----
**From:** McCormick, Brian [mailto:mccormickbj@bipc.com]
**Sent:** Wednesday, March 08, 2006 1:47 PM
**To:** Davis, Brian; rhillman@dwboston.com; Popeo, Paul
**Subject:** John Hancock v. Vestmont Limited Partnership

Brian,

    Please see the attached letter and Amended Notice of Depositions.


**Brian J. McCormick, Jr.**
**Buchanan Ingersoll PC**
1835 Market Street, 14th Floor
Philadelphia, PA 19103

215-665-3957 (direct)
215-687-7965 (cell)
215-665-8760 (fax)
mccormickbj@bipc.com (e-mail)

TAX ADVICE DISCLAIMER: Any federal tax advice contained in this communication (including attachments) was not intended or written to be used, and it cannot be used, by you for the purpose of (1) avoiding any penalty that may be imposed by the Internal Revenue Service or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein. If you would like such advice, please contact us.

Above email is for intended recipient only and may be confidential and protected by attorney/client privilege.
If you are not the intended recipient, please advise the sender immediately.
Unauthorized use or distribution is prohibited and may be unlawful.

Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP.  The substance of this message, along with any attachments, may be confidential and legally privileged.  If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was not intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com

## VESTERRA - John Hancock

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2                DISTRICT OF MASSACHUSETTS
 3              CIVIL ACTION NO. 05-11614-WGY
 4         *********************************
 5    JOHN HANCOCK LIFE INSURANCE
 6    COMPANY,
 7                    Plaintiff/Counterclaim
 8                    Defendant
 9            Vs.
10    VESTMONT LIMITED PARTNERSHIP,
11    VESTMONT LIMITED PARTNERSHIP II,
12    VESTMONT LIMITED PARTNERSHIP III,
13    and VESTERRA CORPORATION d/b/a
14    MONTGOMERY SQUARE PARTNERSHIP,
15                    Defendants/Counterclaim
16                    Plaintiffs
17         *********************************
18                        VOLUME:  I
19                        PAGES:  1-130
20
21         DEPOSITION OF PATRICIA COYNE
22                MARCH 10, 2006
23                REPORTERS, INC.
           GENERAL & TECHNICAL COURT REPORTING
24      23 MERRYMOUNT ROAD, QUINCY, MA 02169
           617.786.7783/Facsimile 617.786.7723
```

**VESTERRA - John Hancock**

Page 2

```
 1          DEPOSITION of PATRICIA COYNE, a witness
 2          called on behalf of the Defendants/
 3          Counterclaim Plaintiffs, pursuant to the
 4          Federal Rules of Civil Procedure, before
 5          Judith McGovern Williams, Certified
 6          Shorthand Reporter, Registered
 7          Professional Reporter, Certified Realtime
 8          Reporter, Certified LiveNote Reporter, and
 9          Notary Public in and for the Commonwealth
10          of Massachusetts, at the offices of
11          Deutsch, Williams, Brooks, DeRensis &
12          Holland, P.C., 99 Summer Street, Boston,
13          Massachusetts, on Friday, March 10, 2006,
14          commencing at 9:15 a.m.
15
16          APPEARANCES:
17          CHOATE, HALL & STEWART, L.L.P.
18           Paul D. Popeo, Esquire
19           Two International Place
20           Boston, Massachusetts  02110
21           617-248-5000
22           ppopeo@choate.com
23           on behalf of the Plaintiff/
24           Counterclaim Defendant
```

### VESTERRA - John Hancock

Page 7

```
 1    A.    Investment officer.
 2    Q.    Was your position investment officer in
 3          the summer of 2004?
 4    A.    Yes.
 5    Q.    Have you had any changes in your duties
 6          and responsibilities since the summer of
 7          2004?
 8    A.    No.
 9    Q.    You are here pursuant to a deposition
10          notice.  Have you done anything to prepare
11          for this deposition, other than scheduling
12          your appearance here?
13    A.    No.
14    Q.    Have you reviewed any documents in
15          connection with your appearance here?
16    A.    No.
17    Q.    Are you -- you have been designated as a
18          30(b)(6) designee.  Are you aware of that?
19    A.    Yes.
20    Q.    And you have been designated as a 30(b)(6)
21          designee on three or three and a half
22          topics.  The first is topic number 2 in
23          the notice, and it reads, "The terms and
24          conditions contained in the loan
```

**VESTERRA - John Hancock**

Page 8

