UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> VESTMONT LIMITED PARTNERSHIP, VESTMONT LIMITED PARTNERSHIP II, VESTMONT LIMITED PARTNERSHIP III, and VESTERRA CORPORATION d/b/a MONTGOMERY SQUARE PARTNERSHIP, <br><br> Defendants and Counterclaim Plaintiffs. | CIVIL ACTION NO. 05-11614-WGY |

## JOINT PRE-TRIAL CONFERENCE MEMORANDUM

Plaintiff John Hancock Life Insurance Company ("John Hancock" or "Hancock") and defendants Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited Partnership III, and Vesterra Corporation d/b/a Montgomery Square Partnership (collectively, "Montgomery Partners", "Vesterra" or "Defendants"), hereby submit this Joint Pre-Trial Conference Memorandum pursuant to the Court's March 17, 2006, Procedural Order and in advance of the final pre-trial conference scheduled for March 30, 2006, commencing at 2:00 p.m.

A.    **Summary Of Evidence To Be Offered**

    1.    **Plaintiff's Concise Summary of Evidence**

This is a breach of contract action in which John Hancock seeks to enforce the unambiguous terms of a binding $32 million loan commitment that Hancock and defendants negotiated and entered into in the summer of 2004 (the "Loan Commitment").

Under the Loan Commitment, Hancock agreed, subject to various standard and negotiated conditions, to provide Montgomery Partners with $32 million in permanent financing on a 256 unit apartment complex in North Wales, Pennsylvania (the "Avenel Apartments") at any time over the ensuing twelve months at a "locked" interest rate of 6.18% per annum. Montgomery Partners expressly agreed, in return, to *either* actually "borrow the Principal Amount" set forth in the Loan Commitment from John Hancock on or before August 1, 2005, *or* to pay "all ... damages, losses, costs and expenses suffered or incurred by John Hancock" as a result of their failure to close the loan.

Notwithstanding the clear terms of the Loan Commitment, Montgomery Partners admittedly made no effort to "borrow the Principal Amount" from John Hancock on or before the scheduled closing date of August 1, 2005. Rather, Montgomery Partners elected to take advantage of the strong demand for apartment properties in the Pennsylvania area to enlist a buyer for the Avenel Apartments project. Beginning in May of 2005, Montgomery Partners began the process of soliciting private bids on the Avenel Apartments from interested buyers. Montgomery Partners ultimately agreed to sell the project to an entity controlled by JP Morgan Chase Bank for $59,250,000. Montgomery Partners' anticipated gain on the sale of the Avenel Apartments is approximately $28 million.

Due to a significant drop in interest rates between execution of the Loan Commitment and the time of Montgomery Partners' default, John Hancock's current total economic losses on this failed transaction (not including attorney's fees) are estimated to be approximately $4,700,000. John Hancock seeks compensation for its losses, as well as its reasonable attorney's fees and costs.

## 2.    Defendants' Concise Summary of Evidence

This lawsuit concerns a mortgage loan application (the "Loan Application") submitted by Defendants/Counterclaim Plaintiffs (collectively, "Defendants" or "Vesterra") to Plaintiff John Hancock Life Insurance Company ("John Hancock"). The Loan was never made. Vesterra will show that after negotiating the Loan Application, which contained certain terms and conditions and included Vesterra's own financial projections, John Hancock, without disclosure to Vesterra, changed the terms and conditions and modified the borrower's financial projections.

John Hancock's own documents, and the testimony of its witnesses, demonstrate that, without informing Vesterra, John Hancock only approved the Loan Application after adding another <u>requirement</u> for <u>disbursement</u> of the mortgage loan -- a requirement which Vesterra's own figures showed that it was unlikely to meet. John Hancock did not inform Vesterra of this additional requirement after being told by its local field representative that it was a "deal killer," and after realizing that killing the deal at that point would result in a hedge loss of $355,000 and the return of $960,000 in fees to Vesterra.

Nonetheless, John Hancock proceeded to add this new requirement – referred to as the 10% Constant requirement – for the sizing and disbursement of the loan, and modified the related financial projections, because this was required by John Hancock's new head of

mortgage operations in the United States. Testimony from both John Hancock and Vesterra witnesses will confirm that John Hancock never told Vesterra about the new requirement and modified financial projections. In fact, Vesterra did not learn about the additional requirement until discovery in this litigation commenced.

Because of this added disbursement requirement, which Vesterra's figures showed that it would not meet, John Hancock was not ready, willing, and able to perform under the conditions contained in the Loan Application. Accordingly, John Hancock cannot sue Vesterra for breach of the Loan Application. Further, Vesterra relied on John Hancock's failure to disclose the added 10% Constant requirement, and the manipulated financial projections, in not seeking to rescind any agreement and in not obtaining alternate financing from a lender that would not impose such an unacceptable condition for disbursement of the Loan.

In addition, Vesterra will prove that there was no "meeting of the minds" on the essential terms of the agreement between the parties.[1] Vesterra possesses ample evidence to show the existence of and materiality of the difference in John Hancock's "state of mind" when it appeared to accept Vesterra's offer. This evidence includes admissions by John Hancock employees and the refusal to produce, on attorney-client privilege grounds, an amended Loan Application which was prepared by John Hancock but never submitted to Vesterra (which the Court may presume, and the jury may infer, would have been submitted to Vesterra's to seek its agreement to this new condition and the modified financial projections).

Vesterra will also introduce both fact and expert testimony respecting the damages for

---

[1] Although the Court has ruled that a contract was formed, Vesterra intends to introduce evidence, including expert testimony, that will show that the John Hancock adopted the 10% Constant as a requirement for disbursement of the loan before it "accepted" the Loan Application, and will then respectfully request reconsideration of the Court's ruling on this issue.

failure to close the Loan that were contemplated by the parties when they signed the Loan Application. Certain conditions of the Loan Application were carefully drafted by John Hancock to expressly provide, in great detail, that **after the loan was closed**, the borrower would be required to pay to the lender the yield expected over the life of the loan, even if the borrower were to seek to repay it prior to its expiration. Vesterra will present evidence that those who are experienced in negotiating the terms and conditions of commercial mortgages such as this would expect any substantial deal term to be explicitly set forth in this manner. However, a plain reading of the Loan Application shows that <u>no</u> express provision for such a measure of damages is set forth for the eventuality present in this case -- where **the Loan never closed**. Instead, John Hancock specified in the Loan Application that it would be entitled to retain the fees paid, in this case $960,000, and any damages or "Costs" as defined in the Loan Application. There is no question that the Loan Application does not make any mention of "yield maintenance" for a loan which was never made.

