UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 05-11614-WGY |
| VESTMONT LIMITED PARTNERSHIP, VESTMONT LIMITED PARTNERSHIP II, VESTMONT LIMITED PARTNERSHIP III, and VESTERRA CORPORATION d/b/a MONTGOMERY SQUARE PARTNERSHIP, | ) ) ) ) ) ) | |
| Defendants/Counterclaim Plaintiffs. | ) ) ) | |

## PLAINTIFF JOHN HANCOCK LIFE INSURANCE COMPANY'S MOTION FOR RECONSIDERATION OF MARCH 30, 2006 COURT ORDER PRECLUDING CERTAIN TESTIMONY

Plaintiff John Hancock Life Insurance Company ("John Hancock" or "Hancock") respectfully seeks reconsideration of this Court's Order, dated March 30, 2006, precluding "John Hancock from proffering any new evidence on the [Defendants'] designated 30(b)(6) topics not testified to" in the Fed. R. Civ. P. 30(b)(6) depositions of various Hancock personnel (the "March 30 Order"). The March 30 Order was entered less than twenty-four hours after defendants Vestmont Limited Partnership, *et al.* (collectively "Montgomery Partners" or "Defendants") filed their motion seeking to remedy John Hancock's alleged non-compliance with Rule 30(b)(6) or to sanction Hancock on the same basis (the "Motion").

Accordingly, John Hancock had no opportunity to respond to the Motion before it was allowed by the Court.

Given such an opportunity, John Hancock would demonstrate that Montgomery Partners' Motion lacks merit because all of the Rule 30(b)(6) witnesses produced by John Hancock possess substantial, personal knowledge of the topics for which they were designated, and testified on those topics at their depositions. Indeed, Montgomery Partners' carefully-worded Motion does not assert (and cannot truthfully assert) that: (1) any John Hancock witness lacked knowledge or was unqualified to address the subject(s) for which he or she was designated to testify; (2) any John Hancock witness failed to appear or refused to answer a single question posed at his or her deposition; or (3) the Defendants actually have been inhibited from eliciting testimonial evidence on the topics set forth in their Rule 30(b)(6) Notice of Deposition. Rather, Montgomery Partners argues only that John Hancock's Rule 30(b)(6) witnesses were not "prepared" by counsel to testify on topics about which they already are personally knowledgeable. That assertion, however, provides no basis to sanction John Hancock. *See, e.g.,* United States v. Taylor, 166 F.R.D. 356, 361 (M.D. N.C. 1996) (A corporation is required under Rule 30(b)(6) to prepare its designees to provide binding testimony "[i]f the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice..."); McLellan Highway Corp. v. United States, 95 F. Supp.2d 1, 9 (D. Mass. 2000) (*quoting* Taylor). For this reason alone, the Court should reconsider and deny the Defendants' Motion, and rescind the March 30 Order.

The Court also should reconsider and deny Montgomery Partners' Motion because, despite their perfunctory certification to the contrary, the written record proves that the Defendants have not attempted in good faith to secure any allegedly missing evidence without

-2-

court action as required under Fed. R. Civ. P. 37(a)(1)(B) and L.R. 7.1(A)(2). As reflected in the parties' correspondence (most of which was omitted from Montgomery Partners' Motion), John Hancock repeatedly has offered, both before and after issuance of the March 30 Order, to provide additional Rule 30(b)(6) testimony concerning any subject areas on which the Defendants believe they are missing information, or any subject areas on which they believe that Hancock's proffered testimony to date is inadequate or incomplete. Defendants, in response, refused to identify the Rule 30(b)(6) subject areas about which they are missing information, or as to which they believe John Hancock's proffered testimony to date is inadequate or incomplete. Only *after* the March 30 Order entered did Montgomery Partners, at John Hancock's repeated urging, identify *one category* as to which it claims John Hancock's Rule 30(b)(6) witnesses allegedly failed to provide sufficient testimony. That one category ("policies or procedures of John Hancock in connection with closing a loan"), however, *is not* one of the fifteen topics set out in the Defendants' Rule 30(b)(6) Notice of Deposition.

The facts demonstrate that the testimony of John Hancock's present and former employees on the actual categories set out in the Defendants' Rule 30(b)(6) Notice of Deposition has been extensive and complete. John Hancock should not be sanctioned for failing to rectify alleged discovery inadequacies that are not real, or that Montgomery Partners refuses to identify so that they can be addressed.

