UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> VESTMONT LIMITED PARTNERSHIP, <br> VESTMONT LIMITED PARTNERSHIP II, <br> VESTMONT LIMITED PARTNERSHIP III, <br> and VESTERRA CORPORATION d/b/a <br> MONTGOMERY SQUARE PARTNERSHIP, <br><br> Defendants/Counterclaim Plaintiffs. | CIVIL ACTION NO. 05-11614-WGY |

### PLAINTIFF JOHN HANCOCK'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM FOR FRAUD UNDER PENNSYLVANIA LAW

Plaintiff John Hancock Life Insurance Company ("John Hancock" or "Hancock") respectfully submits this memorandum of law in support of its Motion to Dismiss to dismiss Count VII of the Second Amended Counterclaim of defendants Vestmont Limited Partnership, *et al.* (collectively, "Montgomery Partners" or "Defendants") Second Amended Counterclaim alleging "Pennsylvania Common Law Fraud - Intentional Non-Disclosure" (the "Pennsylvania Fraud Claim"), filed pursuant to Fed. R. Civ. P. 12(b)(6). Montgomery Partners' Pennsylvania Fraud Claim alleges that John Hancock committed fraud in violation of Pennsylvania law *in the performance* of the parties' written loan agreement by surreptitiously adding an additional, undisclosed loan disbursement requirement (*i.e.*, the 10% Constant

benchmark) that Montgomery Partners purportedly could not meet. Montgomery Partners' prior counterclaim alleging fraud *in the inducement* of the loan agreement was dismissed by the Court on March 20, 2006. Defendants also cannot prevail on their Pennsylvania Fraud Claim as a matter of law, however, because the Commonwealth of Pennsylvania does not recognize claims for fraud in the performance of a contract. Under Pennsylvania law, claims or counterclaims for fraud in the performance of a contract are barred by the "gist of the action" doctrine, which precludes a party from re-casting an ordinary breach of contract dispute involving the performance (or non-performance) of contractual duties as a tort claim. eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 16, 20 (Pa. Super. 2002); Williams v. Hilton Group PLC, 93 Fed. Appx. 384, 385 (3d Cir. 2004) (same). Where, as here, the claim for fraud arises from, and is collateral to, the parties' contract, it is barred as a matter of law. *Id.*

Montgomery Partners' Pennsylvania Fraud Claim also fails to state a claim upon which relief can be granted because this Court already has determined, as a matter of law and notwithstanding the Defendants' continued assertions to the contrary, that the "10% Constant benchmark was never incorporated into the terms of the Loan Application...." Memorandum and Order, dated March 20, 2006, at 2. Defendants are bound by that determination.

For these reasons, which are discussed in greater detail below, the Defendants' Pennsylvania Fraud Claim should be dismissed for failure to state a claim upon which relief can be granted.

## Facts And Procedural History

John Hancock instituted this litigation on August 3, 2006, to enforce the terms of an unambiguous contract with Montgomery Partners, pursuant to which Montgomery Partners obligated itself either to borrow $32 million from Hancock on or before August 1, 2005, or to

pay "all ... damages, losses, costs and expenses suffered or incurred by John Hancock" as a result of their failure to close the loan (the "Loan Commitment"). Montgomery Partners initially defended this action on the ground that the parties' 70-page Loan Commitment is totally "illusory" and unenforceable because it makes a loan closing dependent upon the fulfillment of certain conditions to John Hancock's "satisfaction," including, without limitation, the delivery of satisfactory environmental and financial assurances. Montgomery Partners advanced this argument despite the undisputed facts that: (a) the Defendants never made any effort to close the loan, and (b) John Hancock never actually exercised its discretion to deny or reject anything under any of the discretionary provisions cited by Montgomery Partners. Defendants also asserted a variety of counterclaims against John Hancock for declaratory judgment, unjust enrichment, money had and received, and conversion, all based upon the proposition that the Loan Commitment is "illusory" and "non-binding." Defendants' Answer and Counterclaim, ¶ 16.

On February 16, 2006, Defendants filed, with leave of Court, an Amended Counterclaim in which they asserted, for the first time, that John Hancock had fraudulently "induce[d] [Montgomery Partners] to sign the Loan Application and pay the Processing Fee, Application Fee, and Commitment Fee" by purportedly "not disclosing that the 10% breakeven or constant requirement was an additional condition" of the Loan Commitment. Amended Counterclaim, ¶ 51 (Count V, "Common Law Fraud and Deceit"). The Court subsequently dismissed Montgomery Partners' fraud in the inducement counterclaim on summary judgment on March 20, 2006, holding that,

> [a]ssuming facts in favor of [Montgomery Partners], the timing of events raises no issue of material fact as to whether a

>misrepresentation occurred prior to [Montgomery Partners'] decision to submit its Loan Application to Hancock.

