UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, | : : : : |
| Plaintiff, | : : Civil Action No. 05-11614 WGY |
| v. | : : |
| VESTMONT LIMITED PARTNERSHIP, et al., | : : : |
| Defendants. | : : |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
THE MOTION OF PLAINTIFF JOHN HANCOCK LIFE INSURANCE COMPANY
<u>TO DISMISS COUNTERCLAIM COUNT VII</u>**

**PRELIMINARY STATEMENT**

John Hancock's motion to dismiss Vesterra's counterclaim for common law fraud is based on the erroneous assertion that this count solely alleges "fraud in the performance of a contract" and is barred by the "gist of the action" doctrine. Although John Hancock's claim against Vesterra may be for breach of contract, the "gist" of Vesterra's Second Amended Counterclaim -- the pleading at issue here -- is clearly deceit and misrepresentation on the part of John Hancock. Indeed, Vesterra does not even plead a claim for breach of contract against John Hancock.

To begin with, it is important to keep in mind the three separate time periods during which John Hancock committed fraud:

> **Time Period 1**: **Prior to July 30, 2004**, during which time John Hancock drafted and negotiated with Vesterra the terms of the Loan Application, culminating in the transmission by John Hancock on July 29 of a Loan Application which it represented was to be approved by John Hancock after execution and delivery by Vesterra with the requisite non-refundable $5,000 processing fee and arrangements for letters of credit for the refundable $640,000 application fee and the refundable $320,000 commitment fee.
>
> **Time Period 2**: **July 30, 2004 - August 17, 2004**, during which time John Hancock "locked" the interest rate for the loan, if approved, and subjected the Loan Application to review and evaluation, and during which time John Hancock secretly added a new loan sizing requirement -- the 10% Constant -- separate from the conditions in the Loan Application, without disclosing the new requirement Vesterra.
>
> **Time Period 3**: **After August 17, 2004,** the date that John Hancock countersigned and returned to Vesterra the Loan Application, which then became its Commitment, and also executed its <u>internal</u> approval document, which specified the terms under which it would actually disburse loan proceeds to Vesterra -- which differed in material terms from the terms Vesterra and John Hancock agreed to in the Loan Application.

This Court previously has dismissed Vesterra's claim of fraud in the inducement of <u>Vesterra's</u> signing and delivery of the Loan Application, in Time Period 1, on the basis that John Hancock's alleged misrepresentations came after Vesterra signed the Loan Application and delivered it to John Hancock. In Vesterra's Second Amended Counterclaim, Counterclaim Count VII alleges

fraud by John Hancock during (a) Time Period 2, (<u>before</u> John Hancock countersigned, and thereby "accepted," the Loan Application and the contract was formed) when Vesterra could have cancelled, withdrawn or rescinded its offer, forfeiting the $5,000 processing fee only, and (b) Time Period 3, when Vesterra, had it known of the new disbursement requirements contained in the approval document, could have sought rescission of any agreement long before John Hancock drew down the letters of credit.

John Hancock only addresses the last of these time periods in its motion to dismiss, and even there its "gist of the action" argument is misplaced. Thus, John Hancock does not provide any basis to dismiss the allegation of fraud during the time that it added the 10% Constant as an additional, undisclosed condition for disbursement of the loan. At this time, prior to its "acceptance" of the Loan Application, John Hancock drafted an amendment to the Loan Application disclosing the 10% Constant, but determined that Vesterra would not have accepted such an amendment and would have withdrawn its Loan Application and its fees and sought to borrow elsewhere.

The particularized facts alleged in the Second Amended Counterclaim allege that <u>prior to the time and at the time it countersigned the Loan Application, John Hancock had an undisclosed, present intent not to abide by its terms, which states a claim for common law fraud under Pennsylvania law.</u> Accordingly, John Hancock's motion to dismiss for failure to state a claim should be denied.

