UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>VESTMONT LIMITED PARTNERSHIP,<br>VESTMONT LIMITED PARTNERSHIP II,<br>VESTMONT LIMITED PARTNERSHIP III,<br>and VESTERRA CORPORATION d/b/a<br>MONTGOMERY SQUARE PARTNERSHIP,<br><br>Defendants. | CIVIL ACTION NO. 05-11614-WGY<br>(Oral Argument Requested) |

## PLAINTIFF JOHN HANCOCK LIFE INSURANCE COMPANY'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTIVE RELIEF PROHIBITING DEFENDANTS FROM VIOLATING COURT-MANDATED ESCROW AGREEMENT

Plaintiff John Hancock Life Insurance Company ("John Hancock" or "Hancock") hereby moves on an emergency basis, pursuant to Fed. R. Civ. P. 64 and 65, for preliminary injunctive relief prohibiting defendants Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited Partnership III, and Vesterra Corporation d/b/a Montgomery Square Partnership (collectively, "Montgomery Partners" or the "Defendants") from violating the escrow agreement entered into, at the direction of this court, on February 14, 2006. On that date, the court (per the Honorable William G. Young) heard expedited oral argument on plaintiff John Hancock's "Motion for Preliminary Injunctive Relief Prohibiting Defendants

from Disposing of Certain Assets," filed on February 8, 2006. (A true copy of John Hancock's Motion for Preliminary Injunctive Relief is appended to the accompanying Affidavit of Brian A. Davis, Esq., dated April 24, 2006 ("Davis Aff."), as Exhibit A.) At issue at the February 14 preliminary injunction hearing was the Defendants' ability to go forward with the planned sale of their primary marketable asset, a new, 256 unit residential apartment complex known as "Avenel at Montgomery Square" (the "Avenel Apartments"), during the pendency of this action. Davis Aff., ¶ 2. Alternatively, John Hancock sought an order directing Montgomery Partners to place a sufficient amount of funds in an interest-bearing escrow account during the pendency of this action in order to ensure prompt payment of any judgment in favor of John Hancock. Id. (A true copy of the official transcript of the February 14, 2006 preliminary injunction hearing ("Hearing Transcript") is appended to the Davis Aff. as Exhibit B.)

At the February 14 preliminary injunction hearing, the court accelerated the case for trial within the month of April and agreed to postpone its decision on John Hancock's request for injunctive relief until after trial if Montgomery Partners would agree to set aside $5,000,000 of any payments received on account of the Avenel Apartments property for the benefit of John Hancock until trial. Davis Aff., ¶ 3; Hearing Transcript at 4-5. Defendants and their counsel agreed to the court's request and expressly represented that they would do so. Davis Aff., ¶ 3; Hearing Transcript at 8-9. Thereafter, the Clerk's Notes for the February 14 Hearing were recorded on the electronic docket. Davis Aff., ¶ 3 (A true copy of the ECF Notice containing those Clerk's Notes is appended to the Davis Aff. as Exhibit C.) Those Notes specifically state that, in relevant part:

> Motion Hearing held on 2/14/06 re ... MOTION for Preliminary
> Injunction filed by Plaintiff.  Defendant agrees to set aside

> $5,000,000 until the case can be resolved as long as the case goes to trial in April. If the case cannot be tried by then, the court will hold a further hearing on the motion for preliminary injunction.

*Id.*

According to Montgomery Partners, the planned sale of the Avenel Apartments property was scheduled to take place on or about March 15, 2006. Davis Aff., ¶ 4. However, no confirmation of that sale, or of the creation of the required $5,000,000 escrow account, ever has been received from the Defendants by John Hancock. *Id.*

In recent motion practice, John Hancock has succeeded in defeating or dismissing almost all of Montgomery Partners' defenses and counterclaims in this action. Davis Aff., ¶ 5. According to the court's March 20, 2006 Memorandum and Order on summary judgment, the only questioning remaining to resolved with respect to the Defendants' liability to John Hancock is whether Hancock itself was "ready, willing and able to perform" under parties' loan agreement. *Id.* (A true copy of the March 20, 2006 Memorandum and Order is appended to the Davis Aff. as <u>Exhibit D</u>.) John Hancock will have no difficulty meeting that burden at trial. *Id.*

Trial in this case currently is scheduled to commence on May 1, 2006. Davis Aff., ¶ 6. In anticipation of that trial, Brian Davis, counsel for John Hancock recently sent counsel for Montgomery Partners an e-mail message on Sunday, April 23, 2006, requesting that the Defendants either "confirm that Montgomery Square Partnership has not sold or otherwise encumbered the Avenel at Montgomery Square property since the court hearing on Feb. 14, 2006, or, alternatively, provide the bank name and account number in which Montgomery Square Partnership has deposited $5,000,000 as directed by Judge Young on that date." (A true copy of that e-mail message is appended to the Davis Aff. as <u>Exhibit E</u>.) No response to

