UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY,  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>VESTMONT LIMITED PARTNERSHIP,  )<br>VESTMONT LIMITED PARTNERSHIP II,  )<br>VESTMONT LIMITED PARTNERSHIP III,  )<br>and VESTERRA CORPORATION d/b/a  )<br>MONTGOMERY SQUARE PARTNERSHIP,  )<br><br>Defendants.  ) | CIVIL ACTION NO. 05-11614-WGY |

## <u>AFFIDAVIT OF BRIAN A. DAVIS, ESQ.</u>

I, Brian A. Davis, on oath, depose and say as follows:

1.     I am a partner in the law firm of Choate, Hall & Stewart, LLP, and I serve as co-counsel to plaintiff John Hancock Life Insurance Company ("John Hancock" or "Hancock") in this action.  I submit this affidavit in support of John Hancock's Emergency Motion for Preliminary Injunctive Relief Prohibiting Defendants From Violating Court-Mandated Escrow Agreement (the "Motion").  The statements contained in this affidavit are based upon my own personal knowledge.

2.     On February 14, 2006, the district court (per the Honorable William G. Young) heard expedited oral argument on plaintiff John Hancock's "Motion for Preliminary Injunctive Relief Prohibiting Defendants from Disposing of Certain Assets," filed on February 8, 2006.

(A true copy of John Hancock's Motion for Preliminary Injunctive Relief is appended to this affidavit as Exhibit A.)  At issue at the February 14 preliminary injunction hearing was the Defendants' ability to go forward with the planned sale of their primary marketable asset, a new, 256 unit residential apartment complex known as "Avenel at Montgomery Square" (the "Avenel Apartments"), during the pendency of this action.  Alternatively, John Hancock sought an order directing Montgomery Partners to place a sufficient amount of funds in an interest-bearing escrow account during the pendency of this action in order to ensure prompt payment of any judgment in favor of John Hancock.  (A true copy of the official transcript of the February 14, 2006 preliminary injunction hearing ("Hearing Transcript") is appended to this affidavit as Exhibit B.)

3.    At the February 14 preliminary injunction hearing, the court accelerated this case for trial within the month of April, and agreed to postpone its decision on John Hancock's request for injunctive relief until after trial if Montgomery Partners would agree to set aside $5,000,000 of any payments received on account of the Avenel Apartments property for the benefit of John Hancock until trial.  Defendants and their counsel agreed to the court's request and expressly represented that they would do so.  Thereafter, the Clerk's Notes for the February 14 Hearing were recorded on the electronic docket.  (A true copy of the ECF Notice containing those Clerk's Notes is appended to this affidavit as Exhibit C.)

4.    According to Montgomery Partners, the planned sale of the Avenel Apartments property was scheduled to take place on or about March 15, 2006.  However, no confirmation of that sale, or of the creation of the required $5,000,000 escrow account, ever has been received from the Defendants by John Hancock.

5.    In recent motion practice, John Hancock has succeeded in defeating or dismissing almost all of Montgomery Partners' defenses and counterclaims in this action. According to the court's March 20, 2006 Memorandum and Order on summary judgment, the only questioning remaining to resolved with respect to the Defendants' liability to John Hancock is whether Hancock itself was "ready, willing and able to perform" under parties' loan agreement. (A true copy of the March 20, 2006 Memorandum and Order is appended to this affidavit as Exhibit D.) John Hancock will have no difficulty meeting that burden at trial.

6.    Trial in this case currently is scheduled to commence on May 1, 2006.  In anticipation of that trial, I recently sent counsel for Montgomery Partners an e-mail message on Sunday, April  23, 2006, requesting that the Defendants either "confirm that Montgomery Square Partnership has not sold or otherwise encumbered the Avenel at Montgomery Square property since the court hearing on Feb. 14, 2006, or, alternatively, provide the bank name and account number in which Montgomery Square Partnership has deposited $5,000,000 as directed by Judge Young on that date."  (A true copy of that e-mail message is appended to this affidavit as Exhibit E.)

7.    I received no response to my initial request for information concerning the status of the Avenel Apartments property from the Defendants (although they did respond to certain other questions raised in the same message).  Accordingly, I repeated my request by e-mail later the same day.  (A true copy of my second e-mail message is appended to this affidavit as Exhibit F.)  Again, I received no response from the Defendants.

