UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>VESTMONT LIMITED PARTNERSHIP,<br>VESTMONT LIMITED PARTNERSHIP II,<br>VESTMONT LIMITED PARTNERSHIP III,<br>and VESTERRA CORPORATION d/b/a<br>MONTGOMERY SQUARE PARTNERSHIP,<br><br>    Defendants. | CIVIL ACTION NO. 05-11614-WGY |

**PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE
ANY EVIDENCE PERTAINING TO JOHN HANCOCK'S
COMPROMISE OF UNRELATED CLAIMS AGAINST THIRD-PARTIES**

Plaintiff, John Hancock Life Insurance Company ("John Hancock" or "Hancock"), by its attorneys, hereby moves *in limine* to preclude Defendants[1] from presenting any evidence of John Hancock's prior compromise of unrelated claims against third-parties, because such evidence is (a) irrelevant, and (b) unduly prejudicial to John Hancock.

---

[1] Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited Partnership III, and Vesterra Corporation d/b/a Montgomery Square Partnership (collectively, "Defendants").

## **RELEVANT FACTS**

This is a breach of contract action to enforce the terms of a binding commercial loan commitment between John Hancock and Defendants (the "Loan Commitment"). The issues in-dispute have been significantly narrowed through motion practice and pre-trial hearings before this Court. The only remaining issue concerning Defendants' liability for their breach is a determination of whether John Hancock was "ready, willing, and able" to perform under the Loan Commitment in accordance with its terms. Judge Young's Order and Memorandum, Mar. 20, 2006, at 2, attached hereto as Exhibit A. The Defendants have asserted a counterclaim under Mass. Gen. Laws ch. 93A. That claim is dependant upon John Hancock's (alleged) conduct and behavior only with respect to the Loan Commitment at-issue.

Defendants have disclosed a desire to present evidence at trial concerning the *amount* and *type* of damages Hancock has in the past accepted from unrelated borrowers who breached unrelated loan commitments. Specifically, Hancock anticipates that the Defendants intend to introduce evidence of Hancock's compromise with certain borrowers regarding a forward loan commitment for the Regatta apartment complex (the "Regatta Loan Commitment"). There, after the loan failed to close, John Hancock negotiated a compromise with the breaching party by which Hancock agreed to accept only the deposits and fees previously submitted to Hancock by the borrower. The reason Hancock did so was that the damages Hancock incurred as a consequence of modest interest rate movements, during the period of that forward commitment, very closely approximated the total amount of the borrower's deposits with Hancock. The circumstances surrounding the Regatta Loan Commitment are (a) wholly irrelevant to the issues in this case; and (b) materially different than the loan amount, interest rate environment, and Hancock's actual damages, in the present case.

In the present case, substantial declines in interest rates, between the time the Loan Commitment was executed and the time of Defendants' breach, resulted in damages to Hancock of millions of dollars in excess of Defendants' deposits. Evidence of Hancock's resolution of the Regatta Loan Agreement breach should be precluded because it relates to a completely different property and was settled under entirely different circumstances. Hancock's decisions concerning how much money to accept in settlement of unrelated contract breaches is not probative of any issue material to the present litigation. Such evidence should, therefore, be prohibited.

## ARGUMENT

### I. EVIDENCE OF JOHN HANCOCK'S COMPROMISE OF UNRELATED CLAIMS AGAINST THIRD-PARTIES IS IRRELEVANT.

Fed. R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." What has transpired in the past between John Hancock and its other borrowers, particularly with respect to the amount of monies Hancock was willing to accept in settlement of prior contract breaches, does not make any fact material to the present dispute either more or less probable. *See Bates v. Shearson Lehman Bros., Inc.*, 42 F.3d 79, 83-84 (1st Cir. 1994) (affirming the district court's exclusion of evidence it found was "in no way related" to the central issue of the case); *Merrill v. County Stores, Inc.*, 669 F. Supp. 1164, 1169 (D.N.H. 1987) (agreeing that evidence was inadmissible because it had "no probative value" for "[t]he issue at hand").

