UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> VESTMONT LIMITED PARTNERSHIP, VESTMONT LIMITED PARTNERSHIP II, VESTMONT LIMITED PARTNERSHIP III, and VESTERRA CORPORATION d/b/a MONTGOMERY SQUARE PARTNERSHIP, <br><br> Defendants. | CIVIL ACTION NO. 05-11614-WGY |

## PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE PERTAINING TO DEFENDANTS' EFFORTS TO LEASE THE AVENEL APARTMENT COMPLEX

Plaintiff, John Hancock Life Insurance Company ("John Hancock" or "Hancock"), by its attorneys, hereby moves *in limine* to preclude Defendants[1] from offering or making reference to any evidence concerning their alleged efforts to lease the "Avenel at Montgomery Square" apartment complex (the "Avenel Apartments") that is the subject of the loan commitment at-issue in this case because such evidence is (a) irrelevant, and (b) potentially misleading to the jury and prejudicial to John Hancock.

---

[1] Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited Partnership III, and Vesterra Corporation d/b/a Montgomery Square Partnership (collectively, "Defendants").

**RELEVANT FACTS**

John Hancock brought this action against Defendants to enforce the unambiguous terms of a binding commercial loan commitment secured, in part, by the Avenel Apartments (the "Loan Commitment"). According to the express terms of the Loan Commitment, Defendants were obligated either to close the loan on or before August 1, 2005, or to pay "all damages, costs and expenses" incurred by John Hancock. It is undisputed that Defendants' inability to lease the Avenel Apartments is *not* an excuse for non-performance under the terms of the Loan Commitment. *See* Loan Commitment at 30(d).

Condition 49 of the Loan Commitment (the "Rental Achievement threshold") obligated the Defendants to achieve 80% occupancy prior to the closing date in order to receive disbursement of the full $32 million loan amount at closing. Under the express terms of the Loan Commitment, failure to meet the Rental Achievement threshold does not excuse Defendants' non-performance of the contract. Defendants acknowledge this fact. *See* Koller Dep. 69:8-14 ("Well, I regarded the risk in this application really was that we had to achieve certain things that were – that might not be achieved and most significant among that was [sic] the rental achievement requirements and the occupancy requirements.").

Defendants may seek to introduce evidence regarding their alleged efforts and/or inability to fully lease the Avenel Apartments as an excuse or explanation for their failure to close the Loan Commitment. That activity is not relevant to any issue in this case. Any evidence pertaining to the Defendants' efforts to lease the Avenel Apartments should be precluded because it is irrelevant and, if allowed, would be unduly prejudicial to John Hancock.

## ARGUMENT

### I.   EVIDENCE OF DEFENDANTS' ALLEGED EFFORTS TO LEASE THE AVENEL APARTMENTS IS IRRELEVANT.

Fed. R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence pertaining to the Defendants' alleged leasing efforts and/or their inability to meet the Rental Achievement requirement is wholly unrelated to any issue material to this case. The Court has found that the Loan Commitment is a valid contract between the parties, and that the Defendants have breached that contract. *See* Judge Young's Order and Memorandum, Mar. 20, 2006, at 2 (declaring "there exists a valid contract"), attached hereto as Exhibit A; Hearing Transcript, Apr. 20, 2006, at 8 (stating, in reference to the Defendants, "because breach they did"), attached hereto as Exhibit B. Evidence of Defendants' leasing efforts is, therefore, not probative of whether Defendants breached the contract. It is similarly irrelevant to the question whether Hancock was "ready, willing and able" to perform in accordance with the terms of the Loan Commitment, as that question does not turn on Defendants' actions of any kind. Such evidence should, therefore, be precluded. *See Bates v. Shearson Lehman Bros., Inc.*, 42 F.3d 79, 83-84 (1st Cir. 1994) (affirming the district court's exclusion of evidence it found was "in no way related" to the central issue of the case); *A.J. Cunningham Packing Corp. v. Florence Beef Co.*, 785 F.2d 348, 351 (1st Cir. 1986) (finding trial court was "well within its discretion in rejecting as irrelevant all of the offered evidence as to visual leanness" because the contract at-issue was based on chemical leanness).

