UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> VESTMONT LIMITED PARTNERSHIP, <br> VESTMONT LIMITED PARTNERSHIP II, <br> VESTMONT LIMITED PARTNERSHIP III, <br> and VESTERRA CORPORATION d/b/a <br> MONTGOMERY SQUARE PARTNERSHIP, <br><br> Defendants. | CIVIL ACTION NO. 05-11614-WGY |

**PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE PERTAINING TO THE
<u>CONTEMPLATED AMENDMENT OF THE LOAN COMMITMENT</u>**

Plaintiff, John Hancock Life Insurance Company ("John Hancock" or "Hancock"), by its attorneys, hereby moves *in limine* to preclude Defendants[1] from offering or making reference to any evidence pertaining to a contemplated amendment of the loan commitment for the "Avenel at Montgomery Square" apartment complex that is at-issue in this case because such evidence is (a) irrelevant, and (b) potentially misleading to the jury and unfairly prejudicial to John Hancock.

---

[1] Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited Partnership III, and Vesterra Corporation d/b/a Montgomery Square Partnership (collectively, "Defendants").

-2-

## RELEVANT FACTS

This is a breach of contract action to enforce the terms of a binding commercial loan commitment between John Hancock and Defendants ("Loan Commitment"). The issues in-dispute have been significantly narrowed through motion practice and pre-trial hearings before this Court. The Court has found that there "exists a valid contract between Vesterra and Hancock formed on August 17, 2004" and that "[t]he 10% Constant benchmark was never incorporated into the terms of the Loan Application; so as to this contract, there was a meeting of the minds." Judge Young's Order and Memorandum ("Young's Order"), Mar. 20, 2006, at 2, attached hereto as Exhibit A. The only issues remaining to be tried in this case are (1) whether Hancock was "ready, willing and able" to perform under the Loan Commitment according to its terms, and (2) whether Hancock's use of its internal underwriting assumptions to approve the loan violated Mass. Gen. Laws ch. 93A.

It appears that Defendants will seek to present evidence at trial relating to a contemplated amendment of the Loan Commitment. In August of 2004, Timothy Malik, a John Hancock Investment Officer associated with this transaction, consulted with in-house attorneys regarding the possibility of amending the terms of the Loan Commitment to reflect the application of Hancock's 10% Constant underwriting guideline. An amendment of that type could have, in certain circumstances, reduced the amount of the loan to which Defendants would be entitled. Mr. Malik thereafter learned from the Defendants that any amendment to the Loan Commitment which might reduce the amount of the loan would be unacceptable to the Defendants. Consequently, John Hancock decided not to amend the Loan Commitment and instead modified its internal underwriting assumptions so that Hancock's internal 10% Constant benchmark would be met without reducing or restricting the funding Defendants would receive under the *existing*

*terms* of the Loan Commitment. Accordingly, no change or amendment to the Loan Commitment was necessary, and none was ever made.

## ARGUMENT

### I. EVIDENCE OF THE CONTEMPLATED AMENDMENT OF THE LOAN COMMITMENT IS IRRELEVANT.

Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The fact that John Hancock *considered* amending the Loan Commitment, but ultimately did not do so, has no bearing whatever on (a) whether Hancock was "ready, willing and able" to close the Loan Commitment according to its terms, or (b) whether Hancock's internal loan approval process violated M.G.L. c.93A. The Court has already determined that there "exists a valid contract between Vesterra and Hancock" and that "[t]he 10% Constant was never incorporated into the terms of the Loan Application." Young's Order, at 2. Therefore, the terms of the Loan Commitment, as written, govern the remaining issues in-dispute, and any reference to terms that could have been included in the contract, but ultimately were not, is irrelevant. *See A.J. Cunningham Packing Corp. v. Florence Beef Co.*, 785 F.2d 348, 351 (1st Cir. 1986) (finding trial court was "well within its discretion in rejecting as irrelevant all of the offered evidence as to visual leanness" because the contract at-issue was based on chemical leanness). Because it is irrelevant, any reference to this contemplated amendment should be precluded from evidence in this matter. *See* Fed. R. Evid. 402.

