UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> VESTMONT LIMITED PARTNERSHIP, VESTMONT LIMITED PARTNERSHIP II, VESTMONT LIMITED PARTNERSHIP III, and VESTERRA CORPORATION d/b/a MONTGOMERY SQUARE PARTNERSHIP, <br><br> Defendants. | CIVIL ACTION NO. 05-11614-WGY |

## PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE MOTIVE, INTENT AND LEGAL SIGNIFICANCE TESTIMONY BY LINDA C. SPEVACEK

Plaintiff, John Hancock Life Insurance Company ("John Hancock" or "Hancock"), by its attorneys, hereby moves *in limine* to preclude Defendants'[1] expert witness Linda C. Spevacek ("Spevacek") from testifying at trial as to (1) the parties' supposed motivation or intent in drafting the damages provisions of the contract at issue, and (2) the legal significance of Hancock's alleged wrongful conduct. Portions of Ms. Spevacek's expert report which address these issues should be similarly precluded from evidence.

---

[1] Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited Partnership III, and Vesterra Corporation d/b/a Montgomery Square Partnership (collectively, "Defendants").

## RELEVANT FACTS

John Hancock instituted this breach of contract action to enforce the terms of an unambiguous contract with the Defendants (the "Loan Commitment"), pursuant to which Defendants obligated themselves either to borrow $32 million from Hancock on or before August 1, 2005, or pay Hancock damages. Defendants have counterclaimed, alleging that John Hancock added an undisclosed "10% constant requirement" for the loan's disbursement, thereby committing an unfair and deceptive act under Mass. Gen. Laws ch. 93A.

Defendants have retained Linda C. Spevacek as an independent expert. On March 24, 2006, Ms. Spevacek submitted an expert report regarding her analysis of the Loan Commitment, specifically focusing on two topics: (1) the scope of the damages provision contained in the Loan Commitment; and (2) the significance of the 10% Constant requirement for loan disbursement purposes.

## ARGUMENT

Fed. R. Evid. 702 permits expert testimony when "scientific, technical or other specialized knowledge will assist the trier of fact" and when the proffered witness possesses "knowledge, skill, experience, training or education" that qualifies the witness as an expert. *See Bogosian v. Mercedes-Benz of N. Am., Inc.*, 104 F.3d 472, 476 (1st Cir. 1997). If the expert opinion does not assist the trier of fact in understanding the evidence, the Court has broad discretion to exclude all or portions of the expert opinion. *See id.; see also McCabe v. Rattiner*, 814 F.2d 839, 843 (1st Cir. 1987).

I.  **MS. SPEVACEK MAY NOT TESTIFY CONCERNING THE PARTIES' INTENT OR MOTIVE IN NEGOTIATING AND EXECUTING THE DAMAGES PROVISION OF THE LOAN COMMITMENT.**

An expert witness may not testify as to a party's intent or motive because "the intent of the parties is an issue in the competence of the jury." *CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 890 (6th Cir. 1996) (expert testimony on intent excluded in breach of contract case). *See also In re Rezulin Prods. Liab. Litig.*, 309 F.Supp.2d 531, 547 (S.D.N.Y. 2004) (excluding expert testimony under Rule 702 as "inferences about the intent or motive of parties or others lie outside the bounds of expert testimony. . . [because] the question of intent is a classic jury question and not one for the experts").

Ms. Spevacek proposes to testify at trial concerning the motivation and intention of the parties in negotiating and executing the Loan Commitment, including her view of what the parties must have intended when they included a specific provision which entitles Hancock to broad damages in the event the loan failed to close. The proposed testimony is improper. *See Holyoke Water Power Co. v. Am. Writing Paper Co., Inc.*, 68 F.2d 261, 263 (1st Cir. 1933) ("evidence of the expert, therefore, as to the intent of the parties to these [written] indentures from the language employed, was properly excluded"); *Scopia Mortgage Corp. v. Greentree Mortgage Co., L.P.*, 184 F.R.D. 526 (D.N.J. 1998).

Ms. Spevacek's expert report provides a roadmap of this intended testimony. She states that a "yield maintenance" damages concept was not "contemplated as part of the deal" in the event Defendants failed to close the loan, and so damages of that "concept" or type are not recoverable by Hancock in this action: "experienced investment professionals reading the application documents would have to conclude that yield maintenance damages were not

contemplated. . . and that John Hancock is not entitled to them. . . ." Spevacek Report at 5. The issue is controlled by Condition 30(d)(iii) of the Loan Commitment. It states in part:

> [I]f the Loan shall not have been closed by the Closing Date....
>
> ... then all obligations of John Hancock hereunder shall thereupon immediately terminate... and John Hancock shall be entitled to recover from Applicant and/or Borrower *all damages, losses, costs and expenses suffered or incurred by John Hancock as a result*....

*Id.* at 7 (emphasis added).

