UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
:
JOHN HANCOCK LIFE INSURANCE         :
COMPANY,                            :     Civil Action No. 05-11614 WGY
                                    :
            Plaintiff,              :
                                    :
      v.                            :
                                    :     JURY TRIAL DEMANDED
VESTMONT LIMITED PARTNERSHIP,       :
et al.,                             :
                                    :
            Defendants.             :
_____ :

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S ANTICIPATED RENEWED MOTION *IN LIMINE* TO PRECLUDE MOTIVE, INTENT AND LEGAL SIGNIFICANCE TESTIMONY BY LINDA SPEVACEK

Defendants anticipate that John Hancock will renew its motion *in limine* to preclude certain testimony by Defendants' expert witness on standard industry practice in the underwriting, approving, and negotiating of commercial mortgage loans, Ms. Linda Spevacek. Any such renewed motion should be denied.

Under Massachusetts law, as recognized by the First Circuit, it is proper to consider expert testimony concerning industry custom and trade usage in the interpretation of contractual provisions, where such provisions are not so clear that they can be construed by the Court as a matter of law. Such testimony is "competent extrinsic evidence of the contracting parties' intent," and is "probative as to whether it is more or less likely that the *particular* contracting parties harbored such an intent." *Den norske Bank AS v. First National Bank of Boston*, 75 F.3d 49, 55, 58 (1st Cir. 1996) (emphasis in original).

Ms. Spevacek has 25 years of experience in the field of commercial mortgage loan transactions, 15 years of which involved high-level responsibility for such transactions on behalf of a major insurance company (Aetna). As such she is well qualified to advise the jury on "industry custom" in the underwriting, approving, documentation and negotiation of such loans and loan applications.

In a desperate effort to preclude Ms. Spevacek's testimony concerning industry custom, John Hancock has also blatantly mischaracterized her testimony in a way that pushes the bounds of responsible advocacy. Even a cursory reading of the cited transcript passages reveals that Ms. Spevacek testified consistently as to how the contractual provision would be understood pursuant to well-established industry custom. Accordingly, as explained more fully below, Plaintiff's attempt to preclude any of Ms. Spevacek's testimony should be denied.

## ARGUMENT

**I.   MS. SPEVACEK MAY TESTIFY CONCERNING INDUSTRY CUSTOM RELATED TO THE TERMS OF MORTGAGE LOAN APPLICATIONS, AND THE UNDERSTANDING OF PARTICULAR PROVISIONS PURSUANT TO SUCH INDUSTRY CUSTOMS**

**A.   Controlling First Circuit Precedent And Massachusetts Law Specifically Permit Expert Testimony On Industry Custom As Probative Of The Parties' Intent Concerning Contractual Provisions**

John Hancock argues that Ms. Spevacek may not testify as to the "intent" of either of these particular parties related to the terms of the Loan Application, or the understanding that sophisticated real estate mortgage lenders and borrowers would have of these terms. However, Ms. Spevacek will testify as to established industry custom, and the understanding and intent that can be inferred therefrom. Such expert testimony is <u>explicitly</u> endorsed by the First Circuit, applying Massachusetts law.

First, as a preliminary matter, Plaintiff is wrong when it argues that that the provisions of condition 30(d), which includes the phrase "all damages," is "unambiguous on its face" so that

2

its interpretation is a matter of law for the Court. In its March 20, 2006 ruling on the parties' summary judgment motions, the Court specifically held that it is <u>not</u> clear from the plain language of the Loan Application whether Condition 30(d) affords Plaintiff the right to "yield maintenance" damages if the Loan did not close: "There is a genuine issue as to what losses were contemplated by the parties at the time they entered into this contract." *Id.* at 5.

Where a contract is not susceptible to interpretation based on its plain language -- and is thus ambiguous in a legal sense -- it is very well established that the Court may consider extrinsic evidence, including the testimony of experts concerning the custom and usage of the industry in question. In *Den norske Bank, supra*, the United States Court of Appeals for the First Circuit was confronted with the interpretation of a loan participation agreement between two banks. Applying Massachusetts law, the First Circuit held that the Court should have allowed expert testimony concerning industry customs and norms related to such agreements in interpreting a contractual provision that did not have a clear and indisputable meaning on its face. In so doing, the Court framed the question as whether the plaintiff's experts would have provided "enough competent extrinsic of the contracting parties' **intent** to support a rational jury verdict in its favor." *Id.*, 75 F.3d at 55 (emphasis added). The First Circuit found that the experts could and did provide such evidence, and vacated the trial court's grant of summary judgment.

As to the requirements to testify concerning "industry custom," the First Circuit found that a long-time banking veteran who was familiar with "industry custom and practice" concerning loan participation agreements was qualified to testify as an expert in that regard, noting that "[u]nder Massachusetts law, this it the type of testimony through which 'usage of

3

trade' is established." *Id.* at 57 (citation omitted).  This is <u>exactly</u> the same background that qualifies Ms. Spevacek as an expert in the area of commercial real estate loans.

