UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ : | |
| JOHN HANCOCK LIFE INSURANCE : | |
| COMPANY, : | Civil Action No. 05-11614 WGY |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | JURY TRIAL DEMANDED |
| VESTMONT LIMITED PARTNERSHIP, : | |
| et al., : | |
| : | |
| Defendants. : | |
| _____ : | |

**DEFENDANTS' MOTION TO AMEND THE JUDGMENT
TO CONFORM TO THE PARTIES' AGREEMENT AND
THE COURT'S INSTRUCTIONS DURING TRIAL**

Defendants/Counterclaim Plaintiffs (collectively "Defendants" or "Vesterra") hereby

move, pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), for an Order to Amend the

Judgment to Conform to the Parties' Agreement and the Court's Instructions During Trial, as

follows:

1.      As the Court is well aware, this litigation encompasses a breach of contract action

by Defendant John Hancock Life Insurance Company ("John Hancock" or "Plaintiff") for

Vesterra's failure to close a mortgage loan in August 2005, and Vesterra's counterclaims related

to the acceptance of the Loan Application in August 2004.

2.      The trial of this action was conducted from May 1, 2006 through May 8, 2006.

3.      During trial, it was established that Defendants had provided Plaintiff with

$960,000 in fees (a $640,000 Application Fee and a $320,000 Commitment Fee) (collectively,

the "Application Fees") as part of the loan application process, and that Plaintiff had retained these Application Fees since August 2005.

      4.      After hearing all the evidence, the jury awarded John Hancock $2.64 million on May 8, 2006.

      5.      The Court entered a judgment in the amount of $2,640,000 on May 11, 2006 (the "Judgment").  A copy of the Judgment is attached hereto as Exhibit A.

      6.      However, the Judgment does not reflect the agreement of the parties, nor the previous instructions and orders of the Court, that the amount of any final judgment would be reduced by the $960,000 in Application Fees retained by the Plaintiff since August 2005.

      7.      First, during argument on Plaintiff's directed verdict motion, the Court stated the following:

> . . .  But if they [John Hancock] win, and there's money there in that damages blank, **we'll set off the fees** against the money; and **the rest we'll enter as a judgment**. . . .
>
>                         \* \* \* \* \*
>
> . . .  I'll tell the jury, if it's zero damages, Vestmont wins.  So the verdict will then check for Vestmont.  If the verdict, if there's any sum of money due from Vestmont for its breach of the contract on the theory that the jury has found that John Hancock is ready, willing and able to perform, they will calculate those damages.  **That will be the verdict.  I'll set off the fees, and enter judgment**.

Tr., May 5, at 114:8-11, 115:8-15 (emphasis added).[1]

      8.      Then the Court <u>instructed the jury</u> that the judgment would be entered <u>only after</u> the jury returned its verdict, and the Court subtracted the $960,000 from any verdict: "If your verdict is for John Hancock, and it's high enough, **all I'm going to do is subtract that amount from your verdict <u>to enter the judgment</u>**."  Exhibit B, Tr., May 8, 45:5-8 (emphasis added)

---

[1] Pertinent excerpts of the trial transcript are attached hereto as Exhibit B.  All trial transcript cites are to the rough transcript provided by the court reporter.

9.    Finally, in response to a jury question, the Court restated its instructions:

> If your verdict is greater than, for John Hancock but greater than the application fees, **I'll subtract the application fees and John Hancock can only recover what's beyond the application fees**. . . .   You don't have to calculate in the application fees.  We know what they are.  It's an arithmetic calculation.  **I'll take care of it**.

Exhibit B, Tr., May 8, Jury & Verdict, Tr. 5:1-7 (emphasis added).

10.    Thus, based on these statements and instructions, the Court envisioned a route where it would involve itself in the process of properly molding the verdict before entering a judgment, and so instructed the jury.

11.    The Court seemingly contemplated a two-step process for the entry of judgment in this case:  first, the jury would enter a verdict, and second, the Court would reduce the verdict and then enter judgment.

12.    Moreover, the parties understood, and agreed to, this method of calculation.

13.    In fact, John Hancock never objected to the Court's instructions.

14.    Rule 59(e) permits the Court to alter or amend a judgment.  *See Skalamera v. Dillard*, Civ. No. 88-5876, 1989 WL 64458 (E.D. Pa. June 13, 1989) (pursuant to Rule 59(e), court amended judgment from $12,000 to $3,000 to set-off $9,000 settlement amount from another defendant).

