UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>VESTMONT LIMITED PARTNERSHIP,<br>VESTMONT LIMITED PARTNERSHIP II,<br>VESTMONT LIMITED PARTNERSHIP III,<br>and VESTERRA CORPORATION d/b/a<br>MONTGOMERY SQUARE PARTNERSHIP,<br><br>    Defendants/Counterclaim Plaintiffs. | CIVIL ACTION NO. 05-11614-WGY |

**PLAINTIFF JOHN HANCOCK LIFE INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR REIMBURSEMENT OF LEGAL EXPENSES**

Plaintiff John Hancock Life Insurance Company ("John Hancock" or "Hancock") submits this Memorandum of Law in support of its Motion for Reimbursement of Legal Expenses, filed herewith. As the prevailing party, John Hancock is entitled to recover its costs and expenses, including its attorneys' fees, incurred in this action (collectively, Hancock's "Legal Expenses") from defendants Vestmont Limited Partnership, *et al.* (collectively "Vestmont" or "Defendants") pursuant to the terms of the parties' contract. The parties previously agreed to submit any and all issues pertaining to the recovery of attorneys' fees and costs to this Court for resolution. The total amount of Legal Expenses for which John Hancock seeks reimbursement, as described in greater detail below, is $781,698.25, including

approximately $457,000 in Legal Expenses incurred preparing to try, and actually trying this action since the final pre-trial conference on March 30, 2006.

### Relevant Factual Background

This is a breach of contract action in which John Hancock sought to enforce a written $32 million commercial loan agreement between Hancock and Vestmont entered into in August 2004 (the "Loan Commitment"). Defendants elected not to close the contemplated Loan on or before the agreed-upon deadline of August 1, 2005, or to compensate John Hancock for any of its resulting damages and losses as required under the terms of the Loan Commitment. Accordingly, John Hancock commenced this action on August 3, 2005. John Hancock's Complaint explicitly and specifically requested compensation for its "losses and monetary damages, including interest, costs and attorney's fees, to which it is entitled under the Loan Commitment and by law...." Complaint at ¶ 6. Defendants thereafter answered the Complaint and filed a series of counterclaims against John Hancock for, *inter alia*, unjust enrichment, fraud, conversion, money had and received, and violations of M.G.L. c. 93A. Affidavit of Brian A. Davis, Esq., dated May 25, 2006 ("Davis Aff."), ¶ 2.

Over the ensuing nine months, John Hancock and Vestmont engaged in extensive litigation and discovery, most of which was initiated by the Defendants. The discovery phase of the case included, among other things: (1) the collection, production and review of approximately 5,000 pages of documents; (2) the deposition of thirteen persons or corporate entities in the United States and in Canada; and (3) the preparation and filing of thirty-three motions, oppositions, and replies, including extensive summary judgment practice. Davis Aff., ¶ 3.

-3-

All efforts to resolve the case by way of a reasonable settlement prior to trial were unsuccessful. The court-ordered mediation with Magistrate Judge Leo Sorokin on March 21, 2006, was unproductive. The Court's subsequent attempt to engage the parties in settlement discussions at the final pre-trial conference on March 30, 2006, promptly was rejected by Vestmont. Davis Aff., ¶ 4.

This action went to trial for five days before a jury, the Honorable William G. Young presiding, commencing on May 2 and ending on May 8, 2006. Ten witnesses testified live (including three experts) and forty-three trial exhibits were introduced at trial. Neither side presented any evidence of its attorneys' fees or other non-taxable costs to the jury at trial, all such issues having been reserved -- by express agreement of the parties -- for resolution by the Court after trial. At the conclusion of trial, the jury rendered a verdict in John Hancock's favor and awarded Hancock damages in the amount of $2.64 million. The Court thereafter entered Judgment on the jury's verdict on May 11, 2006.[1] Davis Aff., ¶ 5.