```
 1          application, including but not limited to
 2          any and all conditions that defendants
 3          were required to meet for disbursement of
 4          the loan."
 5                    Did you prepare for your
 6          testimony as the designee for that topic?
 7     A.   No.
 8     Q.   And the second topic is topic number 5,
 9          "the manner, method and/or process by
10          which John Hancock approved mortgage loans
11          during the period from April 28, 2004, to
12          the present."
13                    Have you done anything -- are
14          you aware that you were designated as the
15          30(b)(6) designee on that topic?
16     A.   Yes.
17     Q.   And have you done anything to prepare for
18          that?
19     A.   No.
20     Q.   And the third topic is "the requirements
21          and conditions that, following John
22          Hancock's acceptance of the loan
23          application, would have to have been met
24          by defendants in order for John Hancock to
```

**VESTERRA - John Hancock**

Page 9

```
 1        fund or disburse the loan applied for in
 2        the loan application."
 3                 Are you aware that you were
 4        designated as the 30(b)(6) designee on
 5        that topic?
 6   A.   Yes.
 7   Q.   And have you done anything to prepare for
 8        your testimony on that topic?
 9   A.   No.
10   Q.   Did you have occasion to meet with your
11        counsel in advance of this deposition,
12        other than walking over here?
13   A.   Yes.
14   Q.   What was the duration of that preparation?
15   A.   Oh, I don't remember.  Maybe a couple of
16        hours.
17   Q.   And what did you -- did you review
18        documents during the course of that?
19   A.   There were some documents there, but we
20        didn't really look at them.
21   Q.   So you didn't really look at them?
22   A.   Well, we didn't look at them.  Excuse me.
23   Q.   They were there, but you didn't look at
24        them?  Is that your testimony?
```

**VESTERRA - John Hancock**

```
 1   A.   Correct.

 2   Q.   Okay.  Was reference made to those

 3        documents at all?

 4   A.   Yes.

 5   Q.   By whom?

 6   A.   Paul.

 7             (The witness pointing to

 8        Mr. Popeo.)

 9   Q.   Did you say you did not look at those

10        documents?  Is that right?

11   A.   No.  They were in front of him.

12   Q.   All right.  Do you have any recollection

13        of the loan application associated with

14        this case?

15   A.   No.

16   Q.   The application to John Hancock Life

17        Insurance Company for a first mortgage

18        loan, it was made in the summer of 2004.

19        The application was dated July 30, 2004.

20        Do you have any recollection of that at

21        all?

22   A.   No.

23   Q.   Do you have any recollection of your

24        involvement in the processing of the
```

### VESTERRA - John Hancock

Page 38

```
 1   Q.   Okay.

 2   A.   I don't know if you could say somebody

 3        replaced somebody else or they just did a

 4        reorg.

 5   Q.   When did that reorganization occur?

 6   A.   You know what?  I don't remember.

 7   Q.   Was it in 2005?

 8   A.   It might have been.  I can't remember when

 9        Barry left.  How bad is that?  I don't

10        remember.

11   Q.   Earlier I reviewed the topics for which

12        you had been designated as the 30(b)(6)

13        designee.  There is a piece of topic

14        number 3 for which you have been

15        designated, and that is "the policies,

16        guidelines, requirements, targets,

17        practices, processes or methods that apply

18        to the making of mortgage loans by John

19        Hancock and any differences in any of the

20        foregoing before and after April 28,

21        2004," and you have been designated for

22        the period after April 28, 2004.

23              Are you aware that you have been

24        designated as the 30(b)(6) designee on
```

## VESTERRA - John Hancock

Page 39

```
 1          that topic?