Vesterra will also show that, due to circumstances beyond its control, the apartments never reached the required <u>minimum</u> occupancy required in the Loan Application for John Hancock to disburse any portion of the loan. There was no legal obligation on Vesterra to seek to close the Loan in such circumstances. Consequently, in the spring of 2005 Vesterra sought out other options, including sale of the property, and promptly informed John Hancock. When John Hancock learned of this, it decided to seek to share in the appreciation in the value of the property, notwithstanding the absence of any right to do so.

John Hancock has presented no evidence of any actual losses due to failure of the loan to close. Vesterra will present evidence that if there were any such losses, they amount to very little, and further that John Hancock has failed to mitigate any such damages.

**B.    Agreed-Upon Facts**

The Parties have agreed upon and stipulate to the following facts:

1.    Plaintiff John Hancock Life Insurance Company ("John Hancock") is an insurance company existing under the laws of the Commonwealth of Massachusetts with its principal place of business in Boston, Massachusetts. John Hancock provides a broad array of insurance and investment products to individual and institutional customers, primarily in North America.

2.    John Hancock's Real Estate Investment Group provides commercial mortgage loans on properties, including large residential apartment complexes.

3.    John Hancock was acquired by Manulife Financial Corporation of Canada ("Manulife") on April 28, 2004.

4.    Vesterra Corporation is a corporation existing under the laws of the Commonwealth of Pennsylvania, and Vestmont Limited Partnership, Vestmont Limited Partnership II and Vestmont Limited Partnership III are limited partnerships existing under the laws of the Commonwealth of Pennsylvania. Each is a general partner in Montgomery Square Partnership ("Montgomery Square").

5.    Montgomery Square was formed for the purpose of developing a tract of land containing approximately 180 acres located in the suburban Philadelphia area. This development eventually included a retail shopping center and a 256-unit residential apartment complex known as "Avenel at Montgomery Square" (the "Avenel Apartments").

6.    Montgomery Square's three principals -- James R. Koller, Joseph P. Kelly and Frank C. Palopoli -- all are experienced and sophisticated real estate developers.

7.    Mr. Koller is a licensed attorney and a former partner in the real estate department of the international law firm of Dechert, Price & Rhoads (now "Dechert").

8.    Mr. Palopoli is a real estate consultant with more than twenty-five years of experience.

9.    Joseph Kelly is an experienced accountant who formerly was a CPA.

10.    Together, Messrs. Koller, Kelly and Palopoli have developed more than 1,500,000 square feet of commercial properties in the Pennsylvania area since 1986.

11.    Montgomery Square Partnership is the owner and developer of the Avenel Apartments. Construction of the Avenel Apartments commenced in 2003 and originally was scheduled to be completed in March 2005.

12.    In the summer of 2004, Montgomery Square sought a forward commitment for a permanent mortgage loan of $32 million in order to lock in a favorable interest rate and to repay its existing construction loan of more than $30 million and related costs.

13.    In June 2004, John Hancock's regional manager in Pennsylvania, John Ferrie, notified John Hancock's home office of a potential loan opportunity in Montgomery County, Pennsylvania.

14.    John Hancock and Montgomery Square thereafter negotiated the terms of a document that, in its final form, is entitled "Application to John Hancock Life Insurance Company for a First Mortgage Loan" (the "Loan Application/Commitment").

15.    The negotiations leading to the execution of the Loan Application/Commitment by Montgomery Square took place exclusively in Pennsylvania.

16.     James R. Koller, on behalf of Montgomery Square Partnership, signed the Loan Application/Commitment on July 30, 2004 in Pennsylvania, and submitted it to John Hancock's representative in Pennsylvania.

17.     Pursuant to the Loan Application/Commitment, Montgomery Square obtained an interest rate lock for one year at 6.18% on August 2, 2004.

18.     Montgomery Square paid certain fees to John Hancock as specified in the Loan Application/Commitment.

19.     Montgomery Square paid a "Processing Fee" by delivering a check in the amount of $5,000 to John Hancock's representative in Pennsylvania.

20.     In August 2004, Montgomery Square paid an "Application Fee" by obtaining an irrevocable transferable Letter of Credit payable to John Hancock in the amount of $640,000 and delivering it to John Hancock's representative in Pennsylvania.

21.     In August 2004, Montgomery Square paid a "Commitment Fee" by obtaining an irrevocable transferable Letter of Credit payable to John Hancock in the amount of $320,000 and delivering it to John Hancock's representative in Pennsylvania.

22.     Once the Loan Application/Commitment was signed by Montgomery Square and the $5,000 fee paid, John Hancock's internal approval process began.

23.     Once the Loan Application/Commitment was negotiated and signed by Montgomery Square, the following occurred: (1) an interest rate was "locked in" for the proposed loan; (2) a loan approval package containing, among other things, a description of the proposed loan terms and information regarding the Avenel Apartments, was circulated to designated Hancock officers for their review; and (3) John Hancock "allocated" the $32 million for the Loan to various lines of business.

24.    During the loan application process, various internal underwriting guidelines typically are used by lenders such as John Hancock to assess the borrower's ability to repay, and the lender's risk in making, a particular loan.

25.    Ivor Thomas, formerly a Manulife employee, became the head of John Hancock's mortgage operations in the United States after it merged with Manulife.

26.    Mr. Malik reduced the estimated expenses by $140,000 and the reserves by $26,500 (from $250 per unit to $150 per unit).

27.    On August 17, 2004, Patricia Coyne of John Hancock sent a Memorandum to Mr. Malik, with a copy to John Hancock's closing department.

28.    On    August    17,    2004,    Mr.    Malik    countersigned    the    Loan Application/Commitment on behalf of John Hancock.