Lastly, John Hancock respectfully submits that the Court should reconsider Montgomery Partners' Motion and rescind the March 30 Order to the extent that such Order sanctions Hancock under Fed. R. Civ. P. 37(b)(2) by precluding Hancock from offering introducing certain matters in evidence at trial because it is undisputed that John Hancock actually produced knowledgeable deponents for purposes of Rule 30(b)(6), no prior order

directing Hancock to supplement the testimony of those witnesses was entered by the Court, and John Hancock had no opportunity to be heard with respect to that Motion before the March 30 Order entered.

Alternatively, the March 30 Order should be rescinded, and Montgomery Partners should be ordered to comply with Fed. R. Civ. P. 37(a)(2)(B) and L.R. 7.1(A)(2) and provide John Hancock with information sufficient to allow Hancock to identify and produce additional Rule 30(b)(6) witnesses and/or testimony, as necessary.

### Factual Background

John Hancock instituted this litigation on August 3, 2006, to enforce the terms of an unambiguous contract with Montgomery Partners, pursuant to which Montgomery Partners obligated itself either to borrow $32 million from Hancock on or before August 1, 2005, or to pay "all ... damages, losses, costs and expenses suffered or incurred by John Hancock" as a result of their failure to close the loan (the "Loan Commitment"). The people at John Hancock who were principally involved in originating, negotiating and approving the Loan Commitment were:

> (1) *Mr. John Ferrie* - The Regional Vice President of John Hancock's Blue Bell, Pennsylvania office and a 16-year veteran of Hancock's Real Estate Finance Group, who personally originated and helped negotiate the Loan Commitment;

> (2) *Mr. Timothy Malik* - An Investment Officer (now Assistant Vice President) at John Hancock's Boston, Massachusetts office and a 19-year veteran of Hancock's Real Estate Finance Group, who was primarily responsible for underwriting the Loan contemplated in the Loan Commitment;

> (3) *Mr. David Henderson* - A former Senior Investment Officer at John Hancock's Boston, Massachusetts office and an 8-year veteran of Hancock's Real Estate Finance Group, who served as Mr. Malik's immediate supervisor and, in that capacity, personally considered and approved the Loan Commitment in August 2004;

(4) *Mr. Barry Nectow* - A former Vice President at John Hancock's Boston, Massachusetts office and an 16-year veteran of Hancock's Real Estate Finance Group, who served as Mr. Henderson's immediate supervisor and, in that capacity, personally considered and approved the Loan Commitment in August 2004;

(5) *Ms. Patricia Coyne* - An Investment Officer at John Hancock's Boston, Massachusetts office and an 13-year veteran of Hancock's Real Estate Finance Group, who personally considered and approved the Loan Commitment in August 2004, and who has extensive experience and familiarity with Hancock's commercial loan policies and procedures; and

(6) *Mr. Ivor Thomas* - The Senior Vice President in charge of John Hancock's commercial mortgage operations after the merger between John Hancock and Manulife Financial in April 2004 and a 32-year veteran of the commercial lending industry, who personally considered and approved the Loan Commitment in August 2004.

Early in the discovery process, Montgomery Partners deposed Mr. Malik (on January 27, 2006) and Mr. Ferrie (on February 1, 2006) at length concerning, *inter alia*, John Hancock's policies and procedures for originating and underwriting commercial loans, Hancock's underwriting guidelines and changes to those underwriting guidelines after the Manulife merger, Hancock's commercial loan approval process and changes to that process after the Manulife merger, as well as the terms and conditions of the Loan Commitment issued to the Defendants in this case. Affidavit of Paul D. Popeo, dated April 7, 2006 ("Popeo Aff."), ¶ 4, Exhibits A and B; Affidavit of Brian A. Davis, dated April 7, 2006 ("Davis Aff."), ¶ 3, On the same day that Mr. Ferrie's deposition concluded, Montgomery Partners issued an omnibus Rule 30(b)(6) Notice of Deposition listing many of the same topics already covered at the Malik and Ferrie depositions, as well as certain additional topics. *Id.* Shortly thereafter, Montgomery Partners issued a combined Notice of Deposition for Messrs. Henderson, Nectow and Thomas and Ms. Coyne. *Id.* In doing so, the Defendants noticed (and now have deposed) each and every John Hancock employee who had significant

involvement in the origination, negotiation and approval of the Loan Commitment at issue in this case.