Memorandum and Order, dated March 20, 2006 ("March 20 Order"), at 3. The Court further held, as a matter of law, that: (a) "there exists a valid contract between [Montgomery Partners] and Hancock formed on August 17, 2004"; (b) "[t]he 10% Constant benchmark was never incorporated into the terms of the Loan Application"; and (c) the only unresolved issue with respect to John Hancock's principal claim for breach of contract is "whether Hancock was ready, willing and able to perform under the contract" according to its terms. *Id.* at 2.

Undaunted, Montgomery Partners filed a Motion for Leave to File a Second Amended Counterclaim on March 22, 2006, asserting, again for the first time, that John Hancock had committed fraud under Pennsylvania common law *in the performance* of the Loan Commitment. The Court allowed Montgomery Partners' request for leave to assert a fraud claim under Pennsylvania common law on March 29, 2006, although in doing so the Court expressly stated that "this claim may well be vulnerable to a motion to dismiss." Electronic Order, dated March 29, 2006.

Montgomery Partners filed its Second Amended Counterclaim on April 3, 2006. Count VII of that Second Amended Counterclaim asserts a claim for "Pennsylvania Common Law Fraud - Intentional Non-Disclosure." Although the precise basis for the Defendants' new fraud claim is not entirely clear, it appears to be premised on John Hancock's alleged surreptitious imposition, in the terms of the Loan Commitment, of an "additional 10% constant disbursement requirement in order for the Loan to be disbursed," as well as Hancock's alleged misrepresentation that "all of the terms and conditions required for approval and disbursement of the Loan were contained in the Loan Application." Second Amended Counterclaim, ¶¶ 69, 72. Montgomery Partners further alleges that it "justifiably relied upon John Hancock's

disclosures, and on John Hancock's 'acceptance' of the Loan Application without disclosure of the additional 10% constant disbursement requirement," by not taking action after the execution of the Loan Commitment to "rescind[]" that agreement or seek "appropriate relief from this Court in the fall of 2004." *Id.* at 73. It is the Defendants' new counterclaim for common law fraud in the performance of the Loan Commitment that John Hancock now seeks to dismiss.

## Argument

I. THE COURT SHOULD ALLOW JOHN HANCOCK'S MOTION TO DISMISS MONTGOMERY PARTNERS' PENNSYLVANIA FRAUD CLAIM UNDER FED. R. CIV. P. 12(b)(6) BECAUSE PENNSYLVANIA LAW DOES NOT PERMIT CLAIMS FOR FRAUD IN THE PERFORMANCE OF A CONTRACT.

Under the law of the Commonwealth of Pennsylvania, claims or counterclaims for fraud in the performance of a contract (as opposed to claims or counterclaims for fraud *in the inducement* of a contract) asserted in an action for breach of contract are barred by the "gist of the action" doctrine. eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 20 (Pa. Super. 2002). The "gist of the action" doctrine reflects the Pennsylvania courts' recognition that,

> distinct differences between civil actions for tort and contractual breach have been developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals....
> To permit a promisee to sue his promisor in tort for breaches of contract *inter se* would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.

Hart v. Arnold, 884 A.2d 316, 339 (Pa. Super. 2005) (dismissing defendant's counterclaim for fraud in the performance of a contract where the "performance duties arose solely from the

contract between the parties and were created and grounded in the contract itself."). In order to avoid the possibility of such erosion or confusion, the Pennsylvania courts have decided that "a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." Id. at 339-340.

In practice, Pennsylvania's "gist of the action" doctrine provides that, where the "main cause of action" between the parties is breach of contract, any "collateral" fraud claims arising from the performance of the parties' contract are precluded as a matter of law. Id. at 341. Types of "collateral" fraud claims that the courts have dismissed under the "gist of the action" doctrine include claims:

>  (1) arising solely from a contract between the parties;
>  (2) where the 'duties allegedly breached were created and grounded in the contract itself;'
>  (3) where 'the liability stems from a contract;'
>  (4) or where the tort claim 'essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.'