## **INTRODUCTION**

Among the facts that have emerged during discovery, one stands out: *after* John Hancock delivered to Vesterra the Loan Application -- with the representation that this Application, with its many specific terms and conditions, was the Application that John Hancock

2

would undertake to review and approve -- and *after* Vesterra signed and delivered this Loan Application to John Hancock, but *before* John Hancock countersigned the Loan Application and thereby purported to make its Commitment, John Hancock secretly added a new disbursement requirement internally, and secretly modified the financial projections submitted by Vesterra as part of the Loan Application.  Although these two significant additions were made part of John Hancock's internal approval document, they were not made known to Vesterra for deceitful reasons.

Thus, *before* any contract was formed, as part of its internal approval process, John Hancock added a new requirement for sizing the Loan sought by Vesterra.  Specifically, John Hancock countersigned and returned the Loan Application only after deciding internally that a new, undisclosed "Disbursement Requirement" -- the 10% Constant (or 10% Breakeven) requirement -- would apply to the loan.  Thus, John Hancock's clear intent, beginning on August 10 when it internally imposed this 10% Constant as a "disbursement <u>requirement</u>" (emphasis added) before it countersigned the Loan Application, was to size the Loan subject to an undisclosed internal funding requirement which would have resulted in a loan that was smaller than the amount sought by Vesterra.  Because the financial projections submitted by Vesterra as part of the Loan Application showed that it would *not* meet the 10% Constant for the requested $32 million loan, John Hancock personnel -- also without seeking or obtaining Vesterra's approval -- manipulated these projections to gain internal approval of the Loan Application.  This was done to avoid losing the opportunity to make the Loan to Vesterra, as well as to avoid hedge losses and to retain the fees Vesterra would pay for the $32 million loan.

Also during this same time period -- between Vesterra's signing the Loan Application and John Hancock's countersigning it -- John Hancock determined definitively, and thus

concluded, that if it informed Vesterra of the new 10% Constant requirement for sizing the loan at disbursement, this would be a "deal killer." Accordingly, John Hancock deliberately misrepresented its intent regarding disbursement by failing to disclose its additional requirement that Vesterra meet the 10% Constant funding requirement. Instead, it proceeded to countersign and deliver the Loan Application while concealing from Vesterra its internally documented and undisclosed decision to add this hurdle for actual sizing of the Loan.

If, before John Hancock had countersigned the Loan Application, John Hancock had informed Vesterra of its intention to apply the 10% Constant disbursement requirement, at that time Vesterra could have (and in John Hancock's sworn estimation would have) rescinded its offer -- the Loan Application. It is undisputed that no contract was formed before John Hancock countersigned the Loan Application. Accordingly, by rescinding its offer at that time, Vesterra would have retained its $960,000 in application and commitment fees. Furthermore, had John Hancock not continued to conceal from Vesterra this added requirement for actually sizing the $32 million Loan, Vesterra could have and would have sought rescission of any contract formed by John Hancock's "acceptance" of the Loan Application well before John Hancock accused Vesterra of non-performance and drew down Vesterra's $960,000 from the Letters of Credit.

## STATEMENT OF RELEVANT FACTS

In addition to the facts alleged in the Second Amended Counterclaim (and all reasonable inferences based thereon), for the Court's convenience Vesterra is filing herewith a Declaration of Brian J. McCormick, Jr., which has attached to it some of the documents and testimony showing that the allegations in Counterclaim Count VII will be supported by admissible evidence at trial.

4

I.      **Vesterra's Negotiation of the Loan Application with John Hancock**

This lawsuit concerns an application for a $32 million loan entitled "Application to John Hancock Life Insurance Company for a First Mortgage Loan" (the "Loan Application") submitted by Defendants/Counterclaim Plaintiffs (collectively, "Defendants" or "Vesterra") to Plaintiff John Hancock Life Insurance Company ("John Hancock").  (2d Am. Countercl. ¶¶ 2-6, 9.)  John Hancock drafted the Loan Application and negotiated its terms with Vesterra in 2004.  (*Id.* at ¶ 9.)  Thus, following these negotiations, on July 29, when John Hancock submitted the Loan Application to Vesterra for its signature, John Hancock represented that the terms and conditions contained therein were the terms that would apply to Vesterra's application for a mortgage loan if John Hancock accepted the application (unless, of course, John Hancock came back to Vesterra with further proposed amendments).  (*See* McCormick Decl., ¶ 3.)