Mr. Davis' request for information concerning the status of the Avenel Apartments property was received from the Defendants (although they did respond to certain other questions raised in the same message). Davis Aff., ¶ 7. Accordingly, Mr. Davis repeated his request by e-mail later the same day. *Id.* (A true copy of that second e-mail message is appended to the Davis Aff. as <u>Exhibit F</u>.) Again, no response was received from the Defendants. *Id.*

On Monday, April 24, 2006, Mr. Davis sent Defendants' counsel yet another request specifically asking that they inform him whether "Montgomery Square Partnership has sold or otherwise encumbered the Avenel at Montgomery Square property since the court hearing on Feb. 14, 2006, or, alternatively, provide the bank name and account number in which Montgomery Square Partnership has deposited $5,000,000 as directed by Judge Young on that date." Davis Aff., ¶ 8 (A true copy of that e-mail message is appended to the Davis Aff. as <u>Exhibit G</u>.) Finally, Howard Scher, lead counsel for the Defendants, sent the following e-mail message in reply that morning:

> Brian,
>
> Your recollection of the outcome of the preliminary injunction hearing is mistaken. A review of the transcript will show the entire representation made by me and the Court's acceptance of that.
>
> > "And two, I do represent to the
> > 2 Court that if the transaction occurs within that period of
> > 3 time $5 million will be set aside.
> > 4 THE COURT: I accept that as you are an officer of
> > 5 the Court."
>
> I do not believe you have any reason to believe that I have breached my representation to the Court. If I am mistaken, please let me know before you suggest otherwise.
>
> Howard

*Id.* (A true copy of that e-mail message is appended to the Davis Aff. as <u>Exhibit H</u>.)

Upon receiving Mr. Scher's e-mail message, Mr. Davis immediately attempted to reach Mr. Scher to discuss his ambiguous reply and to determine, once and for all, whether Montgomery Partners had disposed of or encumbered the Avenel Apartments property, and the whereabouts of the $5,000,000 that the Defendants had promised to set aside for John Hancock's benefit. Davis Aff., ¶ 9. When Mr. Davis finally reached Mr. Scher by telephone late in the morning of April 24, Mr. Scher repeatedly refused to answer *any questions whatsoever* regarding the status of the property, or to provide any information regarding the location of the $5,000,000 in escrowed funds. *Id.* When Mr. Davis informed Mr. Scher that the only logical assumption to be drawn from his refusal to disclose the requested information was that the Defendants had sold or encumbered the property and failed to set aside the $5,000,000 in violation of the court-mandated agreement, Mr. Scher's sole response was to state "I can't control what you assume." *Id.*

At present, Montgomery Partners and its counsel still refuse to provide any information concerning the current status of the Avenel Apartments property or the whereabouts of the $5,000,000 that they are required to place in escrow. Davis Aff., ¶ 10.

### Specific Relief Requested

John Hancock requests that Montgomery Partners be enjoined from violating the court-mandated escrow agreement reached on February 14, 2006, and that Montgomery Partners be ordered to place immediately $5,000,000 in an identified interest-bearing escrow account with a federally-insured banking institution during the pendency of this action in order to ensure prompt payment of any judgment entered in favor of John Hancock. John Hancock also requests such other and further relief as the court deems appropriate in the circumstances.

**Argument**

I.     THE RELEVANT STANDARD.

Fed. R. Civ. P. 64 grants district courts the power to employ "all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action," including preliminary injunctions, "in the manner provided by the law of the state in which the district court is held." Fed. R. Civ. P. 64. "Thus, although federal law determines the standard for issuing ... an injunction," the federal courts look to state law to "determine[] whether the state law cause of action can support an injunction." John Paul Mitchell Sys. v. Quality King Distrib., Inc., 106 F.Supp.2d 462, 477-78 (S.D.N.Y. 2000) (citations omitted). *See also* Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 158 (1st Cir. 2004) (*citing* Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), and Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc., 527 U.S. 308, 318 n.3 (1999) and commenting that plaintiffs waived, by failing to raise, any argument that "the availability of injunctive relief should be determined, in the first instance, by reference to the tenet that the law of the forum state supplies the rules of decision in diversity cases").

Massachusetts law -- which expressly governs the parties' respective rights and obligations pursuant to Condition 35 of the Loan Commitment -- provides that a court may issue such an injunction where necessary or appropriate to ensure that a final judgment will be collectible. *See, e.g.*, GTE Prods. Corp. v. Stewart, 414 Mass. 721, 724 (1993) (affirming injunction and holding that a "plaintiff experiences irreparable injury if there is no adequate remedy at final judgment."); Boston Athletic Assoc. v. Int'l Marathons, Inc., 392 Mass. 356, 362 (1984) (affirming grant of preliminary injunction prohibiting dispersal of funds by defendant until merits of claim could be decided where failure to grant injunction could force

plaintiff to engage in the "time-consuming and sometimes difficult task of trying to exact its damages").