8.    On Monday, April 24, 2006, I sent Defendants' counsel yet another request specifically asking that they inform me whether "Montgomery Square Partnership has sold or otherwise encumbered the Avenel at Montgomery Square property since the court hearing on

Feb. 14, 2006, or, alternatively, provide the bank name and account number in which Montgomery Square Partnership has deposited $5,000,000 as directed by Judge Young on that date." (A true copy of that e-mail message is appended to this affidavit as <u>Exhibit G</u>.) Finally, Howard Scher, lead counsel for the Defendants, sent the following e-mail message to me in reply that morning:

> Brian,
>
> Your recollection of the outcome of the preliminary injunction hearing is mistaken. A review of the transcript will show the entire representation made by me and the Court's acceptance of that.
>
>> "And two, I do represent to the
>> 2 Court that if the transaction occurs within that period of
>> 3 time $5 million will be set aside.
>> 4 THE COURT: I accept that as you are an officer of
>> 5 the Court."
>
> I do not believe you have any reason to believe that I have breached my representation to the Court. If I am mistaken, please let me know before you suggest otherwise.
>
> Howard

(A true copy of Mr. Scher's e-mail message is appended to this affidavit as <u>Exhibit H</u>.)

9. Upon receiving Mr. Scher's e-mail message, I immediately attempted to reach Mr. Scher to discuss his ambiguous reply and to determine, once and for all, whether Montgomery Partners had disposed of or encumbered the Avenel Apartments property, and the whereabouts of the $5,000,000 that the Defendants had promised to set aside for John Hancock's benefit. When I finally reached Mr. Scher by telephone late in the morning of April 24, Mr. Scher repeatedly refused to answer *any questions whatsoever* regarding the status of the property, or to provide any information regarding the location of the $5,000,000 in escrowed funds. When I informed Mr. Scher that the only logical assumption to be drawn

-4-

from his refusal to disclose the requested information was that the Defendants had sold or encumbered the property and failed to set aside the $5,000,000 in violation of the court-mandated agreement, Mr. Scher's sole response was to state "I can't control what you assume."

10.    At present, Montgomery Partners and its counsel still refuse to provide any information concerning the current status of the Avenel Apartments property or the whereabouts of the $5,000,000 that they are required to place in escrow.

11.    Hancock's current losses resulting from Montgomery Partners' already-established breach of the Loan Commitment (not including attorney's fees) total over $4.6 million.

Signed under the pains and penalties of perjury this 24th day of April, 2006.


                                        */s/ Brian A. Davis*                    

4074369.1

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 24, 2006.

/s/ Brian A. Davis
Brian A. Davis

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>VESTMONT LIMITED PARTNERSHIP,<br>VESTMONT LIMITED PARTNERSHIP II,<br>VESTMONT LIMITED PARTNERSHIP III,<br>and VESTERRA CORPORATION d/b/a<br>MONTGOMERY SQUARE PARTNERSHIP,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 05-11614-WGY<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF JOHN HANCOCK LIFE INSURANCE COMPANY'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF PROHIBITING DEFENDANTS FROM DISPOSING OF CERTAIN ASSETS

Plaintiff John Hancock Life Insurance Company ("John Hancock" or "Hancock") hereby moves, pursuant to Fed. R. Civ. P. 64 and 65, for preliminary injunctive relief prohibiting defendants Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited Partnership III, and Vesterra Corporation d/b/a Montgomery Square Partnership (collectively, "Montgomery Partners" or the "Defendants") from proceeding with their plan to dispose of their primary marketable asset, a new, 256 unit residential apartment complex known as "Avenel at Montgomery Square" (the "Avenel Apartments"), during the pendency of this action. Alternatively, John Hancock seeks an order directing Montgomery

Partners to place a sufficient amount of funds from that sale in escrow during the pendency of this action in order to ensure prompt payment of any judgment in favor of John Hancock.

John Hancock is highly likely to succeed on the merits of its breach of contract claim against Montgomery Partners in this action, and injunctive relief is necessary and appropriate to preserve Hancock's damages remedy. *See* Boston Athletic Assoc. v. Int'l Marathons, Inc., 392 Mass. 356, 362 (1984); Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 51-52 (1st Cir. 1986). Moreover, the balance of hardships weighs heavily in favor of granting the relief sought by John Hancock, and issuing an injunction in this case will not harm the public interest. For all of these reasons, John Hancock's Motion should be granted.

In support of this Motion, John Hancock relies upon the Affidavits of John P. Ferrie and Brian A. Davis, and the Memorandum of Law, which are filed simultaneously herewith.

### Request for Oral Argument

John Hancock respectfully requests oral argument on this Motion.

JOHN HANCOCK LIFE INSURANCE COMPANY

By its attorneys,

Brian A. Davis (BBO No. 546462)
Lisa M. Gaulin (BBO No. 654655)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tele: 617-248-5000
Fax: 617-248-4000

Date: February 8, 2006

4041249.1

-2-

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(A)(2), the undersigned counsel for the Plaintiff hereby certifies that he has conferred in good faith with counsel for the Defendants concerning the subject matter of this Motion. The parties were not able to resolve or narrow the issues raised therein.

_____
Brian A. Davis

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served by hand, or by electronic and regular mail, upon counsel for each other party on February 8, 2006.