There are two remaining claims in this case: (1) Hancock's breach of contract claim, and (2) Defendants' M.G.L. c.93A claim. Hancock's breach of contract claim turns on whether Hancock was "ready, willing and able" to perform under the terms of the Loan Commitment. Evidence related to that issue is to be found in the language of the Loan Commitment, and by

reference to internal documents, and the testimony of percipient witnesses, concerning Hancock's willingness and ability to close this loan. Defendants' 93A claim turns on questions of conduct by the parties in *this* case. Hancock's activities directed to non-party borrowers have no bearing on these issues. Evidence of John Hancock's compromise of unrelated claims should therefore be precluded. *See* Fed. R. Evid. 402.

## II. EVIDENCE OF JOHN HANCOCK'S COMPROMISE OF UNRELATED CLAIMS AGAINST THIRD-PARTIES WOULD BE UNDULY PREJUDICIAL.

Evidence of John Hancock's compromise of unrelated claims against third-parties should, in the alternative, be precluded pursuant to Fed. R. Evid. 403. Rule 403 provides for the exclusion of otherwise relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." Allowing the Defendants to present evidence of John Hancock's compromise of the breached Regatta Loan Commitment would be unduly prejudicial to John Hancock. *See CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.*, 144 F.3d 35, 45 (1st Cir. 1998) (finding the probative value of two previous cases "weak" and commenting that allowing the proponent to "introduce evidence perfecting the analogy of the other sites and chemicals to the ones at issue in this trial" would result in a "replay of the litigation of those other two cases").

Each loan agreement John Hancock enters into with a prospective borrower is typically heavily negotiated, and as a result, the terms of the agreements vary. Further, the amount of damages suffered by Hancock in the event of a breach is heavily influenced by (a) the amount of the loan and (b) interest rate fluctuations which occur between the time the contract is executed, and the time of the breach. These rate fluctuations, of course, are subject to substantial variability. Because the terms of the agreements and the circumstances under which they were entered vary, any compromise in the event of a breach is unique to that particular situation. The

introduction of evidence relating to contracts that were negotiated, executed, and subsequently compromised at different times and under disparate conditions would be misleading for the jury and would cause undue prejudice to John Hancock. Specifically, evidence of the Regatta compromise could mislead the jury and suggest, unfairly, that Hancock should have accepted Defendants' deposits in compromise of the instant claim, or that the amount of Hancock's damages in this case is properly measured with reference to the amount of Defendants' deposits. Both assertions are false.[2] *See Kinan v. City of Brockton*, 876 F.2d 1029, 1034 (1st Cir. 1989) (noting that, because the two prior cases plaintiff sought to introduce had been settled, they could not "be used to prove custom or practice" since "they were decided on the basis of negotiations"); *Herlihy Mid-Continent Co. v. N. Ind. Public Serv.*, 245 F.2d 440, 444 (7th Cir. 1957) (commenting that it was error to admit evidence of prior contracts to which defendant was not a party because those transactions with others "had no probative value in interpreting the contractual issues here at-issue"); *University City, Mo. v. Home Fire & Marine Ins. Co.*, 114 F.2d 288, 294 (8th Cir. 1940) (internal quotation and citation omitted) (determining that the district court erred in considering expired policies because "[e]ach policy is an independent contract" and the terms of previous policies are "of no avail in interpreting the provisions of a subsequently issued and differently written contract").

The Regatta Loan Commitment was an unrelated, independently negotiated contract that arose in a different context and at a different time. The probative value, if any, of evidence of the compromise of the Regatta Loan Commitment is far outweighed by its prejudicial and confusing effect. Accordingly, all such evidence should be precluded.

---

[2] Introduction of this new, unrelated subject matter would also unnecessarily complicate the trial. Hancock may be required to introduce additional evidence of other compromises where Hancock sought and received substantially more in damages for a breached forward commitment than it received in the Regatta matter, or is seeking from Defendants.

## CONCLUSION

For the foregoing reasons, John Hancock respectfully requests that this Court preclude Defendants from offering evidence of John Hancock's compromise of unrelated claims against third-parties regarding loans other than the Loan Commitment.