II.    **EVIDENCE OF DEFENDANTS' SUPPOSED DIFFICULTY IN LEASING THE AVENEL PROPERTY WOULD BE UNDULY PREJUDICIAL.**

Evidence of any effort by Defendants to lease the Avenel Apartments, even if found to be relevant, should be precluded pursuant to Fed. R. Evid. 403. Rule 403 provides for the exclusion of otherwise relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." John Hancock would be unduly prejudiced by the introduction of evidence providing a supposed explanation as to why the Defendants could not close the loan. Under the Loan Commitment, the Defendants accepted the risk that they might be unable to meet its various conditions, and they agreed that, if the loan failed to close, they would pay John Hancock damages. That agreement is reflected in the unambiguous terms of the Loan Commitment. Any evidence which might mislead the jury, and suggest that Defendants' inability to lease the Avenel Apartments somehow excuses Defendants' breach, should be excluded. *See Elgabri v. Lekas*, 964 F.2d 1255, 1261 (1st Cir. 1992) (excluding evidence pursuant to Rule 403 because it "would only confuse the issues which were at the heart of the litigation"); *Hooker v. Tufts Univ.*, 581 F. Supp. 98, 102 (D. Mass. 1983) (finding that evidence pertaining to Tufts' Title IX policies should be excluded because "the weak probative value of this evidence was far outweighed by the prospect of a distracting and peripheral trial" regarding "a statute at no way in issue in this case").

Further, the admission of any such evidence would unnecessarily complicate trial in this matter, as Hancock would be obligated to introduce rebuttal evidence which establishes that Defendants' leasing efforts were not substantial or pursued in good faith. Defendants' agreement to sell the Avenel Apartments for more than $59 million was not dependent in any way on the number of units leased in the Avenel Apartment complex. Defendants, therefore, had no financial incentive to lease the Avenel Apartments and, in fact, had a disincentive to expend their

efforts and money to generate new leases which would have absolutely no impact on the sale price of the Avenel Apartments.

## CONCLUSION

For the foregoing reasons, John Hancock respectfully requests that this Court preclude Defendants from offering any evidence pertaining to its efforts to lease the Avenel Apartments.

Respectfully submitted,

JOHN HANCOCK LIFE INSURANCE COMPANY,

By its attorneys,


/s/ Brian A. Davis
Brian A. Davis (BBO #546462)
Paul D. Popeo (BBO #567727)
Meghan L. Rhatigan (BBO #663039)
Elizabeth A. Castellani (BBO #663818)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tele: 617-248-5000
Fax: 617-248-4000

Date:   May 1, 2006


## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1, the undersigned counsel for the Plaintiff hereby certifies that he has conferred in good faith with counsel for the Defendants concerning the subject matter of this Motion. The parties were not able to resolve or narrow the issues raised therein.


/s/ Brian A. Davis
Brian A. Davis

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 1, 2006.

*/s/ Brian A. Davis*
Brian A. Davis

4075002v2

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
JOHN HANCOCK LIFE INSURANCE    )
COMPANY,                       )
                              )
          Plaintiffs,          )
                              )
     v.                        )    CIVIL ACTION
                              )    NO. 05-11614-WGY
VESTMONT LIMITED PARTNERSHIP,  )
VESTMONT LIMITED PARTNERSHIP II, )
VESTMONT LIMITED PARTNERSHIP III )
& VESTERRA CORPORATION d/b/a   )
MONTGOMERY SQUARE PARTNERSHIP, )
                              )
          Defendants.          )
_____)
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                    March 20, 2006


     On March 16, 2006, the Court heard arguments as to a Motion

for Summary Judgment [Doc. No. 22] filed by John Hancock

("Hancock") and took under advisement that motion, as well as a

Cross Motion for Partial Summary Judgment [Doc. No. 32] filed by

Vestmont Limited Partnership, Vestmont Limited Partnership II,

Vestmont Limited Partnership III, and Vesterra Corporation d/b/a/

Montgomery Square Partnership (collectively, "Vesterra").  After

due consideration of the arguments made at the hearing and in the

briefs, the Court is prepared to make its ruling.