### II. EVIDENCE OF THE CONTEMPLATED AMENDMENT OF THE LOAN COMMITMENT IS UNDULY PREJUDICIAL TO JOHN HANCOCK.

Evidence of a draft amendment to the Loan Commitment which was (a) never finalized and (b) has no effect upon the terms of the Loan Commitment should also be precluded pursuant

to Federal Rule of Evidence 403. Rule 403 provides for the exclusion of otherwise relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." John Hancock would be unduly prejudiced by the introduction of evidence of the draft amendment. The draft was properly withheld from production in this matter on the grounds of the attorney-client and work product privilege. The prejudicial impact to Hancock from evidence of that draft, and the insinuation which Defendant's intend to suggest due to the circumstances under which it was withheld from production, may unfairly suggest that Hancock has acted unethically or improperly by asserting its lawful privilege objection. Evidence of the draft amendment should, therefore, be precluded. *See Elgabri v. Lekas*, 964 F.2d 1255, 1261 (1st Cir. 1992) (excluding evidence pursuant to Rule 403 because it "would only confuse the issues which were at the heart of the litigation").

## CONCLUSION

For the foregoing reason, John Hancock respectfully requests that this Court preclude Defendants from introducing any evidence pertaining to the contemplated amendment to the Loan Commitment.

Respectfully submitted,

JOHN HANCOCK LIFE INSURANCE COMPANY,

By its attorneys,

/s/ Brian A. Davis
Brian A. Davis (BBO #546462)
Paul D. Popeo (BBO #567727)
Meghan L. Rhatigan (BBO #663039)
Elizabeth A. Castellani (BBO #663818)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tele: 617-248-5000
Fax: 617-248-4000

Date:  May 1, 2006

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1, the undersigned counsel for the Plaintiff hereby certifies that he has conferred in good faith with counsel for the Defendants concerning the subject matter of this Motion. The parties were not able to resolve or narrow the issues raised therein.

/s/ Brian A. Davis
Brian A. Davis

-6-

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 1, 2006.

                                         */s/ Brian A. Davis*
                                         Brian A. Davis

4076161v4

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>VESTMONT LIMITED PARTNERSHIP, VESTMONT LIMITED PARTNERSHIP II, VESTMONT LIMITED PARTNERSHIP III & VESTERRA CORPORATION d/b/a MONTGOMERY SQUARE PARTNERSHIP,<br><br>Defendants. | CIVIL ACTION<br>NO. 05-11614-WGY |

MEMORANDUM AND ORDER

YOUNG, D.J.                                                March 20, 2006

On March 16, 2006, the Court heard arguments as to a Motion for Summary Judgment [Doc. No. 22] filed by John Hancock ("Hancock") and took under advisement that motion, as well as a Cross Motion for Partial Summary Judgment [Doc. No. 32] filed by Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited Partnership III, and Vesterra Corporation d/b/a/ Montgomery Square Partnership (collectively, "Vesterra"). After due consideration of the arguments made at the hearing and in the briefs, the Court is prepared to make its ruling.

The Court rules that there exists a valid contract between Vesterra and Hancock formed on August 17, 2004 when the Application to John Hancock Life Insurance Company for a First Mortgage Loan ("Loan Application") was signed by Timothy J. Malik, Senior Investment Officer for Hancock, indicating Hancock's acceptance of the application. See Answer [Doc. No. 2], Ex. 2 ("Loan Application") at 26-28 (signature pages). The 10% Constant benchmark was never incorporated into the terms of the Loan Application; so as to this contract, there was a meeting of the minds.

Despite the Court's ruling as to the existence of a valid contract, there is still a genuine issue of material fact as to whether Hancock was ready, willing, and able to perform under the contract. See Singarella v. City of Boston, 342 Mass. 385, 387 (1961) (identifying as an element of any breach of contract claim that plaintiff was ready, willing and able to perform under the contract); see also Interstate Litho Corp. v. Brown, 255 F.3d 19, 28 (1st Cir. 2001) (ruling that the issue of whether the plaintiff was able to perform was for the jury to decide). Hancock's application of the 10% Constant to Vesterra's Loan Application raises a question as to Hancock's willingness to perform under the contract; therefore, summary judgment as to the breach of contract claim must be DENIED.

2

Summary judgment is ALLOWED as to Vesterra's counterclaim for fraudulent inducement (Count V). Am. Countercl. [Doc. No. 18] ¶¶ 47-56. Assuming facts in favor of Vesterra, the timing of events raises no issue of material fact as to whether a misrepresentation occurred prior to Vesterra's decision to submit its Loan Application to Hancock. Vesterra signed and submitted the loan application on July 30, 2004. See Def. Statement of Disputed Facts in Opp'n to Pl.'s Mot. for Summ. J. [Doc. No. 30] ("Def. Facts") ¶ 11; Loan Application at 26-28 (signature pages).