Ms. Spevacek's anticipated testimony addresses (1) what Defendants allegedly intended the damages provision to mean at the time they negotiated and executed the Loan Commitment, and (2) what a hypothetical "experienced and sophisticated commercial real estate mortgage lender and developer who negotiated and entered into" a contract identical to the Loan Commitment would have thought the damage terms of the Loan Commitment meant at the time they were negotiated. This testimony is wholly improper. No expert may testify concerning Defendants' understanding or contemplation of the intended meaning of the parties' contract. *See Holyoke* at 263; *Scopia* at 531.

Further, Ms. Spevacek should not be permitted to introduce expert testimony on the meaning of the term "all damages" as used in Condition 30(d) under the theory that it is ambiguous, or subject to special meaning in the industry. First, the term "all damages" is unambiguous on its face, and its proper interpretation is a question of law. *See Forrest Creek Assocs., Ltd. v. McLean Sav. & Loan Ass'n*, 831 F.2d 1238, 1242 (4th Cir. 1987) (borrower's expert testimony proffered for purposes of interpreting standby fee clause of loan commitment contract for funding of condominium conversion was inadmissible, as commitment agreement spoke for itself and its proper interpretation was a question of law). Second, Ms. Spevacek has already testified that she is not competent to interpret the meaning of the "all damages" language.

At her deposition, Ms. Spevacek was confronted by the apparent inconsistency of her opinion that the "all damages" language of Condition 30(d)(iii) only entitles Hancock to recover discrete, limited types of damages:

> Q [MR. DAVIS]: My question again is, when it says all damages does that include yield maintenance damages?
>
> …
>
> THE WITNESS: This is a – I view this as a legal question that I really am – I cannot tell you the answer in terms of what damages means legally.
>
> …
>
> Q [MR. DAVIS]: So all doesn't mean all, it means some; is that right?
>
> …
>
> THE WITNESS: I think the – I – I don't know. I'm telling you I don't know what damages means so it's hard to say what all means when I think that's a legal concept.

Deposition of Linda C. Spevacek ("Spevacek Dep."), Apr. 21, 2006, at 104-106 (objections and questions omitted). Testimony by Ms. Spevacek concerning the meaning of the contract term "all damages" should be precluded.

## II. MS. SPEVACEK MAY NOT TESTIFY CONCERNING THE LEGAL SIGNIFICANCE OF HANCOCK'S CONDUCT.

Ms. Spevacek is offered as an expert in the commercial real estate lending industry. She may not properly testify to the law, and how it should be applied in this case. *See Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99-101 (1st Cir. 1997); *U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991), *cert denied*, 502 U.S. 813 (1991) (while an expert "may opine on an issue of fact within the jury's province," an expert "may not give testimony stating ultimate legal conclusions based on those facts"). Ms. Spevacek apparently intends to offer testimony that

Hancock's use of the 10% Constant guideline was "unfair and deceptive." At her sworn deposition, she stated:

> Whether their actions [in applying the 10% constant] were <u>unfair</u> or <u>deceptive</u>, whether intentionally so or by virtue of setting up a situation that could potentially cause a problem, one might say it was <u>deceptive</u>.

Spevacek Dep. at 258:19-23 (emphasis added); *see also id.* at 263. Ms. Spevacek's evaluation of John Hancock's behavior in approving the Loan Commitment coincidentally mirrors the liability standard, and exact language, of M.G.L. c.93A, the basis for Defendants' sole counterclaim in this case. *See* M.G.L. c.93A, § 2(a) ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.").

Any testimony by Ms. Spevacek characterizing John Hancock's actions as "unfair" or "deceptive" should be precluded. Such testimony "usurps... the role of the trial judge in instructing the jury as to the applicable law [and] the role of the jury in applying that law to the facts before it." *Rezulin*, 309 F. Supp. 2d at 541, 547 (expert opinion that conduct constituted "negligence" or "something more serious" excluded as impermissibly embracing a legal conclusion). *See Soto-Rivera* at 99-101; *see also Bilzerian*, 926 F.2d at 1295 (expert's legal conclusion based on facts of case is not admissible and "may not be made so simply because it is presented in terms of industry practice").

## CONCLUSION

For the foregoing reasons, Ms. Spevacek should be precluded from testifying about the motives or intentions of either party when negotiating and executing the Loan Commitment, and should be precluded from testifying about the legal significance of the actions which Defendants allege Hancock engaged in.

Respectfully submitted,

JOHN HANCOCK LIFE INSURANCE COMPANY,

By its attorneys,

/s/ Brian A. Davis
Brian A. Davis (BBO #546462)
Paul D. Popeo (BBO #567727)
Meghan L. Rhatigan (BBO #663039)
Elizabeth A. Castellani (BBO #663818)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tele: 617-248-5000
Fax: 617-248-4000

Date: May 1, 2006

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1, the undersigned counsel for the Plaintiff hereby certifies that he has conferred in good faith with counsel for the Defendants concerning the subject matter of this Motion. The parties were not able to resolve or narrow the issues raised therein.

/s/ Brian A. Davis
Brian A. Davis

-8-

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 1, 2006.

/s/ *Brian A. Davis*
Brian A. Davis

4072972v3