The First Circuit then addressed an apparent argument by the defendant in *Den norske* to the effect that testimony about "industry custom" could not support an inference as to the intent of the parties to the contract at issue in that lawsuit.  The First Circuit stated its explicit disagreement with that position, and cited both federal and Massachusetts authority holding that such "industry custom" or "trade usage" can be adduced as evidence of the parties' intent:

> [I]f First National means to suggest that such "general" practices are not probative as to whether it is more or less likely that *particular* contracting parties harbored such an intent, it is simply in error.  *Cf.* U.C.C. § 1-205(2) (noting that "usage of trade" includes "any practice or method of dealing having *such regularity* of observance ... as to justify an expectation that it will be observed with respect to the transaction in question") (emphasis added);  *Carondelet Sav. & Loan Ass'n,* 604 F.2d at 470 (noting that lead bank's extrinsic evidence of industry custom and usage**,** in the form of witness testimony and treatises, was **admissible because it made it more "likely" that the contracting parties would not have intended** to use an ambiguously broad term like "servicing" to exclude the lead bank's unilateral right to modify the loan documents if the industry custom were otherwise); *Affiliated FM Ins. Co. v. Constitution Reins. Corp.,* 416 Mass. 839, 626 N.E.2d 878, 882 (1994) ("The existence and *scope* of a usage of trade are questions of fact.") (emphasis added).  **The precise function of "usage of trade" evidence is to provide *circumstantial* proof of the contracting parties' intent**.   A party need not show that *all* participation agreements invariably entitle minority participants to post-default vetoes. *See id.* ("Where, as here, the contract language is ambiguous, evidence of custom and trade practice may be admitted to arrive at an interpretation '"which appears to be in accord with justice and common sense and the ***probable intention of the parties***."'") (citations omitted; emphasis added).

*Id.* at 58-59 (italics in original; bold emphasis added).

Thus, *Den norske*, applying Massachusetts law, is controlling and directly on point:  Ms. Spevacek should be allowed to testify as to industry custom, and its implications as to the intent of the parties.  Other First Circuit cases also support this conclusion.  For example, in *National*

4

*Tax Institute, Inc. v. Topnotch at Stowe Resort & Spa*, 388 F.3d 15 (1st Cir. 2004), both parties were permitted to present experts "about industry practice." In that decision the Court explained in more detail when such "extrinsic evidence" could be considered:

> The term "extrinsic evidence" is imprecise but includes proof of negotiations between the parties, their post-contract conduct, and general trade practice. *See Den norske Bank AS v. First Nat'l Bank of Boston*, 75 F.3d 49, 52-53 (1st Cir. 1996). The opening question is whether and when extrinsic evidence may be examined and allowed to alter the conclusion drawn from language and context.
>
> The old-fashioned and still common answer is that extrinsic evidence may be considered if language is ambiguous but not otherwise (and whether language is ambiguous is a question for the judge). *Lanier Prof'l Svcs. v. Ricci*, 192 F.3d 1, 4 (1st Cir. 1999); *Den norske*, 75 F.3d at 52-53, 55. This should be taken with a grain of salt, partly because extrinsic evidence may in fact reveal an ambiguity not otherwise patent, *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 179-80 (1st Cir. 19995), but also because language may point only slightly in one direction and extrinsic evidence strongly in another.

*Id*. at 19-20. *See also Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd.*, 217 F.3d 33, 39 (1st Cir. 2000) ("each side proffered an expert who worked in the insurance business and could testify to what the terms in the policy must have meant in light of industry practice. ('Where, as here, the contract language is ambiguous, evidence of trade usage is admissible to determine the meaning of the agreement.')") (citation omitted).

The cases cited by John Hancock are simply inapposite. None of them concerns an expert who offered testimony concerning industry custom or trade usage and the inferences therefrom as to the parties' intent. The only First Circuit case cited by John Hancock, from 1933, actually supports Defendants' position. In *Holyoke Water Power Co. v. American Writing Paper Co., Inc.*, 68 F.2d 261, 263 (1st Cir. 1933), the First Circuit stated, "Intent is not a subject for expert opinion, at least, when it is <u>the ultimate issue</u> in the case." (Emphasis added.) This, of course, was the common law rule at the time, now superseded by Federal Rule of Evidence

5

704(a). Because expert testimony "on an ultimate issue to be decided by the trier of fact" is no longer excluded, *see id.*, the First Circuit's ruling in *Holyoke Water* would now clearly permit Ms. Spevacek's testimony: "[I]n case uncertainty or doubt as to the meaning of the language in a written instrument is found to exist, any facts from which the fact-finding tribunal can determine the intent of the parties to the contract is properly admitted and <u>may be the subject of expert testimony</u>." *Id.* (emphasis added).