15.    Similarly, Rule 60(b) permits a court to "relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . …(5) the judgment has been satisfied, released, or discharged, . . .."  *See, e.g.*, *Torres-Troche v. Municipality of Yauco*, 873 F.2d 499, 501 (1st Cir. 1989) ("courts have relied upon Rule 60(b)(5) as a basis for a motion to credit against one judgment the amount of a previous judgment or settlement") (citing cases); *Ivor B. Clark Co. v. Hogan*, 296 F. Supp. 407 (S.D.N.Y. 1969) (failure of court to determine exact amount of rents

which third party in interest was required to turn over to judgment creditor constituted "inadvertent judicial error" which court could correct).

16.     In *Shimek v. Weinig AG*, No. Civ. A. 99-2015, 2002 WL 31520370 (D. Minn. Nov. 12, 2002), the Court, pursuant to Rules 59(e) and 60(b)(1), corrected its own inadvertent error and amended a judgment when the defendant showed that the Court improperly calculated the amount of prejudgment interest, which was reflected in the final judgment.

17.     Here, the Judgment, as entered on May 11, 2006, does not conform to the parties' agreement or to the Court's instructions to the jury.

18.     The Court stated that it would "set off the fees against the money [verdict]; and the rest we'll enter as a judgment."  Exhibit B, Tr., May 5, at 114:9-11 (emphasis added).  In this instance, "the rest" is $1,680,000.

19.     Accordingly, Defendants respectfully request that the Court enter judgment in the amount of $1,680,000, which reflects the $2,640,000 jury verdict reduced by the $960,000 John Hancock has held since August 2005.  A proposed Order is attached hereto as Exhibit C.

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.1</u>

The undersigned conferred with counsel for all parties in a good faith effort to resolve or narrow the issues contained in this motion.


                                        Respectfully submitted,


Dated:  May 18, 2006                     /s/ Robert D. Hillman
                                        Steven J. Brooks (BBO # 059140)
                                        Robert D. Hillman (BBO # 552637)
                                        DEUTSCH WILLIAMS BROOKS
                                        DeRENSIS & HOLLAND, P.C.
                                        99 Summer Street
                                        Boston, MA 02110-1213
                                        Tele.:  617-951-2300

  /s/ Howard D. Scher
Howard D. Scher (admitted *pro hac vice*)
C. Randolph Ross (admitted *pro hac vice*)
Brian J. McCormick, Jr.(admitted *pro hac vice*)
BUCHANAN INGERSOLL PC
1835 Market Street, Floor 14
Philadelphia, PA 19103
Tele.: 215-665-8700

Attorneys for Defendants/Counterclaim Plaintiffs Vestmont Limited Partnership, Vestmont Limited Partnership II, Vestmont Limited Partnership III and Vesterra Corporation

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed electronically today, was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and is available for viewing and downloading from the ECF system.

Dated:  May 18, 2006

/s/ Brian J. McCormick, Jr.
Brian J. McCormick, Jr. (admitted *pro hac vice*)

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action
No:05-11614-WGY

**JOHN HANCOCK**

**Plaintiff**

**v.**

**VESTMONT, ET AL**
**Defendant**

JUDGMENT

This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

**IT IS ORDERED AND ADJUDGED JUDGMENT FOR THE PLAINTIFF JOHN HANCOCK in the amount of $2,640,000 .**

Sarah A. Thornton
**Clerk**

**So Approved**

  /s/ William G. Young
**USDJ**

/s/ Elizabeth Smith

**Deputy Clerk**

**May 11, 2006**

**To: All Counsel**

# EXHIBIT B

00001

1    Friday, May 5, 2006

2    Hancock trial, Day 5

3    * * * * * * * *

4    THIS IS AN UNOFFICIAL DRAFT TRANSCRIPT!

5    This realtime transcription has been neither

6 checked nor proofread. It is the court reporter's

7 uncorrected steno translation, not the certified

8 transcript.

9    This interactive realtime service is provided

10 to you on the condition that upon receipt of the

11 certified transcript, this draft and any copies thereof

12 will be destroyed. The certified transcript is the only

13 official record which may be relied upon for the verbatim

14 citation of testimony.

15    * * * * * * * *

16    P R O C E E D I N G S

17    THE CLERK: All rise for the jury.

18    (Whereupon the jury entered the courtroom.)

19    THE CLERK: Court is in session. Please be

20 seated.

21    THE COURT: Well, good morning, ladies and

22 gentlemen.