Condition 30(d) of the Loan Commitment provides, in relevant part, that "if the Loan shall not have been Closed by the Closing Date" of August 1, 2005, "John Hancock shall be entitled to recover from [the Defendants] all damages, losses, costs and expenses suffered or incurred by John Hancock as a result...."[2] Condition 30(d) further provides that the Defendants "shall also continue to remain liable for all Costs" incurred by John Hancock. "Costs" is defined in Condition 21 of the Loan Commitment as including, without limitation, "all attorneys' fees

---

[1] Vestmont subsequently filed a Motion to Amend the Judgment entered in this action on May 18, 2006. John Hancock has opposed that Motion.

[2] A true copy of the Loan Commitment is appended to the accompanying Davis Affidavit at Tab 1 for the convenience of the Court.

and costs of John Hancock" pertaining to the Loan "whether or not the Loan closes...." Davis Aff., ¶ 6.

**Argument**

I. JOHN HANCOCK IS ENTITLED TO REIMBURSEMENT OF ITS LEGAL EXPENSES PURSUANT TO THE TERMS OF THE PARTIES' CONTRACT.

Parties may agree to authorize the recovery of litigation costs and expenses, including attorneys' fees, in a private contract. *See* Carter v. Warren Five Cents Sav. Bank, 409 Mass. 73, 80 (1991). No magic words are necessary to memorialize such an agreement. For example, attorneys' fees and other litigation expenses may be included as a recoverable "cost" if the parties agree to do so. *See, e.g.,* Littlefield v. McGuffey, 979 F.2d 101, 104 (7th Cir. 1992) ("Costs can include attorney's fees and expenses either if a statute provides for it or if the parties so agree in a valid contract."). The Massachusetts courts have recognized that attorneys' fees also may be recoverable as an "expense" in appropriate circumstances. *See, e.g.,* Black v. School Comm. of Malden, 369 Mass. 657, 663 (1976) (finding that attorneys' fees were recoverable as an "'expense' within the meaning of that word" in the relevant statute); *see also* Auber v. Marc Glassman, Inc., No. 80283, 2002 WL 1265589, at *3 (8th Cir. May 30, 2002) ("The words 'any other expenses' should be given their plain meaning and must therefore include all expenses arising out of the incident including attorney fees and other associated expenses.").

In this case, John Hancock and Vestmont agreed that Hancock would be entitled to recover "*all* damages, losses, costs *and expenses*" suffered or incurred by Hancock if the Defendants failed to close the contemplated Loan by August 1, 2005. Loan Commitment, Condition 30(d) (emphasis added). The phrase "all ... expenses" in Condition 30(d), read reasonably in accordance with its ordinary meaning, does and should include John Hancock's

-4-

*legal expenses* incurred in prosecuting this action. *See, e.g.,* Black, 369 Mass. at 663; *see also* Black's Law Dictionary (8th ed. 2004) (defining "expense" as "[a]n expenditure of money, time, labor, or resources to accomplish a result").

John Hancock and Vestmont further agreed that Vestmont would compensate Hancock for all of Hancock's "Costs" pertaining to the contemplated Loan -- expressly including Hancock's "attorneys' fees" -- "*whether or not the Loan closes....*" Loan Commitment, Condition 21 (emphasis added). Again, this provision, read reasonably in accordance with its ordinary meaning, constitutes an express commitment by Vestmont to make John Hancock whole for *all* of its costs, attorneys' fees and other expenses incurred with respect to this transaction, including all of Hancock's Legal Expenses, regardless of whether the Defendants ever actually closed the contemplated Loan.

The time has come for Vestmont finally to live up to its commitments to John Hancock. In addition to the $2.64 million in contract damages that the jury determined John Hancock has incurred as a result of the Defendants' failure to close the Loan, Hancock has been forced to incur more than $781,000 in Legal Expenses (as described more fully below) in order to vindicate its rights. Vestmont expressly agreed to compensate John Hancock for those additional costs and expenses in the Loan Commitment. John Hancock asks only that Vestmont be directed to comply with the terms of its agreement. *See* Carter, 409 Mass. at 80 (vacating and remanding lower court's award of less than total amount of attorneys' fees incurred where the parties' agreement provided for recovery of fees and other litigation expenses, absent a finding that the fees "were not incurred in enforcing [the party's] rights or on the ground that the charges were above the highest level of a reasonable fee for those services").