 2     A.   Yes.

 3     Q.   And what, if anything, have you done to

 4          prepare for your testimony on that topic?

 5     A.   I haven't done anything.

 6     Q.   And can you report to me what, if any,

 7          differences there are in the policies,

 8          guidelines, requirements, targets,

 9          practices, processes or methods that apply

10          to the making of mortgage loans by John

11          Hancock?

12     A.   Any differences from the Manulife?

13     Q.   From the prior.

14     A.   From the previous underwriting?

15     Q.   Yes, yes.

16     A.   I can't recall any differences.

17     Q.   Okay.

18               MR. SCHER:  Mark this.

19               (Multipage documents, headed

20                John Hancock Life Insurance

21                Company, Investment

22                Number 6518467, JH 01128

23                through 01148 marked exhibit

24                number 1 for identification.)
```

# Buchanan Ingersoll PC

ATTORNEYS

**Howard D. Scher**
215 665 3920
scherhd@bipc.com

1835 Market Street, 14th Floor
Philadelphia, PA  19103-2985

T  215 665 8700
F  215 665 8760
www.buchananingersoll.com

March 10, 2006

## VIA ELECTRONIC MAIL AND REGULAR MAIL

Brian A. Davis, Esquire
Paul D. Popeo, Esquire
Choate Hall & Stewart, LLP
Two International Place
Boston, MA 02110

      Re:    <u>John Hancock Life Ins. Co. v. Vestmont Limited Partnership, et al.</u>

Gentlemen:

      This letter constitutes Defendants' request for a discovery conference pursuant to Local Rule 37.1 and is to advise you that, if that conference fails to resolve John Hancock's ongoing failure to comply with the requirements of Fed.R.Civ.P. 30(b)(6), Defendants intend to seek immediate, emergency relief from the Court.

      The background is familiar to you. As set forth in my letter to Mr. Davis dated March 3, 2006, David Henderson was produced as John Hancock's designee for topics 1, 3 and 4 of Defendants' Rule 30(b)(6) Notice of Deposition. At the outset of the deposition, I was advised that Mr. Henderson's Rule 30(b)(6) testimony would be limited as to timeframe. That limitation ultimately did not matter, as Mr. Henderson was unprepared to testify as a Rule 30(b)(6) witness at all, and freely admitted that he had taken no meaningful steps to prepare as a 30(b)(6) witness or to conduct the required investigation.

      John Hancock's failure to comply, or even attempt to comply, with Rule 30(b)(6) with respect to Mr. Henderson resulted in my March 3, 2006 letter to you pointing out these deficiencies, demanding that John Hancock produce a witness prepared to testify as required by Rule 30(b)(6), and expressing the Defendants' right to sanctions for this failure to comply with the Rule.

      This morning, John Hancock produced Patricia Coyne as a witness. Mr. Popeo's e-mail of March 8, 2006 designated Ms. Coyne as "the Hancock designee on topic #s 2, 5 and 6 and will supplement the testimony already provided on topic #3."

      In the first moments of her deposition, Ms. Coyne testified that she had taken no steps to prepare her Rule 30(b)(6) testimony. She did not speak with any other John Hancock employee regarding the topics for which she was designated. Also, she testified that she did not review any documents in preparation for her deposition. To my considerable surprise, she testified that, during her preparation at your office, she was in the presence of documents relating to the case, but was not shown any of the documents.

Brian A. Davis, Esquire
Paul D. Popeo, Esquire
March 10, 2006
Page 2