29.    The Loan Application/Commitment executed by the parties does not contain a "10% Constant" requirement.

30.    The anticipated cash flow or income for the Avenel Apartments was to be derived primarily from the leasing of apartments.

31.    Before February 2005, Bozzuto Management Company ("Bozzuto") managed the Avenel Apartments project.

32.    In February 2005, Koller Kelly, LLC ("Koller Kelly") began to provide management services for Avenel.

33.    John Hancock commenced this action for damages in August 2005.

34.    John Hancock collected and retains the $965,000 in fees paid by Montgomery Square under the Loan Application/Commitment.

C.    **Contested Issues of Fact**

    1.    **Plaintiff believes the contested issues of fact are as follows:**

        i.    Whether John Hancock was "ready, willing and able" to close the Loan in accordance with the terms of the Loan Commitment on or before August 1, 2005.

        ii.    Whether John Hancock's internal use of the 10% Constant underwriting changed the terms of the Loan Commitment.

        iii.    Whether John Hancock's internal use of the 10% Constant underwriting guideline was fraudulent.

        iv.    Whether the Defendants actually relied in any way upon John Hancock's internal use or non-use of the 10% Constant underwriting guideline.

        v.    The amount of "damages, losses, costs and expenses suffered or incurred by John Hancock" as a result of the Defendants' failure to close the Loan in accordance with the terms of the Loan Commitment on or before August 1, 2005.

        vi.    Whether any of the Defendants' Affirmative Defenses preclude John Hancock's relief, in whole or in part.

    2.    **Defendants believe the contested issues of fact to be as follows:**

        i.    Whether John Hancock was "ready, willing and able" to close the Loan in accordance with the terms of the Loan Application.

        ii.    Whether the 10% Constant "disbursement requirement" continued to be a requirement for disbursement of the Loan after John Hancock's August, 2004 "approval" of the Loan.

        iii.    Whether John Hancock breached any agreement based on the Application when it added a disbursement requirement to those in the Loan Application/Commitment and manipulated the financial projections submitted by Defendants and made a part of the Loan Application/Commitment.

        iv.    Whether John Hancock's decision not to disclose the 10% Constant disbursement requirement and the manipulated financial projections was based on John Hancock's awareness that such disclosure would have caused Vesterra to cancel or rescind the Loan Application.

v.    Whether Vesterra reasonably relied on this non-disclosure in not revoking the Loan Application before John Hancock "approved" it and in not canceling or rescinding after John Hancock "approved" it.

vi.    Whether and to what degree Vesterra was injured as a result of such reliance.

vii.    Whether John Hancock's actions were such as to demonstrate intentional, willful, wanton or reckless conduct, thereby allowing the award of punitive damages.

viii.    If there was a breach by Vesterra, what losses were contemplated by the parties at the time they entered into the Loan Application for which Defendants could be liable for failure to close the Loan, as opposed to remedies for prepayment of or default on the Loan after it was disbursed.

ix.    If there was a breach by Vesterra, whether John Hancock incurred any damages recoverable under the Loan Application when the Loan failed to close.

x.    Whether John Hancock mitigated any such losses, and the degree to which John Hancock could have reasonably mitigated any such losses.

xi.    Whether any of the Defendants' Affirmative Defenses and Counterclaims preclude John Hancock's relief, in whole or in part.

xii.    Whether there was a meeting of the minds on the terms and conditions of the Loan Application for disbursement of the Loan.    (Defendants recognize that the Court has ruled that a contract was formed, but will respectfully request reconsideration of that ruling upon consideration of the complete evidentiary record at trial.)

**D.    Jurisdictional Questions**

The Parties are not aware of any jurisdictional questions.

**E.    Questions Raised By Pending Motions**

There is one motion currently pending before the Court -- Defendants' Motion to Compel Plaintiff John Hancock Life Insurance Company to Comply with Defendants' Rule 30(b)(6) Deposition Notice, filed on March 29, 2006.

**F.   Issues of Law**

1.   **Plaintiff believes the issues of law are as follows:**

i.   Whether John Hancock's internal use of the 10% Constant underwriting guideline changed the terms of the Loan Commitment.

ii.   Whether John Hancock's conduct in approving and preparing to close the Loan was "unfair and deceptive" such as to constitute a violation of M.G.L. c. 93A.

iii.   Whether John Hancock's conduct in approving and preparing to close the Loan was fraudulent under Pennsylvania law.

iv.   Whether the Agreement and John Hancock's conduct in Massachusetts is governed by Pennsylvania law.

v.   Whether the transaction contemplated in the Loan Commitment occurred "primarily and substantially" in the Commonwealth of Massachusetts so as to entitle Defendants to relief under M.G.L. c. 93A.

2.   **Defendants believe the issues of law are as follows:**

Because violation of chapter 93A is a question for the Court, both issues of fact and law related to that claim are included below.

i.   The legal implications of the findings regarding the contested issues of fact, above, including the measure of damages, if any, for failure to close the Loan.

ii.   Whether Conditions 30(b) and 30(c) of the Loan Application, providing for retention of the Application Fee and Commitment Fee, constitute liquidated damages provisions that were reasonable estimates of the total damages that John Hancock would suffer in the event that the loan did not close due to a breach by Vesterra.

iii.   Whether any obligations under the Loan Application survived Vesterra's inability to achieve the occupancy requirements set forth in the Loan Application.

iv.   Whether John Hancock's addition of 10% Constant as a "disbursement requirement," and its manipulation of the financial projections (that were made a part of John Hancock's loan approval), effected material changes in the terms and conditions contained in the Loan Application.

v.   Whether John Hancock's conduct in intentionally not disclosing to Vesterra that it had added the 10% Constant as a "disbursement

requirement," and had manipulated the financial projections made a part of the Loan Application, was "unfair and deceptive" such as to constitute a violation of M.G.L. c. 93A.

vi.    Whether the unfair and deceptive acts, including John Hancock's decision to add and then not to disclose the 10% Constant requirement, occurred "primarily and substantially" in the Commonwealth of Massachusetts so as to entitle Defendants to relief under M.G.L. c. 93A.

vii.    The damages incurred by Vesterra as a result of such acts.

viii.    The measure of reasonable attorneys' fees and costs.

ix.    Whether the conduct violating chapter 93A was willful or knowing, subjecting John Hancock to double or treble damages.