Counsel for John Hancock worked cooperatively with counsel for Montgomery Partners to arrange mutually acceptable dates for the various depositions that had been noticed on both sides. Popeo Aff., ¶ 5. In the course of making those arrangements, John Hancock notified Montgomery Partners that it: (1) would designate Mr. Henderson and Ms. Coyne to address various topics in the Defendants' Rule 30(b)(6) Notice of Deposition concerning Hancock's commercial lending practices, policies and procedures to the extent that those topics had not already been covered by Messrs. Malik and Ferrie at their depositions; (2) would produce an additional witness (Ms. Joan Uzdavinis, an Assistant Vice President in John Hancock's Portfolio Management Group and a 26-year veteran of the investment finance and pension industries) to testify concerning the financial topics contained in the Defendants' Rule 30(b)(6) Notice, including Hancock's resulting losses; and (3) would agree to designate relevant portions of Mr. Malik and Mr. Ferrie's depositions as corporate testimony under Rule 30(b)(6) to the extent that the Defendants wished to do so. *Id.* This course of action, as proposed by John Hancock, was acknowledged by counsel for Montgomery Partners to be acceptable to the Defendants. *Id.*

The depositions of Mr. Henderson, Ms. Coyne, Mr. Nectow, Ms. Uzdavinis and Mr. Thomas occurred on March 1, March 10 (morning), March 10 (afternoon), March 21, and March 31, 2006, respectively. Popeo Aff., ¶ 6; Davis Aff., ¶ 4. After the depositions of Mr. Henderson and Ms. Coyne, Montgomery Partners made the argument that those witnesses had not been adequately prepared for their depositions. *Id.* Specifically, Montgomery Partners complained that Mr. Henderson had no "'specific recollection'" of the approval of the

Defendants' Loan Commitment (although Mr. Henderson has extensive knowledge regarding Hancock's loan approval practices, policies and procedures generally, and Mr. Malik already had testified at length on the specifics of Hancock's approval of the Defendants' Loan Commitment at his deposition on January 27), and that Ms. Coyne "did not speak with any other John Hancock employee" or "review any documents in preparation for her deposition" (although Ms. Coyne already has extensive knowledge of the topics for which she was designated, including John Hancock's underwriting policies and guidelines, which she helped author).[1]  *Id.*

John Hancock responded promptly to Montgomery Partners complaints.  Popeo Aff., ¶ 7; Davis Aff., ¶ 5.  In a telephone conference held on Monday, March 6, 2006 (*i.e.*, the first business day after receiving the Defendants' March 3 letter concerning Mr. Henderson's testimony), counsel for John Hancock explained, *inter alia*, that: (1) the Rule 30(b)(6) witnesses that Hancock was producing were personally knowledgeable regarding the topics about which they had been designated to testify and did not require extensive further preparation; (2) that they were the most logical Rule 30(b)(6) witnesses to appear and testify on Hancock's behalf because of their experience and personal involvement; and (3) that Hancock would work with the Defendants to identify and provide additional testimony, or to designate prior testimony from Messrs. Malik and Ferrie, as appropriate, to speak to any subject areas that the Defendants reasonably believed had not been adequately addressed.  *Id.*  Two days

---

[1] Full miniscript versions of the transcripts of the Malik, Ferrie, Henderson, Nectow, Coyne and Uzdavinis depositions are appended to the accompanying Popeo Affidavit as Exhibits A through E, and G, for the convenience of the court.  Popeo Aff., ¶ 3.  The final transcript of Mr. Thomas' deposition had not arrived as of the date of this submission.  *Id.*  A true copy of the rough transcript of Mr. Thomas' deposition is appended to the Popeo Affidavit as Exhibit F.  *Id.*

later, on March 8, 2006, counsel for John Hancock repeated the same offer in writing. Popeo

Aff., ¶ 8. He said:

> the final portion of topic #2 (last sentence) seeks a designee with
> respect to "the negotiation of the [terms and conditions of the Loan
> Application] between Defendants and John Hancock". You have
> already deposed Malik and Ferrie, the Hancock individuals who
> negotiated that document with the defendants. *Please let me know
> if there are legitimate areas of inquiry on that subject on which
> you were not able to question those witnesses. If so, I am happy
> to speak with you and determine whether we can make another
> witness available – but I think you have already spoken with the
> most knowledgeable people.*

Popeo Aff., Exhibit H (e-mail message from Paul Popeo, Esq. to Brian McCormick, Esq.,

dated March 8, 2006) (emphasis added). Montgomery Partners did not take advantage of John

Hancock's offers to address their concerns regarding Mr. Henderson's deposition and did not

identify any specific subject areas on which they wished to obtain additional testimony. Popeo

Aff., ¶ 9; Davis Aff., ¶ 6.