eToll, 811 A.2d at 19 (internal quotations and citations omitted). The critical question in each instance is "whether the fraud concerned the performance of contractual duties." Id. "If so, then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties. If not, then the gist of the action would be the fraud, rather than any contractual relationship between the parties." Id.; see also Metro Auto Sales v. Alfred Stein, Inc., No. Civ.A. 05-4721, 2006 WL 237505 at *3-4 (E.D. Pa., Jan. 30, 2006) (dismissing plaintiff's Pennsylvania law fraudulent misrepresentation claim pursuant to Rule 12(b)(6) because the "gist of the action" was defendants' alleged failure to pay amounts owing under written asset purchase agreement); KSM Assoc., Inc. v. ACS State Healthcare, LLC, No. Civ.A. 05-4118,

2006 WL 847786 at *3-4 (E.D. Pa., March 30, 2006) (dismissing defendant's Pennsylvania law counterclaim alleging fraud in the performance of software development agreement because the "gist of the action" was plaintiff's alleged breach of "its duty to properly perform software developments services and create workable software" for the defendant).

In this case, the parties' respective claims and counterclaims all are grounded upon and arise from the written Loan Commitment that Montgomery Partners and John Hancock signed in the summer of 2004. Hancock's one and only one claim against the Defendants is for breach of that Loan Commitment. Complaint, Count I, ¶¶ 18-22. The apparent "gist" of Montgomery Partners' Pennsylvania Fraud Claim, in turn, is that John Hancock allegedly misrepresented and violated the terms of the same Loan Commitment by imposing an "additional 'disbursement requirement' that required [Montgomery Partners] to satisfy the 10% constant before the Loan would be funded by John Hancock...." Second Amended Counterclaim, ¶ 68. As such, Montgomery Partners' Pennsylvania Fraud Claim indisputably "concern[s] the performance of [Hancock's] contractual duties," is "collateral" to the primary question of whether John Hancock was "ready, willing and able to perform" under the Loan Commitment according to its terms, and therefore is appropriate for dismissal under Pennsylvania's "gist of the action" doctrine. eToll, 811 A.2d at 19; March 20 Order at 2. See also Bishop v. GNC Franchising LLC, 403 F. Supp. 2d 411, 417 (W.D. Pa. 2005) (dismissing Pennsylvania fraud claim pursuant to Rule 12(b)(6) on basis of "gist of the action" doctrine, and noting that "[a]dding the words 'falsely' and 'negligently' to the representations made in the course of reaching an agreement does not convert what is essentially a breach of contract action into a fraud or negligence claim.") (emphasis added).

II.  **THE COURT SHOULD ALLOW JOHN HANCOCK'S MOTION TO DISMISS MONTGOMERY PARTNERS' PENNSYLVANIA FRAUD CLAIM UNDER FED. R. CIV. P. 12(b)(6) BECAUSE THIS COURT ALREADY HAS DETERMINED, AS A MATTER OF LAW, THAT THE 10% CONSTANT BENCHMARK WAS NEVER INCORPORATED INTO THE TERMS OF THE LOAN COMMITMENT.**

Montgomery Partners' Pennsylvania Fraud Claim should be dismissed for the further reason that it explicitly presumes, incorrectly, that John Hancock unilaterally and surreptitiously added an additional, undisclosed loan disbursement condition to the Loan Commitment (*i.e.*, the 10% Constant benchmark) that Montgomery Partners purportedly could not meet.  *See, e.g.*, Second Amended Counterclaim, ¶ 68 ("John Hancock imposed the additional 'disbursement requirement' that required [Montgomery Partners] to satisfy the 10% constant before the Loan would be funded by John Hancock" with knowledge that Montgomery Partners' "projections showed that it would not satisfy the 10% constant requirement.").  This Court already has held, however, that "the 10% Constant benchmark was never incorporated into the terms of the Loan Application...." March 20 Order at 2. Montgomery Partners is bound by that determination and cannot re-litigate the issue of whether Hancock added the 10% Constant benchmark as an additional condition to the Loan Commitment in the context of its Pennsylvania Fraud Claim.  *See, e.g.*, <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); <u>Flibotte v. Pennsylvania Truck Lines, Inc.</u>, 131 F.3d 21, 25 (1st Cir. 1997) ("unless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation").

## Conclusion

For the foregoing reasons, John Hancock respectfully requests that this Court dismiss Count VII of the Defendants' Second Amended Counterclaim alleging "Pennsylvania Common Law Fraud - Intentional Non-Disclosure" in its entirety.

JOHN HANCOCK LIFE INSURANCE COMPANY

By its attorneys,

/s/ Brian A. Davis
Brian A. Davis (BBO No. 546462)
Paul D. Popeo (BBO No. 567727)
Elizabeth A. Castellani (BBO No. 663818)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tele: 617-248-5000
Fax: 617-248-4000

Date: April 11, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 11, 2006.

/s/ Brian A. Davis
Brian A. Davis

4066489.2