On July 30, 2004, Vesterra signed in Pennsylvania a copy of the Loan Application, as it had been delivered by John Hancock, and submitted it to John Hancock's representative in Pennsylvania.  (*Id.* at ¶ 11.)  Vesterra also provided John Hancock with fees pursuant to the Loan Application totaling $965,000 by delivering the financial instruments to John Hancock's representative in Pennsylvania.  (*Id.* at ¶¶ 14-16.)

The Loan Application, as signed by Vesterra, contained specific terms and conditions as to the requirements for the loan, and also specific borrower-provided financial projections.  For example, the Loan Application includes such specific requirements as the loan-to-value ratio (condition 14) and minimum annual rent and a debt service coverage ratio (condition 16); it also specifies rental amounts, ratios, reserves, net operating income, and minimum occupancy, which with other conditions set forth are defined as the "Funding Conditions" (condition 49).  (2d Am. Countercl. ¶ 23.)  The Loan Application represents that if, after acceptance by John Hancock, the

5

terms and conditions therein (including the "Funding Conditions") were met by Vesterra, then John Hancock would fund the Loan to Vesterra. (*Id.* at ¶ 24.)

## II. John Hancock's Non-Disclosure of the Additional 10% Constant Requirement for Disbursement and Manipulated Financial Projections

Once the Loan Application was submitted by Vesterra, John Hancock's internal approval process began. The deposition testimony of a John Hancock employee and John Hancock's internal documents demonstrate that on August 10, a John Hancock supervisor, Mr. Ivor Thomas, hand-wrote an additional requirement for disbursement of the loan to Vesterra that was not contained in the Loan Application. (2d Am. Countercl. ¶¶ 25, 27-28.) (*See also* McCormick Decl., ¶¶ 4-5.)

The insistence upon that additional requirement set into motion a series of undisputed actions and decisions on the part of John Hancock which constitute classic fraud. At one point John Hancock even prepared an amended loan application, presumably (it has not been produced in this litigation on the grounds of the attorney client privilege) containing this additional requirement. However, John Hancock came to conclude that Vesterra would reject any inclusion of the 10% Constant requirement, principally because it would reduce the amount of the loan available from John Hancock, and would seek to borrow elsewhere. Consequently, John Hancock decided to approve the disbursement of the loan subject to this additional disbursement requirement, but without disclosing this fact to Vesterra. All of this is undisputed documentary and testimonial fact. (*See* McCormick Decl., ¶¶ 7-9, 14-15.)

Indeed, the John Hancock internal approval document, under the heading "Specific Conditions," identifies the following "Disbursement Requirements": "Rents of at least $4,221,126 plus other income of $284,114 and a minimum NCF DSCR of 1.25:1 and **10% breakeven** according to underwriting herein, with the possibility of a Rental Achievement

6

Reserve subject to 75% LTV and 1.25:1 DSCR as described in commitment." (*Id.* at ¶ 28.) (Emphasis added.) While all of the other terms contained in the approval documents were also explicitly spelled out in the Loan Application, the "10% breakeven" requirement was not included as a term or condition in the Loan Application and was never communicated to Vesterra as a requirement for obtaining the loan. (*Id.*)

Based on the figures and projections submitted by Vesterra to John Hancock, John Hancock knew that Vesterra would not meet this additional requirement for disbursement of the $32 million Loan, and so unilaterally altered the financial projections. (2d Am. Countercl. ¶¶ 30, 68.) Fearing revocation of the Loan Application, John Hancock deliberately failed to disclose its intent to condition disbursement of the loan upon the undisclosed 10% Constant requirement in addition to the requirements in the Loan Application before it countersigned the Loan Application. (*Id.* at ¶¶ 69-70.)