In addition, the federal courts have the inherent power to enforce their own orders, as well as agreements entered into in open court. *See, e.g.,* American Airlines, Inc. v. City of Philadelphia, 414 F. Supp. 1226, 1229 (E.D. Pa. 1976) (where "stipulation was orally agreed to by counsel . . . in open court," the court has "the authority and power to enforce that stipulation").

II. JOHN HANCOCK'S EMERGENCY REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF SHOULD BE GRANTED BECAUSE THE DEFENDANTS REFUSE TO COMPLY WITH THE COURT-MANDATED ESCROW AGREEMENT REACHED AT THE FEBRUARY 14 PRELIMINARY INJUNCTION HEARING.

By all appearances, Montgomery Partners is in violation of the court-mandated escrow agreement reached at the February 14 preliminary injunction hearing. Despite repeated requests, Defendants refuse to disclose the current status of the Avenel Apartments property or the whereabouts of the $5,000,000 escrow fund that they agreed on that date to create. It would be an easy solution to the current impasse for the Defendants to simply provide the information requested by John Hancock if they actually believe that they are in compliance with the terms of that escrow agreement. The fact that they refuse to provide *any* information on the topic only can mean that they are not.

John Hancock entered the February 14 preliminary injunction hearing seeking to prohibit Montgomery Partners from going forward with its planned sale of the Avenel Apartments and immediately dispersing the proceeds of that sale because, without such an injunction, John Hancock's ability to collect on any final judgment order in this action would have been destroyed or severely diminished. Hancock's current losses resulting from Montgomery Partners' already-established breach of the Loan Commitment (not including attorney's fees) total over $4.6 million.

Davis Aff., ¶ 11. The Avenel Apartments project is the only marketable asset owned by Montgomery Partners that is of sufficient value to satisfy a final judgment in that amount. Affidavit of John P. Ferrie, dated February 7, 2006 ("Ferrie Aff."), ¶ 8.[1] The only other significant assets currently owned by Montgomery Partners are a one-acre parcel near the Avenel Apartments with an alleged value of approximately $700,000, and an adjacent forty-five acre parcel that is encumbered by a notice of possible taking by the Pennsylvania Department of Transportation for use in a state highway project. *Id.* As explained in the previously filed Affidavit of John P. Ferrie, Regional Vice President of John Hancock's Real Estate Investment Group, Hancock's recent experience demonstrates that the potential for a government taking of that forty-five acre parcel renders it effectively unmarketable at a fair price, and, therefore, insufficient security for the foreseeable future. *Id.*, ¶ 10.

The court, per Judge Young, addressed John Hancock's legitimate security concerns at the February 14 preliminary injunction hearing by obtaining the explicit representation and agreement of Montgomery Partners and its counsel, on the record, that they would set aside $5,000,000 from any payment that the Defendants received on account of the Avenel Apartments property for the benefit of John Hancock. Hearing Transcript at 8-9. If Montgomery Partners now is permitted to disregard its obligations under that escrow agreement, then John Hancock may be forever precluded from recovering on any judgment rendered in this action or, alternatively, forced to wait years for a recovery. John Hancock's continuing concerns in this regard are heightened by the fact that Montgomery Partners previously extracted $44 million in value from the Avenel Apartments, while this action was pending, through an unannounced mortgage loan transaction with the planned buyer of the property in late December 2005. Ferrie Aff., ¶ 11. The net proceeds of that

---

[1] The Ferrie Affidavit previously was filed in this action in support of John Hancock's Motion for Preliminary Injunctive Relief.

transaction were not retained by Montgomery Partners, but rather were promptly dispersed to the partnership's three principals. John Hancock fears that Montgomery Partners promptly will disperse any additional payments that it receives on account of the Avenel Apartments property in the same manner. *Id.* The issuance of a preliminary injunction as requested by John Hancock is necessary and appropriate to prevent such an unjust outcome.

## Conclusion

For the foregoing reasons, John Hancock respectfully requests that the Court grant this Emergency Motion for Preliminary Injunctive Relief Prohibiting Defendants From Violating Court-Mandated Escrow Agreement in its entirety, and grant such other and further relief as the court deems appropriate.

In support of this Motion, John Hancock relies upon the previously-filed Affidavit of John P. Ferrie, as well as the Affidavit of Brian A. Davis, Esq., which is filed simultaneously herewith.

## Request for Oral Argument

John Hancock respectfully requests oral argument on this Emergency Motion.

JOHN HANCOCK LIFE INSURANCE COMPANY

By its attorneys,

*/s/ Brian A. Davis*
Brian A. Davis (BBO No. 546462)
Paul D. Popeo (BBO No. 567727)
Elizabeth A. Castellani (BBO No. 663818)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tele: 617-248-5000

Date: April 24, 2006
4074154.1

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(A)(2), the undersigned counsel for the Plaintiff hereby certifies that he has conferred in good faith with counsel for the Defendants concerning the subject matter of this Emergency Motion. The parties were not able to resolve or narrow the issues raised therein.

/s/ Brian A. Davis
Brian A. Davis

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 24, 2006.

/s/ Brian A. Davis
Brian A. Davis

4074154.1