_____
Brian A. Davis

-3-

# EXHIBIT B

021406a.txt

1

<pre>
 1                   UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
 2
                                        Civil Action
 3                                      No. 05-11614-WGY

 4    * * * * * * * * * * * * * * * * * *
                                        *
 5                                      *
      JOHN HANCOCK LIFE INSURANCE       *
 6    COMPANY,                          *
                                        *
 7        Plaintiff/Counterclaim Defendant,  *
                                        *
 8    v.                                *    HEARING
                                        *
 9    VESTMONT LIMITED PARTNERSHIP,     *
      et al.,                           *
10                                      *
          Defendants/Counterclaim Plaintiffs,  *
11                                      *
      * * * * * * * * * * * * * * * * * *
12
                   BEFORE:  The Honorable William G. Young,
13                                District Judge

14
      APPEARANCES:
15
              CHOATE, HALL & STEWART (By Brian A. Davis,
16        Esq. and Lisa M. Gaulin, Esq.), Two International
          Place, 100-150 Oliver Street, Boston,
17        Massachusetts 02110, on behalf of the
          Plaintiff/Counterclaim Defendant
18
              DEUTSCH WILLIAMS BROOKS DeRENSIS & HOLLAND,
19        P.C. (By Robert D. Hillman, Esq.), 99 Summer
          Street, Boston, Massachusetts 02110-1213
20                - and -
              BUCHANAN INGERSOLL, P.C. (By Howard D.
21        Scher, Esq.), 1835 Market Street, Floor 14,
          Philadelphia, Pennsylvania 19103, on behalf of the
22        Defendants/Counterclaim Plaintiffs

23                                      1 Courthouse Way
                                        Boston, Massachusetts
24
                                        February 14, 2006
25
</pre>

Page 1

021406a.txt

D

2

1          THE CLERK:  All rise.  Court is in session, please
2     be seated.
3          Calling Civil Action 05-11614, John Hancock v.
4     Vestmont.
5          THE COURT:  Good morning.  Would counsel identify
6     themselves.
7          MR. DAVIS:  Good morning, your Honor.  Brian Davis
8     representing John Hancock, and with me is Lisa Gaulin.
9          MR. HILLMAN:  Your Honor, Robert Hillman
10    representing the defendants.  Not with me right this second
11    is Howard Scher who stepped out about ten seconds before we
12    were moved up, and he'll be back in just a second.
13         THE COURT:  Fine.  Well, first of all, I apologize
14    to you and to counsel on the habeas.  Please be seated.  Due
15    to an illness in the family, I was not in yesterday and as a
16    consequence we have two matters on for this morning rather
17    than one and we'll try to address both of them.
18         I have had the opportunity to read the papers here
19    and let's back into this this way.  And I'll start with John
20    Hancock.  Well, we'll start with John Hancock.
21         There's a jury claim here.  Do you -- I'm not
22    trying to talk anyone out of a jury claim, though this case
23    will be easier to administer if we handle it jury waived.
24    No one likes juries more than I do.  So -- and you make your
25    best tactical judgment.  Don't draw any conclusions -- it

021406a.txt

D

1    makes no -- it's a matter of no moment to me whether you go

2    jury or jury waived other than the management of the case,

3    and I won't be offended if we go jury.

4            Now, having said all that deferential stuff, do you

5    really want a jury here?

6            MR. DAVIS:  Your Honor, I -- no.  The answer is

7    Hancock would --

8            THE COURT:  How about you folks, do you really want

9    a jury here?

10           MR. SCHER:  At this point, yes, we do, your Honor.

11           THE COURT:  Okay, fine, then it's a jury case.

12           Now let's back into the matter for this morning,

13   the preliminary injunction.  And again we'll start with John

14   Hancock.  And now the answers to your questions inform the

15   Court about the case and make a difference as to what's

16   going to happen here.

17           One of the things you have to show is that you have

18   a reasonable likelihood of success.  Therefore, I take it

19   you're prepared to show that.

20           MR. DAVIS:  Yes, your Honor.

21           THE COURT:  So, in essence, given their rather

22   interesting defense, you are virtually ready to have this

23   matter resolved on the merits, are you not?

24           MR. DAVIS:  Yes.

25           THE COURT:  All right.  Well, that's helpful.

021406a.txt

D

4

1          Now to the defense.  Equally -- because the

2     downside to you is we tie up all these funds.  And I've

3     read -- and thank you for the delivery of the courtesy

4     copies.  It is an interesting defense, one which one

5     imagines a jury would find interesting if you could sustain

6     it.

7          But you're ready to put up or shut up; is that

8     right?