>Respectfully submitted,
>
>JOHN HANCOCK LIFE INSURANCE COMPANY,
>
>By its attorneys,
>
>/s/ Brian A. Davis
>Brian A. Davis (BBO #546462)
>Paul D. Popeo (BBO #567727)
>Meghan L. Rhatigan (BBO #663039)
>Elizabeth A. Castellani (BBO #663818)
>CHOATE, HALL & STEWART LLP
>Two International Place
>Boston, MA 02110
>Tele: 617-248-5000
>Fax: 617-248-4000

Date: May 1, 2006

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1, the undersigned counsel for the Plaintiff hereby certifies that he has conferred in good faith with counsel for the Defendants concerning the subject matter of this Motion. The parties were not able to resolve or narrow the issues raised therein.

>/s/ Brian A. Davis
>Brian A. Davis

-7-

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 1, 2006.

                                                  */s/ Brian A. Davis*
                                                Brian A. Davis

4073561v3

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY,<br><br>      Plaintiffs,<br><br>v.<br><br>VESTMONT LIMITED PARTNERSHIP,<br>VESTMONT LIMITED PARTNERSHIP II,<br>VESTMONT LIMITED PARTNERSHIP III<br>& VESTERRA CORPORATION d/b/a<br>MONTGOMERY SQUARE PARTNERSHIP,<br><br>      Defendants. | CIVIL ACTION<br>NO. 05-11614-WGY |

MEMORANDUM AND ORDER

YOUNG, D.J.                                                March 20, 2006

On March 16, 2006, the Court heard arguments as to a Motion for Summary Judgment [Doc. No. 22] filed by John Hancock ("Hancock") and took under advisement that motion, as well as a Cross Motion for Partial Summary Judgment [Doc. No. 32] filed by Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited Partnership III, and Vesterra Corporation d/b/a/ Montgomery Square Partnership (collectively, "Vesterra"). After due consideration of the arguments made at the hearing and in the briefs, the Court is prepared to make its ruling.

The Court rules that there exists a valid contract between Vesterra and Hancock formed on August 17, 2004 when the Application to John Hancock Life Insurance Company for a First Mortgage Loan ("Loan Application") was signed by Timothy J. Malik, Senior Investment Officer for Hancock, indicating Hancock's acceptance of the application. See Answer [Doc. No. 2], Ex. 2 ("Loan Application") at 26-28 (signature pages). The 10% Constant benchmark was never incorporated into the terms of the Loan Application; so as to this contract, there was a meeting of the minds.

Despite the Court's ruling as to the existence of a valid contract, there is still a genuine issue of material fact as to whether Hancock was ready, willing, and able to perform under the contract. See Singarella v. City of Boston, 342 Mass. 385, 387 (1961) (identifying as an element of any breach of contract claim that plaintiff was ready, willing and able to perform under the contract); see also Interstate Litho Corp. v. Brown, 255 F.3d 19, 28 (1st Cir. 2001) (ruling that the issue of whether the plaintiff was able to perform was for the jury to decide). Hancock's application of the 10% Constant to Vesterra's Loan Application raises a question as to Hancock's willingness to perform under the contract; therefore, summary judgment as to the breach of contract claim must be DENIED.

2

Summary judgment is ALLOWED as to Vesterra's counterclaim for fraudulent inducement (Count V). Am. Countercl. [Doc. No. 18] ¶¶ 47-56. Assuming facts in favor of Vesterra, the timing of events raises no issue of material fact as to whether a misrepresentation occurred prior to Vesterra's decision to submit its Loan Application to Hancock. Vesterra signed and submitted the loan application on July 30, 2004. See Def. Statement of Disputed Facts in Opp'n to Pl.'s Mot. for Summ. J. [Doc. No. 30] ("Def. Facts") ¶ 11; Loan Application at 26-28 (signature pages).