The Court rules that there exists a valid contract between Vesterra and Hancock formed on August 17, 2004 when the Application to John Hancock Life Insurance Company for a First Mortgage Loan ("Loan Application") was signed by Timothy J. Malik, Senior Investment Officer for Hancock, indicating Hancock's acceptance of the application. <u>See</u> Answer [Doc. No. 2], Ex. 2 ("Loan Application") at 26-28 (signature pages). The 10% Constant benchmark was never incorporated into the terms of the Loan Application; so as to this contract, there was a meeting of the minds.

Despite the Court's ruling as to the existence of a valid contract, there is still a genuine issue of material fact as to whether Hancock was ready, willing, and able to perform under the contract. <u>See</u> <u>Singarella</u> v. <u>City of Boston</u>, 342 Mass. 385, 387 (1961) (identifying as an element of any breach of contract claim that plaintiff was ready, willing and able to perform under the contract); <u>see also</u> <u>Interstate Litho Corp.</u> v. <u>Brown</u>, 255 F.3d 19, 28 (1st Cir. 2001) (ruling that the issue of whether the plaintiff was able to perform was for the jury to decide). Hancock's application of the 10% Constant to Vesterra's Loan Application raises a question as to Hancock's willingness to perform under the contract; therefore, summary judgment as to the breach of contract claim must be DENIED.

Summary judgment is ALLOWED as to Vesterra's counterclaim for fraudulent inducement (Count V). Am. Countercl. [Doc. No. 18] ¶¶ 47-56. Assuming facts in favor of Vesterra, the timing of events raises no issue of material fact as to whether a misrepresentation occurred prior to Vesterra's decision to submit its Loan Application to Hancock. Vesterra signed and submitted the loan application on July 30, 2004. See Def. Statement of Disputed Facts in Opp'n to Pl.'s Mot. for Summ. J. [Doc. No. 30] ("Def. Facts") ¶ 11; Loan Application at 26-28 (signature pages).

According to Vesterra, the 10% Constant was requested by Hancock officials to be applied to the loan application during the approval process and after Vesterra had already submitted the Loan Application. See Def. Facts ¶ 11 (stating that once the Loan Application was submitted by Vesterra, the new head of Hancock's mortgage loan operations, upon receiving the application, insisted that the application meet an additional requirement of the 10% Constant). Vesterra has not raised an issue of material fact as to whether, prior to Vesterra's submission, Hancock misrepresented -- at that time -- its intention to close the loan in accordance with the terms of the Loan Application, having intended to apply the 10% Constant.

In addition, the only alleged misrepresentation Vesterra identifies is located in the Loan Application itself. See Am. Countercl. ¶ 48 ("John Hancock misrepresented a material fact by

3

indicating in the Loan Application that all of the requirements

for disbursement of the Loan were contained therein." (emphasis

added)).  Vesterra does not identify a specific provision of the

Loan Application in making this assertion; however, the

application does state that "[i]n the event John Hancock accepts

this Application . . . , then John Hancock agrees to make the

Loan upon and subject to the provisions contained in the Terms

and Conditions hereof . . . ."  Loan Application ¶ 27(b). As

noted earlier, Hancock countersigned the Application on August

17, 2004.  Even assuming this statement could be regarded as a

misrepresentation, any representations made in the application

could not be attributed to Hancock until Hancock signed the

application on August 17, 2004 -- after Vesterra signed and

submitted the Loan Application.  Vesterra has identified no

representations made prior to its decision to submit the Loan

Application.  The failure of Vesterra to identify any such

representations requires the Court rule that Vesterra's claim of

fraudulent inducement cannot stand.