According to Vesterra, the 10% Constant was requested by Hancock officials to be applied to the loan application during the approval process and after Vesterra had already submitted the Loan Application. See Def. Facts ¶ 11 (stating that once the Loan Application was submitted by Vesterra, the new head of Hancock's mortgage loan operations, upon receiving the application, insisted that the application meet an additional requirement of the 10% Constant). Vesterra has not raised an issue of material fact as to whether, prior to Vesterra's submission, Hancock misrepresented -- at that time -- its intention to close the loan in accordance with the terms of the Loan Application, having intended to apply the 10% Constant.

In addition, the only alleged misrepresentation Vesterra identifies is located in the Loan Application itself. See Am. Countercl. ¶ 48 ("John Hancock misrepresented a material fact by

indicating <u>in the Loan Application</u> that all of the requirements for disbursement of the Loan were contained therein." (emphasis added)). Vesterra does not identify a specific provision of the Loan Application in making this assertion; however, the application does state that "[i]n the event John Hancock accepts this Application . . . , then John Hancock agrees to make the Loan upon and subject to the provisions contained in the Terms and Conditions hereof . . . ." Loan Application ¶ 27(b). As noted earlier, Hancock countersigned the Application on August 17, 2004. Even assuming this statement could be regarded as a misrepresentation, any representations made in the application could not be attributed to Hancock until Hancock signed the application on August 17, 2004 -- <u>after</u> Vesterra signed and submitted the Loan Application. Vesterra has identified no representations made prior to its decision to submit the Loan Application. The failure of Vesterra to identify any such representations requires the Court rule that Vesterra's claim of fraudulent inducement cannot stand.

Summary judgment is also ALLOWED as to Vesterra's counterclaim for unjust enrichment (Count II). Am. Countercl. ¶¶ 37-39. As the Court has ruled that there exists an enforceable contract between the parties, an unjust enrichment claim cannot lie. See <u>In Re Lupron Mktg. & Sales Practices Litig.</u>, 295 F. Supp. 2d 148, 182 (D. Mass. 2003) (Stearns, J.) ("Where a

4

contract does govern the parties relationship, the contract provides the measure of the plaintiff's right and no action for unjust enrichment lies.").

Summary judgment is DENIED as to the counterclaim under Massachusetts General Laws Chapter 93A (Count VI). Am. Countercl. ¶¶ 57-65. Hancock has failed to meet its burden in showing that the alleged deceptive acts -- namely, the alleged addition of an undisclosed condition to the disbursement of the loan -- did not occur "primarily and substantially" in Massachusetts. See Mass. Gen. Laws ch. 93A, § 11; Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 470 (2003) (holding that the burden of proof rests with the person alleging that acts did not occur "primarily and substantially" in Massachusetts).

Vesterra has agreed to the dismissal of its counterclaims for Money Had and Received (Count III), Am. Countercl. ¶¶ 40-42, and Conversion (Count IV), Am. Countercl. ¶¶ 43-46.

Vesterra's Cross Motion for Partial Summary Judgment [Doc. No. 32] is DENIED. The provision governing liability in the event of a failure to close the loan indicates that the borrower would be liable for all "losses" and "damages" as a result of the failure to close. Loan Application ¶ 30. There is a genuine issue as to what losses were contemplated by the parties at the time they entered into this contract. The fact that the default

5

and prepayment provisions of the contract specifically identify, as a formula for a penalty payment, see Loan Application ¶¶ 3(g), 6(d), the same formula (if it is, in fact, the same formula) now being proposed by Hancock to measure its losses for the failure to close, cannot establish, as matter of law, that this method of calculation was meant to be excluded as a measure of losses for a failure to close the loan. This does not mean that the Court adopts Hancock's measure of damages. According to the Loan Application, Hancock must prove what losses resulted from the failure to close which necessarily requires evidence of how much Hancock actually intended to disburse.

Accordingly, Hancock's Motion for Summary Judgment [Doc. No. 22] is ALLOWED in part and DENIED in part. Vesterra's Cross Motion for Partial Summary Judgment [Doc. No. 32] is DENIED.

SO ORDERED.

/s/ William G. Young
_____
WILLIAM G. YOUNG
DISTRICT JUDGE

6