**B.     Plaintiffs' Blatant Mischaracterization of Ms. Spevacek's Testimony**

Because it is well established that Ms. Spevacek may offer expert testimony on the standard industry practice (industry custom), John Hancock also tries to exclude her testimony concerning the meaning of "all damages" based on a knowing mischaracterization of her deposition testimony. Plaintiff incorrectly claims that Ms. Spevacek has testified that she is not competent to testify as to the meaning of "all damages." (Plaintiff's Motion, at 5). However, in sharp contrast, Ms. Spevacek testified in her deposition that she does not know the <u>legal</u> definition of damages, and then testified in the very same exchange regarding her understanding *as a business person* who has negotiated these kinds of deals for 25 years. This, of course, is precisely the kind of expert testimony permitted by *Den norske*.

Below is the testimony "quoted" by Plaintiff on page 5 of its brief, but in a way that misrepresented Ms. Spevacek's actual testimony. The sections <u>omitted</u> by Plaintiff are underlined:

> Q.   My question again is, when it says all damages does that include yield maintenance damages?
>
> A.   This is a -- I view this as a legal question that I really am -- I cannot tell you the answer in terms of what all damages means legally. **From a business perspective who transacts large commercial financings**, it -- especially of a <u>forward commitment nature, if Hancock included in their deal an obligation of the borrower to pay all of the principal and interest payments over a 10-</u>

<blockquote>
year period even if the loan didn't close, that should have been in John Hancock's initial proposal to the developer, and should be in this application as a separate provision."

\* \* \* \*

Q.   But from a business perspective at least it is your opinion that all damages as used in this provision does not include yield maintenance damages; is that right?

A.   That is correct.

Q.   So "all" doesn't mean all, it means some; is that right?

A.   I think the -- I -- I don't know.  I'm telling you I don't know what damages means so it's hard to say what all means when I think that's a legal concept.

Q.   Do you know what the word "all" means?

A.   I know what the word "all" means.

Q.   And in this context does "all" mean all or does it mean some?

A.   **As I read this in this context, this provision would apply to costs, expenses, damages that had been incurred by Hancock until the transaction didn't close and there are other specifications in this application that address what some of those items would be**.  And if the obligation included the fact that the applicant needed to pay to John Hancock for 10 years all of the principal and interest payments, that that is not included in here**.**
</blockquote>

Accordingly, under the established rule in the First Circuit and Massachusetts, Defendants are entitled to present to the jury Ms. Spevacek's expert testimony on standard industry practice, and the understanding of the terms of the Loan Application based thereon.

### II.  MS. SPEVACEK MAY ALSO TESTIFY CONCERNING THE ULTIMATE ISSUE OF FACT RELATED TO A VIOLATION OF M.G.L. C. 93A

John Hancock also argues that Ms. Spevacek may not testify that its actions were deceitful or unfair.  John Hancock asserts that this would be improper testimony concerning the law, and that she may not testify concerning the "legal significance" of its conduct.

But John Hancock is simply mistaken.  It is well established that a "determination whether something is an unfair or deceptive practice is a finding of fact." *Buster v. George W.*

*Moore, Inc.*, 438 Mass. 635, 652, 783 N.E.2d 399, 414 (2003); *see also, e.g., Spence v. Boston Edison Co.,* 390 Mass. 604, 616, 459 N.E.2d 80 (1983) (same).  The question of whether such unfair or deceptive acts violated the statute is a <u>separate</u> question that is a determination as a matter of law, not fact -- and Ms. Spevacek has not proposed to testify concerning that legal question.

But F.R.E. 704(a) specifically permits her expert testimony on whether John Hancock's conduct was unfair or deceptive from the perspective of one familiar with standard industry practice from her 25 years of experience, as this is "an ultimate issue to be decided by the trier of fact."  John Hancock cannot exclude such testimony by trying to make this into a question of law.  The Court will instruct the jury on the law, and how they should apply it to the facts concerning John Hancock's conduct here.  The <u>facts</u> that the jury should be permitted to assess include whether John Hancock's actions would be considered either unfair or deceptive by those familiar with standard industry practice in commercial real estate financing.

## CONCLUSION

For the foregoing reasons, a renewed motion by John Hancock to preclude portions of Ms. Spevacek's testimony should be denied.

Respectfully submitted,

Dated:  May 4, 2006         /s/ Robert D. Hillman
Steven J. Brooks (BBO # 059140)
Robert D. Hillman (BBO # 552637)
DEUTSCH WILLIAMS BROOKS
DeRENSIS & HOLLAND, P.C.
99 Summer Street
Boston, MA 02110-1213
Tele.: 617-951-2300

    /s/ Howard D. Scher
Howard D. Scher (admitted *pro hac vice*)
C. Randolph Ross (admitted *pro hac vice*)
Brian J. McCormick, Jr.(admitted *pro hac vice*)
BUCHANAN INGERSOLL PC
1835 Market Street, Floor 14
Philadelphia, PA 19103
Tele.: 215-665-8700

Attorneys for Defendants/Counterclaim Plaintiffs Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited Partnership III and Vesterra Corporation

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing document has been filed electronically today, was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and is available for viewing and downloading from the ECF system.

Dated: May 4, 2006

/s/ Brian J. McCormick, Jr.
Brian J. McCormick, Jr. (admitted *pro hac vice*)