23    SOME MEMBERS OF THE JURY: Good morning.

24    THE COURT: I'm not surprised to be in this

25 courtroom, because I planned it this way, but the

**TRIAL – May 5**                    **Page 1**

00114

1    THE COURT: But they win, and the damages

2 are --

3    MR. SCHER: Zero.

4    THE COURT: No, no; they can't win if the

5 damages are zero. You'll win if the damages are zero.

6 That's the way I'll instruct them.

7    MR. SCHER: Well --

8    THE COURT: You'll win. But if they win, and

9 there's money there in that damages blank, we'll set off

10 the fees against the money; and the rest we'll enter as a

11 judgment. What dodges are there?

12    MR. SCHER: Your Honor, there could be a

13 verdict in favor of John Hancock in the amount of zero

14 dollars. I know Your Honor says there can't be, but they

15 have elected not to claim the damages that they --

16 expenses, losses, you know, that quatrain, whatever it

17 is, of items that existed as of August 1, 2005.

18 Therefore they would get a verdict in the amount of zero,

19 but we would still be entitled to our claim for unfair

20 and deceitful behavior.

21    THE COURT: Why?

22    MR. SCHER: Because they kept our 960.

23    THE COURT: Because they kept it? They won't

24 keep it if the jury says there are no damages.

25    MR. SCHER: Well, if the jury finds in their

**TRIAL - May 5**                    **Page 114**

00115

1 favor on their verdict, we don't get our fees back.

2      THE COURT:  That's -- except I'm going to set

3 them off against the amount you get.

4      MR. SCHER:  But --

5      THE COURT:  Amount they get.

6      MR. SCHER:  Right; but if they were to recover

7 a verdict in the amount of zero --

8      THE COURT:  They're not going to.  I'll tell

9 the jury, if it's zero damages, Vestmont wins.  So the

10 verdict will then check for Vestmont.  If the verdict, if

11 there's any sum of money due from Vestmont for its breach

12 of the contract on the theory that the jury has found

13 that John Hancock is ready, willing and able to perform,

14 they will calculate those damages.  That will be the

15 verdict.  I'll set off the fees, and enter judgment.

16      I just don't see any 93A damages.  This matter

17 was committed to a lawsuit.  And in Massachusetts, we

18 still follow, theoretically, not only theoretically,

19 practically, we follow the "bad man" theory of contracts.

20      As a matter of fact, the conduct of your

21 parties is a perfect expression of my guano example.

22 Their rational calculus of business advantage made, and

23 indeed makes it, then more -- even if they were to lose

24 this case badly, one imagines they still think the

25 smartest thing for them to have done is sold the property

**TRIAL -- May 5**                    **Page 115**

00001

1    Monday, May 8, 2006

2    Hancock trial, Day 6

3    * * * * * * * *

4        THIS IS AN UNOFFICIAL DRAFT TRANSCRIPT!

5        This realtime transcription has been neither

6    checked nor proofread.  It is the court reporter's

7    uncorrected steno translation, not the certified

8    transcript.

9        This interactive realtime service is provided

10   to you on the condition that upon receipt of the

11   certified transcript, this draft and any copies thereof

12   will be destroyed.  The certified transcript is the only

13   official record which may be relied upon for the verbatim

14   citation of testimony.

15       * * * * * * * *

16       THE CLERK:  All rise for the jury.

17       (Whereupon the jury entered the courtroom.)

18       THE CLERK:  Court is in session.  Please be

19   seated.

20       THE COURT:  Good morning, ladies and gentlemen.

21       SOME MEMBERS OF THE JURY:  Good morning.

22       THE COURT:  I hope you had a good weekend, and

23   I really appreciated that you're here right at 9:00.

24   We're all ready go.

25       Call your rebuttal witness.

**TRIAL – May 8**                                    **Page 1**

00045

1  lawyers -- and I praise them for this -- they've worked

2  it all out, that whatever your verdict is, whatever your

3  verdict is, that money is going back to Vestmont.

4       Now, here's the example. If your verdict's for

5  Vestmont, it all goes back to Vestmont. If your verdict

6  is for John Hancock, and it's high enough, all I'm going

7  to do is subtract that amount from your verdict to enter

8  the judgment.

9       So what we're asking you is to resolve these

10  two disputed questions: Was John Hancock at all material

11  times ready, willing and able to perform this contract,

12  fund this loan, in accordance with Exhibit 28? John

13  Hancock says yes; Vestmont says no.

14       If you believe by a fair preponderance of the

15  evidence it was, the second question is, are there any

16  damages at all? If your answer to that is no, your

17  verdict is for Vestmont. If your answer to that is yes,

18  even if they're small or if they are large, you calculate

19  the full amount of compensatory damages in the blank set

20  forth. I'll take care -- or rather, the parties have all

21  agreed, and I'll just make sure it's done; I'll take care

22  of the money that's already ruled from Vestmont to

23  Hancock.

24       Now, that's what the case is about. We're

25  ready for final argument. But before I excuse you now --

**TRIAL - May 8**                                    **Page 45**

00001

1                PROCEEDINGS - 2:07 P.M.

2

3

4        THE CLERK:  All rise.  Court is in session, please

5  be seated.