There is nothing harsh or unfair in awarding John Hancock its Legal Expenses incurred in this action. One of Vestmont's principals, Joseph Kelly, admitted at trial that John Hancock offered them the "best deal available" in the summer of 2004, and that they signed the Loan Commitment with Hancock willingly because they believed that it offered them a "substantial benefit." Trial Testimony of Joseph Kelly, May 4, 2006, at 142:19-25, 143:1; 144:25, 145:1-8. Defendants ultimately received an even greater benefit (*i.e.*, approximately *$28 million*) by breaching the Loan Commitment in the summer of 2005 in order to free themselves to sell the Avenel Apartments property rather than refinance it with John Hancock. Even deducting the amount of the Judgment and John Hancock's related Legal Expenses, the Defendants' decision to breach the Loan Commitment has proven to be a tremendously profitable one for them.

Furthermore, Vestmont easily could have avoided paying most, if not all, of John Hancock's Legal Expenses if it simply had been reasonable in pre-trial settlement negotiations. As stated at the final pre-trial conference on March 30, 2006, John Hancock was prepared to compromise this action before trial at a figure "somewhere in the middle" of Hancock's demand of $4.6 million and Vestmont's offer to accept payment of its legal fees in settlement. Davis Aff., ¶ 4. The jury's verdict of $2.64 million demonstrates that John Hancock's settlement position was not an unrealistic or unreasonable one. Vestmont, on the other hand, refused to engage in meaningful settlement negotiations even though the Court already had determined as a matter of law that Vestmont had breached the terms of the Loan Commitment, and even though the Defendants already knew that John Hancock was seeking its Legal Expenses, in addition to its damages and losses, as a consequence of that breach. *See id.* Vestmont instead wanted a full trial of all of the parties' claims and counterclaims. Having received exactly what it desired,

Vestmont should not now be heard to complain about bearing the additional Legal Expenses that ultimately and predictably resulted from its decision.

II. THE AMOUNT OF JOHN HANCOCK'S REQUESTED LEGAL EXPENSES IS FAIR AND REASONABLE IN THE CIRCUMSTANCES.

In awarding attorneys' fees and other expenses, the Court need only determine that the request is for "fair and reasonable compensation for the services rendered." *See* Northern Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 475-77 (1st Cir. 1988) (*quoting* First Nat'l Bank of Boston v. Brink, 372 Mass. 257, 264 (1977)); MIF Realty, L.P. v. Fineberg, 989 F. Supp. 400, 401-03 (D. Mass. 1998). The factors to be considered in determining reasonableness "include (in addition to the amount of time reasonably spent to resolve the case) 'the ability and reputation of the attorney, the demand of his services by others, the amount and importance of the matter involved, ... the prices usually charged for similar services by other attorneys in the same neighborhood, ... the value of the property affected by the controversy, and the results secured.'" Northern Heel, 851 F.2d at 476-477 (*quoting* McInerney v. Massasoit Greyhound Ass'n, 359 Mass. 339, 353 (1971)).

John Hancock respectfully submits that its present request for Legal Expenses is eminently fair and reasonable in the circumstances. This case began as a relatively simple breach of contract action. Vestmont, however, elected to dramatically expand the scope and complexity of the case by asserting and aggressively pursuing a series of counterclaims alleging everything from fraud and conversion to violations of M.G.L. c. 93A. Thus, in order to prevail on its simple breach of contract claim -- which it ultimately did -- John Hancock also was required to invest substantial time and resources in defending and defeating each of Vestmont's various counterclaims -- which Hancock also did. John Hancock's associated activities and Legal Expenses, which are described in greater detail below, are consistent with the overall level

-8-

of effort necessary to litigate an action of this magnitude, and are in keeping with the customary charges of similar firms for similar services. *See* Davis Aff., ¶ 25.