Under any circumstances, John Hancock's repeated refusals to comply with Rule 30(b)(6) would be unacceptable and sanctionable violations of the Rules of Civil Procedure. Under the circumstances of this case -- with a motion for summary judgment pending and a trial scheduled on an expedited basis -- these failures defy any explanation or excuse.

Defendants intend to bring this matter to the immediate attention of the Court.  In accordance with Local Rule 37.1, we hereby offer to engage in the conference required by that Local Rule not later than the end of business on Monday, March 13, 2006.  Unless all of the issues raised by this letter are adequately addressed, Defendants will file a motion to compel and for sanctions seeking an expedited hearing on March 16, 2006.

In order to provide the possibility that the conference we have requested can be productive, we will expect John Hancock to address the following:

- to provide one or more witnesses, fully prepared to testify as to the topics contained in the Defendants' Rule 30(b)(6) Notice of Deposition dated February 1, 2006, on a date convenient to Defendants not later than March 20, 2006;

- to agree to pay all costs, including attorneys' fees, associated with returning to Boston to take these additional depositions; and

- to provide copies of all documents used in the preparation of these witnesses prior to the depositions.

Very truly yours,

Howard D. Scher


HDS:clp
cc:    Brian J. McCormick, Jr., Esquire
       Robert D. Hillman, Esquire (via electronic mail)

## McCormick, Brian

**From:** Popeo, Paul [PPopeo@choate.com]
**Sent:** Tuesday, March 07, 2006 12:16 PM
**To:** McCormick, Brian; Scher, Howard
**Cc:** rhillman@dwboston.com; Davis, Brian

Howard and Brian:

We can make a witness (Joan Uzdavinis) available starting at 11:00 on the 9th if that is attractive to you. She will be the corporate designee on topic #s 10, 11, 12, 13, 14 and 15 of your 30(b)(6) notice.

If the 9th does not work for you, she has availability the week of the 13th - but we need to move quickly to take advantage of that availability.  Please let me know your preference as soon as possible today.

Thanks,


Paul D. Popeo

C H O A T E

Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
t 617-248-4074
f 617-248-4000
ppopeo@choate.com
www.choate.com

---

Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP.  The substance of this message, along with any attachments, may be confidential and legally privileged.  If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was not intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com

Transcript of Uzdavinis, Joan M. (Vol. 01) · 03/21/2006
Wednesday, March 29, 2006, 10:04:51 AM

**VESTERRA - John Hancock**

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2                DISTRICT OF MASSACHUSETTS

 3              CIVIL ACTION NO. 05-11614-WGY

 4         **********************************

 5    JOHN HANCOCK LIFE INSURANCE

 6    COMPANY,

 7                    Plaintiff/Counterclaim

 8                    Defendant

 9         Vs.

10    VESTMONT LIMITED PARTNERSHIP,

11    VESTMONT LIMITED PARTNERSHIP II,

12    VESTMONT LIMITED PARTNERSHIP III,

13    and VESTERRA CORPORATION d/b/a

14    MONTGOMERY SQUARE PARTNERSHIP,

15                    Defendants/Counterclaim

16                    Plaintiffs

17         **********************************

18                         VOLUME:   I

19                         PAGES:  1-143

20

21      DEPOSITION OF JOAN M. UZDAVINIS

22            MARCH 21, 2006

23            REPORTERS, INC.

        GENERAL & TECHNICAL COURT REPORTING

24    23 MERRYMOUNT ROAD, QUINCY, MA 02169

        617.786.7783/Facsimile 617.786.7723
```