## G.    Amendments to the Pleadings

On March 29, 2006, the Court granted in part Defendants' motion for leave to file a Second Amended Counterclaim. Defendants will file the Second Amended Counterclaim pursuant to the Court's March 29, 2006 Order. Per the Court's invitation, John Hancock intends to file a Motion to Dismiss is response to the Defendants' Second Amended Counterclaim.

## H.    Additional Matters

The Parties anticipate filing one or more motions *in limine* prior to trial. The Parties are not aware at this time of any other matters that could aid in this disposition of the action, but reserve the right to bring such matters to the Court's attention should they arise between now and the time of trial.

## I.    Probable Length of Trial

Based upon the Court's customary 9:00 a.m. to 1:00 p.m. trial day, John Hancock and the Defendants estimate the probable length of trial to be five (5) trial days.

**J.**   **Witnesses**

**1.**   **Plaintiff's Witnesses**

**i.  Fact Witnesses (live or by deposition):**

1.   Ms. Patricia Coyne
     John Hancock Life Insurance Company
     Real Estate Finance Group
     197 Clarendon Street
     Boston, MA 02116

2.   Mr. Brian Depolis
     John Hancock Life Insurance Company
     Real Estate Finance Group
     486 Norristown Road, Suite 130
     Blue Bell, PA 19422

3.   Mr. Jonathan P. Ferrie
     John Hancock Life Insurance Company
     Real Estate Finance Group
     486 Norristown Road, Suite 130
     Blue Bell, PA 19422

4.   Mr. Joseph Kelly
     851 Wright Drive
     Maple Glen, PA 19002

5.   Mr. James Koller
     892 Andorra Road
     Lafayette Hill, PA 19444

6.   Mr. Timothy J. Malik
     John Hancock Life Insurance Company
     Real Estate Finance Group
     197 Clarendon Street, C-3
     Boston, MA 02116

7.   Ms. Helene McCole
     John Hancock Life Insurance Company
     Real Estate Finance Group
     486 Norristown Road, Suite 130
     Blue Bell, PA 19422

8.  Mr. Frank Palopoli
    1017 Lorien Drive
    Ambler, PA 19002

9.  Mr. Thomas C. Rogers
    White and Williams LLP
    1800 One Liberty Place
    Philadelphia, PA 19103

10. Mr. Ivor Thomas
    John Hancock Life Insurance Company
    Real Estate Finance Group
    197 Clarendon Street
    Boston, MA 02116

11. Ms. Joan Uzdavinis
    John Hancock Life Insurance Company
    Real Estate Finance Group
    197 Clarendon Street
    Boston, MA 02116

12. All witnesses on Defendants' Witness List

13. All impeachment and rebuttal witnesses

### ii.  Expert Witnesses:

1.  Mr. Simon Platt
    StoneTurn Group, LLP
    60 State Street
    Suite 700
    Boston, MA 02109

2.  Mr. Walter E. Mercer
    Paris Hill Realty Advisors
    173 Oakleigh Road
    Newton, MA 02458

## 2.  Defendants' Witnesses

### i.  Fact Witnesses (live or by deposition):

1.  James R. Koller
    Vesterra Corporation
    892 Andorra Road
    Lafayette Hills, PA

2.   Joseph P. Kelly
     Vesterra Corporation
     892 Andorra Road
     Lafayette Hills, PA

3.   Ivor Thomas
     John Hancock Life Insurance Company
     Real Estate Finance Group
     197 Clarendon Street
     Boston, MA 02116

4.   Timothy J. Malik
     John Hancock Life Insurance Company
     Real Estate Finance Group
     486 Norristown Road, Suite 130
     Blue Bell, PA 19422

5.   John P. Ferrie
     John Hancock Life Insurance Company
     Real Estate Finance Group
     486 Norristown Road, Suite 130
     Blue Bell, PA 19422

6.   Patricia Coyne
     John Hancock Life Insurance Company
     Real Estate Finance Group
     197 Clarendon Street
     Boston, MA 02116

7.   David Henderson
     General Electric Real Estate
     Boston, MA

8.   Barry Nectow
     ARCap REIT, Inc.
     Boston, MA

9.   Joan Uzdavinis
     John Hancock Life Insurance Company
     Real Estate Finance Group
     197 Clarendon Street
     Boston, MA 02116

10.  All witness on Plaintiff's Witness List.

11.    All impeachment and rebuttal witnesses.

ii.    **Expert Witnesses:**

1.    R. Larry Johnson
Veris Consulting, LLC
Washington, D.C.

2.    Linda C. Spevacek
Bartram & Cochran, Inc.
Hartford, CT

**K.    Proposed Trial Exhibits**

Plaintiff's list of proposed trial exhibits is attached hereto as <u>Exhibit A</u>.  Defendants'

list of proposed trial exhibits is attached hereto as <u>Exhibit B</u>.  The Parties will work together to

review and consolidate their lists into a single list prior to trial.  The Parties reserve the right

to supplement this list reasonably in advance of trial if and as necessary.  The parties also have

agreed to exchange reasonably in advance of trial any chalks or other demonstrative exhibits

that they intend to use.