Counsel spoke again in the aftermath of the Defendants' March 10, 2006 letter

concerning Ms. Coyne's deposition. Popeo Aff., ¶ 10. In a conference call conducted on

Monday, March 13, 2006, counsel for John Hancock again explained, *inter alia*, that the Rule

30(b)(6) witnesses that Hancock was producing, including Ms. Coyne, were personally

knowledgeable regarding the topics for which they had been designated, and that Hancock

would work with the Defendants to identify and provide additional witness testimony, or to

designate prior testimony from Messrs. Malik and Ferrie, as appropriate, to speak to any

subject areas that the Defendants reasonably believed had not been adequately addressed. *Id.*

And again, Montgomery Partners failed, in response, to identify any specific subject areas as

to which it allegedly lacked sufficient information or testimony. *Id.* To the contrary, counsel

for the Defendants expressed satisfaction with John Hancock's proposal and indicated that they likely *would not* seek court intervention concerning the issues raised in their March 10, 2006 letter. *Id.*

Thereafter the parties were in nearly daily communication, working to schedule depositions and coordinating the various logistical details of the litigation. Popeo Aff., ¶ 11. In none of those communications did Montgomery Partners raise what it now characterizes as John Hancock's "egregious[]" failure to comply with Rule 30(b)(6). *Id.*; Defendants' Memorandum in Support at 10. Just the opposite. On March 15, 2006, in the context of one of the parties' numerous scheduling communications, counsel for Montgomery Partners e-mailed John Hancock's counsel to inquire about the logistics of implementing Hancock's offer to satisfy the Defendants' alleged concerns by designating testimony from the prior Malik and Ferrie depositions as official testimony of John Hancock. Popeo Aff., ¶ 12. He said:

> I also want to discuss how your proposal regarding post-designating portions of Mr. Malik's deposition as a 30(b)(6) witness would work.

*Id.*, Exhibit I (e-mail message from Brian McCormick, Esq. to Paul Popeo, Esq., dated March, 15, 2006). Counsel for John Hancock responded by promptly telephoning Montgomery Partners' counsel and offering simply that the entire transcript, or portions thereof, could be designated as Rule 30(b)(6) testimony, if that process was acceptable to the Defendants. Popeo Aff., ¶ 13. By all indications, it was. *Id.*

On March 21, 2006, Montgomery Partners conducted the deposition of John Hancock's final Rule 30(b)(6) witness, Ms. Joan Uzdavinis. Popeo Aff., ¶ 14; Davis Aff., ¶ 7. Ms. Uzdavinis testified at length regarding, *inter alia*, John Hancock's financial operations, its investment policies, its investment allocation procedures, and its historical rates of return.

Popeo Aff., Exhibit G. At no time during Ms. Uzdavinis' deposition, or in the week thereafter, did the Defendants make any complaint concerning the extent of her knowledge on the topics for which she was designated or the manner of her "preparation" leading up to her deposition. Popeo Aff., ¶ 14; Davis Aff., ¶ 7.

Seven days passed. Then, in midst of a telephonic conference to discuss the content of the parties' Joint Pretrial Memorandum on March 28, 2006, counsel for Montgomery Partners announced for the first time their alleged dissatisfaction with Ms. Uzdavinis' deposition preparation and their intention to seek unspecified relief from this Court. Popeo Aff., ¶ 15; Davis Aff., ¶ 8. Defendants then waited an additional day, and filed their Motion late in the evening of March 29, 2006, thereby leaving John Hancock little time to review, and no opportunity to oppose, the Motion prior to the scheduled Pretrial Conference on Thursday, March 30, 2006. *Id.*

The Court allowed Montgomery Partners' Motion on March 30, 2006, without the benefit of any opposition papers from John Hancock. Popeo Aff., ¶ 16; Davis Aff., ¶ 9. The Court, however, did encourage the parties at the Pretrial Conference to resolve their discovery disputes among themselves, and did invite John Hancock to submit a Motion for Reconsideration seeking relief from its March 30 Order. *Id.*

Since the Pretrial Conference on March 30, 2006, John Hancock once again has asked Montgomery Partners to identify specific subject areas on which the Defendants believe they are missing information, or the particular subject areas on which they believe that the proffered testimony to date is inadequate or complete, so that Hancock can address their concerns. Popeo Aff., ¶ 17, Exhibit J; Davis Aff., ¶ 10; Exhibit A. And once again, Montgomery Partners declined to take advantage of John Hancock's offer, stating (notwithstanding its

-10-

obligations under Fed. R. Civ. P. 37(a)(2)(B) and L.R. 7.1(A)(2)) that it is not the Defendants'

burden to "identify areas where we believe information was missing or where testimony was

incomplete...." Popeo Aff., ¶ 17, Exhibit K. Only after additional prodding from John

Hancock did Montgomery Partners identify one topic as to which it claims one of John

Hancock's Rule 30(b)(6) witnesses (Ms. Coyne) allegedly failed to provide sufficient

testimony. Davis Aff., ¶ 10, Exhibit B. Ironically, that one topic ("policies or procedures of

John Hancock in connection with closing a loan") *is not among the fifteen topics set out in the*

*Defendants' Rule 30(b)(6) Notice of Deposition.* Davis Aff., ¶ 10.