### III. Vesterra's Reliance on the Non-Disclosure

Indeed, had Vesterra learned that John Hancock intended not to disburse the loan or to only partially disburse the loan unless Vesterra's figures satisfied the concealed 10% Constant requirement at the time of the closing, Vesterra would have cancelled or revoked the Loan Application before John Hancock countersigned it. John Hancock would thereby have been forced to return Vesterra's fees totaling $960,000. (2d Am. Countercl. ¶¶ 70, 73.)

Instead, Vesterra reasonably relied upon the representation contained in the transmittal of the Loan Application, in which John Hancock promised to review and approve the Loan Application as delivered by John Hancock to Vesterra. John Hancock made it clear that there would be no other conditions on funding the loan other than contained in the Loan Application unless Vesterra was so informed. This, in conjunction with the comprehensiveness and

7

specificity of the Loan Application, prevented any understanding by Vesterra that John Hancock intended to condition disbursement of the loan on undisclosed terms or requirements.

Vesterra had no way to learn of John Hancock's undisclosed intention to size the loan by applying an undisclosed disbursement requirement, and Vesterra lost its opportunity to make an informed decision to revoke the Loan Application before John Hancock countersigned it, and to seek rescission of the signed agreement in the fall of 2004 after John Hancock had countersigned and returned the Loan Application but before John Hancock could draw down the letters of credit or accuse Vesterra of breach. Accordingly, Vesterra reasonably relied on John Hancock's non-disclosure and suffered injury as a result.

## **ARGUMENT**

### I.     The Standard for a Motion to Dismiss

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts "must accept as true the factual allegations of the [pleading] and draw all reasonable inferences in favor of [the party bringing the claims]," and dismissal is only appropriate if "under the facts alleged, the [party bringing the claims] cannot recover on any viable theory." *Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir. 2001) (quotations omitted). A court may dismiss a complaint or counterclaim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citation omitted).

As explained below, accepting the allegations in the Second Amended Counterclaim as true and drawing all favorable inferences flowing from those facts in favor of the Counterclaim Plaintiffs, Vesterra's Counterclaim for fraud states a valid cause of action and John Hancock's motion to dismiss should be denied.

8

**II.     Vesterra Has Alleged All of the Necessary Elements in Its Claim for Common Law Fraud by Non-Disclosure under Pennsylvania Law**

Vesterra's Second Amended Counterclaim alleges all of the elements of a claim for fraud by non-disclosure. In fact, John Hancock does not appear to argue otherwise, as it bases its motion to dismiss on the "gist of the action" doctrine (addressed below). "The tort of intentional non-disclosure has the same elements as the tort of intentional misrepresentation except that in the case of intentional non-disclosure the party intentionally conceals a material fact rather than making an affirmative misrepresentation." *Gibbs v. Ernst*, 538 Pa. 193, 208 n.12 (Pa. 1994). Those elements are the following:

(1) a representation

- John Hancock's promise to review and approve the Loan Application as signed by Vesterra, and its non-disclosure of the fact that, as of August 10, 2004, John Hancock knew that it would not disburse the Loan pursuant to the terms of the Loan Application but instead would also apply the 10% Constant requirement;

(2) which is material to the transaction at hand

- John Hancock knew that disclosure of the 10% Constant was a "deal killer" as it resulted in sizing the loan at an amount less than that which Vesterra sought;

(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false

- John Hancock knew Vesterra believed the approval was of its Loan Application <u>without</u> any additional disbursement requirements unknown to Vesterra;

(4) with the intent of misleading another into relying on it

- John Hancock knew that Vesterra would have gone elsewhere had it known of the 10% Constant and was relying on the Loan being approved without additional undisclosed conditions;

(5) justifiable reliance on the misrepresentation

- Vesterra had no reason to believe John Hancock would approve the Loan Application with the then-present intent not to comply with the terms of the Loan Application but would instead secretly add a new requirement; and

(6) the resulting injury was proximately caused by the reliance

9

- Vesterra lost its ability to seek a loan elsewhere and to have returned its $960,000 in fees.