9          MR. SCHER:  Discovery has not yet completed, your

10    Honor.

11          THE COURT:  But --

12          MR. SCHER:  Subject to that, yes, your Honor.

13          THE COURT:  Subject to --

14          MR. SCHER:  Yes, we are.

15          THE COURT:  -- that.

16          MR. SCHER:  Yes, we are.

17          THE COURT:  Very well.  Then suppose I can get this

18    case to trial, no huffing and puffing about this morning,

19    put on your first witness, but suppose I could, and I'm

20    delighted that he's here, suppose I could get this case to

21    trial within 30 to 60 days, the time when they fear Western

22    civilization will come to an end because you will get these

23    payments and that's what they want to restrain.  Suppose we

24    can face right up to a trial within that period, without any

25    injunction or anything, can you hold, say, 5 million of this

Page 4

021406a.txt

D

5

1    for 60 days?  Just on your representation as you are an
2    officer of this Court.
3              MR. SCHER:  I would, I would not make such
4    representation without conferring first with my client --
5              THE COURT:  But here he is.
6              MR. SCHER:  -- but subject to that, and he's here.
7              THE COURT:  Right.
8              MR. SCHER:  He does have partners but --
9              THE COURT:  Before I ask you to do that -- no one
10   could be more transparent than me.  I understand Rule 65.
11   But to do it twice has never commended itself to me.  What I
12   want to give you is the best the federal district court can
13   give, and that's a trial.  If you want it to go jury waived
14   that's fine, but that has no moment.  If you want a jury,
15   it's a jury trial.  And the only, the only problem with case
16   management is, I have to find a Monday where I'm going to
17   impanel a jury.
18              I propose to put the case on the running trial list
19   with the guarantee that I'll either get it to trial in the
20   next two months, or we'll have a further status conference,
21   in return for which he'll give me his word, which I will
22   accept as an officer of this Court, that they'll set aside
23   $5 million, and at the outside I don't think you're going to
24   get more than that, and they've got their counterclaim here,
25   and we'll get the whole thing sorted out, or you'll settle

Page 5

021406a.txt

D

6

1   it.

2           Now, there's -- I've turned all the cards up, if
3   you will.  That's my agenda.  What do you think about that?

4           MR. DAVIS:  Perfectly acceptable.

5           THE COURT:  And subject to conferring with your
6   client, what do you think about that?

7           MR. SCHER:  Just one -- I hate to be detail
8   obscessed.  I'm not generally obscessed with detail, but I
9   need an expert --

10          THE COURT:  No, just have in mind that it affects
11  my calculus --

12          MR. SCHER:  Understood, your Honor.

13          THE COURT:  -- for preliminary injunction about
14  likelihood of success, if it was just a will-o'-the-wisp
15  wish defense.

16          MR. SCHER:  Your Honor --

17          THE COURT:  Go ahead.

18          MR. SCHER:  -- if --

19          THE COURT:  But say what you wanted to say.

20          MR. SCHER:  Seventy-five days.  That's all I was
21  going to say.

22          THE COURT:  Well, I'm not putting it off 75 days.
23  I'm guaranteeing a trial within two months.  It may be
24  faster than that.

25          MR. SCHER:  Okay.

Page 6

021406a.txt

D

7

```
1           THE COURT:  And -- well, you're okay with that?
2           MR. SCHER:  Well, I'm just worried about trial
3    preparation.  I'm taking your Honor at your word.  And if I
4    need to bring on witnesses -- I need an expert, and I just
5    heard from an expert yesterday --
6           THE COURT:  Right.
7           MR. SCHER:  -- that he's not available in the month
8    of March.  So I'm anxious, that's all.  But I'll take it.
9           THE COURT:  There are such things as videotape
10   depositions.  I'm not terribly sympathetic to that.
11          MR. SCHER:  Sixty days, your Honor.
12          THE COURT:  Well, I'm not bargaining as to the
13   days.
14          MR. SCHER:  No, no.
15          THE COURT:  That's the outside.
16          MR. SCHER:  I understand.
17          THE COURT:  The outside.  This case is going to go
18   to trial within 60 days, or I'll give you, and really it's
19   them, you'll either have worked out some modus vivendi, or
20   I'll give you another status conference and I'll hear, if I
21   need to hear evidence -- in other words, I'll do it twice.
22   I'll do the rough justice of a preliminary injunction, and
23   then we'll get to trial.  But I would rather a real trial.
24          Now, that's going to cost both sides a lot of
25   money.  It's going to focus your minds.  We'll see if the
```

Page 7

021406a.txt

D

8

1    case gets settled.  And if not, it will be resolved.

2         But I'm talking over you, and I don't really mean

3    to do that without giving you a chance to talk to your

4    client.  I'm delighted he's here and he can hear this.

5         But I think Ms. Smith, not just because we work

6    together, she'll back up what I said.  When I say we'll give

7    you a trial, we'll give you a trial.  It's not just going to

8    go in some limbo somewhere.  We'll put you on the running

9    trial list and you'll get a trial.