According to Vesterra, the 10% Constant was requested by Hancock officials to be applied to the loan application during the approval process and after Vesterra had already submitted the Loan Application. See Def. Facts ¶ 11 (stating that once the Loan Application was submitted by Vesterra, the new head of Hancock's mortgage loan operations, upon receiving the application, insisted that the application meet an additional requirement of the 10% Constant). Vesterra has not raised an issue of material fact as to whether, prior to Vesterra's submission, Hancock misrepresented -- at that time -- its intention to close the loan in accordance with the terms of the Loan Application, having intended to apply the 10% Constant.

In addition, the only alleged misrepresentation Vesterra identifies is located in the Loan Application itself. See Am. Countercl. ¶ 48 ("John Hancock misrepresented a material fact by

indicating <u>in the Loan Application</u> that all of the requirements for disbursement of the Loan were contained therein." (emphasis added)). Vesterra does not identify a specific provision of the Loan Application in making this assertion; however, the application does state that "[i]n the event John Hancock accepts this Application . . . , then John Hancock agrees to make the Loan upon and subject to the provisions contained in the Terms and Conditions hereof . . . ." Loan Application ¶ 27(b). As noted earlier, Hancock countersigned the Application on August 17, 2004. Even assuming this statement could be regarded as a misrepresentation, any representations made in the application could not be attributed to Hancock until Hancock signed the application on August 17, 2004 -- <u>after</u> Vesterra signed and submitted the Loan Application. Vesterra has identified no representations made prior to its decision to submit the Loan Application. The failure of Vesterra to identify any such representations requires the Court rule that Vesterra's claim of fraudulent inducement cannot stand.

    Summary judgment is also ALLOWED as to Vesterra's counterclaim for unjust enrichment (Count II). Am. Countercl. ¶¶ 37-39. As the Court has ruled that there exists an enforceable contract between the parties, an unjust enrichment claim cannot lie. See <u>In Re Lupron Mktg. & Sales Practices Litig.</u>, 295 F. Supp. 2d 148, 182 (D. Mass. 2003) (Stearns, J.) ("Where a

contract does govern the parties relationship, the contract provides the measure of the plaintiff's right and no action for unjust enrichment lies.").

Summary judgment is DENIED as to the counterclaim under Massachusetts General Laws Chapter 93A (Count VI). Am. Countercl. ¶¶ 57-65. Hancock has failed to meet its burden in showing that the alleged deceptive acts -- namely, the alleged addition of an undisclosed condition to the disbursement of the loan -- did not occur "primarily and substantially" in Massachusetts. See Mass. Gen. Laws ch. 93A, § 11; Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 470 (2003) (holding that the burden of proof rests with the person alleging that acts did not occur "primarily and substantially" in Massachusetts).

Vesterra has agreed to the dismissal of its counterclaims for Money Had and Received (Count III), Am. Countercl. ¶¶ 40-42, and Conversion (Count IV), Am. Countercl. ¶¶ 43-46.

Vesterra's Cross Motion for Partial Summary Judgment [Doc. No. 32] is DENIED. The provision governing liability in the event of a failure to close the loan indicates that the borrower would be liable for all "losses" and "damages" as a result of the failure to close. Loan Application ¶ 30. There is a genuine issue as to what losses were contemplated by the parties at the time they entered into this contract. The fact that the default

5

and prepayment provisions of the contract specifically identify, as a formula for a penalty payment, see Loan Application ¶¶ 3(g), 6(d), the same formula (if it is, in fact, the same formula) now being proposed by Hancock to measure its losses for the failure to close, cannot establish, as matter of law, that this method of calculation was meant to be excluded as a measure of losses for a failure to close the loan.  This does not mean that the Court adopts Hancock's measure of damages.  According to the Loan Application, Hancock must prove what losses <u>resulted from</u> the failure to close which necessarily requires evidence of how much Hancock actually intended to disburse.

    Accordingly, Hancock's Motion for Summary Judgment [Doc. No. 22] is ALLOWED in part and DENIED in part.  Vesterra's Cross Motion for Partial Summary Judgment [Doc. No. 32] is DENIED.

    SO ORDERED.

/s/ William G. Young
_____
WILLIAM G. YOUNG
DISTRICT JUDGE