Summary judgment is also ALLOWED as to Vesterra's

counterclaim for unjust enrichment (Count II).  Am. Countercl. ¶¶

37-39.  As the Court has ruled that there exists an enforceable

contract between the parties, an unjust enrichment claim cannot

lie.  See In Re Lupron Mktg. & Sales Practices Litig., 295 F.

Supp. 2d 148, 182 (D. Mass. 2003) (Stearns, J.) ("Where a

4

contract does govern the parties relationship, the contract provides the measure of the plaintiff's right and no action for unjust enrichment lies.").

Summary judgment is DENIED as to the counterclaim under Massachusetts General Laws Chapter 93A (Count VI).  Am. Countercl. ¶¶ 57-65.  Hancock has failed to meet its burden in showing that the alleged deceptive acts -- namely, the alleged addition of an undisclosed condition to the disbursement of the loan -- did not occur "primarily and substantially" in Massachusetts.  See Mass. Gen. Laws ch. 93A, § 11; Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 470 (2003) (holding that the burden of proof rests with the person alleging that acts did not occur "primarily and substantially" in Massachusetts).

Vesterra has agreed to the dismissal of its counterclaims for Money Had and Received (Count III), Am. Countercl. ¶¶ 40-42, and Conversion (Count IV), Am. Countercl. ¶¶ 43-46.

Vesterra's Cross Motion for Partial Summary Judgment [Doc. No. 32] is DENIED.  The provision governing liability in the event of a failure to close the loan indicates that the borrower would be liable for all "losses" and "damages" as a result of the failure to close.  Loan Application ¶ 30.  There is a genuine issue as to what losses were contemplated by the parties at the time they entered into this contract.  The fact that the default

and prepayment provisions of the contract specifically identify,
as a formula for a penalty payment, <u>see</u> Loan Application ¶¶ 3(g),
6(d), the same formula (if it is, in fact, the same formula) now
being proposed by Hancock to measure its losses for the failure
to close, cannot establish, as matter of law, that this method of
calculation was meant to be excluded as a measure of losses for a
failure to close the loan.  This does not mean that the Court
adopts Hancock's measure of damages.  According to the Loan
Application, Hancock must prove what losses <u>resulted from</u> the
failure to close which necessarily requires evidence of how much
Hancock actually intended to disburse.

Accordingly, Hancock's Motion for Summary Judgment [Doc. No.
22] is ALLOWED in part and DENIED in part.  Vesterra's Cross
Motion for Partial Summary Judgment [Doc. No. 32] is DENIED.


SO ORDERED.

                                    /s/ William G. Young
                              _____
                              WILLIAM G. YOUNG
                              DISTRICT JUDGE

6

# Exhibit B

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action
No. 05-11614-WGY

```
* * * * * * * * * * * * * * * * * * *
                                    *
JOHN HANCOCK LIFE INSURANCE         *
COMPANY,                            *
                                    *
     Plaintiff/Counterclaim Defendant, *
                                    *
v.                                  *    MOTION HEARING
                                    *
VESTMONT LIMITED PARTNERSHIP,       *
et al.,                             *
                                    *
     Defendants/Counterclaim Plaintiffs, *
                                    *
* * * * * * * * * * * * * * * * * * *
```

          BEFORE:  The Honorable William G. Young,
                        District Judge

APPEARANCES:

          CHOATE, HALL & STEWART (By Brian A. Davis,
     Esq. and Paul D. Popeo, Esq.), Two International
     Place, 100-150 Oliver Street, Boston,
     Massachusetts 02110, on behalf of the
     Plaintiff/Counterclaim Defendant

          DEUTSCH WILLIAMS BROOKS DeRENSIS & HOLLAND,
     P.C. (By Robert D. Hillman, Esq.), 99 Summer
     Street, Boston, Massachusetts 02110-1213
          - and -
          BUCHANAN INGERSOLL, P.C. (By Howard D.
     Scher, Esq.), 1835 Market Street, Floor 14,
     Philadelphia, Pennsylvania 19103, on behalf of the
     Defendants/Counterclaim Plaintiffs

                         1 Courthouse Way
                         Boston, Massachusetts

                         April 20, 2006

1          THE CLERK:   Calling Civil Action 05-11614, John

2     Hancock v. Vestmont.

3          (Whereupon the Court and the Clerk conferred.)