6        THE COURT:  I want to start by introducing to you,

7  the lawyers in the case in the morning have met him, but

8  introducing counsel this afternoon to the Honorable Seigo

9  Aridomi.  Judge Aridomi is here from the courts of Japan.

10 He sits in the Hachinohe Branch of the Aomori District Court

11 in rural Japan.  He's here on an excellent program where

12 they observe practices and procedures in our courts, both

13 state and federal.  No better way to observe than sit right

14 here on the bench, and we welcome Judge Aridomi.

15       Please be seated.

16       It's the second question I need help on.  What --

17 and we'll start with plaintiff and then defendants since you

18 disagree.

19       What exhibit, if any, relates to the testimony of

20 Simon Platt?

21       MR. DAVIS:  Your Honor, during Mr. Platt's

22 testimony we threw up on, you may recall, up on the screen

23 three examples of calculations that he did.

24       THE COURT:  Yes.

25       MR. DAVIS:  And those are contained in one of the

**TRIAL - May 8 - Jury & Verdict**                    **Page 1**

00004
1      THE COURT:  You have to keep your voice up.

2      THE FORELADY:  Oh, I'm sorry.

3      THE COURT:  These are unrelated?

4      THE FORELADY:  These are unrelated, yes.

5      THE COURT:  Thank you.  So I have three questions.

6      THE FORELADY:  Yes.

7      THE COURT:  I'll take them one by one and start

8  again.

9      Please clarify the deal that was struck between the

10  attorneys regarding application fees.

11      Is that the first question, Madam Forelady?

12      THE FORELADY:  Yes.

13      THE COURT:  Is that the first question, ladies and

14  gentlemen of the jury?

15      THE JURY:  Yes.

16      THE COURT:  To that question I make this answer.

17  That's the formal way of doing it now that we've sorted out

18  what questions we have.

19      Here's the deal.  Those application fees are going

20  back to the Vestmont folks whatever you decide.  So you

21  don't have to calculate them in in any way.  They're going

22  back.  If your verdict is for Vestmont they'll go back a

23  hundred percent.  If your verdict is for some figure less

24  than the application fees but for John Hancock, I'll do the

25  subtraction, whatever's less will go back.

**TRIAL - May 8 - Jury & Verdict**                    **Page 4**

00005
1      If your verdict is greater than, for John Hancock

2   but greater than the application fees, I'll subtract the

3   application fees and John Hancock can only recover what's

4   beyond the application fees.  That was to make things more

5   understandable for you.  You don't have to calculate in the

6   application fees.  We know what they are.  It's an

7   arithmetic calculation.  I'll take care of it.

8      Second:  Is there an exhibit related to the

9   testimony of Simon Platt?

10     Is that the second question, Madam Forelady?

11     THE FORELADY:  Yes, sir.

12     THE COURT:  Is that the second question, ladies and

13  gentlemen of the jury?

14     THE JURY:  Yes.

15     THE COURT:  To that question I make this answer.

16  While he was testifying, so that you could understand his

17  testimony, they did throw up on the screen the various

18  figures and calculations because he submitted something

19  called a report that the rules require.  But it's not an

20  exhibit.  It never made it in evidence.  So you're left to

21  your recollection of the testimony.  And if you wanted to

22  see his testimony, I could give you that.  But I'm not going

23  any further than that.

24     Third:  Is it a given that the loss of interest is

25  a damage required by the contract?  Is this law or

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-11614-WGY

JOHN HANCOCK LIFE INSURANCE COMPANY

Plaintiff,

v.

VESTMONT LIMITED PARTNERSHIP, *et al.*

Defendants.

AMENDED JUDGMENT

This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

IT IS ORDERED AND ADJUDGED JUDGMENT FOR THE PLAINTIFF JOHN HANCOCK LIFE INSURANCE COMPANY in the amount of $1,680,000.

Sarah A. Thornton
Clerk

So Approved,

/s/ William G. Young
U.S.D.J.

/s/ Elizabeth Smith
Deputy Clerk

Date: May ___, 2006

To: All Counsel of Record