    1.    <u>Discovery Activities</u>

Defendants served John Hancock with two separate sets of document requests and two separate sets of interrogatories. John Hancock prepared and served two sets of document requests and one set of interrogatories on the Defendants. Hancock also prepared and served subpoenas for documents on Bozzuto & Associates (the original leasing agent for the Avenel Apartments property), Koller Kelly LLC (the replacement leasing agent for the Avenel Apartments property), and Rockwood Realty (the real estate broker that arranged the sale of the Avenel Apartments property for over $59 million). All told, the parties produced and reviewed approximately 5,000 pages of documents. Davis Aff., ¶ 7.

John Hancock noticed and took the depositions of five witnesses: Mr. James Koller, Mr. Joseph Kelly and Mr. Frank Palopoli (the three principals of Vestmont), and Mr. R. Larry Johnson and Ms. Linda Spevacek (Defendants' trial experts). With the exception of Mr. Johnson and Ms. Spevacek, all of the deposed individuals had personal involvement in and knowledge of the transactions at issue. Four of Hancock's five deponents (Messrs. Koller, Kelly and Johnson and Ms. Spevacek) actually testified at trial. Hancock's fifth deponent, Mr. Palopoli, was scheduled by the Defendants to testify at trial, but did not do so for undisclosed reasons. Davis Aff., ¶ 8.

Vestmont noticed and took the depositions of eight people and/or corporate entities in this litigation, including Mr. Timothy Malik, Mr. John Ferrie, Mr. Ivor Thomas, Mr. Barry Nectow, Mr. Warren Thomson (all present or former John Hancock or Manulife employees), and Mr. Walter Mercer and Mr. Simon Platt (Hancock's trial experts). Vestmont also noticed and

took the depositions of three additional present or former John Hancock personnel pursuant to Fed. R. Civ. P. 30(b)(6): Mr. David Henderson, Ms. Patricia Coyne, and Ms. Joan Uzdavinis. Counsel for John Hancock defended all ten Hancock witnesses at their depositions. Davis Aff., ¶ 9.

All together, pre-trial depositions in this action consumed more than twelve days. John Hancock's direct deposition related costs, including the cost of serving subpoenas, hiring stenographers, and obtaining transcripts, amounts to $20,966.51. John Hancock also incurred costs and expenses related to counsel's travel to Washington, D.C. to conduct the depositions of Mr. Johnson, to Philadelphia to conduct the depositions of Ms. Spevacek and Messrs. Koller, Kelly and Palopoli, to Philadelphia to defend the deposition of Mr. Ferrie, and to Toronto, Canada to defend the depositions of Messrs. Thomas and Thomson, totaling $8,756.71. Davis Aff., ¶ 10.

    2.    <u>Motion Practice</u>

During the nine-month course of litigating their respective claims and counterclaims, the parties filed thirty-three motions, oppositions, and replies in this action. Two of the motions were filed by the Defendants seeking leave of court to amend their counterclaims. All of the Defendants' counterclaims ultimately were dismissed before the case ever reached the jury on account of either John Hancock's Motion for Summary Judgment, its Motion to Dismiss, or its Motion for a Directed Verdict at the close of the Defendants' case. Davis Aff., ¶ 11.

John Hancock also incurred various professional and ancillary fees and costs in connection with preparing, filing and arguing two motions seeking the Court's assistance in ensuring that Vestmont would set aside adequate funds to cover any verdict rendered in favor of John Hancock in this case. Initially, John Hancock received assurance that the funds would be

available at the conclusion of the case when this Court, in response to Hancock's Motion for Preliminary Injunctive Relief, obtained the Defendants' agreement to set aside $5 million for Hancock's benefit. Subsequently, when John Hancock sought to ascertain the status of the Avenel Apartments property and the location of the escrowed funds, it encountered uncooperative behavior and vague responses to its inquiries from the Defendants, thereby necessitating the filing of an Emergency Motion for Preliminary Injunctive Relief Prohibiting Defendants from violating the Court-Mandated Escrow Agreement on April 24, 2006. Davis Aff., ¶ 12. Only after that Emergency Motion was filed did Vestmont confirm that the Avenel Apartments property actually had been sold and that the $5 million had been set aside for Hancock's benefit as represented to the Court. *Id.*