**VESTERRA - John Hancock**

Page 2

```
 1        DEPOSITION of JOAN M. UZDAVINIS, a witness
 2        called on behalf of the Defendants/
 3        Counterclaim Plaintiffs, pursuant to the
 4        Federal Rules of Civil Procedure, before
 5        Judith McGovern Williams, Certified
 6        Shorthand Reporter, Registered
 7        Professional Reporter, Certified Realtime
 8        Reporter, Certified LiveNote Reporter, and
 9        Notary Public in and for the Commonwealth
10        of Massachusetts, at the offices of
11        Deutsch, Williams, Brooks, DeRensis &
12        Holland, P.C., 99 Summer Street, Boston,
13        Massachusetts, on Tuesday, March 21, 2006,
14        commencing at 2:17 p.m.
15
16        APPEARANCES:
17        CHOATE, HALL & STEWART, L.L.P.
18         Paul D. Popeo, Esquire
19         Two International Place
20         Boston, Massachusetts  02110
21         617-248-5000
22         ppopeo@choate.com
23         on behalf of the Plaintiff/
24         Counterclaim Defendant
```

Transcript of Uzdavinis, Joan M. (Vol. 01) - 03/21/2006
Wednesday, March 29, 2006, 10:04:51 AM

## VESTERRA - John Hancock

Page 9

```
 1          you don't understand one of my questions

 2          or don't understand something about it,

 3          you are perfectly welcome to ask me to

 4          clarify it, to restate it.  Is that

 5          agreeable?

 6    A.    Yes, it is.

 7    Q.    If during the course of the deposition you

 8          need to take a break or choose to take a

 9          break, I would ask you -- you certainly

10          are entitled to.  Just indicate that to me

11          somehow.  I just ask that if there is a

12          question pending, that you answer the

13          question, and then break.  Will you agree

14          to that?

15    A.    I will.

16    Q.    What have you done to prepare for today's

17          deposition?

18    A.    I have met with Mr. Popeo so I could know

19          what to expect today, and other than that,

20          my normal course of business.

21    Q.    Okay.  Did you do anything in particular

22          to prepare as a 30(b)(6) witness for John

23          Hancock in this case?

24                    MR. POPEO:  Objection.
```

**VESTERRA - John Hancock**

Page 10

```
 1                     You may answer.
 2              MR. SCHER:   What is the basis?
 3              MR. POPEO:   Vague.
 4                     You may answer the question.
 5       BY MR. SCHER:
 6    Q.   Did you do anything in particular to
 7         prepare for your testimony as John
 8         Hancock's 30(b)(6) designee?
 9    A.   The only thing I did is be certain that I
10         knew what it was I was a designee for and
11         I was the proper person to have access to
12         any information.
13    Q.   And did you access information in
14         connection with your preparation for this
15         deposition today?
16    A.   The only stuff that I looked at was
17         related to my regular business work.   It
18         was similar matters to my day-to-day
19         activities.
20    Q.   And what are those?  What are they, the
21         matters that are similar to the things
22         that you do day to day?
23    A.   I am in the -- in charge of the portfolio
24         management group, and we look at cash
```

## VESTERRA - John Hancock

Page 11

```
 1        balances, the allocation of commitments,
 2        and the general status of the general
 3        funds of the U. S. mortgages.
 4    Q.  Did you look at the cash balances,
 5        allocation of commitments, and the general
 6        status of the general funds of the U. S.
 7        mortgages to prepare for this deposition?
 8    A.  No, I did not.
 9    Q.  Did you look at any historical data, for
10        example, historical meaning from 2005,
11        August or -- August 2004 --
12                  MR. POPEO:  Objection.
13    Q.  -- to prepare for this deposition?
14                  MR. POPEO:  Objection.
15                  You may answer the question.
16    A.  Not in preparation of this deposition.  I
17        look at that as a matter of my regular
18        course of business.
19    Q.  Okay.
20                  MR. SCHER:  Let's mark this as
21        Uzdavinis exhibit number 1.
22                  (Defendants' Notice of
23                  Rule 30(b)(6) Videotape
24                  Deposition of Plaintiff John
```

Transcript of Uzdavinis, Joan M. (Vol. 01) - 03/21/2006
Wednesday, March 29, 2006, 10:04:51 AM

**VESTERRA - John Hancock**

Page 12

```
 1                   Hancock Life Insurance Company
 2                   marked exhibit number 1 for
 3                   identification.)
 4        BY MR. SCHER:
 5    Q.  I will show you what I have had marked as
 6        exhibit number 1.
 7                   (Handing exhibit number 1 to the
 8        witness.)
 9    Q.  This is a document filed in this case.  It
10        is entitled Defendants' Notice of
11        Rule 30(b)(6) Videotape Deposition, and
12        attached to it is an exhibit A, and listed
13        on exhibit A are 15 topics.  Have you
14        reviewed all or a part of this exhibit in
15        preparation for this deposition?
16    A.  I reviewed the last --
17    Q.  From 10 on?
18    A.  Yes.  From 10 on as a part of this.
19    Q.  Okay.  And you understand that you have
20        been designated as the corporate
21        representative on those topics 10 through
22        15?
23    A.  Yes, I do.
24    Q.  Okay.  Have you done anything to prepare
```