VESTMONT LIMITED PARTNERSHIP,
VESTMONT LIMITED PARTNERSHIP II,
VESTMONT LIMITED PARTNERSHIP III,
and VESTERRA CORPORATION d/b/a
MONTGOMERY SQUARE PARTNERSHIP

JOHN HANCOCK LIFE INSURANCE
COMPANY

By their attorneys,

By its attorneys,

/s/ *Robert D. Hillman*
Steven J. Brooks (BBO No. 059140)
Robert D. Hillman (BBO No. 552637)
DEUTSCH WILLIAMS BROOKS
DeRENSIS & HOLLAND, P.C.
99 Summer Street
Boston, MA 02110-1213
Tele.: 617-951-2300

/s/ *Brian A. Davis*
Brian A. Davis (BBO No. 546462)
Paul D. Popeo (BBO No. 567727)
Lisa M. Gaulin (BBO No. 654655)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tele.: 617-248-5000

Howard D. Scher, Esq.
Brian J. McCormick, Jr., Esq.
C. Randolph Ross, Esq.
BUCHANAN INGERSOLL PC
1835 Market Street, Floor 14
Philadelphia, PA 19103
Tele.: 215-665-8700

Date:   March 30, 2006

4065239.1

# EXHIBIT A

John Hancock Life Insurance Company v. Montgomery Square Partnership
U.S.D.C. No. 05-11614-WGY

JH = John Hancock Life Insurance Company
MSP = Montgomery Square Partnership

## List of Proposed Trial Exhibits

| No. | Document Description | Date | Bates Range | Deposition Exhibit Number (if used as one) | Plaintiff's Objections | Defendants' Objections |
|---|---|---|---|---|---|---|
| 1 | 2004 Lending Guidelines | | JH 01468-01893 | | | |
| 2 | Deets | | V 2508-2512 | Kelly 8 | | |
| 3 | Collection of e-mails between MSP and JP Morgan representatives regarding purchase of Avenel Property | | V 2328-2507 | | | |
| 4 | Documents Pertaining to Negotiation of Purchase of Avenel Property | | V 1667-2235 | | | |
| 5 | Examples of Reserve Calculations (with handwriting) | | JH 01119 | Malik 17 | | |
| 6 | Information on Avenel Property | | JH 00860-00862 | | | |
| 6 | JH Graphs of Cash Balances | | JH 01412-01420 | Uzdavinis 12 and 13 | | |
| 8 | Manulife Credit Procedures | | JH 01894-02277 | | | |
| 8 | Market Survey | | JH 00739-00763 | | | |
| 9 | Preliminary Loan Information Worksheet | | JH 00102 | Malik 11 | | |
| 10 | Property/Hazard Insurance Requirements | | V 0569-0589 | | | |
| 11 | Representative Projects for Vesterra | | JH 00803 | Koller 2, Kelly 2 | | |
| 12 | Vesterra Corporation's Principals | | JH 00779 | Koller 1, Kelly 1 | | |
| 13 | Documents Pertaining to Sale of Mercer Square Property | | | | | |
| 14 | Documents Pertaining to Sale of Warwick Square Property | | | | | |
| 15 | Documents Pertaining to Sale of New Britain Village Property | | | | | |
| 16 | Apartment Research Report | 9/30/02 | JH 01068-01071 | | | |
| 17 | Mortgage Credit Policy | Nov-03 | JH 01421-01467 | | | |
| 18 | Apartment Research Report | Apr-04 | | | | |
| 19 | White & Williams Letter to MSP (Koller) from Rogers | 6/9/2004 | JH 00486-00487 | Koller 13, Kelly 24 | | |
| 20 | E-mail from Moisseo to Ferrie | 6/11/2004 | JH 00106-00119 | | | |
| 21 | GMAC Letter to Kelly from Campbell | 6/15/2004 | V 1158-1159 | Koller 4, Kelly 4 | | |
| 22 | E-mail from Ferrie to Malik | 6/17/2004 | JH 00100-00105 | Koller 12, Ferrie 5 | | |
| 23 | JH Term Sheet with handwriting | 6/18/2004 | V 1161-1198 | Koller 3, Kelly 3, Ferrie 7 | | |
| 24 | JH Term Sheet without handwriting | 6/18/2004 | JH 00074-00077 | Ferrie 6 | | |
| 25 | Frank Palopoli Balance Sheet | 6/30/2004 | JH 00791-00801 | Palopoli 1 | | |
| 26 | Joe Kelly Financial Statement | 6/30/2004 | JH 00783-00786 | Kelly 7 | | |
| 27 | Koller Financial Statement | 6/30/2004 | JH 00787-00790 | | | |
| 28 | White & Williams Letter to MSP (Koller) from Rogers | 7/8/2004 | JH 00475-00481 | Koller 15 | | |
| 29 | Fax from Kelly to Depolis | 7/12/2004 | JH 01169-01171 | | | |
| 30 | E-mail from Ferrie to Kelly | 7/18/2004 | V 0753-0781 | | | |
| 31 | E-mail from Kelly to Ferrie | 7/19/2004 | JH 00057-00072 | | | |
| 32 | JH Term Sheet without handwriting | 7/21/2004 | JH 00733-00737 | Koller 6, Ferrie 8 | | |
| 33 | E-mail from Depolis to Ferrie | 7/22/2004 | JH 00053-00054 | | | |
| 34 | E-mail from Ferrie to Kelly | 7/29/2004 | JH 00219-00289 | Kelly 6, Ferrie 9 (00219 only) | | |
| 35 | Letter from Ferrie to Kelly | 7/29/2004 | JH 00220-00221 | Ferrie 11 | | |
| 36 | Letter from Ferrie to MSP | 7/29/2004 | V 0870-0899 | | | |
| 37 | E-mail from Ferrie to Malik | 7/30/2004 | JH 00293-00295 | | | |
| 38 | Loan Application/Commitment | 7/30/2004 | JH 00958-01028 | Koller 8; Kelly 5; Coyne 5 | | |
| 39 | Loan Application/Commitment | 7/30/2004 | JH 00327-00356 | Ferrie 2, Malik 3 | | |
| 40 | E-mail from Ferrie to Malik | 7/30/2004 | JH 00144-00146 | | | |
| 41 | E-mail from Ferrie to Malik | 8/2/2004 | JH 00290 | | | |
| 42 | E-mail from Ferrie to Malik | 8/2/2004 | JH 00825-00826 | Koller 7 | | |
| 43 | Exhibit D Rate Lock Confirmation | 8/2/2004 | JH 00913-00920 | Malik 7, Malik 16 | | |
| 44 | Interest Rate Circle Notification | 8/2/2004 | JH 00397-00404 | Ferrie 15 | | |
| 45 | Interest Rate Circle Notification | 8/2/2004 | JH 01109-01117 | Neelow 1; Uzdavinis 2 | | |
| 46 | Interest Rate Circle Notification | 8/2/2004 | JH 00954-00956 | | | |
| 47 | Business Items Checklist | 8/3/2004 | JH 01029-01030 | | | |
| 48 | Checklist Summary | 8/3/2004 | JH 00696 | | | |
| 49 | Koller Financial Invoice | 8/4/2004 | JH 00696 | | | |
| 49 | Aerial Photo Invoice | 8/6/2004 | | | | |
| 50 | JH Internal Approval Documents | 8/6/2004 | JH 01128-01148 | Coyne 1, Henderson 3 | | |
| 51 | E-mail from Malik to Ferrie | 8/11/2004 | JH 00155 | Malik 6; Ferrie 4 | | |