### Argument

I.    MONTGOMERY PARTNERS' MOTION SHOULD BE RECONSIDERED AND
DENIED BECAUSE JOHN HANCOCK ALREADY HAS PRODUCED MULTIPLE
KNOWLEDGEABLE WITNESSES WHO HAVE ADEQUATELY ADDRESSED
THE DEFENDANTS' DESIGNATED AREAS OF INQUIRY.

Fed. R. Civ. P. 30(b)(6) authorizes individuals to testify on behalf of corporate entities.

Rule 30(b)(6) was enacted to permit opposing parties to "obtain facts clearly known to the

corporation," while simultaneously "assist[ing] corporations which found that an unnecessarily

large number of their officers and agents were being deposed." Taylor, 166 F.R.D. at 360.

In order "[f]or a Rule 30(b)(6) deposition to operate effectively, the deposing party must

designate the areas of inquiry with reasonable particularity...." *Id.* Once that occurs, the

corporation is required to identify and offer one or more knowledgeable witnesses to testify for

the corporation concerning the specific topics of inquiry. The knowledgeable witnesses may

be individuals who already possess "personal knowledge of the matters set out in the deposition

notice," or they may be people who have been prepared to testify "so that they may give

knowledgeable and binding answers for the corporation." *Id.* at 361; *see also* McLellan Highway, 95 F. Supp.2d at 9 (quoting Taylor).

In this case, Montgomery Partners noticed and took the depositions of numerous current and former employees of John Hancock who had direct, personal involvement in the underlying events (*i.e.*, Malik, Ferrie, Henderson, Coyne, Nectow and Thomas). These witnesses provided extensive testimony on a wide range of issues pertinent to the parties' claims, including, *inter alia*, John Hancock's policies and procedures for originating and underwriting commercial loans, Hancock's underwriting guidelines and changes to those underwriting guidelines after the Manulife merger, Hancock's commercial loan approval process and changes to that process after the Manulife merger, as well as the terms and conditions of the Loan Commitment issued to the Defendants in this case. From their depositions, the Defendants obtained a thorough and detailed understanding of John Hancock's standard commercial loan policies and procedures and how they were applied in the circumstances of this case.

Montgomery Partners also noticed and took the depositions of three witnesses (*i.e.*, Henderson, Coyne and Uzdavinis), in their capacity as John Hancock's designated representatives under Rule 30(b)(6), on a broad range of non-specific topics that substantially overlap the subject areas upon which Hancock's other witnesses were questioned. It is noteworthy that Montgomery Partners does not represent in its Motion that any of Hancock's Rule 30(b)(6) witnesses *lacked actual knowledge* about the subject matters for which they were designated. The Defendants do not make that claim because they know that the deposition transcripts for John Hancock's Rule 30(b)(6) witnesses would prove such a claim to be false. Instead, they argue only that John Hancock failed to "prepare [its] Rule 30(b)(6) designees to

-12-

testify as to the topics for which they were designated." Defendants' Memo in Support at 2. The distinction is a small, but profound one. As noted above, John Hancock is entitled under Rule 30(b)(6) to offer *either* witnesses who already possess "personal knowledge of the matters set out in the deposition notice," *or* witnesses who have been prepared to testify "so that they may give knowledgeable and binding answers for the corporation." Taylor, 166 F.R.D. at 361. The mere fact that John Hancock chose to produce eminently qualified present or former employees who already were well-versed in the topics for which they were designated to testify does not support the conclusion that Hancock has violated Rule 30(b)(6).