*Overall v. University of Pennsylvania*, 412 F.3d 492, 498 (3d Cir. 2005).

The first two elements -- that John Hancock made a material misrepresentation -- are satisfied by the allegation of the material nondisclosure. "The deliberate nondisclosure of a material fact amounts to culpable misrepresentation no less than does an intentional affirmation of a material falsity." *Neuman v. Corn Exchange Nat. Bank & Trust Co.*, 356 Pa. 442, 451 (Pa. 1947). Accordingly, John Hancock made a culpable misrepresentation when it intentionally failed to disclose two material facts: John Hancock's new 10% Constant requirement for disbursement of the loan and its manipulation of the financial projections, submitted by Vesterra and made a part of the Loan Application, in order to "meet" the 10% Constant requirement. (2d Am. Countercl. ¶¶ 68-70.) In fact, prior to countersigning the Loan Application, John Hancock had the intent to require satisfaction of the 10% Constant requirement before it would fully disburse the loan, but did not disclose this intent to Vesterra. "A statement of present intention which is false when uttered may constitute a fraudulent misrepresentation of fact." *Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Investments,* 951 F.2d 1399, 1410 (3d Cir. 1991) (quoting *Brentwater Homes, Inc. v. Weibley*, 369 A.2d 1172, 1175 (Pa. 1977)); *see also Manning v. Temple University*, No. Civ.A. 03-4012, 2004 WL 3019230, *11 (E.D. Pa. Dec. 30, 2004); *Pobad Assocs. v. Albert Einstein Healthcare Network*, 2002 WL 377655, *2 (Pa. Com. Pl. Feb. 4, 2002).

John Hancock's misrepresentation by non-disclosure was material to the transaction at hand. If John Hancock had disclosed the 10% Constant requirement and the manipulated financial projections before it countersigned the Loan Application on August 17, Vesterra would not have kept its offer open, but would have revoked it before John Hancock countersigned. Not

10

only does Vesterra allege that it would have rescinded the Loan Application if it had learned of the 10% Constant requirement, but this is also the only reasonable inference from the undisputed fact that Vesterra would never have signed a Loan Application in the first place that included a 10% Constant requirement as an added disbursement requirement (2d Am. Countercl. ¶ 32), which John Hancock knew would be a "deal killer."

The third and fourth elements -- that the misrepresentation was made with knowledge of its falsehood or recklessness as to its truth or falsehood and with the intent of misleading Vesterra to rely on the nondisclosure -- are also alleged in the Counterclaim. (2d Am. Countercl. ¶¶ 25, 69-70.) Finally, the fifth and sixth elements -- that Vesterra justifiably relied on the misrepresentation and that the resulting injury was proximately caused by the reliance -- are also pleaded in Count VII. (2d Am. Countercl. ¶¶ 72-74.)

It is a fundamental rule of contract law that a party can revoke its offer at any time before acceptance. *Onanian v. Leggat*, 2 Mass. App. Ct. 623, 630 (Mass. App. Ct. 1974) (recognizing the "fundamental rule that an unaccepted offer may be withdrawn or rejected at any time before acceptance . . ."). Because there was no contract until August 17, 2004, when John Hancock countersigned the Loan Application, Vesterra could have revoked the Loan Application any time before that date. As a result of John Hancock's intentional non-disclosure of the fact that the 10% Constant had been added as a disbursement requirement on August 10, and Vesterra's justifiable reliance, Vesterra lost the opportunity to revoke the Loan Application before August 17, 2004 and reclaim its Application and Commitment Fees. *See* Restatement (Second) of Contracts § 167, comment a. ("[R]eliance will usually consist of his acceptance, as an affirmative act, <u>but may also consist of his refraining from revoking an outstanding offer</u>.") (Emphasis added.) John Hancock's continued non-disclosure was the cause of Vesterra's losing

11

the opportunity to seek rescission of the contract at an early date, before John Hancock had drawn on the letters of credit, and before John Hancock could accuse it of breach of the contract.