10         Now, you take a moment to talk to your client.

11         MR. SCHER:  Your Honor, I did have the honor of

12   being in your presence, among about 7,000 other lawyers, at

13   the American College.  So I know that you mean it when you

14   say it.  You made that presentation.

15         THE COURT:  I recall it well.  Thank you.

16         MR. SCHER:  Thank you.

17         THE COURT:  You know I delight in trials.  Talk to

18   your client.

19         (Pause in proceedings.)

20         THE COURT:  Sir?

21         MR. SCHER:  Forgive me for taking so long, your

22   Honor.

23         THE COURT:  It wasn't long at all.

24         MR. SCHER:  Two things.  One, your Honor's

25   direction with respect to trial date is acceptable to us.

Page 8

021406a.txt

D

9

1    We welcome that opportunity.  And two, I do represent to the
2    Court that if the transaction occurs within that period of
3    time $5 million will be set aside.

4            THE COURT:  I accept that as you are an officer of
5    the Court.  I'm going to refine it a little bit and you can
6    thank Ms. Smith for this.

7            Looking at the matters on the list, which I've made
8    representations to as well, hearing what you said, I'm
9    placing the case on the running trial list but not before
10   April.  In other words, I accept his representation.  And
11   while I said, well, it may be faster than 60 days, in
12   fairness to you all, I won't call you before April.

13           What we will do is, I expect your cooperation with
14   respect to the remaining discovery.  In March I will set up
15   a final pretrial conference since it's a jury case, frankly,
16   to talk settlement and to talk the mechanics of the trial,
17   if trial it will be, and we'll certainly try to get the case
18   tried during the month of April.

19           MR. SCHER:  Your Honor?

20           THE COURT:  To John Hancock, is that satisfactory?

21           MR. DAVIS:  That's satisfactory, your Honor, with
22   one request.  Not the week of April 17th which is school
23   vacation week, which I have made commitments to children.

24           THE COURT:  And we accept that.

25           MR. DAVIS:  Thank you, your Honor.

Page 9

021406a.txt

D

10

```
1          THE COURT:  We'll either do it before -- we'll get
2     it done before then or we'll start after then.
3          MR. SCHER:  Your Honor, there is a motion to amend
4     the counterclaim which is open which is before your Honor.
5     I don't believe John Hancock has yet been required to
6     respond but that is --
7          THE COURT:  Yes.  Any problem, any problem with
8     that since amendments are freely granted?
9          MR. DAVIS:  It's futile, your Honor, in the
10    circumstance and they're seeking to add a 93A claim.  I
11    think we can defeat it in any event.
12         THE COURT:  Since it's -- you may defeat it before,
13    you may defeat it at.  I'm taking that as, the motion to
14    amend as allowed.
15         MR. SCHER:  Thank you, your Honor.
16         THE COURT:  Thank you all.  The case is on for the
17    April running trial list and the transcript will record the
18    representations made today.  I thank you very much.
19         MR. DAVIS:  Thank you, your Honor.
20         THE COURT:  I'll take a brief recess.  And now with
21    the decks cleared, Mr. Entine and counsel --
22         MR. KATZ:  Mr. Katz.
23         THE COURT:  Mr. Katz.  Forgive me, Mr. Katz.  I do
24    it only because I want to learn your name.  Okay.  The
25    morning in essence is yours and we'll try to get this set up
```

Page 10

021406a.txt

D

11

```
 1   and address it.
 2            We'll recess.
 3            THE CLERK:  All rise.  Court is in recess.
 4            (Whereupon the matter concluded.)
 5
 6
 7            C E R T I F I C A T E
 8
 9
10            I, Donald E. Womack, Official Court Reporter for
11   the United States District Court for the District of
12   Massachusetts, do hereby certify that the foregoing pages
13   are a true and accurate transcription of my shorthand notes
14   taken in the aforementioned matter to the best of my skill
15   and ability.
16
17
18
19
20            _____
21                 DONALD E. WOMACK
                   Official Court Reporter
22                   P.O. Box 51062
             Boston, Massachusetts 02205-1062
23                 womack@megatran.com
24
25
```

021406a.txt

D

# EXHIBIT C

## Davis, Brian

**From:** ECFnotice@mad.uscourts.gov
**Sent:** Tuesday, February 14, 2006 10:59 AM
**To:** CourtCopy@mad.uscourts.gov
**Subject:** Activity in Case 1:05-cv-11614-WGY John Hancock Life Insurance Company v. Vestmont Limited Partnership et al "Motion Hearing"

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### United States District Court

### District of Massachusetts

Notice of Electronic Filing

The following transaction was received from Smith, Bonnie entered on 2/14/2006 at 10:58 AM EST and filed on 2/14/2006