4          THE COURT:   Would counsel identify themselves.

5          MR. DAVIS:   Good afternoon, your Honor.   Brian

6     Davis, with me Paul Popeo, representing John Hancock.

7          MR. SCHER:   Good afternoon, your Honor.   Howard

8     Scher, with me, Rob Hillman, representing Vesterra, the

9     defendants.

10         THE COURT:   All right, I'll hear from Mr. Scher.

11    Why shouldn't this be dismissed in view of the Pennsylvania

12    Gist of the Action Doctrine?

13         MR. SCHER:   Because the Gist of the Action Doctrine

14    is an action that means without the contract claims.   We

15    have no cause of action.   Well, we have no contract claims.

16    The gist of John Hancock's action is a contract claim.   But

17    not, not Vesterra, not the defendants.   So the Gist of the

18    Action Doctrine doesn't apply to eliminate our claims.

19    That's the first and foremost reason, your Honor.

20              This is a fraud case that includes the

21    Massachusetts 93A deception as well as the Pennsylvania

22    fraud.

23         The Gist of the Action Doctrine, your Honor, very

24    briefly, is a doctrine which has been predicted by the

25    Superior Court of Pennsylvania in 2002.   The United States

1    Court of Appeals for the Third Circuit, these are the two

2    cases they cite, the United States Court of Appeals for the

3    Third Circuit in an opinion that is not precedential,

4    although it did include an illustrious panel of Justice, now

5    Justice Alito, Chertoff, and Judge Becker.  Judge Becker

6    filed a dissenting opinion which I believe more adequately

7    predicts Pennsylvania law than New Jersey's Alito or New

8    Jersey's Chertoff.  Judge Becker as your Honor well knows,

9    former chief judge of the United States Court of Appeals for

10   the Third Circuit, was a Pennsylvania lawyer, a Philadelphia

11   lawyer before he was elevated to, first the district court

12   and then the Court of Appeals.  But, in any event, his

13   dissenting opinion more accurately describes what

14   Pennsylvania law is.

15         And then we look at the 2005 opinion, which we've

16   cited, the Sullivan v. Chartwell case.  And in Sullivan v.

17   Chartwell, that's another Superior Court opinion again

18   predicting the application of this notion in the law which

19   has not yet been adopted by the Pennsylvania Supreme Court.

20   And that case has, has facts which are extraordinarily

21   similar to the, strikingly similar to those in the case at

22   bar which describe that the party in John Hancock's position

23   fraudulently agreed to perform obligations that it never

24   intended to perform in order to induce Vesterra to agree to

25   the contract.  The --

Page 4

1          THE COURT:  Yes, but that's, that's fraud in the

2    inducement.  That's out here.

3          What is the fraud that you're talking about?  The

4    way the fraud arises on what appears to be -- I have

5    problems saying that it's fraud.  The way the issue arises,

6    unless I'm missing something here, is the conduct of the

7    parties after the loan application is executed.

8          MR. SCHER:  No, your Honor.  Let me, let me just

9    state it once and for all, please, with as much precision as

10   I can.  And we have submitted, knowing this is a motion for,

11   motion to dismiss, we've submitted an affidavit with a

12   series of documents which synthesize the fraud claim in A

13   through O, a series of exhibits.

14         Number one, on July 29, John Hancock sent to us,

15   sent to Vesterra the loan application.  And in that document

16   they said that when the loan is approved in committee an

17   officer of John Hancock will execute Page 27.