3.  Summary Judgment Practice

On March 1, 2006, John Hancock served its Motion for Summary Judgment together with a Statement of Undisputed Facts, a Memorandum in Support of Its Motion for Summary Judgment, three affidavits, and one supplemental affidavit. The Defendants served John Hancock with their Opposition and Cross-Motion for Partial Summary Judgment on March 14, 2006. The Court thereafter heard arguments on these motions on March 16, 2006, and took them under advisement. On March 20, 2006, John Hancock submitted its Opposition to Defendants' Cross-Motion, and the Court issued its Memorandum and Order, granting in part John Hancock's Motion for Summary Judgment, and denying the Defendants' Cross-Motion. Davis Aff., ¶ 13.

John Hancock subsequently served the Defendants with a Renewed Motion for Summary Judgment on the Defendants' M.G.L. c. 93A Counterclaim on April 28, 2006. The Defendants served John Hancock with their Opposition on May 1, 2006. Although Hancock's Renewed

Motion initially was denied by the Court, the Court later granted Hancock's Motion for a Directed Verdict with respect to the same counterclaim on the same grounds. Davis Aff., ¶ 14.

    4.    <u>Expert Witnesses</u>

Both parties engaged financial and industry expert witnesses to assist in preparing for, and to provide testimony at, trial. John Hancock, seeking to avoid unnecessary costs and expenses, initially suggested to Vestmont that the parties forego retaining experts. After initially agreeing with John Hancock's suggestion, Vestmont later changed its mind and decided to retain expert witnesses. John Hancock retained its own experts in response to Vestmont's decision. Davis Aff., ¶ 15.

Vestmont engaged the services of two experts: (a) Ms. Linda Spevacek, to provide expert analysis and testimony regarding commercial lending industry customs and practices, and (b) Mr. R. Larry Johnson, to provide expert analysis and testimony regarding damages. As mentioned above, both of these experts were deposed by John Hancock and both actually testified at trial. Davis Aff., ¶ 16.

John Hancock also engaged two experts. They were: (a) Mr. Walter Mercer of Paris Hill Realty Associates to provide expert analysis and testimony regarding industry customs and practices, and (b) Mr. Simon Platt of the StoneTurn Group to provide expert analysis and testimony regarding damages. Copies of Messrs. Mercer's and Platt's C.V.s, expert reports and invoices in this action are appended to the accompanying Davis Affidavit at Tabs 2 (Mercer) and 3 (Platt). Both Mr. Mercer and Mr. Platt were deposed prior to trial, and Mr. Platt actually testified at trial. From all outward appearances, the jury relied upon portions of Mr. Platt's testimony in rendering a verdict in the amount of $2.64 million. Counsel for John Hancock elected to reserve Mr. Mercer as a rebuttal witness, and elected not to call him to testify at trial

after much of Ms. Spevacek's proposed testimony was precluded by the Court in response to one of Hancock's Motions in Limine. Mr. Mercer nonetheless was extremely helpful in formulating John Hancock's deposition and trial examinations of Ms. Spevacek, and was present in the courthouse and prepared to testify on Hancock's behalf, if necessary. Davis Aff., ¶ 17.

All told, John Hancock incurred reasonable expert witnesses fees and expenses for the services of Messrs. Mercer and Platt through trial in the amount of $60,807.50. These charges are at least $20,000 less than the total amount charged by Vestmont's comparable expert witnesses, Ms. Spevacek and Mr. Johnson, as established by their testimony at trial. Trial Testimony of R. Larry Johnson, May 5, 2006, 80:14-17; Trial Testimony of Linda Spevacek, May 5, 2006, 36:24-25, 37:1-2; Davis Aff., ¶ 18.