## VESTERRA - John Hancock

Page 13

```
 1          for your testimony as the corporate

 2          designee on topics 10 through 15 other

 3          than your normal day-to-day activities?

 4     A.   Nothing outside of my normal day-to-day

 5          activities.

 6     Q.   With respect to item number 10, "The

 7          losses allegedly suffered by John Hancock

 8          as a result of the failure of the Loan to

 9          close, as referenced in Paragraph 16 of

10          the Complaint, including:  the basis,

11          policy and practice relating to decisions

12          whether to invest funds in mortgage loans

13          or other investment vehicles; the

14          projected return on all investments by

15          John Hancock over the ten years beginning

16          on August 1, 2005; and the actual return

17          on all investments by John Hancock for the

18          10 year period ending August 1, 2005,"

19          have you done anything to prepare to

20          testify with respect to that?

21     A.   I attempted to find whatever data I could

22          with respect to projections.

23     Q.   And could you explain to me what you mean

24          by projections?
```

### VESTERRA - John Hancock

Page 42

```
 1            take-down date, moving it forward, any
 2            status change, as I would refer to it,
 3            gets reported --
 4    Q.    All right.
 5    A.    -- since people must begin to plan
 6            financially for that.
 7    Q.    So that implicit in your answer was that
 8            is how the report to the lines of business
 9            occurs; right?
10    A.    That is correct.
11    Q.    Do you know whether in fact the lines of
12            business were notified that the loan would
13            not be taken down?
14    A.    Sitting here right now, I do not.  I would
15            have to go back and look that up.
16    Q.    You have no information on that subject?
17    A.    Not at my fingertips, no.
18    Q.    Okay.  You did not prepare to report to me
19            on that subject?
20    A.    That is correct.
21    Q.    Similarly, do you know whether John
22            Hancock notified any of the governmental
23            agencies or trade associations, I'm not
24            sure what those agencies were, with
```

## VESTERRA - John Hancock

Page 43

```
 1          respect to the elimination of the take

 2          down of that loan?

 3   A.     Without looking at the report, I couldn't

 4          tell you, but I can tell you the

 5          directions that are provided to us.  It is

 6          report on commitments, the understanding

 7          is that all commitments will close.  We do

 8          not include loans until they have been

 9          fully committed to.

10   Q.     Okay.

11   A.     So the directions make no allowance for a

12          deal that does not fund.

13   Q.     And so that loan, the $32 million -- the

14          report of the commitment with respect to

15          the $32 million will remain unchanged

16          until the expiration of the 10-year

17          duration of the loan; is that right?

18                  MR. POPEO:   Objection.

19   A.     The reports that we make externally to

20          groups like the ACLI are exclusively on a

21          commitment basis.  We report to them once

22          and only once when the commitment is made.

23   Q.     You don't report when the loan has been

24          paid off?
```

### VESTERRA - John Hancock

Page 44

```
 1   A.   That is correct.
 2   Q.   So the only reporting of the non-take down
 3        of the loan would have been made to lines
 4        of businesses, and you can't tell me
 5        whether any such reports were made?
 6              MR. POPEO:  Objection.
 7              You can answer.
 8   A.   It would have been made to both lines of
 9        businesses as well as our asset liability
10        management area, but I cannot tell you as
11        to whether or not those reports were made.
12        You are correct.
13   Q.   Would it also be made to the duration
14        tracking system?
15   A.   That is the asset liability management
16        area.
17   Q.   All right.
18   A.   They run the duration tracking system.
19   Q.   Sorry.
20   A.   That's okay.
21   Q.   You forgive me for not knowing that.
22              What is the form of notification
23        to the lines of businesses and the
24        duration tracking system?  E-mail?  Or --
```