JH = John Hancock Life Insurance Company
MSP = Montgomery Square Partnership

John Hancock Life Insurance Company v. Montgomery Square Partnership
U.S.D.C. No. 05-11614-WGY

| No. | Description | Date | Bates | Witness references |
|---|---|---|---|---|
| 52 | E-mail from Malik to Ferrie | 8/11/2004 | JH 00131-00132 | Malik 4; Ferrie 3; Coyne 2; Henderson 4 |
| 53 | Loans Approved 2003-2004 | 8/16/2004 | JH 0123-00124 | |
| 54 | JH Internal Approval Documents | 8/16/2004 | JH 00405-00420 | Kelly 27; Ferrie 16; Malik 1; Henderson 6; Coyne 3; Urzawina 3 |
| 55 | Letter from Malik to Thomas and Henderson | 8/16/2004 | JH 01176 | Henderson 7 |
| 56 | Letter from McCole to MSP (Kelly) | 8/18/2004 | JH 00694-00695 | Kelly 11 |
| 57 | Assignment Memorandum to Closing Department | 8/30/2004 | JH 01177-01182 | |
| 58 | Letter from Rogers to Russell (with attachments) | 9/21/2004 | V 0303-0488 | |
| 59 | White & Williams Letter to Russell | 9/21/2004 | JH 00617-00621 | Koller 9; Kelly 12 |
| 60 | E-mail from Russell to Rogers | 9/22/2004 | JH 00512-00513 | |
| 61 | Letter from Rogers to Russell | 9/23/2004 | JH 0511 | |
| 62 | Letter to Smith from Koller | 12/1/2004 | V 2965-2988 | |
| 63 | 2005 Lending Guidelines | 1/25/2005 | JH 02278-02314 | |
| 64 | Property Management Agreement | 2/1/2005 | V 2544-2573 | |
| 65 | E-mail from Rogers to Russell | 4/2/2005 | JH 0154 | |
| 66 | E-mail from Depolis to Ferrie | 4/14/2005 | JH 00153 | |
| 67 | E-mail from Rogers to Russell | 4/29/2005 | JH 00152 | |
| 68 | Letter from Leveroni to Stout | 5/9/2005 | V 0200-0207 | |
| 69 | Letter from McCole to MSP (Kelly) | 5/10/2005 | JH 00445 | Kelly 13 |
| 70 | Letter from McCole to MSP (Kelly) (with attachment) | 5/10/2005 | V 0568-0588 | |
| 71 | E-mail from DeLillo to Kelly | 5/12/2005 | V 2236-2245 | Kelly 19 |
| 72 | Rockwood Engagement Letter | 5/12/2005 | V 1626-1632 | |
| 73 | E-mail from Kelly to Koller | 5/13/2005 | V 1633 | |
| 74 | E-mail from Ferrie to Malik | 5/16/2005 | JH 01194-01195 | |
| 75 | E-mail from Rogers to Russell | 5/18/2005 | JH 00684-00502 | Kelly 14 |
| 76 | Revised Closing Checklist | 5/25/2005 | JH 01232-01263 | |
| 77 | E-mail from Malik to Kelly | 5/31/2005 | JH 01211-01222 | Koller 10; Kelly 20; Malik 8; Ferrie 18 |
| 78 | E-mail from Malik to Koseen | 6/6/2005 | JH 00912 | Kelly 21 |
| 79 | E-mail from Ferrie to Kelly | 6/6/2005 | JH 00149 | |
| 80 | E-mail from Koller to Ferrie | 6/7/2005 | JH 00196 | Koller 11; Kelly 22; Ferrie 20 |
| 81 | E-mail from Ferrie to Malik | 6/8/2005 | JH 01196 | Koller 12; Kelly 23; Malik 10; Ferrie 21 |
| 82 | E-mail from Ferrie to Malik | 6/9/2005 | JH 01213 | |
| 83 | E-mail from Jordan to Kelly | 6/9/2005 | V 2249-2253 | |
| 84 | E-mail from Kelly to Koller | 6/15/2005 | V 1637-1642 | Kelly 15 |
| 85 | Fax from JH to Kelly and Costa | 6/16/2005 | JH 00483-00485 | |
| 86 | Letter from McCole to Kelly | 6/16/2005 | V 0590-0591 | Koller 14; Kelly 25 |
| 87 | Letter from Koller to Rogers | 6/20/2005 | V 00482 | |
| 88 | E-mail from McCole to Kelly | 6/20/2005 | JH 01197 | Koller 16; Kelly 16 |
| 89 | E-mail from McCole to Kelly | 6/21/2005 | V 0584-0565 | |
| 90 | E-mail from McCole to Kelly | 6/23/2005 | JH 00157-00158 | |
| 91 | Fax Letter from McCole to Grant, Kelly & Koller | 6/23/2005 | V 0597-0599 | |
| 92 | Fax Letter from McCole to McNamara, Kelly & Koller | 6/23/2005 | V 0594-0596 | |
| 93 | Letter from McCole to Grant | 6/23/2005 | V 0592-0593 | |
| 94 | McCole's Telephone Logbook | 6/23/2005 | JH 01217-01222 | Kelly 17 |
| 95 | E-mail from Jordan to Kelly and Koller | 7/13/2005 | V 2256-2258 | Kelly 16 |
| 96 | Letter from Koller to Rogers | 7/15/2005 | V 2010-20 | Kelly 18 |
| 97 | E-mail from Jordan to Kelly and Koller | 7/20/2005 | V 2299-2325 | Kelly 16 |
| 98 | Letter from Schultz to Koller | 8/1/2005 | V 1655-1662 | Koller 19; Kelly 9 |
| 99 | E-mail from Schultz to Koller | 8/5/2005 | V 1666 | |
| 100 | Unrestated Reinstatement Agreement | 9/23/2005 | V 1038-1062 | |
| 101 | Third Amendment to P&S | 9/28/2005 | JH 00524-00537 | |
| 102 | Letter from Koller to Schultz | 11/9/2005 | V 2143 | Kelly 26 |
| 103 | Confession of Judgment | 12/23/2005 | V 1575-1578 | |
| 104 | Fourth Amendment to P&S | 12/23/2005 | V 1084-1066 | Koller 20 |