The circumstances of Ms. Joan Uzdavinis' deposition prove this point. Ms. Uzdavinis is the Assistant Vice President in charge of John Hancock's Portfolio Management Group, which is the organization within Hancock that is responsible for overseeing the various financial functions that are identified in Category Nos. 10 through 15 of the Defendants' Rule 30(b)(6) Notice of Deposition. Popeo Aff., Exhibit G (Uzdavinis Depo. 10:23-24, 11:1-3). She has worked at John Hancock in various accounting and actuarial capacities for 26 years. Montgomery Partners complained in its Motion that Ms. Uzdavinis did "nothing to prepare. . . except her normal day-to-day activities." Defendants' Memo in Support at 6. This statement is both misleading and false. It is misleading because Ms. Uzdavinis testified that she already reviews in her "regular course of business" much of the information that is responsive to the relevant categories of the Defendants' Rule 30(b)(6) Notice. *See* Popeo Aff., Exhibit G (Uzdavinis Depo. 11:9-18) ("Q. Did you look at any historical data. . . to prepare for this deposition. A. Not in preparation for this deposition. I look at that as a matter of my regular course of business."). It is false because Ms. Uzdavinis further testified that, in instances where she did not already possess the information requested in the Defendants' Rule

-13-

30(b)(6) Notice, she researched that information prior to her deposition.  For example, she

testified (in response to the question immediately following the isolated answer quote contained

on page 6 of the Defendants' Memorandum in Support):

> Q.    With respect to item number 10.  "The losses allegedly
> suffered by John Hancock as a result of the failure of the
> Loan to close, as referenced in Paragraph 16 of the
> Complaint, including: the basis, policy and practice
> relating to decisions whether to invest funds in mortgage
> loans or other investment vehicles; the projected return on
> all investments by John Hancock over ten years beginning
> on August 1, 2005; and the actual return on all
> investments by John Hancock for the 10 year period
> ending August 1, 2005," have you done anything to
> prepare to testify with respect to that?
>
> A.    I attempted to find whatever data I could with respect to
> projections.
>
> Q.    And could you explain to me what you mean by
> projections?
>
> A.    Well, this [Notice] is specifically asking the projected
> return on all assets by John Hancock over the 10 years
> beginning August 1, 2005.    That to me indicates a
> projection.
>
> Q.    Okay, what, if anything, did you review in connection
> with that?
>
> A.    I attempted to find out what may exist in the way of
> projected returns for not only the commercial mortgage
> asset class but more importantly all of the assets, since
> this is referencing all investments by John Hancock.  It
> goes well beyond the realm of commercial mortgages.  It
> includes equity, common stock, and oil and gas
> partnerships, a whole host of information that I do not see
> normally.

Popeo Aff., Exhibit G (Uzdavinis Depo. 13:19-14:5, 14:21-15-1).

By way of further example, Ms. Uzdavinis' allegedly "unprepared" testimony on the issue of John Hancock's "decision to 'allocate[ ] and set aside assets for the purpose of funding the Loan" (Defendants' Rule 30(b)(6) Notice of Deposition, Category No. 14) includes:

> Q.    [H]ow is this proposed allocation decided upon?
>
> A.    We determine allocation at the time of commitment based upon the estimated investment demand of each and every segment available to us, if I refer to these as segments. Each of the segments has an expressed investment demand provided to us by the time Global Investment Strategy, GIS, that indicates what their demand is over the coming 16 months. We look at the segments, demands as well as any restrictions placed on those segments and allocate at the time *pro rata* based on a segment's available investment demand for mortgages.

Popeo Aff., Exhibit G (Uzdavinis Depo. 106:22-24, 107:1-13).    The testimony of John Hancock's other Rule 30(b)(6) witnesses is similarly clear and similarly responsive.[2]

Montgomery Partners refusal and apparent inability to identify specific Rule 30(b)(6) subject areas on which the Defendants believe they are missing information, or the particular subject areas on which they believe that John Hancock's proffered testimony to date is inadequate or complete, only provides further proof of Hancock's compliance with its discovery obligations.    Defendants did not identify a single such subject area in their Motion papers.    Indeed, the only allegedly incomplete Rule 30(b)(6) subject area that Montgomery

---

[2] For example, at the start of Mr. Henderson's deposition, he was asked by Montgomery Partners' counsel what steps he took to prepare for his testimony. Popeo Aff., Exhibit C (Henderson Depo. 9:7-13; 11:6-18). Mr. Henderson testified that he had met with counsel and had reviewed certain documents, including the Loan Commitment, but that because he used John Hancock's Manual of Lending Guidelines "day to day" and "lived with those processes, procedures for seven years" as part of his daily job responsibilities, further review of those Guidelines in advance of his deposition testimony was unnecessary. *Id.* (Henderson Depo. 14:2-5; 15:4-7). Thereafter, Mr. Henderson willingly answered questions posed to him concerning John Hancock's standard policies and practices for making commercial loans. *See, e.g., id.* (Henderson Depo. 29:15-24; 30:1-18).