Thus, Count VII of the Second Amended Counterclaim alleges facts that, when accepted as true, and all reasonable inferences are drawn in Vesterra's favor, support its cause of action for common law fraud.

### III. John Hancock's "Gist of the Action" Argument Does Nor Bar Vesterra's Common Law Fraud Claim

#### A. The "Gist of the Action" Doctrine Does Not Bar Vesterra's Fraud Claim Because the "Gist" of Vesterra's Action against John Hancock is Fraud, Not Breach of Contract

John Hancock argues that the "gist of the action" doctrine bars Vesterra's Pennsylvania common law fraud claim. John Hancock is wrong, for several different reasons.

First, this doctrine only bars fraud claims where the "gist" of the action is breach of contract as opposed to tort, so that the fraud claim is "merely collateral to a contact claim for breach of [contractual] duties." *Etoll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 19 (Pa. Super. 2002). Further, as John Hancock points out, the doctrine bars fraud claims where the fraud "concerned the performance of contractual duties." *Id.*

While it is true that the "gist" of John Hancock's claim against Vesterra is for breach of contract, that is not the case for Vesterra's counterclaim against John Hancock. The remaining counts in the Second Amended Counterclaim (after this Court's ruling of March 20, 2006) are heavily weighted towards deceit (Count VI) and fraud (Count VII). The fact that John Hancock's claim sounds in contract cannot deprive Vesterra of the right to bring its own legal action based on its own legal theories. Vesterra does not allege that John Hancock breached the Loan Application, or committed fraud in the performance of the contract, but rather alleges that John Hancock failed to disclose the added 10% Constant disbursement requirement, and thus

12

induced Vesterra not to cancel the Loan Application before August 17, 2004, and to continue in the contractual relationship after August 17, 2004. Because the "gist" of <u>Vesterra's</u> claim is fraud and deceit, the "gist of the action" doctrine does not bar Vesterra's fraud claim. *See, e.g., Taylor v. Creditel Corp.*, No. 04-CV-2702, 2004 WL 2884208, *8 (E.D. Pa. Dec. 13, 2004) ("Although Plaintiff's claims are related to contractual agreements, the heart of this action involves alleged fraudulent misrepresentations by [Defendant] . . . .")

### B. In Any Case, the "Gist of the Action" Doctrine Does Not Bar Vesterra's Fraud Claim For the Time Period between July 30, 2004 and August 17, 2004

John Hancock argues that the "gist of the action" doctrine bars Vesterra's fraud claim because this claim arises from performance of the parties' contract. This is manifestly not the case for this claim as it applies to "Time Period 2" as described above, the time period from July 30 to August 17, 2004 -- after Vesterra had signed the Loan Application and delivered it to John Hancock (making it an "offer"), and before John Hancock had accepted it by countersigning (turning it into a contract). In fact, John Hancock inexplicably fails to address this crucial time period in any way.

It is undisputed that John Hancock added the 10% Constant as a "disbursement requirement" on August 10, 2004.[1] John Hancock's non-disclosure of this material fact before August 17 had nothing to do with performance of a contract, because there was no contract. As alleged in Counterclaim Count VII, "John Hancock knew that disclosure of these facts would result in cancellation of the Loan Application" by Vesterra. (2d Am. Countercl. ¶ 70.) Thus, this is a type of fraud in the inducement. Vesterra does not allege here that John Hancock induced it

---

[1] John Hancock argues that this Court has ruled that the 10% Constant never became part of the contract between the parties. John Hancock Brf., at 8. However, this misses the mark. Vesterra does not argue that this was made a part of the contract, but rather that John Hancock added it as an internal, undisclosed "disbursement requirement" that would have to be met before John Hancock would actually fund the loan.

to sign the Loan Application, but rather that John Hancock induced it not to cancel the "offer" that the Loan Application constituted. *See* Restatement (Second) of Contracts § 167, comment a. It is well recognized that the "gist of the action" doctrine does not bar fraud in the inducement claims, at least where such claims are not duplicative of breach of contract claims and based on contractual duties.