**Case Name:** John Hancock Life Insurance Company v. Vestmont Limited Partnership et al
**Case Number:** 1:05-cv-11614
**Filer:**
**Document Number:**

**Docket Text:**
ElectronicClerk's Notes for proceedings held before Judge William G. Young : Motion Hearing held on 2/14/2006 re [11] MOTION for Preliminary Injunction filed by Plaintiff. Defendant agrees to set aside $5,000,000 until the case can be resolved as long as the case gets to trial in April. If the case cannot be tried by then, the court will hold a further hearing on the motion for preliminary injunction.The case will be set for a final pretrial conference in March. Notice will issue as to the exact date. Jury Trial set for RUNNING TRIAL LIST AS OF 4/3/2006 09:00 AM before Judge William G. Young, but not the week of April 17 due to a prior committment of plaintiff's counsel. The Court ALLOWS the Motion to Amend the counterclaim.(Court Reporter Womack.) (Smith, Bonnie)

The following document(s) are associated with this transaction:

**1:05-cv-11614 Notice will be electronically mailed to:**

Brian A. Davis    BDavis@choate.com, bdenton@choate.com

Lisa M. Gaulin    lgaulin@choate.com

Robert D. Hillman    rdh@dwboston.com, lcristini@dwboston.com

**1:05-cv-11614 Notice will not be electronically mailed to:**

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                             )
JOHN HANCOCK LIFE INSURANCE  )
COMPANY,                     )
                             )
         Plaintiffs,         )
                             )
    v.                       )    CIVIL ACTION
                             )    NO. 05-11614-WGY
VESTMONT LIMITED PARTNERSHIP, )
VESTMONT LIMITED PARTNERSHIP II, )
VESTMONT LIMITED PARTNERSHIP III )
& VESTERRA CORPORATION d/b/a )
MONTGOMERY SQUARE PARTNERSHIP, )
                             )
         Defendants.         )
                             )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                    March 20, 2006


     On March 16, 2006, the Court heard arguments as to a Motion

for Summary Judgment [Doc. No. 22] filed by John Hancock

("Hancock") and took under advisement that motion, as well as a

Cross Motion for Partial Summary Judgment [Doc. No. 32] filed by

Vestmont Limited Partnership, Vestmont Limited Partnership II,

Vestmont Limited Partnership III, and Vesterra Corporation d/b/a/

Montgomery Square Partnership (collectively, "Vesterra").  After

due consideration of the arguments made at the hearing and in the

briefs, the Court is prepared to make its ruling.

The Court rules that there exists a valid contract between Vesterra and Hancock formed on August 17, 2004 when the Application to John Hancock Life Insurance Company for a First Mortgage Loan ("Loan Application") was signed by Timothy J. Malik, Senior Investment Officer for Hancock, indicating Hancock's acceptance of the application. See Answer [Doc. No. 2], Ex. 2 ("Loan Application") at 26-28 (signature pages). The 10% Constant benchmark was never incorporated into the terms of the Loan Application; so as to this contract, there was a meeting of the minds.

Despite the Court's ruling as to the existence of a valid contract, there is still a genuine issue of material fact as to whether Hancock was ready, willing, and able to perform under the contract. See Singarella v. City of Boston, 342 Mass. 385, 387 (1961) (identifying as an element of any breach of contract claim that plaintiff was ready, willing and able to perform under the contract); see also Interstate Litho Corp. v. Brown, 255 F.3d 19, 28 (1st Cir. 2001) (ruling that the issue of whether the plaintiff was able to perform was for the jury to decide). Hancock's application of the 10% Constant to Vesterra's Loan Application raises a question as to Hancock's willingness to perform under the contract; therefore, summary judgment as to the breach of contract claim must be DENIED.

2

Summary judgment is ALLOWED as to Vesterra's counterclaim for fraudulent inducement (Count V). Am. Countercl. [Doc. No. 18] ¶¶ 47-56. Assuming facts in favor of Vesterra, the timing of events raises no issue of material fact as to whether a misrepresentation occurred prior to Vesterra's decision to submit its Loan Application to Hancock. Vesterra signed and submitted the loan application on July 30, 2004. See Def. Statement of Disputed Facts in Opp'n to Pl.'s Mot. for Summ. J. [Doc. No. 30] ("Def. Facts") ¶ 11; Loan Application at 26-28 (signature pages).

According to Vesterra, the 10% Constant was requested by Hancock officials to be applied to the loan application during the approval process and after Vesterra had already submitted the Loan Application. See Def. Facts ¶ 11 (stating that once the Loan Application was submitted by Vesterra, the new head of Hancock's mortgage loan operations, upon receiving the application, insisted that the application meet an additional requirement of the 10% Constant). Vesterra has not raised an issue of material fact as to whether, prior to Vesterra's submission, Hancock misrepresented -- at that time -- its intention to close the loan in accordance with the terms of the Loan Application, having intended to apply the 10% Constant.