18         Now, your Honor started at that point, at Page 27

19   and when they had countersigned it.  But there's a period of

20   time between July 29 and August 18, the date on which John

21   Hancock signed and returned it, it's that period of time in

22   which this fraud occurs and the fraud occurs on August 10th.

23         On August 10th -- if I can -- shall I continue,

24   your Honor?

25         THE COURT:  No, go ahead.

1            MR. SCHER:  Okay.  On August 10th, Exhibit B

2    contains what John Hancock, an internal document, what they

3    call their approval document.  And on the approval document

4    there are interlineations.  It is those interlineations

5    which constitute the fraud.  John Hancock had an obligation

6    to tell Vesterra Corporation that there were changes to the

7    loan approval, that they were not approving the loan

8    application which was submitted on July 29 but instead they

9    were doing something else.

10           And we have testimony from witnesses who all

11   acknowledge that this something else, this inclusion of this

12   other condition, which we can talk about, but it's really

13   not, it is a material change, is a change that's so

14   important that, that Manulife, or John Hancock, had to get

15   this approval document resigned by its staff and so that it

16   ultimately wasn't approved in their form until August 17th.

17   In the meantime, they, they decided, John Hancock decided

18   that, number one, if we tell Vesterra Corporation it would

19   be a, quote, deal killer, not my words, didn't put it in the

20   witness's mouth, the witness says it would be a deal killer

21   if we tell them we've changed the terms and conditions of

22   our acceptance.

23           Number two.  Official of John Hancock says, well,

24   we knew that the loan applicant wouldn't be happy because it

25   would reduce the size of the loan that would be available to

1    them.

2        Number three, a privilege log they did on August 11

3    shows an amendment to the loan application, that very first

4    document, was prepared.  We do not know what that loan,

5    amended loan application says.  But we may infer, as is the

6    law, having asserted the attorney-client privilege, that

7    that amended loan application contained the real terms and

8    conditions which the intention of Manulife/John Hancock was

9    at the time of August 11th.

10        THE COURT:  What is the misrepresentation?

11        MR. SCHER:  They represented that they would

12    process and approve the loan application which they gave to

13    us on July 29 and in fact their present intention at the

14    time they signed that application, countersigned and

15    returned it to us, was to not, not do that.

16        THE COURT:  Except they signed it and I've ruled

17    that's a contract.

18        MR. SCHER:  But, your Honor, there was fraud at the

19    time that they signed it.  And that's the law of

20    Pennsylvania, your Honor.  And I think maybe the subtlety is

21    that there is an obligation in Pennsylvania, there's an

22    ancient case, it's only two years after I was born, but I'll

23    call it ancient, anyway, it's called Neuman v. Corn

24    Exchange.  And it says, perhaps is the law of Massachusetts

25    but is the law of Pennsylvania since 1947, it says that the

1    withholding of information which should be disclosed to a

2    contracting party constitutes fraud.

3              THE COURT:  Where there's a duty to disclose.

4              MR. SCHER:  The duty to disclose arises from the

5    July 29 letter where they said we will process this loan

6    application, not a loan application that's different than

7    this one.

8              THE COURT:  And they signed this loan application.

9              MR. SCHER:  But they had the intention not to, not

10   to act on that.  Your Honor, we know that these conditions

11   that were changed had a material effect.  We know that they

12   mattered to them.  That's why they included it.  And we also

13   know that no disbursement under this loan would have been

14   made except by following the approval document, not the loan

15   application, but the approval document.  That's what their

16   own documents prove.

17             THE COURT:  That's an internal document.

18             MR. SCHER:  That's their instructions to their

19   internal people.  We never --

20             THE COURT:  Mr. Scher, Mr. Scher, I'm going to let

21   you put all this evidence in, assuming that what you say --

22             MR. SCHER:  I apologize for my voice by the way.

23             THE COURT:  -- is borne out.  But I'm dismissing

24   this fraud claim.  What we have -- we're just going around

25   the same things we've talked about before.  What we have

1    here is, proof on your part, as a matter of fact, you don't

2    even bear the burden of proof, they're going to have to bear

3    the burden of proof that on the loan application they

4    signed, at the time of your client's breach, because breach

5    they did, they at that time were ready, willing and able to

6    perform that loan agreement in accordance with its terms and

7    no other terms.  We have a bad man theory of contracts here.