5.  Trial Preparation and Trial

John Hancock expended considerable time and effort preparing for trial of this action on an expedited basis, and incurred substantial fees and costs associated with this work. Prior to the commencement of trial, numerous documents were negotiated, prepared and drafted, including: (1) a Joint Exhibit List; (2) a Joint Pre-Trial Memorandum filed on March 30, 2006; (3) proposed jury *voir dire* questions; and (4) John Hancock's Trial Brief. Additionally, counsel for Hancock prepared and filed four Motions in Limine to preclude the introduction of certain evidence, and costs of $6,150.60 were incurred in preparing copies of exhibits for use at trial by both sides. John Hancock's counsel also expended significant time and effort in preparing its opening statement, various witness examinations and cross-examinations, and closing argument, as well as orchestrating the availability of numerous trial witnesses, and preparing those witnesses to testify. Davis Aff., ¶ 19.

The parties appeared before Magistrate Judge Marianne B. Bowler on May 1, 2006 for jury empanelment, and trial commenced the following day. The trial lasted five days. Vestmont was represented at counsel table at various times by up to three attorneys. John Hancock was represented by two. All told, ten witnesses testified live and forty-three exhibits were introduced in evidence. At the conclusion of the Defendants' case, John Hancock moved for a directed verdict on the Defendants' M.G.L. c. 93A counterclaim, which motion the Court granted. On May 8, 2006, finding that John Hancock was ready, willing, and able to perform its obligations under the Loan Commitment, the jury returned a verdict in favor of John Hancock in the amount of $2.64 million. Davis Aff., ¶ 20.

6.   Hours and Rates

Since first being retained in this matter in late July 2005, Choate, Hall & Stewart has rendered almost 1770 hours of attorney, paralegal, and other professional services to the John Hancock at the following billable rates (which changed over the course of this case):

| Name | Hours | Rate as of April 2005 | Total |
|---|---|---|---|
| Brian Davis | 221.6 | $494.00 | $109,470.40 |
| Paul Popeo | 168.25 | $446.50 | $75,123.63 |
| Lisa Gaulin | 203.2 | $299.25 | $60,807.60 |
| Elizabeth Page Wilkins | 42.3 | $299.25 | $12,658.28 |
| Jennifer Tracy | 2.1 | $242.25 | $508.73 |
| Meghan Rhatigan | 224.2 | $242.25 | $54,312.45 |
| Elizabeth Castellani | 12.7 | $242.25 | $3,076.58 |
| Deborah Dion | 1.8 | $232.75 | $418.95 |
| Stephanie Snow | 0.4 | $142.50 | $57.00 |
| | | Subtotal | $316,433.62 |

| Name | Hours | Rate as of April 2006 | Total |
|---|---|---|---|
| Brian Davis | 215.3 | $527.25 | $113,516.93 |
| Paul Popeo | 218 | $470.25 | $102,514.50 |
| Meghan Rhatigan | 190.7 | $251.75 | $48,008.73 |
| Elizabeth Castellani | 135 | $251.75 | $33,986.25 |
| Deborah Dion | 127.4 | $247.00 | $31,467.80 |
| David Baldwin | 4.15 | $166.25 | $689.94 |
| | | Subtotal | $330,184.15 |
| | | TOTAL FEES | $646,614.77 |

Davis Aff., ¶ 21.

Each of the attorneys, paralegals and professional staff listed above rendered valuable assistance in the course of the case. Brian Davis, a senior partner, served as lead counsel and was personally involved in all aspects of pre-trial and trial activities. Paul Popeo, a partner, joined the case when the proceedings became extremely active and assisted in both discovery, witness preparation and at trial. Associates Lisa Gaulin, Meghan Rhatigan and Elizabeth Castellani provided a wide range of support with respect to legal research, written discovery, including document collection and review, drafting motion papers, preparing trial materials and exhibits, and assisting at trial, as necessary. Associates Elizabeth Page Wilkins and Jennifer Tracy performed legal research and/or assisted in the preparation of John Hancock's Summary Judgment Motion and Opposition to Vestmont's Cross-Motion for Summary Judgment. Paralegal Deborah Dion was involved in the preparation of deposition and trial exhibits, and in coordinating various logistical matters before and during trial. Stephanie Snow, a firm librarian, performed electronic legal research. David Baldwin, a firm practice support specialist, assisted in arranging electronic support at deposition and at trial. The total amount of attorneys' fees for which John Hancock seeks reimbursement is $646,617.77. Davis Aff., ¶ 22.