# EXHIBIT B

## DEFENDANTS' TRIAL EXHIBIT LIST[1]

| EXHIBIT NUMBER | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|
| 1. | Application to John Hancock Life Insurance Company for a First Mortgage Loan | 7/30/04 | JH00958-1028 |
| 2. | Letter from O. Campbell/B. Maguire to J. Kelly | 6/15/04 | V1158-1159 |
| 3. | E-Mail from J. Ferrie to T. Malik, attaching Preliminary Loan Information | 6/17/04 | JH00100-105 |
| 4. | Letter from J. Ferrie to J. Kelly | 6/18/04 | JH00074-77; V1181-1188 |
| 5. | Letter from O. Maguire to J. Kelly | 7/2/04 | V1160 |
| 6. | Fax/Letter from J. Kelly to O. Maguire | 7/14/04 | V1161-1168 |
| 7. | Letter from J. Ferrie to R. Kelly | 7/21/04 | JH00733-737 |
| 8. | Letter from J. Ferrie to J. Kelly | 7/29/04 | JH00219 |
| 9. | E-Mail from T. Malik to J. Ferrie | 7/29/04 | JH00173 |
| 10. | Letter from J. Ferrie to Montgomery Square | 7/29/04 | JH00220-221 |
| 11. | E-Mail from T. Malik to J. Ferrie | 7/29/04 | JH00218 |
| 12. | Letter from T. Malik to J. Ferrie | 7/30/04 | JH00162-163 |

[1] Defendants reserve the right to further amend and/or supplement their pretrial exhibit lists until after the deposition of Ivor Thomas has been completed, and Defendants' Motion to Compel Plaintiff to Comply with Defendants' Rule 30(b)(6) Deposition Notice has been decided. In addition, Defendants reserve the right to offer in evidence the exhibits listed in Plaintiff's Proposed Trial Exhibit List, or offered or marked by Plaintiff. Defendants also reserve the right to offer in evidence documents not listed above that are used for cross-examination or impeachment purposes, or on rebuttal.

1

| EXHIBIT NUMBER | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|
| 13. | Interest Rate Circle Notification, and attachments | 8/2/04 | JH00913-920 |
| 14. | Example of Reserve Calculations (w/handwriting) | 8/2/04 | JH01119 |
| 15. | Exhibit 1A - Example of Reserve Calculations (Avenel Exhibit 1A.xls) | 8/2/04 | JH01122 |
| 16. | Exhibit 1A - Example of Reserve Calculations (Avenel Exhibit 1A.xls) | 8/2/04 | JH01123 |
| 17. | John Hancock Preliminary Loan Information | 8/2/04 | JH01124 |
| 18. | Exhibit 1A - Example of Reserve Calculations (Avenel Exhibit 1A new expesnes.xls) | 8/2/04 | JH01125 |
| 19. | Exhibit D; Rate Lock Confirmation | 8/2/04 | JH00925-926 |
| 20. | Interest Rate Circle Form | 8/2/04 | JH00397-404 |
| 21. | Interest Rate Circle Notification | 8/2/04 | JH01109-JH01117 |
| 22. | Fax and attachment, from T. Malik to J. Koller | 8/2/04 | V0116-V0118 |
| 23. | E-Mail from T. Malik to J. Ferrie | 8/2/04 | JH00140 |
| 24. | E-Mail from J. Ferrie to T. Malik | 8/2/04 | JH0127-128 |
| 25. | Internal John Hancock Loan Approval Package | 8/10/04 | JH01128-1148 |
| 26. | E-Mail from T. Malik to J. Ferrie | 8/11/04 | JH00131-132 |

2

| EXHIBIT NUMBER | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|
| 27. | E-Mail from T. Malik to J. Ferrie | 8/11/04 | JH00135 |
| 28. | E-Mail from J. Ferrie to R. Kelly | 8/11/04 | JH00133-134 |
| 29. | E-Mail from T. Malik to D. Henderson | 8/12/04 | JH01175 |
| 30. | Internal John Hancock Loan Approval Package | 8/16/04 | JH00405-425 |
| 31. | Memo from T. Malik to I. Thomas and D. Henderson | 8/16/04 | JH01176 |
| 32. | Memo from P. Coyne to T. Malik | 8/17/04 | JH01174 |
| 33. | Letter from H. McCole to J. Kelly | 8/18/04 | JH00522 |
| 34. | Letter from T. Rogers to M. Russell | 9/2/04 | JH00517-521 |
| 35. | Letter from Jessica Yaffie Leveroni to Leonard Shatz, Esquire | 5/9/05 | JH00505-508 |
| 36. | Letter from H. McCole to J. Kelly | 5/10/05 | JH00445 |
| 37. | Letter from T. Malik to T. Rosen | 5/31/05 | JH01211-212 |
| 38. | E-Mail from J. Ferrie to J. Kelly | 6/1/05 | JH00151 |
| 39. | E-Mail from J. Ferrie to J. Kelly and J. Koller | 6/6/05 | JH00912; V0115; JH01101 |
| 40. | E-Mail from J. Koller to J. Ferrie | 6/7/05 | JH00149 |
| 41. | E-Mail from J. Ferrie to T. Malik | 6/9/05 | JH01196-1210 |