Similarly, the Defendants assert that Ms. Coyne was "unapologetically unprepared" to testify at her deposition (Defendants Memo in Support at 7), but they fail to note that she was one of a team of John Hancock employees who drafted Hancock's current Manual of Lending Guidelines, about which she was designated to testify. Popeo Aff., Exhibit E (Coyne Depo. 31:11-15).

Partners ever has identified in response to John Hancock's repeated requests (*i.e.*, "policies or procedures of John Hancock in connection with closing a loan") *is not a category listed on the Defendants' Rule 30(b)(6) Notice of Deposition at all*. Davis Aff., <u>Exhibit B</u>. John Hancock does not deserve, however, to be sanctioned for failing to offer testimony on a subject area that was not specified by the Defendants. Hancock has fulfilled its obligations under Rule 30(b)(6). Its Motion for Reconsideration should be granted, the Defendants' Motion should be denied, and the March 30 Order should be rescinded.

II.    MONTGOMERY PARTNERS' MOTION SHOULD BE RECONSIDERED AND DENIED BECAUSE, TO THE EXTENT THAT ANY JOHN HANCOCK WITNESSES HAVE BEEN UNABLE TO SUPPLY INFORMATION SOUGHT BY THE DEFENDANTS, THE DEFENDANTS HAVE FAILED TO FULFILL THEIR OBLIGATION UNDER L.R. 7.1(A)(2) TO CONFER IN GOOD FAITH TO NARROW OR RESOLVE THEIR CONCERNS.

Even assuming, *arguendo*, that John Hancock's Rule designated witnesses failed to adequately address all of the subject areas set out in the Defendants' Rule 30(b)(6) Notice of Deposition (which is not the case), the Court should reconsider and deny Montgomery Partners' Motion because the Defendants did not confer in good faith with Hancock in advance of that Motion "in an effort to secure the information or material without court action" as required by Fed. R. Civ. P. 37(a)(2)(B) and L.R. 7.1(a)(2). The record demonstrates that counsel for John Hancock repeatedly requested that the Defendants identify specific Rule 30(b)(6) subject areas as to which they were dissatisfied prior to the filing date of March 29, 2006. Popeo Aff., ¶¶ 7, 8, <u>Exhibit H</u>; Davis Aff., ¶ 5. The Defendants' attitude in response to Hancock's requests is best reflected in the recent e-mail message of their counsel, sent on April 5, 2006, which states:

> rather than identify areas where we believe information was missing or where testimony was incomplete (we think that these

-16-

> are self-evident from the depositions), we believe it is your
> burden to supplement, if possible and timely, your witnesses'
> deficient testimony.

Popeo Aff., Exhibit K (e-mail message from Howard Scher, Esq. to Paul Popeo, Esq., dated

April 5, 2006).

Defendants are wrong. Discovery is not a shell game, and John Hancock is not

required to guess at the precise nature and extent of the Defendants' concerns. To the

contrary, Fed. R. Civ. P. 37(a)(2)(B) and L.R. 7.1(a)(2) place an affirmative obligation on

Montgomery Partners to work with John Hancock "in good faith" in order to identify and

resolve those concerns "without court action." Montgomery Partners did not do so. Rather,

prior to filing its Motion, Montgomery Partners steadfastly refused to disclose what

information it believed "was missing or where testimony was incomplete" so that John

Hancock could address the Defendants' valid concerns, if any. It also delayed filing its Motion

and led John Hancock to believe, until just before the Motion was filed, that a satisfactory

accommodation of the Defendants' alleged concerns had been reached. Such conduct does not

comply with the requirements of Fed. R. Civ. P. 37(a)(2)(B) and L.R. 7.1(a)(2), and smacks

more of a tactical ploy than a legitimate discovery dispute. *See, e.g.,* Hasbro, Inc. v.

Serafino, 168 F.R.D. 99, 101 (D. Mass. 1996) (denying defendant's motion to compel where

"[i]t appears from the documents of record, that counsel has been conferring about the

document request and had not yet reached an impasse in the discussions before the motion was

filed -- at least as far as Plaintiff was aware."). John Hancock respectfully submits that the

Court should reconsider and deny Montgomery Partners' Motion, and rescind the March 30

Order, as a consequence.

III.    MONTGOMERY PARTNERS' MOTION SHOULD BE RECONSIDERED AND
        DENIED BECAUSE JOHN HANCOCK DID NOT DISREGARD A PRIOR COURT
        ORDER THAT DISCOVERY BE HAD AND DID NOT HAVE AN OPPORTUNITY
        TO BE HEARD BEFORE THE MARCH 30 ORDER ENTERED.

In addition to being rejected as factually inaccurate, Montgomery Partners' Motion

deserves to be reconsidered and denied because it is legally and procedurally improper.