"Many Pennsylvania trial court decisions recognize that the gist of the action doctrine does not bar such a claim [for fraudulent inducement to remain in a contract]." *Owen J. Roberts School District v. HTE, Inc.*, No. Civ.A. 02-7830, 2003 WL 735098, *5 (E.D. Pa. Feb. 28, 2003). "The distinction between fraud in the inducement and fraud in the performance claims with regard to the gist of the action doctrine is crucial. This is because fraud in the inducement claims are much more likely to present cases in which a social policy against the fraud, external to the contractual obligations of the parties, exists." *Air Products & Chemicals, Inc. v. Eaton Metal Products, Inc.*, 256 F. Supp. 2d 329, 341 (E.D. Pa. 2003) (allowing amendment to complaint adding fraud claim based on evidence discovered during discovery). *See also Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 719 (Pa. Super. 2005) (the plaintiff's "tort claims relate to the inducement to contract, they are collateral to the performance of the contracts and therefore, are not barred by the gist-of-the action doctrine"); *Taylor, supra*, 2004 WL 2884208, *7 ("Under [gist of the action] analysis, courts have permitted tort actions to go forward based on fraud in the inducement of a contract, but generally prohibited such actions when the fraud relates to performance under a contract"); *Longview Development LP v. The Great Atlantic & Pacific Tea Co.*, No. Civ.A. 02-7422, 2004 WL 1622032, *3 (E.D. Pa. July 20, 2004) ("[F]raud to induce a person to enter a contract is generally collateral to the terms of the contract itself and

14

implicates society's desire to avoid the fraudulent inducement of contracts. Fraudulent inducement involves more than a mere failure to perform contractual duties . . . .") (citing cases).

As recently as four months ago, the U.S. District Court for the Eastern District of Pennsylvania explained that under Pennsylvania law, a contract is "voidable for fraudulent inducement '[w]here a party is induced to enter into a transaction with another party that he was under no duty to enter into by means of the latter's fraud," and that a "claim for fraud in the inducement may rest on misrepresentation of one's true existing state of mind." *Harold* v. *McGann*, 406 F. Supp. 2d 562 (E.D. Pa. 2005) (citing *College Watercolor Group, Inc. v. Willam H. Newbauer, Inc.*, 360 A.2d 200, 206 (Pa. 1976) (citing Restatement, Contracts, § 476 (1932))). Less than two months ago, the Common Pleas Court of Pennsylvania explained that although "the mere breach of a promise to do something in the future, without more, is not fraud," (citing *eToll, Inc.*, 811 A.2d at 16-17 n.6, "a promise which the promissor had no intention of keeping at the time [s]he made it may be actionable as fraud." *Busy Bee, Inc. v. Wachovia Bank, N.A.*, No. 97 CV 5078, 2006 WL 723487, at *24-25 (Pa. Ct. C.P. Lakawanna County Feb. 28, 2006) (fraudulent intent was established when defendant bank promised to continue to finance plaintiffs' business while the Bank's internal memorandum revealed that at that same time the bank had already decided to terminate the plaintiffs' credit facility.)

There is no suggestion in any cases from the Pennsylvania Supreme Court that Pennsylvania has abandoned this longstanding common-law rule that fraud in the inducement will render a contract voidable, s*ee, e.g., Porreco v. Porreco*, 811 A.2d 566, (Pa. 2002) (setting forth the standard for voiding a contract based upon a fraudulent representation) or that fraud may be established by a party's misrepresentation of its present intent to comply with the terms of an agreement.