In addition, the only alleged misrepresentation Vesterra identifies is located in the Loan Application itself. See Am. Countercl. ¶ 48 ("John Hancock misrepresented a material fact by

3

indicating in the Loan Application that all of the requirements

for disbursement of the Loan were contained therein." (emphasis

added)). Vesterra does not identify a specific provision of the

Loan Application in making this assertion; however, the

application does state that "[i]n the event John Hancock accepts

this Application . . . , then John Hancock agrees to make the

Loan upon and subject to the provisions contained in the Terms

and Conditions hereof . . . ." Loan Application ¶ 27(b). As

noted earlier, Hancock countersigned the Application on August

17, 2004. Even assuming this statement could be regarded as a

misrepresentation, any representations made in the application

could not be attributed to Hancock until Hancock signed the

application on August 17, 2004 -- after Vesterra signed and

submitted the Loan Application. Vesterra has identified no

representations made prior to its decision to submit the Loan

Application. The failure of Vesterra to identify any such

representations requires the Court rule that Vesterra's claim of

fraudulent inducement cannot stand.

Summary judgment is also ALLOWED as to Vesterra's

counterclaim for unjust enrichment (Count II). Am. Countercl. ¶¶

37-39. As the Court has ruled that there exists an enforceable

contract between the parties, an unjust enrichment claim cannot

lie. See In Re Lupron Mktg. & Sales Practices Litig., 295 F.

Supp. 2d 148, 182 (D. Mass. 2003) (Stearns, J.) ("Where a

contract does govern the parties relationship, the contract
provides the measure of the plaintiff's right and no action for
unjust enrichment lies.").

Summary judgment is DENIED as to the counterclaim under
Massachusetts General Laws Chapter 93A (Count VI). Am.
Countercl. ¶¶ 57-65. Hancock has failed to meet its burden in
showing that the alleged deceptive acts -- namely, the alleged
addition of an undisclosed condition to the disbursement of the
loan -- did not occur "primarily and substantially" in
Massachusetts. See Mass. Gen. Laws ch. 93A, § 11; Kuwaiti Danish
Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 470 (2003)
(holding that the burden of proof rests with the person alleging
that acts did not occur "primarily and substantially" in
Massachusetts).

Vesterra has agreed to the dismissal of its counterclaims
for Money Had and Received (Count III), Am. Countercl. ¶¶ 40-42,
and Conversion (Count IV), Am. Countercl. ¶¶ 43-46.

Vesterra's Cross Motion for Partial Summary Judgment [Doc.
No. 32] is DENIED. The provision governing liability in the
event of a failure to close the loan indicates that the borrower
would be liable for all "losses" and "damages" as a result of the
failure to close. Loan Application ¶ 30. There is a genuine
issue as to what losses were contemplated by the parties at the
time they entered into this contract. The fact that the default

and prepayment provisions of the contract specifically identify,

as a formula for a penalty payment, see Loan Application ¶¶ 3(g),

6(d), the same formula (if it is, in fact, the same formula) now

being proposed by Hancock to measure its losses for the failure

to close, cannot establish, as matter of law, that this method of

calculation was meant to be excluded as a measure of losses for a

failure to close the loan.  This does not mean that the Court

adopts Hancock's measure of damages.  According to the Loan

Application, Hancock must prove what losses resulted from the

failure to close which necessarily requires evidence of how much

Hancock actually intended to disburse.

    Accordingly, Hancock's Motion for Summary Judgment [Doc. No.

22] is ALLOWED in part and DENIED in part.  Vesterra's Cross

Motion for Partial Summary Judgment [Doc. No. 32] is DENIED.


    SO ORDERED.

                            /s/ William G. Young
                            _____
                            WILLIAM G. YOUNG
                            DISTRICT JUDGE

6

# EXHIBIT E

## Davis, Brian

| | |
|---|---|
| **From:** | Davis, Brian |
| **Sent:** | Sunday, April 23, 2006 3:29 PM |
| **To:** | 'Ross, C. Randolph'; 'Scher, Howard'; 'McCormick, Brian' |
| **Cc:** | Popeo, Paul |
| **Subject:** | John Hancock/Vesterra |

Brian, Howard and Randy:

I expect to have proposed dates for Mr. Warren Thomson's deposition by tomorrow.  In order to save time, are there any dates this coming week on which you cannot take his deposition, either in Boston or in Toronto?

In the meantime, please confirm that: (a) Vesterra still refuses to produce any and all drafts of Ms. Spevacek's expert report; and (b) Montgomery Square Partnership has not sold or otherwise encumbered the Avenel at Montgomery Square property since the court hearing on Feb. 14, 2006, or, alternatively, provide the bank name and account number in which Montgomery Square Partnership has deposited $5,000,000 as directed by Judge Young on that date.