8    If they choose to breach because they were not ready,

9    willing and able to perform at that time, they cannot

10   recover under the contract.  That's the case we're going to

11   try.

12           So the motion to dismiss this claim seven is

13   allowed.

14           The emergency motion to take this Hancock officer's

15   deposition is likewise allowed.  He will be produced,

16   Mr. Warren Thomson, for his deposition forthwith.

17           MR. DAVIS:  Your Honor?

18           THE COURT:  The case -- I didn't call for oral

19   argument on that.

20           MR. DAVIS:  I understand that, your Honor.  I'm

21   asking if you will hear any.

22           THE COURT:  I will hear it, briefly.

23           MR. DAVIS:  Yes.  Your Honor, Mr. Thomson is one of

24   the top executives at Hancock.  His deposition was not

25   noticed before the close of discovery.  And he has nothing

1    substantive to offer here.  And this is actually a motion to

2    reopen discovery, to take a deposition that was not noticed

3    previously.

4           THE COURT:  They can have his deposition.  And, you

5    know, you want millions of dollars here.  It cuts no ice at

6    all to tell me he's a top executive.  His deposition may be

7    taken.

8           The case will impanel on Monday, the 1st of May,

9    and it will conclude no later than Friday, the 12th of May.

10   I expect to sit every business day those two weeks with the

11   possible exception of Wednesday -- of Thursday morning, the

12   4th.  I'm trying to move a doctor's appointment.  We'll see.

13          THE CLERK:  And we're not sitting Friday, the 5th.

14          THE COURT:  Well, we'll sit but we won't sit in

15   this courtroom.  We're next door.

16          THE CLERK:  Okay.

17          THE COURT:  So we'll give them that day.

18          (Whereupon the Court and the Clerk conferred.)

19          THE COURT:  This is a five day trial.  We'll

20   clearly get it in during that time because I'll be keeping

21   time.

22          I won't charge the time picking the jury.  I will

23   not be able to pick the jury on the 1st.  But I'll have a

24   magistrate judge pick the jury.  It will be a twelve person

25   jury.  Six peremptory challenges per side.  And you won't

Page 10

1    need to do openings until Tuesday, the 2nd of May.

2             All right.  We've had a final pretrial conference

3    in the case.  The case is held for trial.  Thank you very

4    much.

5             MR. SCHER:  Thank you, your Honor.

6             MR. DAVIS:  Thank you, your Honor.

7             THE COURT:  We'll recess.  Only because we have

8    guests we'll just, we're in recess now, so stand easy.

9             (Whereupon the Court and the Clerk conferred.)

10            THE COURT:  Oh, while we're still on the record,

11   one more thing.

12            Should the case settle, a phone call to Ms. Smith

13   is all that's required.  We'll give you whatever time

14   necessary to file the settlement documents.  Don't make the

15   call unless it really settles because if it settles and you

16   try to unwind it, I will be very sticky.

17            We stand adjourned.

18            THE CLERK:  All rise.  Court is in recess.

19            (Whereupon the matter concluded.)

20

21

22

23

24

25

9f6c06e3-9b38-4234-8f24-07ed8cbc7fdb

1               C E R T I F I C A T E

2

3

4          I, Donald E. Womack, Official Court Reporter for

5     the United States District Court for the District of

6     Massachusetts, do hereby certify that the foregoing pages

7     are a true and accurate transcription of my shorthand notes

8     taken in the aforementioned matter to the best of my skill

9     and ability.

10

11

12

13

14
                   _____
15                      DONALD E. WOMACK
                      Official Court Reporter
                         P.O. Box 51062
16               Boston, Massachusetts 02205-1062
                      womack@megatran.com
17

18

19

20

21

22

23

24

25