In addition, John Hancock incurred other compensable costs and expenses in this action (not including expert witness charges) of over $74,000. These costs and expenses include charges associated with photocopying documents for discovery purposes, for use at deposition and at trial ($21,988.83); deposition and trial transcripts and services ($22,399.62); electronic legal research ($16,244.56); travel-related expenses ($8,756.71); and various miscellaneous and other expenses such as filing fees, telephone charges, overtime secretaries and subpoena and witness fees ($4,883.26). Davis Aff., ¶ 23.

Copies of Choate, Hall & Stewart's invoices reflecting the time spent on this matter for which reimbursement is sought, which itemize the specific legal services provided by each attorney or other firm professional, the time spent on the various tasks performed, the rate charged, and the specific disbursements and expenses incurred, are appended to the accompanying Davis Affidavit at Tab 4. Although these records have been redacted to eliminate information protected from disclosure by the attorney-client privilege or the work-product doctrine, they still provide the Court and the Defendants with a reasonably comprehensive overview of the precise basis for John Hancock's claimed Legal Expenses. Specific invoices relating to this matter that are not reflected on the bills sent to John Hancock, including certain invoices for pre-trial photocopies, deposition-related court reporting services, and trial transcripts, are appended to the Davis Affidavit at Tab 5. Davis Aff., ¶ 24.

Each year, Choate, Hall & Stewart reviews information obtained from court filings, private industry reports, and other sources in order to ensure that the rates that it charges its clients for legal services are commensurate with those charged by other comparable firms in the Boston area for similar services. Based upon that process, the rates charged to John Hancock for legal services rendered by Choate, Hall & Stewart in this litigation are, in fact, commensurate

-16-

with those charged by other comparable firms in the Boston area for similar services. Davis Aff., ¶ 25.

      7.    <u>Fees and Costs Excluded from John Hancock's Motion</u>

John Hancock incurred Legal Expenses litigating this action in excess of those for which it currently seeks reimbursement from Vestmont. Fees and expenses that are excluded from Hancock's Motion for Reimbursement include those associated with: (1) the preparation and drafting of various Rule 30(b)(6) witness affidavits in response to this Court's April 12, 2006 Order allowing John Hancock's Motion for Reconsideration of March 30, 2006 Court Order Precluding Certain Testimony; and (2) time incurred after May 8, 2006, the date on which the jury rendered its verdict in favor of John Hancock, including time spent preparing and drafting this Motion for Reimbursement and in responding to Vestmont's recent Motion to Amend the Judgment. In addition, Choate, Hall & Stewart did not charge John Hancock for time spent at hearings and at trial by Choate, Hall associate attorneys to the extent that they attended for observation purposes only. Accordingly, those costs also are excluded from John Hancock's Motion for Reimbursement. Davis Aff., ¶ 26.

## Conclusion

Wherefore, John Hancock respectfully requests that this Court: (1) award Hancock its Legal Expenses incurred in this action in the total amount of $781,698.25, including reasonable attorneys' fees of $646,617.77, and other related costs and expenses of $135,080.48; and (2) grant such other relief as the Court deems just and appropriate in the circumstances.

        JOHN HANCOCK LIFE INSURANCE
        COMPANY

        By its attorneys,

        */s/ Brian A. Davis*
        Brian A. Davis (BBO No. 546462)
        Paul D. Popeo (BBO No. 567727)
        Meghan L. Rhatigan (BBO No. 663039)
        CHOATE, HALL & STEWART LLP
        Two International Place
        Boston, MA 02110
        Tele: 617-248-5000
        Fax: 617-248-4000

Date:  May 25, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 25, 2006.

        */s/ Brian A. Davis*
        Brian A. Davis

4083547.2