3

| EXHIBIT NUMBER | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|
| 42. | Letter from J. Koller to T. Rogers, Esquire | 7/15/05 | V0120 |
| 43. | Letter from A. Francis to Wilmington Trust of Pennsylvania | 8/3/05 | JH003312-318 |
| 44. | E-Mail from B. Davis to B. Friedman | 8/9/05 | JH00446-454 |
| 45. | Assignment Memorandum to Closing Department | 8/18/05 | JH00296-311 |
| 46. | John Hancock Real Estate Finance Group Lending Guidelines - January 26, 2005 | 1/25/05 | JH02278-2514 |
| 47. | Lending Guidelines - John Hancock Life Insurance Company and John Hancock Real Estate Finance, Inc. | | JH01468-1893 |
| 48. | ManuLife Credit Procedures | | JH01894-2277 |
| 49. | ManuLife Financial Mortgage Credit Policy | | JH01421-1443 |
| 50. | ManuLife Financial Mortgage Credit Policy | | JH01444-1467 |
| 51. | John Hancock Financial Services, Inc. 2004 Form 10-K | | |
| 52. | John Hancock Life Insurance Company, 2005 Annual Statement | | |
| 53. (*) | John Hancock Cash Balances - JHLICO | 6/30/05 | JH01382-1385 |
| 54. (*) | John Hancock Cash Balances - JHVLICO & MIC (formerly IPLICO) | 6/30/05 | JH01386 |
| 55. (*) | John Hancock Cash Balances - JHFS/JHRECO | 6/30/05 | JH01387 |

| EXHIBIT NUMBER | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|
| 56. (*) | John Hancock Cash Balances - JHLICO | 6/30/05 | JH01406-1409 |
| 57. (*) | John Hancock Cash Balances - JHVLICO & MIC (formerly IPLICO) | 6/30/05 | JH01410 |
| 58. (*) | John Hancock Cash Balances - JHFS/JHRECO | 6/30/05 | JH01411 |
| 59. (*) | John Hancock Cash Balances - JHVLICO & MIC (formerly IPLICO) | 7/29/05 | JH01392 |
| 60. (*) | John Hancock Cash Balances - JHFS/JHRECO | 7/29/05 | JH01393 |
| 61. (*) | John Hancock Cash Balances - JHLICO | 7/29/05 | JH01400-1403 |
| 62. (*) | John Hancock Cash Balances - JHVLICO & MIC (formerly IPLICO) | 7/29/05 | JH01404 |
| 63. (*) | John Hancock Cash Balances - JHFS/JHRECO | 7/29/05 | JH01405 |
| 64. (*) | John Hancock Cash Balances - JHLICO | 8/31/05 | JH01388-1391 |
| 65. (*) | John Hancock Cash Balances - JHLICO | 8/31/05 | JH01394-1397 |
| 66. (*) | John Hancock Cash Balances - JHVLICO & MIC (formerly IPLICO) | 8/31/05 | JH01398 |
| 67. (*) | John Hancock Cash Balances - JHFS/JHRECO | 8/31/05 | JH01399 |
| 68. (*) | John Hancock Cash Balances - JHLICO | 8/31/05 | JH01412-1415 |
| 69. (*) | John Hancock Cash Balances - JHVLICO & MIC (formerly IPLICO) | 8/31/05 | JH01416 |

5

| EXHIBIT NUMBER | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|
| 70. (*) | John Hancock Cash Balances - JHFS/JHRECO | 8/31/05 | JH01417 |
| 71. (*) | John Hancock Cash Balances - JHVLICO & MIC (formerly IPLICO) | 8/31/05 | JH01418 |
| 72. (*) | John Hancock Cash Balances - JHFS/JHRECO | 8/31/05 | JH01419 |
| 73. (*) | John Hancock Cash Balances - JHLICO | 8/31/05 | JH01420 |
| 74. | Preferred Employer List | | V2582-V2583 |
| 75. | Apartment Shoppers Guide | 1/06 | V2574-V2576 |
| 76. | Avenel Advertising Book | 2005 | V2584-V2891 |
| 77. | Avenel Flyers | 2005 | V2892-V2932 |
| 78. | Avenel Concessions | 2005 | V2933-V2950 |
| 79. | Apartment Guide | October 2005 | V2579-V2581 |
| 80. | Apartment Finder | Winter 2005-06 | V2577-V2578 |
| 81. | Defendants' Answer & Counterclaim | 9/6/05 | |
| 82. | Plaintiff John Hancock Life Insurance Company's Response to Defendants' First Set of Interrogatories | 1/4/06 | |
| 83. | Plaintiff John Hancock Life Insurance Company's Response to Defendants' First Requests for the Production of Documents and Things | 1/4/06 | |

6

| EXHIBIT NUMBER | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|
| 84. | Privilege Log of John Hancock Life Insurance Company | 1/27/06 | |
| 85. | Defendants' Notice of Rule 30(b)(6) Videotape Deposition of Plaintiff John Hancock Life Insurance Company, and accompanying cover letter | 2/1/06 | |
| 86. (*) | Affidavit of John P. Ferrie in Support of Plaintiff John Hancock Life Insurance Company's Motion for Preliminary Injunctive Relief | 2/8/06 | |
| 87. (*) | Affidavit of Timothy J. Malik in Support of Plaintiff John Hancock Life Insurance Company's Motion for Preliminary Injunctive Relief | 2/14/06 | |
| 88. | Defendants' Amended Counterclaim | 2/16/06 | |
| 89. (*) | Supplemental Affidavit of Timothy J. Malik in Support of Plaintiff John Hancock Life Insurance Company's Motion for Summary Judgment | 3/1/06 | |
| 90. | Plaintiff John Hancock Life Insurance Company's Response to Defendants' Second Requests for the Production of Documents and Things | 3/3/06 | |
| 91. | Plaintiff John Hancock Life Insurance Company's Response to Defendants' Second Set of Interrogatories | 3/3/06 | |
| 92. (*) | Expert Witness Report of Walter E. Mercer | 3/24/06 | |
| 93. (*) | Expert Report of Simon Platt | 3/24/06 | |

7

| EXHIBIT NUMBER | DESCRIPTION | DATE | BATES RANGE |
|---|---|---|---|
| 94. | Figures Comparison, Exhibit C to the expert witness report of Linda Spevacek | 3/24/06 | |
| 95. | Documents pertaining to Regatta Apartments | | |

Items containing an asterisk (*) will only be used for indemnification or identification purposes.

8