Montgomery Partners argued in its Motion that John Hancock had "committed such a thorough

disregard of Rule 30(b)(6) that it was tantamount to John Hancock refusing to appear at the

depositions" for purposes of Rule 37(d), and that the Court therefore was free to make "such

orders in regard to the failure as are just." Defendants' Memo in Support at 10. Once again,

Montgomery Partners is wrong. It is the law of this Circuit that "'failure to appear' for a

deposition is strictly construed and Rule 37(d) sanctions apply only when a deponent 'literally

fails to show up for a deposition session.'" R.W. International Corp. v. Welch Foods, Inc.,

937 F.2d 11, 15 n.2 (1st Cir. 1991). This rule is not limited to the First Circuit. See, e.g.,

Aziz v. Wright, 34 F.3d 587, 589 (8th Cir. 1994) ("We agree with our sister circuits that

Rule 37(d) should be strictly construed"); SEC v. Research Automation Corp., 521 F.2d 585,

589 (2d Cir. 1975) ("Where a defendant does in fact appear physically for the taking of his

deposition but refuses to cooperate by being sworn and by testifying, the proper procedure is to

first obtain an order from the court, as authorized by Rule 37(a), directing him to be sworn and

testify . . . Since [the witness] did in fact appear for the taking of his deposition, Rule 37(d)

could not properly be invoked in this case to grant a default judgment against him."); Stevens

v. Greyhound Lines, Inc., 710 F.2d 1224, 1228 (7th Cir. 1983) ("We believe that the term

appear as used in Rule 37(d) must be strictly construed, limiting it to the case where a

defendant literally fails to show up....") (internal quotations omitted).

-18-

It also is the law of this Circuit that the language of Rule 37 otherwise "clearly requires two things as conditions precedent to engaging the gears of the rule's sanction machinery: a court order must be in effect, and then must be violated, before the enumerated sections can be imposed." Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico, 248 F.3d 29, 33 (1st Cir. 2001) (quoting R.W. International, supra); see also In re Williams, 156 F.3d 86, 89 n.1 (1st Cir. 1998) ("Sanctions under Rule 37(b)(2) may not be levied without the issuance, and subsequent violation, of a formal order under Rule 37(a).").

Finally, it is the law of this Circuit that court sanctions "should not be assessed lightly or without fair notice and an opportunity for hearing on the record." In re Cordova Gonzales, 726 F.2d 16, 20 (1st Cir. 1984) (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 766-67 (1979)) (internal quotations omitted).

In this case, none of the foregoing procedural requirements had been met before the Court allowed Montgomery Partners' Motion and issued the March 30 Order sanctioning John Hancock for allegedly failing to comply with its obligations under Rule 30(b)(6). It is undisputed that John Hancock actually produced knowledgeable witnesses in response to each of the subject areas set out in the Defendants' Rule 30(b)(6) Notice of Deposition. It also is undisputed that Montgomery Partners did not previously seek, and the Court did not previously enter, an order under Rule 37(a) addressing John Hancock's alleged non-compliance with Rule 30(b)(6). Lastly, it is undisputed that John Hancock had no opportunity to be heard before the Court issued the March 30 Order. In the circumstances, John Hancock respectfully submits that there was no reason or legal basis for the Court to impose sanctions on Hancock for an alleged failure to appear that did not actually occur, which the Court had not previously ordered Hancock to correct, or that Hancock was not given the opportunity to address

-19-

beforehand.  Accordingly, John Hancock requests that the Defendants' Motion be reconsidered and denied, and the March 30 Order be rescinded.

## Conclusion

For the foregoing reasons, John Hancock respectfully submits that this Motion to Reconsider should be granted, that the Defendants' Motion should be denied in its entirety, and that the March 30 Order should be rescinded.  Alternatively, John Hancock submits that the March 30 Order should be rescinded, and Montgomery Partners should be ordered to comply with Fed. R. Civ. P. 37(a)(2)(B) and L.R. 7.1(A)(2) and provide John Hancock with information sufficient to allow Hancock to identify and produce additional Rule 30(b)(6) witnesses and/or testimony, as necessary.

JOHN HANCOCK LIFE INSURANCE COMPANY

By its attorneys,

/s/ Brian A. Davis
Brian A. Davis (BBO No. 546462)
Paul D. Popeo (BBO No. 567727)
Meghan L. Rhatigan (BBO No. 663039)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tele: 617-248-5000
Fax: 617-248-4000

Date:  April 7, 2006

4066779.3

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 7, 2006.

_/s/ Brian A. Davis_
Brian A. Davis