15

As explained above, Vesterra has alleged a valid claim for fraud under Pennsylvania common law as to the time period from July 30 to August 17, 2004, and such a claim for fraudulent inducement not to cancel the Loan Application prior to John Hancock's acceptance is not barred by the gist of the action doctrine.

      **C.**    **The "Gist of the Action" Doctrine Also Does Not Bar Vesterra's Fraud Claim For the Time Period after August 17, 2004**

Unlike the preceding time period, it is at least <u>possible</u> that John Hancock's gist of the action argument <u>could</u> apply to this third time period. John Hancock argues that Vesterra's fraud claim is barred because it arises from performance of the parties' contract, and the Court has ruled that a contract existed beginning on August 17. However, Vesterra's claim does not, as John Hancock asserts, concern the performance of John Hancock's contractual duties. Rather, Vesterra alleges that John Hancock committed fraudulent inducement: first, by countersigning the Loan Application with a present intent not to disburse the loan based on the conditions contained therein; and second, John Hancock induced Vesterra to remain in the contractual relationship, and induced Vesterra to *not* seek to rescind the contract, by continuing to conceal the added 10% Constant disbursement requirement.

Not only was fraud committed when John Hancock countersigned the Loan Application with the present intent to fund the loan only if it met the undisclosed disbursement requirement, but the courts have also allowed fraud claims based on fraudulent inducement to <u>remain</u> in a contractual relationship, and have found that such a claim is not barred by the "gist of the action" doctrine. "Courts have generally held that the gist of the action doctrine does *not* apply when the defendant not only breached the contract, but also made misrepresentations about the breach with the intent to deceive the plaintiff, such that the unsuspecting plaintiff continued the contractual relationship or failed to assert its contractual rights against the defendant." *Greater Philadelphia*

16

*Health Services II Corp. v. Complete Care Services, L.P.*, 2000 WL 33711052, *2 (Pa. Com. Pl. Nov. 20, 2000) (citing cases); *see also Roberts School Dist., supra,* 2003 WL 735098, *5 (claim that the defendant fraudulently induced the plaintiff not to terminate the contract was not barred by gist of the action doctrine).

The gist of Vesterra's action against John Hancock is that John Hancock intentionally concealed material facts -- the added 10% Constant disbursement requirement, and the manipulated financial projections -- to induce Vesterra not to revoke the Loan Application before John Hancock countersigned it on August 17, 2004, and that John Hancock continued to conceal these material facts after August 17 to induce Vesterra not to terminate or rescind the contract in the fall of 2004, when John Hancock had not yet drawn upon the letters of credit, and could not accuse Vesterra of any breach of the agreement.

Accordingly. John Hancock's motion should be denied both for the time period July 30 to August 17, 2004, and the time period after August 17, 2004.

17

**CONCLUSION**

For the foregoing reasons, John Hancock's motion to dismiss should be denied.

Respectfully submitted,

 /s/ Robert D. Hillman
Steven J. Brooks (BBO # 059140)
Robert D. Hillman (BBO # 552637)
DEUTSCH WILLIAMS BROOKS
DeRENSIS & HOLLAND, P.C.
99 Summer Street
Boston, MA 02110-1213
Tele.:  617-951-2300

 /s/ Howard D. Scher
Howard D. Scher (admitted *pro hac vice*)
C. Randolph Ross (admitted *pro hac vice*)
Brian J. McCormick, Jr.(admitted *pro hac vice*)
BUCHANAN INGERSOLL PC
1835 Market Street, Floor 14
Philadelphia, PA 19103
Tele.: 215-665-8700

Attorneys for Defendants/Counterclaim Plaintiffs
Vestmont Limited Partnership, Vestmont Limited
Partnership II, Vestmont Limited Partnership III
and Vesterra Corporation

Dated:  April 18, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document has been filed electronically today, was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and is available for viewing and downloading from the ECF system.

Dated:  April 18, 2006

/s/ Brian J. McCormick, Jr.
Brian J. McCormick, Jr. (admitted *pro hac vice*)