Brian Davis

C H O A T E

CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5056
Fax: 617-248-4000
E-mail: bad@choate.com

# EXHIBIT F

## Davis, Brian

**From:** Davis, Brian
**Sent:** Monday, April 24, 2006 9:28 AM
**To:** 'Scher, Howard'; 'Ross, C. Randolph'; 'McCormick, Brian'
**Cc:** Popeo, Paul
**Subject:** John Hancock/Vesterra

Gentlemen:

As previously requested, please inform me today whether: (a) Vesterra still refuses to produce any and all drafts of Ms. Spevacek's expert report; and (b) Montgomery Square Partnership has sold or otherwise encumbered the Avenel at Montgomery Square property since the court hearing on Feb. 14, 2006, or, alternatively, provide the bank name and account number in which Montgomery Square Partnership has deposited $5,000,000 as directed by Judge Young on that date. If we cannot get satisfactory answers to these questions today, we intend to bring the issues to Judge Young's attention promptly.

Brian Davis

C·H·O·A·T·E
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5056
Fax: 617-248-4000
E-mail: bad@choate.com

# EXHIBIT G

## Davis, Brian

**From:** Davis, Brian
**Sent:** Monday, April 24, 2006 9:28 AM
**To:** 'Scher, Howard'; 'Ross, C. Randolph'; 'McCormick, Brian'
**Cc:** Popeo, Paul
**Subject:** John Hancock/Vesterra

Gentlemen:

As previously requested, please inform me today whether: (a) Vesterra still refuses to produce any and all drafts of Ms. Spevacek's expert report; and (b) Montgomery Square Partnership has sold or otherwise encumbered the Avenel at Montgomery Square property since the court hearing on Feb. 14, 2006, or, alternatively, provide the bank name and account number in which Montgomery Square Partnership has deposited $5,000,000 as directed by Judge Young on that date. If we cannot get satisfactory answers to these questions today, we intend to bring the issues to Judge Young's attention promptly.

Brian Davis

C H O A T E
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5056
Fax: 617-248-4000
E-mail: bad@choate.com

# EXHIBIT H

## Davis, Brian

| | |
|---|---|
| **From:** | Scher, Howard [scherhd@bipc.com] |
| **Sent:** | Monday, April 24, 2006 10:50 AM |
| **To:** | Davis, Brian; Ross, C. Randolph; McCormick, Brian |
| **Cc:** | Popeo, Paul |
| **Subject:** | RE: John Hancock/Vesterra |
| **Importance:** | High |

Brian,

Your recollection of the outcome of the preliminary injunction hearing is mistaken. A review of the transcript will show the entire representation made by me and the Court's acceptance of that.

"And two, I do represent to the
  2  Court that if the transaction occurs within that period of
  3  time $5 million will be set aside.
  4      THE COURT: I accept that as you are an officer of
  5  the Court."

I do not believe you have any reason to believe that I have breached my representation to the Court. If I am mistaken, please let me know before you suggest otherwise.

Howard

Howard D. Scher
Buchanan Ingersoll, PC
1835 Market Street
14th Floor
Philadelphia, PA 19103
email: scherhd@bipc.com
215.665.3920 office
215.665.8760 fax
215.990.9989 mobile
412.973.9985 mobile 2
215.985.0692 home

---

**From:** Davis, Brian [mailto:BDavis@choate.com]
**Sent:** Monday, April 24, 2006 9:28 AM
**To:** Scher, Howard; Ross, C. Randolph; McCormick, Brian
**Cc:** Popeo, Paul
**Subject:** John Hancock/Vesterra

Gentlemen:

As previously requested, please inform me today whether: (a) Vesterra still refuses to produce any and all drafts of Ms. Spevacek's expert report; and (b) Montgomery Square Partnership has sold or otherwise encumbered the Avenel at Montgomery Square property since the court hearing on Feb. 14, 2006, or, alternatively, provide the

bank name and account number in which Montgomery Square Partnership has deposited $5,000,000 as directed by Judge Young on that date.  If we cannot get satisfactory answers to these questions today, we intend to bring the issues to Judge Young's attention promptly.

Brian Davis

C H O A T E

CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5056
Fax: 617-248-4000
E-mail: bad@choate.com

---

Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP.  The substance of this message, along with any attachments, may be confidential and legally privileged.  If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was not intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com

---

TAX ADVICE DISCLAIMER: Any federal tax advice contained in this communication (including attachments) was not intended or written to be used, and it cannot be used, by you for the purpose of (1) avoiding any penalty that may be imposed by the Internal Revenue Service or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein. If you would like such advice, please contact us.

Above email is for intended recipient only and may be confidential and protected by attorney/client privilege.
If you are not the intended recipient, please advise the sender immediately.
Unauthorized use or distribution is prohibited and may be unlawful.