UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, | ) ) ) ) |
| Plaintiff/Counterclaim Defendant, | ) ) |
| v. | ) ) ) |
| VESTMONT LIMITED PARTNERSHIP, VESTMONT LIMITED PARTNERSHIP II, VESTMONT LIMITED PARTNERSHIP III, and VESTERRA CORPORATION d/b/a MONTGOMERY SQUARE PARTNERSHIP, | ) ) ) ) ) |
| Defendants/Counterclaim Plaintiffs. | ) ) ) |

CIVIL ACTION NO. 05-11614-WGY

**AFFIDAVIT OF BRIAN A. DAVIS, ESQ. IN SUPPORT OF
PLAINTIFF JOHN HANCOCK LIFE INSURANCE COMPANY'S
MOTION FOR REIMBURSEMENT OF LEGAL EXPENSES**

I, Brian A. Davis, hereby state under oath:

1.      I am a partner, through my professional corporation, in the law firm of Choate, Hall & Stewart LLP. I serve as counsel for plaintiff John Hancock Life Insurance Company ("John Hancock" or "Hancock") in the above-entitled action. This affidavit is offered in support of John Hancock's Motion for Reimbursement of Legal Expenses, which is being filed herewith. I caused Choate, Hall & Stewart's billing records in this matter to be reviewed for the purpose of ascertaining the costs and fees that John Hancock has incurred in this litigation. The total amount of Legal Expenses for which John Hancock seeks reimbursement, as described in greater detail below, is $781,698.25, including approximately $457,000 in Legal

Expenses incurred preparing to try, and actually trying this action since the final pre-trial conference on March 30, 2006.

Relevant Factual Background

2.     This is a breach of contract action in which John Hancock sought to enforce a written $32 million commercial loan agreement between Hancock and Vestmont entered into in August 2004 (the "Loan Commitment").  Defendants elected not to close the contemplated Loan on or before the agreed-upon deadline of August 1, 2005, or to compensate John Hancock for any of its resulting damages and losses as required under the terms of the Loan Commitment.  Accordingly, John Hancock commenced this action on August 3, 2005.  John Hancock's Complaint explicitly and specifically requested compensation for its "losses and monetary damages, including interest, costs and attorney's fees, to which it is entitled under the Loan Commitment and by law...."  Complaint at ¶ 6.  Defendants thereafter answered the Complaint and filed a series of counterclaims against John Hancock for, *inter alia*, unjust enrichment, fraud, conversion, money had and received, and violations of M.G.L. c. 93A.

3.     Over the ensuing nine months, John Hancock and Vestmont engaged in extensive litigation and discovery, most of which was initiated by the Defendants.  The discovery phase of the case included, among other things: (1) the collection, production and review of approximately 5,000 pages of documents; (2) the deposition of thirteen persons or corporate entities in the United States and in Canada; and (3) the preparation and filing of thirty-three motions, oppositions, and replies, including extensive summary judgment practice.

4.     All efforts to resolve the case by way of a reasonable settlement prior to trial were unsuccessful.  The court-ordered mediation with Magistrate Judge Leo Sorokin on March 21, 2006, was unproductive.  The Court's subsequent attempt to engage the parties in

meaningful settlement discussions at the final pre-trial conference on March 30, 2006, promptly was rejected by Vestmont.

5.    This action went to trial for five days before a jury, the Honorable William G. Young presiding, commencing on May 2 and ending on May 8, 2006. Ten witnesses testified live (including three experts) and forty-three trial exhibits were introduced at trial. Neither side presented any evidence of its attorneys' fees or other non-taxable costs to the jury at trial, all such issues having been reserved -- by express agreement of the parties -- for resolution by the Court after trial. At the conclusion of trial, the jury rendered a verdict in John Hancock's favor and awarded Hancock damages in the amount of $2.64 million. The Court thereafter entered Judgment on the jury's verdict on May 11, 2006.[1]

6.    Condition 30(d) of the Loan Commitment (a true copy of which is appended to this affidavit at Tab 1) provides, in relevant part, that "if the Loan shall not have been Closed by the Closing Date" of August 1, 2005, "John Hancock shall be entitled to recover from [the Defendants] all damages, losses, costs and expenses suffered or incurred by John Hancock as a result...." Condition 30(d) further provides that the Defendants "shall also continue to remain liable for all Costs" incurred by John Hancock. "Costs" is defined in Condition 21 of the Loan Commitment as including, without limitation, "all attorneys' fees and costs of John Hancock" pertaining to the Loan "whether or not the Loan closes...."

Discovery Activities

7.    Defendants served John Hancock with two separate sets of document requests and a two separate sets of interrogatories. John Hancock prepared and served two sets of

---

[1] Vestmont subsequently filed a Motion to Amend the Judgment entered in this action on May 18, 2006. John Hancock has opposed that Motion.

document requests and one set of interrogatories on the Defendants. Hancock also prepared and served subpoenas for documents on Bozzuto & Associates (the original leasing agent for the Avenel Apartments property), Koller Kelly LLC (the replacement leasing agent for the Avenel Apartments property), and Rockwood Realty (the real estate broker that arranged the sale of the Avenel Apartments property for over $59 million). All told, the parties produced and reviewed approximately 5,000 pages of documents.

8.    John Hancock noticed and took the depositions of five witnesses: Mr. James Koller, Mr. Joseph Kelly and Mr. Frank Palopoli (the three principals of Vestmont), and Mr. R. Larry Johnson and Ms. Linda Spevacek (Defendants' trial experts). With the exception of Mr. Johnson and Ms. Spevacek, all of the deposed individuals had personal involvement in and knowledge of the transactions at issue. Four of Hancock's five deponents (Messrs. Koller, Kelly and Johnson and Ms. Spevacek) actually testified at trial. Hancock's fifth deponent, Mr. Palopoli, was scheduled by the Defendants to testify at trial, but did not do so for undisclosed reasons.

9.    Vestmont noticed and took the depositions of eight people and/or corporate entities in this litigation, including Mr. Timothy Malik, Mr. John Ferrie, Mr. Ivor Thomas, Mr. Barry Nectow, Mr. Warren Thomson (all present or former John Hancock or Manulife employees), and Mr. Walter Mercer and Mr. Simon Platt (Hancock's trial experts). Vestmont also noticed and took the depositions of three additional present or former John Hancock personnel pursuant to Fed. R. Civ. P. 30(b)(6): Mr. David Henderson, Ms. Patricia Coyne, and Ms. Joan Uzdavinis. Counsel for John Hancock defended all ten Hancock witnesses at their depositions.

.

-4-

10.    All together, pre-trial depositions in this action consumed more than twelve days. John Hancock's direct deposition related costs, including the cost of serving subpoenas, hiring stenographers, and obtaining transcripts, amounts to $20,966.51. John Hancock also incurred costs and expenses related to counsel's travel to Washington, D.C. to conduct the depositions of Mr. Johnson, to Philadelphia to conduct the depositions of Ms. Spevacek and Messrs. Koller, Kelly and Palopoli, to Philadelphia to defend the deposition of Mr. Ferrie, and to Toronto, Canada to defend the depositions of Messrs. Thomas and Thomson, totaling $8,756.71.

Motion Practice

11.    During the nine-month course of litigating their respective claims and counterclaims, the parties filed thirty-three motions, oppositions, and replies in this action. Two of the motions were filed by the Defendants seeking leave of court to amend their counterclaims. All of the Defendants' counterclaims ultimately were dismissed before the case ever reached the jury on account of either John Hancock's Motion for Summary Judgment, its Motion to Dismiss, or its Motion for a Directed Verdict at the close of the Defendants' case.

12.    John Hancock also incurred various professional and ancillary fees and costs in connection with preparing, filing and arguing two motions seeking the Court's assistance in ensuring that Vestmont would set aside adequate funds to cover any verdict rendered in favor of John Hancock in this case. Initially, John Hancock received assurance that the funds would be available at the conclusion of the case when this Court, in response to Hancock's Motion for Preliminary Injunctive Relief, obtained the Defendants' agreement to set aside $5 million for Hancock's benefit. Subsequently, when John Hancock sought to ascertain the status of the Avenel Apartments property and the location of the escrowed funds, it encountered

-5-

uncooperative behavior and vague responses to its inquiries from the Defendants, thereby necessitating the filing of an Emergency Motion for Preliminary Injunctive Relief Prohibiting Defendants from violating the Court-Mandated Escrow Agreement on April 24, 2006. Only after that Emergency Motion was filed did Vestmont confirm that the Avenel Apartments property actually had been sold and that the $5 million had been set aside for Hancock's benefit as represented to the Court.

Summary Judgment Practice

13.    On March 1, 2006, John Hancock served its Motion for Summary Judgment together with a Statement of Undisputed Facts, a Memorandum in Support of Its Motion for Summary Judgment, three affidavits, and one supplemental affidavit. The Defendants served John Hancock with their Opposition and Cross-Motion for Partial Summary Judgment on March 14, 2006. The Court thereafter heard arguments on these motions on March 16, 2006, and took them under advisement. On March 20, 2006, John Hancock submitted its Opposition to Defendants' Cross-Motion, and the Court issued its Memorandum and Order, granting in part John Hancock's Motion for Summary Judgment, and denying the Defendants' Cross-Motion.

14.    John Hancock subsequently served the Defendants with a Renewed Motion for Summary Judgment on the Defendants' M.G.L. c. 93A Counterclaim on April 28, 2006. The Defendants served John Hancock with their Opposition on May 1, 2006. Although Hancock's Renewed Motion initially was denied by the Court, the Court later granted Hancock's Motion for a Directed Verdict with respect to the same counterclaim on the same grounds.

## Expert Witnesses

15.    Both parties engaged financial and industry expert witnesses to assist in preparing for, and to provide testimony at, trial. John Hancock, seeking to avoid unnecessary costs and expenses, initially suggested to Vestmont that the parties forego retaining experts. After initially agreeing with John Hancock's suggestion, Vestmont later changed its mind and decided to retain expert witnesses. John Hancock retained its own experts in response to Vestmont's decision.

16.    Vestmont engaged the services of two experts: (a) Ms. Linda Spevacek, to provide expert analysis and testimony regarding commercial lending industry customs and practices, and (b) Mr. R. Larry Johnson, to provide expert analysis and testimony regarding damages. As mentioned above, both of these experts were deposed by John Hancock and both actually testified at trial.

17.    John Hancock also engaged two experts. They were: (a) Mr. Walter Mercer of Paris Hill Realty Associates to provide expert analysis and testimony regarding industry customs and practices, and (b) Mr. Simon Platt of the StoneTurn Group to provide expert analysis and testimony regarding damages. Copies of Messrs. Mercer's and Platt's C.V.s, expert reports and invoices in this action are appended at Tabs 2 (Mercer) and 3 (Platt). Both Mr. Mercer and Mr. Platt were deposed prior to trial, and Mr. Platt actually testified at trial. From all outward appearances, the jury relied upon portions of Mr. Platt's testimony in rendering a verdict in the amount of $2.64 million. Counsel for John Hancock elected to reserve Mr. Mercer as a rebuttal witness, and elected not to call him to testify at trial after much of Ms. Spevacek's proposed testimony was precluded by the Court in response to one of Hancock's Motions in Limine. Mr. Mercer nonetheless was extremely helpful in formulating

John Hancock's deposition and trial examinations of Ms. Spevacek, and was present in the courthouse and prepared to testify on Hancock's behalf, if necessary.

18.     All told, John Hancock incurred reasonable expert witnesses fees and expenses for the services of Messrs. Mercer and Platt through trial in the amount of $60,807.50. These charges are at least $20,000 less than the total amount charged by Vestmont's comparable expert witnesses, Ms. Spevacek and Mr. Johnson, as established by their testimony at trial. Trial Testimony of R. Larry Johnson, May 5, 2006, 80:14-17; Trial Testimony of Linda Spevacek, May 5, 2006, 36:24-25, 37:1-2.

Trial Preparation and Trial

19.     John Hancock expended considerable time and effort preparing for trial of this action on an expedited basis, and incurred substantial fees and costs associated with this work. Prior to the commencement of trial, numerous documents were negotiated, prepared and drafted, including: (1) a Joint Exhibit List; (2) a Joint Pre-Trial Memorandum filed on March 30, 2006; (3) proposed jury *voir dire* questions; and (4) John Hancock's Trial Brief. Additionally, counsel for Hancock prepared and filed four Motions in Limine to preclude the introduction of certain evidence, and costs of $6,150.60 were incurred in preparing copies of exhibits for use at trial by both sides. John Hancock's counsel also expended significant time and effort in preparing its opening statement, various witness examinations and cross-examinations, and closing argument, as well as orchestrating the availability of numerous trial witnesses, and preparing those witnesses to testify.

20.     The parties appeared in court before Magistrate Judge Marianne B. Bowler on May 1, 2006 for jury empanelment, and trial commenced the following day. The trial lasted five days. Vestmont was represented at counsel table at various times by up to three attorneys.

John Hancock was represented by two. All told, ten witnesses testified live and forty-three exhibits were introduced in evidence. At the conclusion of the Defendants' case, John Hancock moved for a directed verdict on the Defendants' M.G.L. c. 93A counterclaim, which motion the Court granted. On May 8, 2006, finding that John Hancock was ready, willing, and able to perform its obligations under the Loan Commitment, the jury returned a verdict in favor of John Hancock in the amount of $2.64 million.

### Hours and Rates

21.    Since first being retained in this matter in late July 2005, Choate, Hall & Stewart has rendered almost 1770 hours of attorney, paralegal, and other professional services to John Hancock at the following billable rates (which changed over the course of this case):

| Name | Hours | Rate as of April 2005 | Total |
|---|---|---|---|
| Brian Davis | 221.6 | $494.00 | $109,470.40 |
| Paul Popeo | 168.25 | $446.50 | $75,123.63 |
| Lisa Gaulin | 203.2 | $299.25 | $60,807.60 |
| Elizabeth Page Wilkins | 42.3 | $299.25 | $12,658.28 |
| Jennifer Tracy | 2.1 | $242.25 | $508.73 |
| Meghan Rhatigan | 224.2 | $242.25 | $54,312.45 |
| Elizabeth Castellani | 12.7 | $242.25 | $3,076.58 |
| Deborah Dion | 1.8 | $232.75 | $418.95 |
| Stephanie Snow | 0.4 | $142.50 | $57.00 |
| | | Subtotal | $316,433.62 |

| Name | Hours | Rate as of April 2006 | Total |
|---|---|---|---|
| Brian Davis | 215.3 | $527.25 | $113,516.93 |
| Paul Popeo | 218 | $470.25 | $102,514.50 |
| Meghan Rhatigan | 190.7 | $251.75 | $48,008.73 |
| Elizabeth Castellani | 135 | $251.75 | $33,986.25 |
| Deborah Dion | 127.4 | $247.00 | $31,467.80 |
| David Baldwin | 4.15 | $166.25 | $689.94 |
| | | Subtotal | $330,184.15 |
| | | TOTAL FEES | $646,617.77 |

22.    Each of the attorneys, paralegals and professional staff listed above rendered valuable assistance in the course of the case. Brian Davis, a senior partner, served as lead

counsel and was personally involved in all aspects of pre-trial and trial activities. Paul Popeo, a partner, joined the case when the proceedings became extremely active and assisted in both discovery, witness preparation and at trial. Associates Lisa Gaulin, Meghan Rhatigan and Elizabeth Castellani provided a wide range of support with respect to legal research, written discovery, including document collection and review, drafting motion papers, preparing trial materials and exhibits, and assisting at trial, as necessary. Associates Elizabeth Page Wilkins and Jennifer Tracy performed legal research and/or assisted in the preparation of John Hancock's Summary Judgment Motion and Opposition to Vestmont's Cross-Motion for Summary Judgment. Paralegal Deborah Dion was involved in the preparation of deposition and trial exhibits, and in coordinating various logistical matters before and during trial. Stephanie Snow, a firm librarian, performed electronic legal research. David Baldwin, a firm practice support specialist, assisted in arranging electronic support at deposition and at trial. The total amount of attorneys' fees for which John Hancock seeks reimbursement is $646,617.77.

23.    In addition, John Hancock incurred other compensable costs and expenses in this action (not including expert witness charges) of over $74,000. These costs and expenses include charges associated with photocopying documents for discovery purposes, for use at deposition and at trial ($21,988.83); deposition and trial transcripts and services ($22,399.62); electronic legal research ($16,244.56); travel-related expenses ($8,756.71); and various miscellaneous and other expenses such as filing fees, telephone charges, overtime secretaries and subpoena and witness fees ($4,883.26).

24.    Copies of Choate, Hall & Stewart's invoices reflecting the time spent on this matter for which reimbursement is sought, which itemize the specific legal services provided

by each attorney or other firm professional, the time spent on the various tasks performed, the rate charged, and the specific disbursements and expenses incurred, are appended at Tab 4. Although these records have been redacted to eliminate information protected from disclosure by the attorney-client privilege or the work-product doctrine, they still provide the Court and the Defendants with a reasonably comprehensive overview of the precise basis for John Hancock's claimed Legal Expenses. Specific invoices relating to this matter that are not reflected on the bills sent to John Hancock, including certain invoices for pre-trial photocopies, deposition-related court reporting services, and trial transcripts, are appended to this Affidavit at Tab 5. Davis Aff., ¶ 24.

25. Each year, Choate, Hall & Stewart reviews information obtained from court filings, private industry reports, and other sources in order to ensure that the rates that it charges its clients for legal services are commensurate with those charged by other comparable firms in the Boston area for similar services. Based upon that process, the rates charged to John Hancock for legal services rendered by Choate, Hall & Stewart in this litigation are, in fact, commensurate with those charged by other comparable firms in the Boston area for similar services.

<u>Fees and Costs Excluded from John Hancock's Motion</u>

26. John Hancock incurred Legal Expenses litigating this action in excess of those for which it currently seeks reimbursement from Vestmont. Fees and expenses that are excluded from Hancock's Motion for Reimbursement include those associated with: (1) the preparation and drafting of various Rule 30(b)(6) witness affidavits in response to this Court's April 12, 2006 Order allowing John Hancock's Motion for Reconsideration of March 30, 2006 Court Order Precluding Certain Testimony; and (2) time incurred after May 8, 2006, the date

-11-

on which the jury rendered its verdict in favor of John Hancock, including time spent preparing and drafting this Motion for Reimbursement and in responding to Vestmont's recent Motion to Amend the Judgment. In addition, Choate, Hall & Stewart did not charge John Hancock for time spent at hearings and at trial by Choate, Hall associate attorneys to the extent that they attended for observation purposes only. Accordingly, those costs also are excluded from John Hancock's Motion for Reimbursement.

27.    Excluding the foregoing charges, the total amount of Legal Expenses for which John Hancock seeks reimbursement in this action are $781,698.25, including reasonable attorneys' fees of $646,617.77, and other related costs and expenses of $135,080.48.

Signed under the pains and penalties of perjury this 25th day of May, 2006.

/s/ Brian A. Davis
Brian A. Davis

4083548.2

-12-

TAB 1

Application No. 6518467

## APPLICATION TO
## JOHN HANCOCK LIFE INSURANCE COMPANY
## FOR A FIRST MORTGAGE LOAN

July 30, 2004

John Hancock Life Insurance Company
John Hancock Tower, T-56
200 Clarendon Street
Boston, MA 02116
Attn: Real Estate Investment Group

RE:    APPLICATION NO. 6518467
       APPLICANT:    Montgomery Square Partnership
       PROPERTY:    Avenel at Montgomery Square, 1100 Avenel Boulevard, North Wales,
       Montgomery County, PA 19454

       THE FOLLOWING EXHIBITS ARE ATTACHED:  A,B,C,D,E,F,G & H

       SUPPLEMENT OF 18 PAGES ATTACHED

Ladies and Gentlemen:

       The undersigned (the "Applicant") hereby applies to John Hancock Life Insurance Company ("John Hancock")
for a first mortgage loan (the "Loan") to Borrower in the principal amount and upon the terms and conditions set forth
below and in the Exhibits and in any Supplement referred to above (the "Terms and Conditions"):

1.  BORROWER

       Name:    Montgomery Square Partnership (the "Borrower")
       Type of Entity:    General Partnership
       State of Organization: PA
       Address:    490 Norristown Road, Suite 151, Blue Bell, PA 19422

       TAXPAYER IDENTIFICATION NO. OF BORROWER: 23-2865711
       BORROWER'S FISCAL YEAR ENDING DATE: December 31, 2004

       Applicant represents that the description of the Borrower and all constituent entities and the list of names, types of
       interests and percentages thereof of all persons having ownership interests in the Borrower and in such entities are
       truly, accurately, and completely described on Exhibits F and G attached to this Application.

2.  NOMINATION OF BORROWER

       If Borrower is not definitely named in Condition 1 hereof, Borrower shall be subject to approval by John Hancock in
       its sole discretion and shall be nominated in writing by Applicant to John Hancock; and said nomination shall be
       accompanied by information as to the identity, financial condition, background and experience (including Exhibits F
       and G) of Borrower and the proposed guarantors and indemnitors; and, if Borrower is an entity, of the principals (as
       determined as set forth in Condition 41) of Borrower; and Borrower so nominated shall furnish John Hancock with
       an agreement under which Borrower shall become jointly and severally liable with Applicant for performance of the

*Kollee*
EXHIBIT NO. B
AMC 1/18/06

EXHIBIT
28

Ed. 1/28/2004                          1                                          JH 00958

Application No. 6518467

obligations of Applicant and Borrower hereunder, and the proposed guarantors and indemnitors execute the acknowledgment sections thereof, such nomination and agreement to be consummated on the form attached hereto and made a part hereof marked Exhibit A and to be submitted to John Hancock within seven (7) days from the date of acceptance by John Hancock of this Application.

Applicant agrees to provide John Hancock and its agents in a timely fashion all of the information as requested in this Application or otherwise that John Hancock may reasonably request to appraise the Security and underwrite this Loan.

3.  LOAN TERMS

(a) PRINCIPAL AMOUNT:      $32,000,000.00

(b) INTEREST RATE:          The interest rate shall be equal to the sum of the 10 year treasury at the time of rate lock, plus a spread of 175 basis points. This interest rate is subject to change based on market conditions such as movements in the treasuries and the swap curve (affecting both the treasuries and spread) until the rate is actually locked

(c) INTEREST RATE AND RATE LOCK:      The interest rate set forth in Condition 3(b) may be changed or confirmed if John Hancock, in its sole discretion, prior to acceptance of the Application issues a Rate Lock Confirmation to Applicant in the form attached hereto as Exhibit D (the "Rate Lock Confirmation"). If so issued, the Rate Lock Confirmation will amend the date of the Application to be the date of issuance of the Rate Lock Confirmation, will confirm or change the interest rate (the "Interest Rate"), the amount of the monthly payment of principal and interest (the "Monthly Payment"), the Amortization Period and establish the outside date for Closing (as hereinafter defined). If the terms of the Rate Lock Confirmation are satisfactory to the Applicant and the Applicant wishes to accept the proposed Rate Lock (hereinafter defined), the Applicant must execute the Rate Lock Confirmation and return such to John Hancock by telecopy to Timothy J. Malik at (617) 572-9699 within the time required on the Rate Lock Confirmation. The execution and delivery of said Rate Lock Confirmation by Applicant as described above will be deemed to amend this Application to incorporate herein the amended Application date, the Interest Rate, the Monthly Payment, the Amortization Period, the date of Closing and any other terms contained in said Rate Lock Confirmation. In the event the Rate Lock Confirmation is issued and accepted as set forth above, the Interest Rate will be locked for a period of sixty (60) days (the "Rate Lock") subject to receipt of the fee required pursuant to Condition 30(c) (the "Commitment Fee") within the time period provided in said Condition 30(c).

It is understood and agreed that John Hancock is under no obligation to issue any Rate Lock Confirmation.

Applicant understands and agrees that, notwithstanding any Rate Lock, John Hancock is not obligated to make the Loan contemplated hereby unless and until the Loan has been authorized by John Hancock's loan committees and John Hancock has accepted this Application in the place provided below, and then said obligation is upon and subject to the provisions contained in the Terms and Conditions hereof.

(d) REPAYMENT TERMS:

(i) Monthly installments of principal and interest will be based on an amortization period of 360 months, provided that all unpaid principal and all accrued and unpaid interest shall be due and payable at the end of the Term of the Loan specified in subparagraph (e) of this Condition 3. The amount of the monthly payment will be established at Rate Lock as set forth in Condition 3(c). Interest shall be computed on a monthly basis using a twelve (12) thirty- (30) day month formula, except that interest due and payable for a period less than a full month shall be calculated by multiplying the actual number of days elapsed in such partial month by a daily rate based on a three hundred sixty-five (365) day year.

(e) TERM OF LOAN: 120 months.

JH 00959

Application No. 6518467

(f) REPAYMENT DATES: All payments are due on the first day of the month. Unless Closing occurs on the first day of a month, interest shall, at John Hancock's option, be payable at Closing to the first day of the following month; and in such event other time computations to be stipulated in the Loan Documents (as hereinafter defined) shall run from the latter date, except where otherwise required by John Hancock.

(g) PREPAYMENT PRIVILEGE: Except as provided below, Borrower may not prepay the Loan in whole or in part.

On or after the end of the 4th Loan Year (as hereinafter defined), on any scheduled payment date and subject to giving John Hancock not less than thirty (30) nor more than ninety (90) days' prior written notice specifying the scheduled payment date on which prepayment is to be made ("Prepayment Date"), Borrower may prepay the entire principal amount together with any and all accrued interest and other sums due under the Loan Documents and subject to payment of a prepayment premium equal to the greater of:

    (i)    the positive amount, if any, equal to (aa) the sum of the present values of all scheduled payments due under the Note from the Prepayment Date to and including the maturity date of the Note, minus (bb) the principal balance of the Note immediately prior to such prepayment; or

    (ii)    0.00% of the principal balance of the Note immediately prior to such prepayment.

All present values shall be calculated as of the Prepayment Date, using a discount rate, compounded monthly, equal to the yield rate, converted to its monthly equivalent, of the United States Treasury Security having the closest maturity date to the maturity date of the Note as established in The Wall Street Journal or other business publication of general circulation five (5) business days before the Prepayment Date.

In the event that the yield rate on publicly traded United States Treasury Securities is not obtainable, then the nearest equivalent issue or index shall be selected, at John Hancock's reasonable determination, and used to calculate the prepayment premium.

The Loan will be open to prepayment without premium during the last 90 days of the term of the Loan.

If any notice of prepayment is given, the principal balance of the Loan and the other sums required pursuant to this Condition shall be due and payable on the Prepayment Date unless Borrower provides written notice that it is revoking said prepayment notice no later than five (5) business days prior to the Prepayment Date.

Provided no default exists under the Loan Documents, the above premium shall not be applicable to a prepayment resulting from John Hancock's election to require insurance loss proceeds or condemnation awards to be applied to a payment of principal.

No partial prepayment shall be allowed.

The Loan Year is defined as any twelve-month period commencing with the date on which the first monthly installment is due or any anniversary thereof.

(h) METHOD OF PAYMENT: Any amounts due John Hancock shall be paid via ACH debits against Borrower's account. The attached Exhibit H, Authorization Agreement for Direct Deposits (ACH), has been completed and executed and a voided check or deposit slip is attached thereto.

4. CLOSING AND CLOSING DATE

    (a)    All References to closing in this Application shall mean the funding of the Loan by John Hancock (the "Closing").

    (b)    The Closing shall occur on or before the date established by the Rate Lock Confirmation as set forth in Condition 3(c) (the "Closing Date").

JH 00960

3

Application No. 6518467

(c) It is understood and agreed that John Hancock shall have no obligation to extend the Closing Date. If Borrower has not complied with all the Terms and Conditions hereof by that time, and John Hancock in its sole discretion does not extend said date pursuant to Condition 32 hereof, John Hancock's obligation to Close and fund the Loan shall terminate pursuant to Condition 29 hereof; and any Rate Lock shall expire automatically.

5.  THE SECURITY FOR THE LOAN

The Loan shall be secured by the Real Estate Security and Personal Property Security described below (collectively, the "Security"):

(a) REAL ESTATE SECURITY:  The Loan will be secured by a first mortgage, first deed of trust, first security deed, first loan deed, or similar instrument, as determined by John Hancock (the "Mortgage"), upon the following described real estate, including without limitation, the buildings and improvements located thereon and all appurtenances thereto, including without limitation, all easements, licenses and permits in connection with the ownership and operation of the land and improvements (the "Real Estate Security"):

A newly constructed three & four-story 256 unit garden apartment complex situated on approximately 18.3 acres and located in nine separate buildings at 1100 Avenel Boulevard, North Wales, PA 19454

(b) PERSONAL PROPERTY SECURITY:  In addition to the Real Estate Security, the Loan will be secured by the following security (the "Personal Property Security"):

(i)   ASSIGNMENT OF LEASES AND RENTS:  A first priority present, absolute and unconditional assignment to John Hancock of all present and future rents, issues and profits (including without limitation all accounts receivable) from the Security and of all present and future leases of personal property and leased property, including ground leases and master-leases (all of the foregoing hereinafter referred to as "Other Leases"), and leases of space to occupancy tenants on the Security, more particularly referred to in Condition 15 hereof (the "Space Leases") and all rents and other sums payable thereunder by instruments satisfactory in form and substance to John Hancock and its counsel, which will be recorded and which will provide, among other things, that certain Space Leases and Other Leases will not be modified or amended, surrendered, canceled or terminated and new Space Leases and Other Leases may not be entered into without the prior written consent of John Hancock, and that no prepayment of rent will be accepted from any such tenant Leases.

(ii)  SECURITY INTEREST IN PERSONAL PROPERTY:  A first priority security interest in personal property under the Uniform Commercial Code combined with the Mortgage or by way of a chattel mortgage or other instrument satisfactory in form and substance to John Hancock and its counsel shall be granted to John Hancock and shall constitute a first and prior lien upon all articles of personal property now or hereafter attached to or used in any way in connection with the Real Estate Security or the operation thereof, including without limitation, fixtures, furniture, equipment, insurance proceeds, condemnation awards, tenant deposits, escrow deposits, transferable warranties, licenses, permits, plans and specifications, contracts and other items of tangible or intangible personal property, and the following property (the "Personal Property Security"):

Anything owned by the borrowing entity used solely in the operation and management of the real estate, not including personal property owned or leased by tenants at the security, but including personal property owned by the Borrower if leased to the tenants.

Such security interest shall be perfected by filing or recording as John Hancock shall require.

(iii)  ASSIGNMENT OF AGREEMENTS, LICENSES AND PERMITS:  A first priority present, absolute and unconditional assignment to John Hancock of all management agreements, franchise agreements,

4

JH 00961

Application No. 6518467

warranties, licenses, permits, plans and specifications, construction contracts and all other contracts and agreements with respect to the construction, use or operation of the Real Estate Security.

(c) The Security for the Loan is more particularly described on Exhibit B attached hereto and made a part hereof.

(d) Applicant hereby represents and warrants to John Hancock that the Security has not been subjected to a condominium or cooperative form of ownership, and Applicant and Borrower hereby represent and warrant that the Security shall not be so subjected prior to the Closing Date nor prior to the date on which the Loan is paid in full.

6. THE LOAN DOCUMENTS

The Note (the "Note"), the Mortgage and all other documents evidencing or securing the Loan or otherwise pertaining thereto (collectively the "Loan Documents") shall be satisfactory in all respects in form and substance to John Hancock and its counsel, and, without in any way limiting the generality of the foregoing, the Loan Documents shall contain provisions satisfactory in form and substance to John Hancock and its counsel, including, without limitation, the following:

(a) LATE CHARGES: A covenant to the effect that the Borrower will pay a late charge of 5% of any installment of any principal and interest not paid within five (5) days of the due date, but in no event to exceed the highest rate permitted under the laws of the jurisdiction in which the Real Estate Security is situated.

(b) DEFAULT INTEREST RATE: A covenant requiring the Borrower to pay an increased interest rate ("Default Interest Rate") on the entire principal balance during default or after maturity at a rate equal to 7% above the interest rate on the Loan stipulated in Condition 3(e) hereof as amended by the Rate Lock Confirmation, but in no event to exceed the highest rate permitted under the laws of the jurisdiction in which the Real Estate Security is situated.

(c) RESERVE FUND FOR TAXES AND OTHER CHARGES: A covenant to the effect that Borrower, at the option of John Hancock, will pay to John Hancock monthly such amounts as John Hancock estimates to be necessary to create and maintain a reserve fund or funds from which to pay before they become due, all taxes, assessments, liens, charges and hazard insurance premiums on or against or pertaining to the Security, together with ground rents under ground leases, if any, and any other sums required pursuant to Condition 18, which reserve fund(s) will be held by John Hancock without interest.

(d) PAYMENT OF LOAN AFTER DEFAULT AND ACCELERATION: A covenant to the effect that Borrower acknowledges that the Loan was made on the basis and assumption that John Hancock would receive the payments of principal and interest set forth herein for the full term of this Loan. Therefore, whenever the maturity of the Loan has been accelerated by reason of a default under the Loan Documents, which default occurs prior to the time period, if any, in which prepayment is allowed and prior to the date on which the full amount of the balance of principal and interest then remaining unpaid shall be due, including an acceleration by reason of sale, conveyance, further encumbrance or other default (which acceleration shall be at John Hancock's sole option), there shall be due, in addition to the outstanding principal balance, accrued interest and other sums due under the Loan Documents, a premium equal to the greater of:

    (i)    The sum obtained by adding:

        (aa)    the positive amount, if any, equal to (x) the sum of the present values of all scheduled payments due under the Note from the date of said payment to and including the maturity date of the Note, minus (y) the then outstanding principal balance of the Note, and

        (bb)    0.00% of the then outstanding principal balance of the Note; or

    (ii)    An amount equal to 7.00% of the then outstanding principal balance of the Note.

All present values shall be calculated as of the date of said payment, using a discount rate, compounded monthly, equal to the yield rate, converted to its monthly equivalent, of the United States Treasury Security having the closest maturity date to the maturity date of the Note as established in the Wall Street Journal or other business publication of general circulation five (5) business days before the date of said payment.

In the event that the yield rate on publicly traded United States Treasury Securities is not obtainable, then the nearest equivalent issue or index shall be selected, at John Hancock's reasonable determination, and used to calculate the prepayment premium.

In the event default occurs on or after the date on which prepayment is permitted, then in lieu of the above premium, payment of a premium calculated in the manner set forth in Condition 3(g) hereof shall be required.

A tender of the amount necessary to satisfy the entire indebtedness, paid at any time following such default or acceleration, including at a foreclosure sale, shall be deemed a voluntary prepayment, and, at John Hancock's option, such payment shall include a premium as described above.

(e) FINANCIAL STATEMENTS: A covenant to the effect that the Borrower will furnish to John Hancock within ninety (90) days after the end of each fiscal year a statement of Borrower's financial condition, including a balance sheet and profit and loss statement and a statement of annual income and expenses satisfactory in form and substance to John Hancock in connection with the operation of the Security, in detail satisfactory to John Hancock, prepared, audited and certified by a certified public accountant who is a member of the American Institute of Certified Public Accountants; and in addition, within forty-five (45) days after the end of each fiscal quarter of Borrower, Borrower shall provide the above information except that it may be prepared and certified by the financial officer of Borrower who is responsible for the preparation of such annual financial statements.

Accompanying the submission of the certified statements of annual and quarterly income and expenses, when the Real Estate Security is office, retail or multi-tenant industrial property, shall be a certified current rent roll, which shall include among other things tenant names, lease commencement and expiration dates, square footage, annual rent, annual operating expense and real estate tax contributions, a statement as to whether or not there are any purchase options and/or co-tenancy requirements, and any and all other fees paid by tenants and security deposits currently held.

Accompanying the submission of the certified statements of annual and quarterly income and expenses, when the Real Estate Security is multifamily property, mobile home park, congregate care property or self-storage facility, shall be a certified current rent roll, which shall include among other things each building designation, unit number, type of unit, tenant names, lease commencement and expiration dates, monthly rent collected, asking market rent, and any and all other fees paid by tenants, including but not limited to utility reimbursements, and security deposits currently held.

For all other property types, accompanying the submission of the certified statements of annual and quarterly income and expenses shall be such additional financial information as John Hancock shall require.

(f) DUE ON SALE: A covenant to the effect that if the Borrower, whether voluntarily or by operation of law, sells, assigns or otherwise transfers the Security or any portion thereof or enters into an installment sale contract or similar agreement, without the prior written consent of John Hancock, or if a change shall occur in the ownership or control of the Borrower or Borrower permits or suffers any merger, consolidation or dissolution or syndication affecting Borrower, or permits or suffers the transfer, sale, assignment or pledge of any interest in Borrower or any entity or person, directly or indirectly, controlling Borrower or any general partner or member of Borrower (if applicable), whether at one time or in a series of related or unrelated transfers without the prior written consent of John Hancock, such event shall constitute a default under the Loan Documents; and John Hancock shall have the right to declare the Loan immediately due and payable and to accelerate the entire indebtedness.

Notwithstanding the foregoing, John Hancock will permit a one-time transfer of the Real Estate Security together with assumption of the Loan during the term of the Loan, subject to John Hancock's prior written approval, provided that:

JH 00963

Application No. 6518467

(i)    no default or event which with the giving of notice or the passage of time would constitute a default under the Loan Documents shall have occurred and remain uncured;

(ii)    the proposed transferee (the "Transferee"), the proposed guarantors of non-recourse carveouts, and the proposed indemnitors of environmental liabilities shall be reputable entities or persons of good character, creditworthy, with sufficient financial worth considering the obligations assumed and undertaken, as evidenced by financial statements and other information reasonably requested by John Hancock;

(iii)    the Transferee and its property manager shall have sufficient experience in the ownership and management of properties similar to the Security, and John Hancock shall be provided with reasonable evidence thereof (and John Hancock reserves the right to approve the Transferee without approving the substitution of the property manager);

(iv)    John Hancock receives a written request for approval from the Borrower at least sixty (60) days prior to the proposed transfer (including a description of the proposed terms of the transfer), together with a diagram as described in Exhibit F showing the structure of the Transferee, the proposed guarantor of non-recourse carveouts and the proposed indemnitor of environmental liabilities, and all of the constituent entities of each, after the contemplated transfer, and a list of the names, types of interests and ownership percentages of all persons to have ownership interests in any of the foregoing or any constituent entity thereof, financial statements, including a completed Exhibit G, for all such entities and an administrative fee of $5,000.00, which shall be deemed fully earned on the date of receipt and shall be retained by John Hancock regardless of whether or not the transfer occurs and whether or not approval is given;

(v)    The Transferee executes and delivers to John Hancock a Loan assumption agreement and delivers a guaranty of non-recourse carveouts from an approved guarantor and a separate environmental indemnity agreement from an approved indemnitor, and such other documentation as John Hancock may require, in form and substance satisfactory to John Hancock;

(vi)    John Hancock and its counsel receive (aa) certification from Borrower and the Transferee that the proposed terms of the transfer described in subparagraph (iv) of this Condition 6(f) are the actual terms of the transfer, (bb) evidence of casualty insurance and other applicable insurance, (cc) all corporate, partnership or other entity documents, and (dd) all other certificates, legal opinions, title materials and other documents which John Hancock may require, all in form and substance satisfactory to John Hancock, at least 30 days prior to the proposed transfer;

(vii)    John Hancock be provided satisfactory evidence concerning the effect of any change in the real estate taxes to result from the sale and the effect of such change on the ability of the Security to generate a cash flow sufficient to pay the debt service on the Loan and to maintain a debt service coverage ratio satisfactory to John Hancock;

(viii)    John Hancock shall have received in writing evidence from the Rating Agencies to the effect that such transfer will not result in a re-qualification, reduction or withdrawal of any rating initially assigned or to be assigned in a secondary market transaction together with such legal opinions as may be requested by the Rating Agencies. The term "Rating Agencies" as used herein shall mean each of Standard & Poor's Ratings Group, Moody's Investors Service, Inc., Duff & Phelps Credit Rating Co., Fitch Investors Service, Inc. or any other nationally-recognized statistical rating agency who shall then be rating the certificates or securities issued in connection with the secondary market transaction;

(ix)    the Transferee and its constituent entities shall comply with all requirements pertaining to the Borrower's being a Special Purpose/Bankruptcy Remote Entity (as hereinafter defined) contained in this Application and in the Loan Documents;

(x)    the Transferee shall have delivered to John Hancock such legal opinions and title insurance endorsements as may be reasonably requested by John Hancock; and

7

JH 00964

Application No. 6518467

(xi) John Hancock shall have received an assumption fee equal to one percent (1%) of the then unpaid principal balance of the Note (against which the administrative fee shall be credited) in addition to the payment of all costs and expenses incurred by John Hancock in connection with such assumption (including reasonable attorney's fees and costs).

(g) OTHER INDEBTEDNESS AND LIENS: A covenant to the effect that no indebtedness (whether secured or unsecured) other than the Loan, no encumbrances other than those approved by John Hancock in its sole discretion in connection with the Closing, and no liens other than that of the Loan, shall be permitted to be secured by the Security, or any portion thereof, or by interests in the Borrower or any constituent entity thereof, and any violation thereof shall be a default under the Loan Documents and shall give John Hancock the right to declare the Loan immediately due and payable and to accelerate the entire indebtedness.

(h) USE OF SECURITY: A representation, warranty and covenant to the effect that the Security will at all times be operated as a Class A Apartment and for no other purpose.

(i) CONDOMINIUM OR COOPERATIVE: A covenant to the effect that Borrower has not filed and will not file a declaration of condominium, map or any other document having the effect of subjecting the Security to the condominium or cooperative form of ownership.

(j) FEES: A covenant to the effect that John Hancock may charge administrative fees and be reimbursed for all costs and expenses, including reasonable attorneys' fees and disbursements, associated with reviewing and processing post-closing requests of Borrower.

(k) DISCLOSURE: A representation and warranty to the effect that Borrower has fully disclosed to John Hancock all facts material to the Security, the Borrower, the Borrower's business operations and each guarantor listed in Condition 44 of this Application and each guarantor, if any, of the Loan required pursuant to this Application (collectively "Guarantors"), and each indemnitor of environmental liabilities listed in Condition 11(d)(ii)(cc) of this Application (collectively "Indemnitors"); and a misrepresentation or breach of any representation, warranty or covenant made in this Application shall be a default under the Loan Documents.

7. **TITLE, TITLE EVIDENCE AND TITLE INSURANCE**

(a) The title to the Real Estate Security and Personal Property Security and all documentation pertaining thereto shall be satisfactory in all respects to John Hancock and its counsel.

(b) Borrower shall furnish to John Hancock a policy of title insurance satisfactory in form and substance to John Hancock and its counsel issued by a title insurance company acceptable to John Hancock, in an amount not less than the amount of the Loan, insuring John Hancock and its successors and assigns that the Mortgage is a valid, first and prior lien on the Real Estate Security, subject only to such exceptions to and conditions of title as John Hancock may approve, and containing such endorsements as John Hancock may require. The seven (7) title companies (the "Title Companies") which are named below are acceptable to John Hancock. To facilitate the Closing, Borrower may wish to consider choosing one of them. Notwithstanding the foregoing, John Hancock's providing this information is merely to expedite the Closing of the Loan, and John Hancock is not responsible for the performance of any of said Title Companies. Borrower further acknowledges and agrees that whichever title company is selected, will provide their services directly to Borrower; and John Hancock is not responsible for any fees, costs or expenses of said company. Subject to the approval of John Hancock, Applicant hereby designates the following title insurance company as the title insurer for the loan:

8

JH 00965

Application No. 6518467

Name of Title Insurance Company:

1. ☐   First American Title Insurance Company
        Contact Person:
        Address:

        Telephone Number:
        Telecopy Number:

2. ☐   Chicago Title Insurance Company
        Contact Person:
        Address:

        Telephone Number:
        Telecopy Number:

3. ☐   Commonwealth Land Title Insurance Company
        Contact Person:
        Address:

        Telephone Number:
        Telecopy Number:

4. ☐   Lawyers Title Insurance Company
        Contact Person:
        Address:

        Telephone Number:
        Telecopy Number:

5. ☐   Transnation Title Insurance Company
        Contact Person:
        Address:

        Telephone Number:
        Telecopy Number:

6. ☐   Stewart Title Guaranty Company
        Contact Person:
        Address:

        Telephone Number:
        Telecopy Number:

7. ☐   Old Republic National Title Company
        Contact Person:
        Address:

        Telephone Number:
        Telecopy Number:

9

Ed. 1/28/2004

JH 00966

Application No. 6518467

In the event Applicant wishes to select a title company other than one of those listed above, Applicant must submit a written request to John Hancock. If title company is acceptable to John Hancock in its sole discretion, it will be approved in writing by John Hancock and will be included in the definition of Title Company.

Acceptance of this Application by John Hancock shall not be deemed to be approval by John Hancock of the title insurance company, or the issuing agent, if a title company other than one of the Title Companies has been selected. John Hancock hereby reserves the right to impose reinsurance requirements and to approve the Closing medium, all in its sole discretion.

(c) Applicant hereby agrees that prior to Applicant's requesting that the interest rate be locked, it will give the Title Company John Hancock's title requirements. Applicant further agrees to provide the Title Company said written notification to proceed immediately after Rate Lock. It is understood that the Title Company will be hired on behalf of Applicant, that the Applicant will be responsible for payment of all fees and expenses of the Title Company whether or not the Loan Closes and for ensuring that the Title Company and title policy satisfy all the conditions of this Application.

(d) Borrower shall furnish to John Hancock, or to John Hancock's Special Counsel designated herein, if any, six (6) copies of the preliminary evidence of title insurance satisfactory in form and substance to John Hancock and its counsel no later than twenty-one (21) days from the date of Rate Lock.

(e) Borrower shall furnish to John Hancock a chattel search certificate or other similar evidence satisfactory in form and substance to John Hancock and its counsel no later than twenty-one (21) days from the date of Rate Lock showing that such security interest is a first lien on the Personal Property Security, which evidence shall be updated through the date of Closing.

8. THE SURVEY

(a) Borrower shall furnish John Hancock a current instrument survey of the Real Estate Security, satisfactory in form and substance to John Hancock and its counsel, prepared by a licensed surveyor acceptable to John Hancock and its counsel and certified by such surveyor to John Hancock and its successors and assigns and to the title insurance company insuring the Loan, pursuant to a certification in form and substance satisfactory to John Hancock and its counsel, showing all final improvements, physical conditions and all other matters affecting the title to, use of and zoning of the Real Estate Security as required by John Hancock.

(b) Applicant hereby agrees that prior to Applicant's requesting that the interest rate be locked, it will give the surveyor designated below John Hancock's survey requirements. Applicant further agrees to provide the surveyor written notification to proceed immediately after Rate Lock. It is understood that the Surveyor will be hired on behalf of Applicant, that the Applicant will be responsible for payment of all fees and expenses of the Surveyor whether or not the Loan Closes and for ensuring that the Surveyor and the survey satisfy all the conditions of this Application.

(c) The name and address of Applicant's surveyor are set forth below:

Name of Surveyor:  Stout & Traconelli Associates
Address:           2499 Knights Road, Pennsburg, PA 18073
Phone No.          215-679-0200

(d) Borrower shall furnish to John Hancock, or to John Hancock's Special Counsel designated herein, if any, six (6) copies of the survey described in subparagraph (a) of this Condition 8 no later than twenty-one (21) days from the date of Rate Lock.

9. BORROWER REQUIREMENTS

(a) If the Borrower is a limited partnership, a limited liability company, or a corporation, or any other form of entity, then no later than fourteen (14) days from the date of acceptance by John Hancock of this Application,

10

JH 00967

Borrower shall furnish to John Hancock, or to John Hancock's Special Counsel designated herein, if any, full and complete copies of the Borrower's partnership certificates and filings and partnership agreement, operating agreement, corporate articles, by-laws and resolutions or other organizational documents, as the case may be, which shall be satisfactory in form and substance to John Hancock and its counsel. In the event any of the foregoing need to be amended to comply with Condition 9(c) or any condition of this Application, said amended documents shall be furnished to John Hancock, or to John Hancock's Special Counsel designated herein, if any, no later than thirty (30) days from the date of acceptance by John Hancock of this Application.

(b)   Borrower shall furnish evidence satisfactory to John Hancock and its counsel that the Borrower has, and the persons signing on behalf of the Borrower have, the legal capacity and authority to enter into this transaction and to execute the Loan Documents.

(c)   Special Purpose/Bankruptcy Remote Entity. The Borrower must be one of the following types of entities: (aa) a corporation which meets the requirements of SPE (as defined below), (such corporation hereinafter referred to as an "SPE Corporation"), (bb) a limited partnership, in which at least one of its general partners is an SPE Corporation, (cc) a limited liability company, having a minimum of two members, one of which is an SPE Corporation, or (dd) a general partnership, in which at least two of its general partners are SPE Corporations. The following additional requirements shall apply. The Borrower must be now, or prior to Closing must become, a special purpose and bankruptcy remote entity ("SPE"). In general, this includes but is not limited to the following requirements:

(i)    The activities of Borrower must be limited by its organizational documents to the ownership and operation of the Security.

(ii)   The activities of the SPE Corporations must be limited by their organizational documents to the ownership of interests in the Borrower.

(iii)  Borrower and its SPE Corporations must be limited by their organizational documents from owning any property unrelated to the Security.

(iv)   Borrower and its SPE Corporations must be prohibited by their organizational documents from incurring any indebtedness, secured or unsecured; other than, with respect to the Borrower, the Loan, and (aa) incurred in the ordinary course of business to vendors and suppliers of services to the Real Estate Security, (bb) not secured by the Security, or any portion thereof, or by interests in the Borrower or any constituent entity thereof, and (cc) not accompanied by any rights to control or to obtain control of the Borrower or any constituent entity thereof.

(v)    Each of Borrower and its SPE Corporations must maintain separate assets, bank accounts, operations, books and records and tax returns so that it is not costly or difficult to segregate its assets and operations from those of any affiliate or any other person.

(vi)   Each of Borrower and its SPE Corporations must do all other things necessary, in the opinion of John Hancock's legal counsel, to establish and maintain its existence as an SPE.

(vii)  Borrower and its SPE Corporations must be prohibited by their organizational documents from dissolving, liquidating, consolidating or merging, or selling all or substantially all of the assets of the Borrower or its SPE Corporations or transferring all or substantially all of the assets of the Borrower or its SPE Corporations, or engaging in any other business activity.

(viii) For Loans of $15 million or more, and for all other Loans in the event this box ☐ is checked, the organizational documents of Borrower and its SPE Corporations must require a unanimous vote or consent of the Borrower's directors, partners or members, as applicable, and the unanimous consent of the directors of the SPE Corporations, if applicable, to file a petition for bankruptcy protection or obtain any other relief from its creditors.

11

JH 00968

Application No. 6518467

(ix)    For Loans of $15 million or more, and for all other Loans in the event this box ☐ is checked, the board of directors of Borrower or its SPE Corporations, if applicable, must include at least one Independent Director whose consent shall be required before such Borrower or its SPE Corporations shall be permitted to file for bankruptcy protection, or obtain any other relief from its creditors, on behalf of such Borrower or its SPE Corporations. Independent Director shall mean a director of the special-purpose, bankruptcy remote corporation serving as the Borrower or the SPE Corporations of the Borrower, who is not at the time of initial appointment and has not been at any time during the preceding five (5) years: (a) a stockholder, director, officer, employee or partner of such corporation, the Borrower or any affiliate of either of them; (b) a customer, supplier or other person who derives more than 10% of its purchases or revenues from its activities with the corporation, the Borrower or any affiliate of either of them; (c) a person or other entity controlling or under common control with any such stockholder, partner, customer, supplier or other person; (d) an attorney or counsel to such corporation, the Borrower or any affiliate of either of them or (e) a member of the immediate family of any such stockholder, director, officer, employee, partner, customer, supplier or other person. (As used herein, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of management, policies or activities of a person or entity, whether through ownership of voting securities, by contract or otherwise.)

(x)    Non-Consolidation Opinion. For Loans of $15 million or more, and for all other Loans in the event this box ☐ is checked, the Borrower's legal counsel (who must be satisfactory to John Hancock's legal counsel) shall provide an opinion, in form and substance satisfactory to John Hancock's legal counsel to the effect that a bankruptcy proceeding involving,

(aa)    the parent or an affiliate (including without limitation any affiliated property manager) of the Borrower,

(bb)    a member, partner or shareholder of the Borrower, or

(cc)    a partner of a partnership, a member of a limited liability company or shareholders of a corporation, which partnership, limited liability company or corporation serves as a special purpose, bankruptcy remote general partner or managing member of the Borrower,

shall not cause (1) the assets of the Borrower (including without limitation the Security) to be substantively consolidated with the assets of its bankrupt parent, affiliate, member, partner or shareholder and, (2) if applicable, the assets of the SPE Corporations of the Borrower to be substantively consolidated with the assets of its bankrupt partner, member or shareholder.

(xi)    Fraudulent Conveyance and Other Required Opinions. If the Security was transferred to the Borrower by an affiliated entity, John Hancock may require an additional opinion to establish that the transfer of the Security to the Borrower cannot be avoided as a fraudulent conveyance or pursuant to similar laws which would cause the Security to be included among the assets or estate of the transferor.

## 10.  COMPLIANCE WITH ZONING, BUILDING LAWS, SUBDIVISION AND OTHER LAWS, REGULATIONS, ETC. AND SEPARATE TAX PARCEL

John Hancock shall be furnished within twenty-one (21) days of Rate Lock with evidence satisfactory in form and substance to John Hancock and its counsel, including, without limitation, affirmative title insurance in the form of an ALTA 3.1 (or CLTA 123.2) title endorsement (modified to cover parking) if issued in the jurisdiction where the Real Estate Security is located and a letter from the municipality evidencing that the Real Estate Security and the use thereof comply with all applicable zoning, subdivision and other laws, ordinances, rules and regulations and that there is no action or proceeding pending before any court, quasi-judicial body or administrative agency relating thereto. If said title endorsement is not issued in the jurisdiction, both an opinion of counsel in form and substance satisfactory to John Hancock and its counsel and the aforementioned letter from the municipality will be required. John Hancock shall also be furnished with evidence satisfactory to John Hancock and its counsel that the Real Estate Security has a tax map designation separate and distinct from that of any other property and is a separate legally subdivided parcel. John Hancock shall be provided with evidence that the Security and the use thereof

12

Application No. 6518467

comply with all building laws, ordinances, rules and regulations, including without limitation, permanent and unconditional certificates of occupancy and all other certificates, permits, licenses and other items relating to such compliance which are required by or are to be obtained from any board, agency or department, whether governmental or otherwise, and evidence of rebuildability, all of which shall be satisfactory in form and substance to John Hancock and its counsel.

11.  COMPLIANCE WITH ENVIRONMENTAL LAWS: LOAN DOCUMENTS

(a)  Applicant furnishes to John Hancock herewith an environmental certificate and questionnaire (the "Environmental Certificate") completed and executed by Applicant, attached hereto and made a part hereof marked Exhibit C, which Applicant acknowledges is subject to the approval of John Hancock. Applicant agrees that the Closing of the Loan is conditioned upon the continued accuracy of the representations, warranties and certifications contained in Exhibit C.

(b)  John Hancock shall also be furnished with such additional evidence as it may require, and satisfactory in form and substance to John Hancock and its counsel, that the Security is in compliance with all applicable environmental laws, ordinances, rules and regulations, together with all certificates, permits, licenses and other items relating to such compliance which are required by or are to be obtained from any board, agency or department, whether governmental or otherwise, including without limitation, an engineering report in form and substance satisfactory to John Hancock and a certification by an engineer satisfactory to John Hancock and its successors and assigns, whose fees and expenses shall be paid by Applicant and/or Borrower, as to the structural and mechanical sufficiency of the improvements and equipment to meet municipal, state and federal environmental requirements.

(c)  The Applicant shall provide to John Hancock an assessment, in form and substance satisfactory to John Hancock and its counsel, by one or more qualified registered professional engineers, hydrologists, or other scientists approved by John Hancock, whose report or reports shall be certified to John Hancock and its successors and assigns and the Applicant and whose fees and expenses shall be paid by the Applicant, and which shall be dated no earlier than one hundred eighty (180) days prior to the Closing, that based on a visual inspection and a thorough review of historical uses of the Real Estate Security and neighboring lands, review of all lists of actual or suspected sites of releases which are published by federal or state agencies, consultation with local officials and a records check of local agencies and authorities who might be knowledgeable with respect to the Real Estate Security:

(i)  there exists no evidence of the past or ongoing release or threatened release at, upon, under, or within, or of the past or ongoing migration from neighboring lands to, the Real Estate Security, of Hazardous Materials, which term shall in this Application include hazardous waste, as that term is defined by the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §6903(5), hazardous substances, as that term is defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §9601(14), pollutants or contaminants, as those terms are defined by CERCLA, 42 U.S.C. §9601(33), in each case, as those statutes may be amended from time to time, asbestos-containing materials ("ACM") and volatile organic compounds, including oil and petroleum products; and

(ii)  there exists no evidence that ACM, polychlorinated biphenyls (PCBs), Mold (defined as the presence of any form of (i) multicellular fungi that live on plant or animal matter and an indoor environment (including without limitation Cladosporium, Penicillium, Alternaria, Aspergillus, Fusarium, Trichoderma, Memnoniella, Mucor and Stchybotrys chartarum (SC) often found in water damaged building materials), (ii) spores, scents or byproducts produced or released by fungi, including mycotoxins and (iii) microbial matter which reproduces through mold, mildew and viruses, whether or not such microbial matter is living (collectively "Mold")) or radon gas is present at the Real Estate Security.

If, in John Hancock's sole discretion, the report or reports provided pursuant to subparagraphs (b) and/or (c) above; the answers to any questions on the Environmental Certificate attached hereto as Exhibit C; the provisions of any federal, state, or local laws; and/or any other information which John Hancock has obtained

13

JH 00970

Application No. 6518467

so warrants, John Hancock may require, as a further condition to Closing the Loan, a further report at the Borrower's expense that there exists no evidence of the discharge, migration, or presence of Hazardous Materials, ACM, PCBs, Mold and/or radon gas at the Real Estate Security, said further report to be based on, in John Hancock's sole discretion, soil and groundwater sampling and monitoring, and/or sampling and analysis of building materials.

(d) The Loan Documents will contain, without limitation:

    (i)    warranties and representations by Borrower, in form and content satisfactory to John Hancock and its counsel, that:

        (aa)    to the best of Borrower's knowledge, there have been no releases or threatened release at, upon, under, or within, nor past or ongoing migration from neighboring lands to, the Real Estate Security, of Hazardous Materials; and

        (bb)    Borrower has not received any notice from any governmental authority or from any tenant or other occupant or from any other person with respect to any release or threatened release of Hazardous Materials at, upon, under, or within the Real Estate Security; and

        (cc)    to the best of Borrower's knowledge, there is no ACM, PCBs, Mold or radon gas at or within the Real Estate Security; and

    (ii)    covenants by Borrower, in form and content satisfactory to John Hancock and its counsel, that:

        (aa)    Borrower has not been, is not, and will not become involved in operations at the Real Estate Security which could lead to the imposition on Borrower of liability under RCRA, CERCLA, or any similar applicable federal or state laws or regulations;

        (bb)    Borrower will strictly comply with the requirements of RCRA, CERCLA, and all similar applicable federal and state laws and regulations, and of all federal and state laws and regulations relating to ACM, PCBs, Mold and radon gas, and will notify John Hancock of any release of Hazardous Materials at, upon, under, or within the Real Estate Security involving Borrower, or of the presence of ACM, PCBs, Mold or radon gas at the Real Estate Security, or of the receipt by Borrower of any notice from any governmental agency or authority or from any tenant or other occupant or from any other person with respect to any alleged such release or presence, promptly upon discovery of such release or presence or receipt of such notice, and will send John Hancock copies of all results of tests of underground storage tanks at the Real Estate Security; and

        (cc)    Notwithstanding any provisions in the Loan Documents limiting or negating Borrower's personal liability, Applicant, Borrower and **James R. Koller, Frank C. Palopoli & Joseph P. Kelly**, individually, will jointly and severally indemnify and hold John Hancock harmless from and against any and all loss, cost, damage, liability, and expense, including attorneys' fees, suffered or incurred by John Hancock in connection with this Loan, at any time, whether before, during, or after enforcement of its rights and remedies upon default, on account of any release or threatened release of Hazardous Materials at, upon, under, or within the Real Estate Security, or resulting from the presence of ACM, PCBs, Mold or radon gas at the Real Estate Security, including with respect to (i) the imposition by any governmental authority of any lien or so-called "super priority lien" upon the Real Estate Security, (ii) clean-up costs, (iii) liability for personal injury or property damage or damage to the environment, and (iv) fines, penalties, and punitive damages; provided, however, that the obligation of Applicant and the Indemnitors to indemnify John Hancock shall not apply to any release or presence of Hazardous Materials which (1) first occurs after (A) a repayment of the Loan in full in accordance with the Loan Documents, or (B) acquisition of title by John Hancock upon a foreclosure and surrender of possession and occupancy of the Security by Applicant and the Indemnitors, their agents, affiliates, employees and independent contractors, and (2) with respect to both (1) (A) and (1) (B) above, is not due to any action occurring prior to such repayment or acquisition.

14

JH 00971

The Applicant, Borrower, Guarantors and Indemnitors shall have the burden of proving that the conditions in the foregoing clauses (1) and (2) were satisfied by clear and convincing evidence and shall continue to defend with counsel reasonably satisfactory to John Hancock and shall indemnify and hold harmless John Hancock for all matters set forth in Section 11(d)(ii)(cc), unless a court of competent jurisdiction finds that Indemnitors have met such burden.

(e)  The Loan Documents will contain, without limitation, in form and content satisfactory to John Hancock and its counsel, (i) provisions to the effect that at any time while the Loan is outstanding, John Hancock may (but will not be obliged to) enter the Real Estate Security to make reasonable inspections of its condition, including but not limited to soil and groundwater sampling and monitoring, and including but not limited to inspections for Hazardous Materials, ACM, PCBs, Mold and/or radon gas, (ii) warranties and representations by Borrower that all of the answers on the Environmental Certificate attached hereto as Exhibit C are true and complete, (iii) covenants by Borrower that Borrower will notify John Hancock in writing immediately upon learning that any of the answers on the Environmental Certificate either was not true when made or is no longer true, and (iv) provisions to the effect that any event which causes any of the answers on the Environmental Certificate to be no longer true, or John Hancock's learning that any of the answers on the Environmental Certificate were not true when made, shall, if the change is in John Hancock's sole determination adverse, constitute a default under the Loan Documents, giving John Hancock all the rights and remedies available to it upon a default by Borrower.

(f)  The title insurance required by Condition No. 7 shall include, if available in the jurisdiction where the Real Estate Security is located, affirmative assurances (i) that no liens or notices affecting the Real Estate Security or any part thereof under RCRA, CERCLA, or any similar applicable federal and state laws have been placed of record in any place of public record and (ii) that the records of the state environmental agency have been examined, and that no expenditures for clean-up of hazardous materials at the Real Estate Security have been incurred by any government agency or authority.

## 12.  COMPLETION

Prior to Closing, all construction of buildings and other improvements shall be completed to the satisfaction of John Hancock.

## 13.  THIRD PARTY INSPECTIONS

Borrower is obligated to deliver to John Hancock within thirty (30) days of the date of Rate Lock the reports and materials described below in form and substance satisfactory to John Hancock from third party professionals satisfactory to John Hancock:

(a)  a structural report prepared by an engineer acceptable to John Hancock who will (i) conduct an engineering study of the Real Estate Security satisfactory to John Hancock including, without limitation, an inspection of the structural, mechanical, electrical, plumbing and roof systems and, if required, a termite inspection, and (ii) make an Americans with Disabilities Act review; and where applicable, a seismic study satisfactory to John Hancock, prepared by an engineer acceptable to John Hancock (collectively, "Property Condition Assessment");

(b)  an environmental assessment or assessments (collectively, "Environmental Assessment") prepared by an environmental consultant acceptable to John Hancock who will perform a Phase I environmental assessment of the Real Estate Security as further described in Condition 11; and a Phase II environmental assessment, if recommended in the Phase I report and John Hancock determines that such additional assessment is advisable; and

(c)  an appraisal (the "Appraisal") by a state licensed appraiser acceptable to John Hancock who will provide an appraisal acceptable to John Hancock as more fully described in Condition 14.

Reports from other third party contractors may be required to evaluate any issues raised in the underwriting process.

15

Application No. 6518467

Applicant hereby designates, subject to approval by John Hancock, the following third party professionals:

Engineer:    **Con-Tech Services Inc., 388 Reed Road, Bldg.#1, 2nd Floor, Broomall, PA 19008**

Environmental
Consultant:    **RT Environmental**

Appraiser:    **Cushman & Wakefield, Att; Jerry McNamara, Bell Atlantic Tower, 1717 Arch Street, 30th Floor, Philadelphia, PA 19103**

John Hancock is not responsible for the performance of said third party professionals.    Applicant further acknowledges and agrees that said professionals will provide their services directly to Applicant.

Acceptance of this Application by John Hancock shall not be deemed to be approval by John Hancock of the third party professionals. John Hancock hereby reserves the right to approve the third party professionals.

The costs of and in connection with reports from all third party professionals required pursuant to Condition 13 are defined as "Third Party Report Fees".

In order to facilitate the Closing process, Applicant hereby authorizes John Hancock to contact the third party professionals designated above, and to instruct them on behalf of Applicant to commence work as soon as possible after Rate Lock. It is understood that the third party professionals will be hired on behalf of Applicant, that the Applicant will be responsible for payment of all fees and expenses of the third party professionals whether or not the Loan closes, and for making sure that the third party professionals and said reports satisfy all the conditions of this Application

14. <u>APPRAISAL</u>

John Hancock is to be provided with an appraisal which is signed by a qualified state licensed appraiser acceptable to John Hancock with no interest, direct or indirect, in the Security or in any loan made on the Security, and whose compensation is not affected by the approval or disapproval of the Loan. The appraisal shall be addressed to John Hancock and its successors and assigns. The appraisal must support a loan-to-value ratio of not more than 75.00%, calculated as determined by John Hancock in its sole discretion.

15. <u>LEASE REQUIREMENTS</u>

(a) If the Security is occupied by any tenants under Space Leases, excluding Space Leases in multifamily properties, mobile home parks, congregate care properties or self-storage facilities, then all Space Leases affecting the Security which are presently in full force and effect with tenants in actual occupancy thereunder are listed on the rent roll attached hereto as Exhibit B and made a part thereof, and fully executed copies of the Space Leases so listed have already been delivered or are forwarded to John Hancock with this Application. The rent roll shall include among other things tenant names, lease commencement and expiration dates, square footage, annual rent, annual operating expense and real estate tax contributions, a statement as to whether or not there are any purchase option and/or co-tenancy requirements, any and all other fees paid by tenants, and security deposits currently held.

(i)    All additional Space Leases which are entered into prior to Closing, shall be furnished to John Hancock immediately upon execution thereof;

(ii)    All Space Leases and Other Leases shall be satisfactory in form and substance to John Hancock;

(iii)    Prior to Closing, John Hancock shall be furnished with a Tenant's Estoppel Certificate in the form attached hereto and made a part hereof marked Exhibit E, executed by each tenant under each Space

16

JH 00973

Application No. 6518467

Lease and each other Lease, excluding Space Leases in multifamily properties, mobile home parks, congregate care properties or self-storage facilities;

(b) If the Security consists of a multifamily property, a mobile home park, a congregate care property or a self-storage facility, then all Space Leases affecting the Security which are presently in full force and effect with tenants in actual occupancy thereunder are listed on a rent roll attached hereto as Exhibit B and made a part hereof. The rent roll shall include among other things each building designation, unit number, type of unit, tenant names, lease commencement and expiration dates, monthly rent collected, asking market rent, any and all other fees paid by tenants including but not limited to utility reimbursements, and security deposits currently held.

16. RENTAL AND DEBT SERVICE COVERAGE REQUIREMENTS.

(a) On the Closing Date rents at the rate of not less than **$4,221,126.00** per annum in the aggregate shall be currently collectible from actual occupants of the Security under Space Leases that are in form, for periods and at rentals satisfactory to John Hancock, under which Space Leases there shall be no concessions, free rent or rebates.

(b) On the Closing Date, there shall be a minimum debt service coverage ratio of **1.25:1**, calculated by John Hancock in its sole discretion, including such allowances and adjustments (e.g., reserves) to both revenues and expenses as John Hancock determines are appropriate.

17. SUBORDINATION OF LEASES AND MANAGEMENT AGREEMENTS

John Hancock may, at its sole option, require (a) that any or all Space Leases and Other Leases and management agreements and other agreements affecting the Real Estate Security or Personal Property Security be made absolutely subject and subordinate to the lien of the Mortgage, (b) that any or all such Space Leases and Other Leases and agreements be made superior and prior to the Mortgage, or (c) that, except for Loans on multifamily properties, mobile home parks, congregate care properties or self-storage facilities, prior to Closing, John Hancock shall be furnished with a Subordination Non-Disturbance and Attornment Agreement in form and substance satisfactory to John Hancock, in its sole discretion, executed by each tenant required by John Hancock.

18. ESTABLISHMENT ON CLOSING DATE OF RESERVE FUNDS

(a) TAXES AND OTHER CHARGES: On the Closing Date Borrower will establish with John Hancock, a reserve fund in an amount satisfactory to John Hancock from which to pay taxes, assessments, liens, charges, hazard insurance premiums and ground rents, if any.

(b) REPLACEMENT RESERVE: Borrower will be required to make monthly deposits pursuant to an approved capital expenditure budget equal to one twelfth (1/12) of the amount estimated by John Hancock to be necessary for capital repairs or replacements to the Real Estate Security during each calendar year. John Hancock may make disbursements from the reserve account on a quarterly basis in increments to be determined by John Hancock.

(c) TENANT IMPROVEMENT AND LEASING COMMISSION RESERVE: Borrower may be required to make monthly deposits for tenant improvements and leasing commissions in amounts determined by John Hancock.

(d) IMPROVEMENTS/REPAIR AND REMEDIATION RESERVE: In the event John Hancock's Property Condition Assessment, Environmental Assessment or any other report detects any deferred maintenance or other repair items, or the possibility that any Hazardous Materials described in Condition 11 are located in, on or under the Real Estate Security, and if John Hancock in its sole discretion approves the Loan for Closing, then a reserve with John Hancock equal to one hundred twenty-five percent (125%) of John Hancock's estimated cost to repair or remediate such items (as determined by a qualified engineer or environmental consultant, as the case may be, retained by John Hancock on behalf of Applicant, at Applicant's expense) will be established by Borrower at the Closing of the Loan and will be maintained until completion of the repairs or remediation, as

17

JH 00974

Application No. 6518467

determined by John Hancock. John Hancock may make disbursements from the reserve account on a quarterly basis in increments to be determined by John Hancock.

19. INSURANCE

Within twenty-one (21) days of the date of Rate Lock, Borrower shall furnish to John Hancock evidence of such hazard and other insurance as John Hancock may require, satisfactory in form and substance to John Hancock, which insurance shall comply with the provisions of the Loan Documents pertaining to such insurance, and be issued by companies satisfactory to John Hancock and licensed to do business in the state where the Real Estate Security is located.

The policies for the insurance required above shall be delivered to John Hancock at least seven (7) days prior to the Closing of the Loan. All such policies shall have deductibles acceptable to John Hancock and shall satisfy John Hancock's criteria for insurance and provide full extended coverage, naming John Hancock and its successors and assigns as first mortgagee and otherwise covering John Hancock's interest in the Real Estate Security in a manner satisfactory to John Hancock.

20. FINANCIAL STATEMENTS

Within twenty-one (21) days of the date of Rate Lock, Applicant will cause to be provided to John Hancock financial statements from Borrower, each Guarantor, each Indemnitor and each of their respective principals in form and content satisfactory to John Hancock, evidencing a financial condition of such parties that is satisfactory to John Hancock in its sole discretion. In addition, Applicant shall provide to John Hancock whatever subsequent financial statements may be required by John Hancock.

21. CLOSING AND OTHER COSTS

Unless specifically stated to the contrary herein, whether or not the Loan closes, Applicant and Borrower shall be jointly and severally liable to pay on the earlier of the Closing, date or termination of this Application all costs pertaining to the Loan and the Closing, including, without limitation, all Third Party Report Fees, all charges for title examination and title insurance and escrow, all survey costs, all recording and filing fees, all mortgage or similar taxes, and all attorneys' fees and costs of John Hancock (collectively "Costs").

22. BORROWER'S COUNSEL

The name, address and telephone number of counsel for the Borrower to be contacted by John Hancock's counsel are as follows:

Name:          Mitchell E. Russell
Address:       510 Township Line road, Suite 150, Blue Bell, Pa 19422
Telephone No.: 215-653-0110
Fax No.:       215-653-0383

23. OPINION OF COUNSEL

Applicant and/or Borrower shall provide John Hancock on or prior to the Closing Date with an opinion satisfactory in form and substance to John Hancock and its counsel dated as of the Closing Date from an attorney approved by John Hancock and its counsel and, in addition, at John Hancock's option, from its counsel, that, among other things:

(a) the Borrower, if an entity, the Guarantors and Indemnitors, if entities, and all constituent entities thereof, are duly formed, validly existing and in good standing,

(b) the Borrower and any entity executing Loan Documents on behalf of Borrower or in addition to Borrower (e.g. owners of subordinated fees, Guarantors and Indemnitors) and all other constituent entities, if any, are duly authorized to execute, deliver and perform the obligations under the Loan Documents,

18

JH 00975

Ed. 1/28/2004

Application No. 6518467

(c) the Loan Documents are legal, valid, binding and enforceable in accordance with their terms,

(d) the Loan Documents do not violate any law, regulation or ordinance, and

(e) the Loan Documents do not conflict with the Borrower's or any Guarantor's or Indemnitor's by-laws or any other documents creating or giving the Borrower or any Guarantor or Indemnitor authority, and are not in violation of or in conflict with any other agreement of Borrower or any Guarantor or Indemnitor.

If the Loan is in the principal amount of $15 million or more or if the box is checked, the opinions set forth in Conditions 9(c)(ix) and (x) shall be delivered.

Borrower will provide John Hancock and its counsel with the proposed form of said opinion no later than fourteen (14) days from the date of acceptance of this Application by John Hancock.

## 24. COOPERATION AND DISCLOSURE

Applicant, Borrower, each Guarantor and each Indemnitor acknowledge: (a) that John Hancock has advised them that it may sell, assign, pledge, securitize, participate or otherwise transfer the Loan or any interest therein, in whole or in part, (such transaction being called a "Transaction"), (b) that John Hancock may use and disclose in connection with such Transaction any information it receives in connection with the Loan and that such information will be reviewed and relied upon by John Hancock, its advisers, attorneys, underwriters, placement agents, rating agencies, investors and potential investors in connection with such Transaction, and (c) that they agree to cooperate in the Transaction and to provide required information at their own cost and expense.

## 25. REPRESENTATIONS, WARRANTIES AND COVENANTS

Applicant, Borrower and, as applicable, each Guarantor, and each Indemnitor, represent and warrant as follows in connection with this Application: (a) all material information submitted or to be submitted in connection with this Application and the Loan is or will be, respectively, true, correct and complete, including, but not limited to, the information on Exhibits B and G and the rent roll attached to this Application; (b) the financial and operating statements and other accounting information submitted in connection with the Application are true, correct, complete, and fairly present the financial condition of the Applicant, Borrower, Guarantors and Indemnitors and their respective Principals and have been prepared consistent with proper accounting standards; (c) there is no litigation, action, claim, or other proceeding, pending or threatened which might, in any way, materially and/or adversely affect the Applicant, Borrower, any Guarantor, any Indemnitor or the Principals of any of them, or the Security, John Hancock's proposed first lien thereon, or the financial condition of the Security or any of the aforementioned persons; (d) that their respective Principals are truly, accurately, and completely described on Exhibit F; (e) neither the Applicant, the Borrower, any Guarantor and Indemnitor, nor their respective Principals has received notice of, or is otherwise aware of, any condemnation or other action against the Security; (f) Applicant and/or Borrower and/or the Security possess adequate assets, leases, licenses, franchises, rights, governmental and other permits, certificates, consents and approvals to conduct and/or operate the business of the Security and none of the foregoing contains any term or condition that is materially burdensome or different from those possessed or held by other parties conducting or operating a similar business; and (g) each has fully disclosed to John Hancock all facts material to the Security and the operation and tenants thereof, and all facts material to the Applicant, the Borrower, each Guarantor and each Indemnitor and their respective Principals and the background, creditworthiness, financial condition and the business operations of each.

Applicant, Borrower and, as applicable, each Guarantor and each Indemnitor hereby (a) covenants that the foregoing representations and warranties are true, accurate and complete in all respects and will continue to be so from the date hereof through the Closing Date with the same effect as if made on the Closing Date and (b) agrees that the foregoing is a condition to Closing the Loan.

It is understood that other representations, warranties and covenants customary for loans of this nature, will be required by and set forth in the Loan Documents.

19

         JH 00976

Application No. 6518467

## 26. COMPLIANCE WITH TERMS AND CONDITIONS; SUBMISSION OF DOCUMENTS

Applicant and Borrower agree that prior to Closing they will satisfy and otherwise comply with all Terms and Conditions hereof at the earliest possible date, and in any event within any time limits specifically stipulated in the Terms and Conditions hereof, and so as to permit the Closing of the Loan to occur on or prior to the Closing Date, and, pursuant to the foregoing, Applicant and Borrower further agree that they will submit to John Hancock or to John Hancock's counsel, as the case may be, all instruments, documents, evidence, papers, information and other materials pertinent to the Loan, as soon as possible and in any event no later than (a) the date or dates, if any, specifically stipulated in the Terms and Conditions hereof, and (b) where such dates are not so specifically stipulated, twenty-one (21) days prior to the Closing Date.

## 27. ACCEPTANCE BY JOHN HANCOCK OF THIS APPLICATION

(a) Applicant understands and agrees that, notwithstanding any Rate Lock, John Hancock is not obligated to make the Loan contemplated hereby unless and until the Loan has been authorized by John Hancock's loan committee and John Hancock has accepted this Application in the place provided below, and then said obligation is upon and subject to the provisions contained in the Terms and Conditions hereof.

(b) In the event that John Hancock accepts this Application in the place provided below and forwards an executed copy thereof to the Applicant, Applicant will borrow the Principal Amount; and provided that, after such acceptance by John Hancock, Applicant pays John Hancock the Commitment Fee within the time and as otherwise stipulated in condition 30(c) hereof, then John Hancock agrees to make the Loan upon and subject to the provisions contained in the Terms and Conditions hereof, and this Application will thereupon become a Commitment between Applicant and John Hancock.

(c) The acceptance of this Application by John Hancock shall not constitute approval by John Hancock of any leases or other materials heretofore submitted to John Hancock. Such leases and other materials will be the subject of separate communications from John Hancock.

## 28. ASSIGNABILITY

This instrument and the rights of Applicant and Borrower hereunder shall not be assignable by operation of law or otherwise, and any purported assignment thereof shall be null and void. John Hancock may assign its rights and obligations hereunder to any affiliate.

## 29. TERMINATION OF THIS INSTRUMENT

(a) In the event that a Rate Lock has occurred, or John Hancock accepts this Application, (whether or not Applicant has timely paid the Commitment Fee) John Hancock may terminate its obligation to Close and fund the Loan (and the Rate Lock shall automatically expire) at John Hancock's option and in such manner as John Hancock may determine in the event that:

    (i) Applicant or Borrower shall fail to fully and timely satisfy or otherwise comply with any of the Terms and Conditions contained in this instrument,

    (ii) there is filed by or against any Applicant, any Borrower any Guarantor or any Indemnitor or Principal of any of them, or any constituent entity of any of them or against any tenant under any Space Lease or Other Lease referred to in Condition 15(a) hereof a petition in bankruptcy or insolvency or for reorganization or for the appointment of a receiver or trustee or liquidator, or if any Applicant, Borrower, Guarantor or Indemnitor, or Principal of any of them or any constituent entity of any of them or any tenant makes an assignment for the benefit of creditors or files a petition for arrangement which is not withdrawn or dismissed, canceled and/or terminated, or which may exist, at the time herein or hereafter established for Closing of the Loan,

20

JH 00977

Application No. 6518467

(iii) there shall occur prior to the Closing Date a material and adverse change in the financial condition of any Applicant, Borrower, or any Guarantor or Indemnitor, or Principal of any of them, or any constituent entity of any of them, or of any tenant referred to in Condition 15(a) hereof,

(iv) the Security shall suffer any material damage or destruction and the same is not restored to the satisfaction of John Hancock prior to the Closing Date,

(v) any material information furnished to John Hancock by or on behalf of the Applicant, the Borrower, any Guarantor, any Indemnitor, any Principal of any of them or any constituent entity of any of them is or becomes untrue, incomplete, inaccurate or misleading, or

(vi) any representation, warranty or covenant contained in Condition 25 or elsewhere in this Application shall cease to be materially true, accurate and complete.

provided, however, that in the event of such termination of John Hancock's obligation to Close and fund the Loan by John Hancock (and the expiration of the Rate Lock), Applicant and Borrower shall continue to remain liable for all Costs.

(b) Delay in the exercise of John Hancock's right to terminate said obligations as aforesaid shall not be construed as a waiver of such right by John Hancock to terminate with respect to any of the events specified in subparagraph (a) above, and John Hancock's failure to act as to any such event shall not be construed as a waiver by John Hancock of its rights as to any subsequent event of a similar or dissimilar nature.

30. APPLICATION, PROCESSING AND COMMITMENT FEES

Applicant and Borrower covenant that they shall pay the following fees in connection with this Application and the Closing of the Loan:

(a) Processing Fee: A processing fee, payable to John Hancock by cashier's check, in the amount of $5,000.00 is enclosed herewith/has been paid prior hereto (the "Processing Fee"). This Processing Fee is deemed fully earned upon receipt, is non-refundable and will be retained by John Hancock whether John Hancock accepts this Application and whether or not the Loan Closes.

(b) Application Fee: An application fee in the amount of $640,000.00 (the "Application Fee"), payable to John Hancock by cashier's check is enclosed herewith. The Application Fee will be applied as follows:

(i) In the event the Loan Closes, John Hancock will return to the Applicant the Application Fee, less all Costs.

(ii) Unless the Applicant withdraws or revokes this Application, in the event John Hancock does not accept this Loan Application within sixty (60) days from the date of this Application, and John Hancock and Applicant are unable to agree on a modified Application within that time, John Hancock will return the entire Application Fee to the Applicant.

(iii) In the event that, before Rate Lock, Applicant withdraws or revokes this Application, John Hancock will return the Application Fee, less all Costs.

(iv) In the event that, after Rate Lock, but prior to John Hancock's acceptance of this Application, Applicant withdraws or revokes this Application, John Hancock will retain the Application Fee and Applicant shall be liable for all Costs.

(v) In the event John Hancock accepts this Loan Application and the Loan does not Close, John Hancock will retain the entire Application Fee in addition to its other rights and remedies under the Application, and Applicant shall remain liable for all Costs.

21

JH 00978

Application No. 6518467

(c) Commitment Fee: If John Hancock shall accept this Application, then in consideration of such acceptance by John Hancock and in recognition of the significant commercial value thereof, Applicant shall pay to John Hancock within five (5) days of such acceptance by John Hancock $320,000.00, the Commitment Fee. The Commitment Fee will be applied as follows:

(i)    In the event the Loan Closes, $320,000.00 of the Commitment Fee will be returned to the Applicant.

(ii)    In the event the Loan does not Close, the Commitment Fee will be retained by John Hancock in addition to its other rights and remedies under the Application, and Applicant shall remain liable for all Costs.

Payment of the entire amount of the Commitment Fee within the time period herein provided is a condition to Applicant's and Borrower's rights under this instrument.

(d) If John Hancock accepts this Application, and in the event that thereafter:

(i)    Applicant or Borrower shall fail to satisfy or otherwise comply with any of the Terms and Conditions hereof in timely fashion, or

(ii)    John Hancock shall terminate this instrument pursuant to Condition 29 hereof, or

(iii)    in any event, if the Loan shall not have been Closed by the Closing Date or as the same may be extended by John Hancock as provided below, on which date John Hancock's obligation to Close and fund shall expire,

then all obligations of John Hancock hereunder shall thereupon immediately terminate and be of no further force or effect, and John Hancock shall be entitled to recover from Applicant and/or Borrower all damages, losses, costs and expenses suffered or incurred by John Hancock as a result of any of the events described in part (i), (ii) or (iii) of this subparagraph (d), including, without limitation, all such damages, losses, costs or expenses arising from the fact that, in reliance on the agreements of Applicant and Borrower contained herein, John Hancock allocated and set aside assets for the purpose of funding the Loan and made commitments to third parties based thereon, in addition to retention of the Processing Fee, the Application Fee and the Commitment Fee, provided, however, that Applicant and/or Borrower shall also continue to remain liable for all Costs.

31. LIMITATION OF OUT-OF-POCKET COSTS FOR APPLICANT

Notwithstanding any other conditions of this Application and provided that the Applicant shall use its best efforts to satisfy all of the conditions of this Application, if the Applicant is not at fault in any way and John Hancock in its sole discretion, elects not to Close the Loan because the Security violates any zoning, building or environmental law, ordinance, code, rule, or regulation or the Property Condition Assessment, Environmental Assessment, Appraisal or title evidence are not satisfactory to John Hancock or its Special Counsel, and any of the foregoing problems cannot be cured to the satisfaction of John Hancock and its Special Counsel by monetary payment of a sum certain by the Applicant or Borrower, then John Hancock will return to Applicant any Application Fee or Commitment Fee paid hereunder, less Costs.

32. EXTENSIONS OF TIME AND WAIVERS OF CONDITIONS

John Hancock reserves the right in its sole and absolute discretion to:

(a)    extend the Closing Date specified in Condition 4(b) hereof, as amended by the Rate Lock Confirmation, if Borrower is not ready to close and, if Borrower has not complied with any of the Terms and Conditions hereof by the date herein provided, to extend any such date for the satisfaction of or compliance with such Terms and Conditions hereof, and

(b)    waive any of the Terms and Conditions hereof.

22

JH 00979

Ed. 1/28/2004

Application No. 6518467

Any such extension or waiver, and any amendment or modification of this instrument, shall be in writing and be signed by John Hancock. In no event shall there be any obligation on the part of John Hancock to grant any extensions or waivers, or if any should in John Hancock's sole discretion be granted, there shall be no obligation to grant additional ones.

33. NOTICES

Any notices given hereunder by Applicant or Borrower to John Hancock shall be addressed as follows:

John Hancock Life Insurance Company
John Hancock Tower, T-56
200 Clarendon Street
Boston, Massachusetts 02116
Attn: Real Estate Investment Group

34. PUBLICITY

In the event the Loan contemplated herein is made, John Hancock shall have the right to issue press releases, advertisements and other promotional materials describing John Hancock's participation in the origination of the Loan or the Loan's inclusion in any securitization.

35. GOVERNING LAWS

This Application shall be deemed to be executed and performable in and governed by the substantive laws of Massachusetts.

36. LIMITATION ON LIABILITY

The Loan Documents shall contain language satisfactory to John Hancock which will serve to negate the personal liability of the Borrower, with exceptions for loss, costs or damage arising from the following (collectively "Non-recourse Carveout Obligations"):

(a) Fraud, misrepresentation and waste.

(b) Any rents, issues or profits collected more than one (1) month in advance of their due dates.

(c) Any misapplication of rents, issues or profits, security deposits, and any other payments from tenants or occupants (including, without limitation, lease termination fees) insurance proceeds, condemnation awards, or other sums of a similar nature.

(d) Liability under environmental covenants, conditions and indemnity contained in the Mortgage and separate environmental indemnity agreement.

(e) Personalty or fixtures removed or allowed to be removed by or on behalf of Borrower and not replaced by items of equal or greater value or functionality than the personalty or fixtures so removed.

(f) Failure to pay taxes or assessments prior to delinquency, or to pay charges for labor, materials or other charges which can create liens on any portion of the Security and any sums expended by John Hancock in the performance of or compliance with the obligations of Borrower under the Loan Documents, including, without limitation, sums expended to pay taxes or assessments or hazard insurance premiums or bills for utilities or other services or products for the benefit of the Security.

(g) The unauthorized sale, conveyance or transfer of title to the Security or encumbrance of the Security.

(h) The failure of Borrower to maintain its status as a single purpose, bankruptcy-remote entity pursuant to its organizational documents and the Loan Documents.

23

JH 00980

Ed. 1/28/2004

Application No. 6518467

(i) Attorney's fees, court costs and other expenses incurred by John Hancock in connection with enforcement of Borrower's or Guarantors' personal liability as set forth herein.

37. CORRESPONDENT

Applicant and Borrower agree that **Carey, Kramer, Pettit, Panichelli & Associates, Inc.** is acting solely as an independent contractor in connection with this Application and the Loan and not as an agent for John Hancock, and has no authority to bind or make any agreements, warranties or representations on behalf of John Hancock, and any agreement by said independent contractor in connection with this Application or the Loan or otherwise shall not be binding upon John Hancock.

38. DISCLOSURE NOTICE

The Applicant is entitled to a statement of the action taken on this Application. If such action is adverse and the Applicant so requests, the Applicant is entitled to receive the reasons for such action. The statement of adverse action shall be provided by John Hancock. The Applicant may, within sixty (60) days of the Applicant's receipt of the statement of adverse action, request that John Hancock provide a statement of specific reasons for that adverse action by contacting John Hancock at John Hancock Tower, T-56, 200 Clarendon Street, Boston, Massachusetts 02116, Attention: **Timothy J. Malik**, telephone (617) 572-3891, and in such event, John Hancock will provide the Applicant the specific reasons for the adverse action within thirty (30) days. Should John Hancock choose to provide the Applicant with oral notice of the adverse action taken on the Application and the reasons for that action, the Applicant may request written confirmation of those reasons, which will be provided to the Applicant within thirty (30) days of John Hancock's receipt of a written request for confirmation from Applicant.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

39. ACCESS TO REPORTS AND TO SECURITY

(a) John Hancock is to be provided a complete credit history for the Applicant, Borrower, the Guarantors, the Indemnitors and the Principals of each (including but not limited to physical record searches for bankruptcy, pending suits, judgments, UCCs and tax liens) in all jurisdictions deemed necessary by John Hancock. John Hancock is hereby authorized (i) to obtain credit reports on the Applicant, Borrower, each Guarantor and Indemnitor, and their respective Principals, as well as verification of statements made in this Application and any attachments hereto, and (ii) to obtain an environmental records search and a seismic screening with respect to the Security.

(b) Applicant will give John Hancock and its consultants access to the Security and to Applicant's, the Borrower's, the Guarantors', the Indemnitors' (and those of the Principals of each) books and records to conduct the investigations required by Condition 13, this Condition 39 and any other required investigations during normal business hours.

Ed. 1/28/2004

JH 00981

Application No. 6518467

## 40. JOHN HANCOCK'S SPECIAL COUNSEL

The name, address and telephone number of John Hancock's Special Counsel are as follows:

| | |
|---|---|
| Name: | Robert Schwartz, Esquire |
| Firm: | White & Williams |
| Address: | One Liberty Place, Suite 1800, 1650 Market Street |
| City and State: | Philadelphia, PA 19103-7301 |
| Telephone No. | 215-864-7000 and FAX 215-864-7123 |

## 41. APPLICANT REPRESENTATION

Applicant hereby warrants and represents that none of the Applicant, the Borrower, any Guarantor or any Indemnitor listed herein, nor any of the Principals (determined as described below) of any of them nor any entity in which any of the foregoing holds or has held an ownership interest has been in default under any loan or been given relief by any lender under the terms of any loan or been subject to a foreclosure or deed-in-lieu of foreclosure or been the subject of any bankruptcy, reorganization or insolvency proceeding, unless this box ☐ is checked.

Principal is determined as follows:

(a)  Any individual or entity possessing management or operational control of Applicant, Borrower, any Guarantor or any Indemnitor;

(b)  Any person or entity possessing at least 25% of the ownership interests in the Applicant, Borrower, any Guarantor or any Indemnitor;

(c)  In addition, for a general or limited partnership, the Principal(s) will be all general partners and the majority shareholder(s) of any corporate general partner;

(d)  In addition, for a corporation, the Principal(s), will be the majority shareholder(s);

(e)  In addition, for a limited liability company, the Principal(s) will be all the member(s) thereof and the majority shareholder(s) of any corporate member and the general partners of any partnership member.

## 42. AUTHORIZATION FOR DIRECT DEBITS

Borrower hereby agrees to authorize John Hancock to make direct debit entries as described on Exhibit H attached hereto and to execute said written authorization by completing and executing an agreement in the form of said Exhibit H.

## 43. COMPLIANCE WITH REGULATION U.

No part of the proceeds of the Loan will be used for the purpose (whether immediate, incidental or ultimate) of buying or carrying any margin stock within the meaning of Regulation U (12 CFR part 221) of the Board of Governors of the Federal Reserve System of the United States or for the purpose of reducing or retiring any indebtedness which was originally incurred for any such purpose, or for any other purpose which might constitute this Loan a "purpose credit" within the meaning of such Regulation U.

## 44. GUARANTORS OF NON-RECOURSE CARVEOUT OBLIGATIONS

Borrower and James R. Koller, Frank C. Palopoli & Joseph P. Kelly will guaranty the Non-Recourse Carveout Obligations.

45.  Time is of the essence of this Application.

25

Ed. 1/28/2004

JH 00982

Application No. 6518467

Applicant (I) agrees to be fully bound by the Terms and Conditions hereof and (2) covenants that all facts and circumstances pertaining to this Application, the Loan and the Security are and shall continue to be as represented to John Hancock.

The undersigned hereby represents that the Applicant has, and all persons signing this Application on behalf of the Applicant have, the legal capacity and authority to enter into this transaction and to execute this Application.

MONTGOMERY SQUARE PARTNERSHIP
(Applicant) By: VESTMONT LIMITED PARTNERSHIP
By: VESTERRA CORPORATION

By: _____

Its: PRESIDENT

26

JH 00983

Ed. 1/28/2004

Application No. 6518467

## INDEMNITORS' ACKNOWLEDGMENT

By executing this Application in the space(s) provided below, each of the Indemnitors hereby agrees to execute the indemnification agreement required by Condition 11(d)(ii)(cc) and joins in the representations, warranties and covenants pertaining to the Indemnitors in Condition 25 of this Application.

INDEMNITOR(S): James R. Koller

By: _____

Date: 7 - 30 - 04

INDEMNITOR(S): Frank C. Palopoli

By: _____

Date:

INDEMNITOR(S): Joseph P. Kelly

By: _____

Date: 7 - 30 - 04

28

JH 00984

Ed. 1/28/2004

Application No. 6518467

## ACCEPTANCE BY JOHN HANCOCK

John Hancock hereby accepts the foregoing Application and agrees with the Terms and Conditions therein contained, as modified by the Rate Lock Confirmation, a copy of which is attached hereto.

JOHN HANCOCK LIFE INSURANCE COMPANY.

By: _____

Date:  8/17/04

Timothy J. Malik
**Senior Investment Officer**

## GUARANTORS' ACKNOWLEDGMENT

By executing this Application in the space(s) provided below, each of the Guarantors hereby agrees, jointly and severally, to guaranty the Non-recourse Carveout Obligations of the Borrower under the Loan Documents and joins in the representations, warranties and covenants with respect to the Guarantors contained in Condition 25 of this Application.

GUARANTOR(S): James R. Koller

By: _____

Date:  7-30-04

GUARANTOR(S): Frank C. Palopoli

By: _____

Date: 

GUARANTOR(S): Joseph P. Kelly

By: _____

Date:  7-30-04

27

Ed. 1/28/2004

JH 00985

Application No. 6518467

<u>INDEMNITORS' ACKNOWLEDGMENT</u>

By executing this Application in the space(s) provided below, each of the Indemnitors hereby agrees to execute the indemnification agreement required by Condition 11(d)(ii)(cc) and joins in the representations, warranties and covenants pertaining to the Indemnitors in Condition 25 of this Application.

INDEMNITOR(S): James R. Koller

By: _____
Date: 7-30-04

INDEMNITOR(S): Frank C. Palopoli

By: _____
Date:

INDEMNITOR(S): Joseph P. Kelly

By: _____
Date: 7-30-04

Ed. 1/28/2004

JH 00986

Tab 1 (part II)

Application No.6518467

# MONTGOMERY SQUARE PARTNERSHIP
## (AVENEL AT MONTGOMERY SQUARE)
### SUPPLEMENT TO APPLICATION
### Page 1 of 18

*CONDITION 46- INSURANCE PREMIUM RESERVE - SUSPENSION*

Condition Nos. 6(c) and No. 18(a) are amended as follows:

The Loan Documents shall contain a provision suspending the requirement that Borrower fund and maintain a reserve fund for hazard insurance premiums as long as all of the following conditions are satisfied:

(1)   No default has occurred and is continuing under the Loan Documents beyond any applicable notice or cure period;

(2)   **Montgomery Square Partnership** is and remains the owner of the Real Estate Security;

(3)   Borrower complies with all obligations in the Loan Documents regarding insurance, including without limitation providing John Hancock with timely evidence (1) that the required insurance is in place for the Real Estate Security and is never delinquent or suspended, and (2) that all insurance premiums are paid in full.

Unless expressly provided elsewhere in this Supplement, this provision does not affect the obligation of Borrower to fund and maintain a reserve fund for any other item specified in Conditions 6 or 18 of the Application.

PLEASE NOTE: ALL RISK INSURANCE WITHOUT AN EXCLUSION FOR TERRORISM INSURANCE IS REQUIRED AT ALL TIMES.

*CONDITION 47- TENANT IMPROVEMENT AND LEASING COMMISSIONS - SUSPENSION*

Condition 18(c) of the Application is hereby amended and supplemented as follows:

The Loan Documents shall contain a provision suspending the requirement that Borrower fund and maintain a reserve fund for tenant improvements and leasing commissions for the Real Estate Security as long as all of the following conditions are satisfied:

(1)   No default has occurred and is continuing under the Loan Documents beyond any applicable notice or cure period;

(2)   **Montgomery Square Partnership** is and remains the owner of the Real Estate Security;

(3)   Borrower complies with all obligations in the Loan Documents regarding leases at the Real Estate Security.

Application No.6518467

# MONTGOMERY SQUARE PARTNERSHIP
## (AVENEL AT MONTGOMERY SQUARE)
### SUPPLEMENT TO APPLICATION
#### Page 2 of 18

Unless expressly provided elsewhere in this Supplement, this provision does not affect the obligation of Borrower to fund and maintain a reserve fund for any other item specified in Condition 18 of the Application.

## CONDITION 48- REPLACEMENT RESERVE - SUSPENSION

Condition 18(b) of the Application is hereby amended and supplemented as follows:

The Loan Documents shall contain a provision suspending the requirement that Borrower fund and maintain a reserve fund for capital repairs and replacements to the Real Estate Security as long as all of the following conditions are satisfied:

(1)     No default has occurred and is continuing under the Loan Documents beyond any applicable notice or cure period;

(2)     **Montgomery Square Partnership** is and remains the owner of the Real Estate Security;

(3)     Borrower complies with all obligations in the Loan Documents regarding maintaining the Security, including without limitation maintaining the Security in good order and repair;

Unless expressly provided elsewhere in this Supplement, this provision does not affect the obligation of Borrower to fund and maintain a reserve fund for any other item specified in Condition 18 of the Application.

## CONDITION 49 - RENTAL ACHIEVEMENT

The Closing shall be no later than 365 days (12 months) from the Rate Lock Date and the outside date for Closing shall be set forth in the Rate Lock Confirmation.

The maximum permitted principal amount of the Loan shall be $32,000,000, which shall be funded in full at Closing subject to the Terms and Conditions of this Application, but a portion of the Loan may be deposited into a rental achievement reserve ("Rental Achievement Reserve") pursuant to the Rental Achievement Reserve Agreement (as defined below) if all of the following terms and conditions are satisfied:

(1) *Borrower Portion.*

If the Funding Conditions (as defined below) are satisfied, a portion of the Loan shall be funded and disbursed to the Borrower. The amount to be disbursed to the Borrower on the Closing Date (the "Borrower Portion") shall be an amount which does not cause the loan-to-value ratio as set forth in Condition 14 to exceed 75% (the "Loan to Value" or "LTV"), and at which amount there is minimum rental income (as described in Condition 16(a)) as modified by this Condition 49 to provide a component of Value (as defined below) and a Debt Service Coverage ("DSCR") of 1.25:1 (as described in Condition 16(b)).

JH 00988

Application No.6518467

# MONTGOMERY SQUARE PARTNERSHIP
## (AVENEL AT MONTGOMERY SQUARE)
### SUPPLEMENT TO APPLICATION
#### Page 3 of 18

The amount of the Borrower Portion shall be determined by multiplying 75% by the "Value". The Value is computed by dividing the net operating income of the Security ("NOI") by a capitalization rate of 7.25%.

The NOI is determined by subtracting (a) the operating expenses of (1) $758,433, (2) stabilized taxes (estimated at $480,000) and (3) a management fee of 3.75% of Effective Gross Income (as defined below) from (b) the annualized monthly income from tenants that on the date of Closing occupy apartments and garages under leases reasonably acceptable to John Hancock ("Effective Gross Income")

(See Exhibit 1 for a sample calculation of the Borrower Portion and the amount of the reserves described below.

The DSCR will be determined by reducing the NOI by $64,000 (Replacement Reserve of $250/unit) and then dividing the remainder by the annual debt service payments due and payable upon the Loan, which debt service payments will be determined in connection with the Rate Lock and the applicable Principal Amount of the Loan and shall be deemed to include an amortization schedule of no greater than thirty (30) years.

The amount of the Borrower Portion calculated pursuant to this Section (1) shall be rounded downward to the nearest $1,000.

The amount the Effective Gross Income and the NOI will be determined by John Hancock prior to Closing based upon a review of the Certified Rent Roll (as defined below) and current operating statements submitted by Borrower to John Hancock.

(2) *Conditions to Funding and Provisions for Funding with Rental Achievement Reserve*

In the event that the Security has not achieved an NOI of $3,097,860 as calculated pursuant to Section (1) above within 10 business days prior to the Closing, then John Hancock shall still fund the Loan as long as:

(a) Borrower satisfies timely the other Terms and Conditions of this Application;

(b) Occupancy at the Security under Space Leases satisfying the terms of this Application is not less than 80% (which shall not include Space Leases the tenant or guarantor of which is subject to a bankruptcy or insolvency action);

(c) Borrower establishes the required Rental Achievement Reserve (as defined below) pursuant to a Rental Achievement Reserve Agreement (as defined below) and otherwise satisfies the obligations of this Condition; and

(d) The amount of the Rental Achievement Reserve is not greater than $5,380,000.

The foregoing conditions are referred to collectively as the "Funding Conditions." If all of the Funding Conditions are not satisfied, John Hancock shall have no obligation to fund any portion of the Loan.

The amount of the Rental Achievement Reserve shall be equal to the difference between the entire principal balance of the Loan as specified in Section 3(a) of this Application and the Borrower Portion (the "Rental Achievement Reserve Amount") and will be required to be held by John Hancock in reserve at Closing pursuant to a reserve agreement in form and substance acceptable to John Hancock ("Rental Achievement Reserve Agreement"). (See Exhibit 1 for sample

JH 00989

# MONTGOMERY SQUARE PARTNERSHIP
## (AVENEL AT MONTGOMERY SQUARE)
## SUPPLEMENT TO APPLICATION
### Page 4 of 18

calculation.). The Rental Achievement Reserve may be funded with a Letter of Credit (as defined below) acceptable to John Hancock.

*3,258432*

(3) *Achieving Required NOI After Closing*

After the Closing, upon the Security's reaching an NOI of $3,097,860, the Rental Achievement Reserve will be released to Borrower within ten (10) business days of receipt by John Hancock all of the requirements necessary to satisfy the Release Conditions (as defined below).

Notwithstanding the foregoing, if on or after six (6) months from the Closing the NOI is less than $3,097,860, the Rental Achievement Reserve Amount will be recomputed using the method set forth in Section (1) above. If the recalculated Rental Achievement Reserve Amount is less than the then existing Rental Achievement Reserve Amount, the excess reserve will be released to the Borrower (assuming the Release Conditions are satisfied), and at John Hancock's option, the remaining Reduced Principal Amount Rental Achievement Reserve (including without limitation, any accrued interest) (a) may be applied to reduce the principal balance of the Loan, without prepayment premium (in which case the amortization schedule shall be revised by John Hancock, and the amount of the monthly payments will be revised); (b) may be applied as is otherwise provided in the Loan Documents; or (c) may continue to be held by John Hancock from time to time until it either elects to apply such amounts to the Loan as provided above or Borrower achieves an NOI of not less than $3,097,860.

If the recalculated Rental Achievement Reserve Amount is equal to or greater than the then existing Rental Achievement Reserve Amount, then (a) Borrower shall pay to John Hancock within ten (10) days of demand, the amount of such deficiency and (b) John Hancock, at its sole option, (a) may apply the entire Rental Achievement Reserve Amount (including without limitation any accrued interest) to reduce the principal balance of the Loan, without prepayment premium, (in which case, the amortization schedule shall be revised by John Hancock, and the amount of the monthly payments will be revised) or as is otherwise provided in the Loan Documents or (b) may continue to hold the Rental Achievement Reserve Amount from time to time until it either elects to apply such amounts to the Loan as provided above or Borrower achieves an NOI of not less than $3,097,860. Failure to pay such deficiency shall be a default under the Loan.

John Hancock shall have the option in its sole and absolute discretion to extend the six (6) month period described in the foregoing paragraphs in accordance with the provisions of Condition 32 of this Application. Borrower shall be responsible for all costs and expenses, including without limitation, all reasonable attorneys fees of John Hancock, pertaining to the amendment of the Loan Documents or otherwise incurred in connection with effecting the provisions contemplated hereby.

(4) *Full Amount of Loan Disbursed.*

The Loan Documents shall provide that, notwithstanding the fact that the amount of the Borrower Portion may not be equivalent to the entire Principal Amount of the Loan, or that John Hancock has required the funding of one or more reserves at Closing, Borrower shall be required to pay interest on the entire Principal Amount of the Loan.

(5) *Expanding Definition of Costs.*

An additional sentence is added to the end of Condition 21 of the Application as follows: "The definition of "Costs" shall be deemed to include all costs pertaining to the application of all or any

Application No.6518467

# MONTGOMERY SQUARE PARTNERSHIP
## (AVENEL AT MONTGOMERY SQUARE)
### SUPPLEMENT TO APPLICATION
#### Page 5 of 18

portion of the Rental Achievement Reserve, and the revision of the amortization schedule and the monthly payment as described in Condition 49 of this Application."

### Definitions

*Release Conditions* shall mean that all of the following are satisfied:

(a)   The Loan is not in default;

(b)   Borrower delivers to John Hancock a Certified Rent Roll dated not more than thirty (30) days prior to submission;

(c)   The result of the recalculation of the Rental Achievement Reserve Amount, when conducted at the time of the release, yields a figure that is less than or equal to the amount then held as the Rental Achievement Reserve Amount;

(d)   The LTV is not then more than 75% and the DSCR is not less than 1.25:1 in each case as calculated by John Hancock as provided above;

(e)   All tenants listed on the Certified Rent Roll submitted to John Hancock for the applicable request occupy apartments and garages under leases reasonably acceptable to John Hancock and occupancy at the Security under Leases satisfying the terms of this Application is not less than 80%; and

(f)   Borrower satisfies such other reasonable requirements as are contained in the Rental Achievement Reserve Agreement.

*Certified Rent Roll* shall mean the rent roll certified by the Borrower and submitted to John Hancock dated within thirty (30) days prior to submission, listing each building(s) designation, tenant names, lease commencement and expiration dates, monthly rent due and monthly rent collected, any rental or other tenant concessions, any and all other fees and reimbursements paid by tenants and security deposits currently held. For purposes of computing the gross annual rent, all tenant concessions shall reduce the gross annual rent of all tenants.

*Letter of Credit* shall mean an irrevocable, unconditional, transferable evergreen letter of credit in the applicable amount in form and substance satisfactory to John Hancock and issued by a bank acceptable to John Hancock. The Letter of Credit shall permit partial draws. The Borrower shall execute an agreement satisfactory to John Hancock in connection with said Letter of Credit, providing, among other things, that in the event that Borrower fails to meet its obligations under said agreement, John Hancock shall have the right to require that the expiration date of the Letter of Credit be extended or, at its option, to draw upon the Letter of Credit and to apply the proceeds thereof to the reduction of the principal amount of the Loan, or otherwise in accordance with the Loan Documents or the Rental Achievement Reserve Agreement. It is further required that the bank issuing the Letter of Credit (or any substituted Letter of Credit) be acceptable to John Hancock in its sole discretion not only at the time of the issuance of said Letter of Credit but shall also continue to be so acceptable to John Hancock during the entire term of said Letter of Credit, including all extension and/or renewal periods. If John Hancock, in its sole discretion, shall determine that an issuing bank is or has become unacceptable, Borrower shall be obligated to provide a substitute Letter of Credit. If Borrower does not provide such substitute letter of credit within fourteen (14) days of written notice of the unacceptability of such bank, such failure shall entitle John Hancock to draw upon the existing Letter of Credit and hold and apply the proceeds in accordance with the Rental Achievement Reserve Agreement. Additionally, if Borrower uses a Letter of Credit for the Rental Achievement Reserve and fails to provide a replacement Letter of Credit at least thirty (30) days prior to its expiration, then John Hancock shall have the right, in its sole discretion, to draw on the Letter of Credit and to apply the proceeds as set forth above and to exercise its other remedies under the Loan Documents. All fees and expenses in connection with the Letter of Credit shall be paid by Borrower.

JH 00991

Application No.6518467

## MONTGOMERY SQUARE PARTNERSHIP
## (AVENEL AT MONTGOMERY SQUARE)
## SUPPLEMENT TO APPLICATION
### Page 6 of 18

### CONDITION 50 – CLOSING DATE AND EXTENSION OF CLOSING DATE

Condition 4(b) of the Application hereby is deleted and the following hereby is substituted in its stead:

The Closing shall occur on or before the date established by the Rate Lock Confirmation executed by Borrower and John Hancock.

John Hancock shall allow the Borrower to extend the Closing Date for up to six (6) periods of up to thirty (30) days each for an aggregate period of one hundred eighty (180) days, provided that no later than ten (10) business days prior to the Closing Date (as the same may have been extended as described herein), John Hancock shall receive written notice that Borrower has elected to extend the Closing Date pursuant to this Condition 50. If Borrower elects to extend the Closing Date, the Interest Rate (or, if applicable, each Interest Rate) applicable to the Principal Amount (as it may have been reduced pursuant to Condition 49 hereof) shall increase by five (5) basis points for each 30-day period or portion of a 30-day period for which the Closing Date shall be extended (each, an "Interest Rate Adjustment"). For example if the Closing Date is extended by one hundred fifty one (151) days, the Interest Rate would increase by thirty (30) basis points; provided, however, that in the event that the Borrower extends the outside date for Closing for the aggregate one hundred eighty (180) day period, the Interest Rate (or, if applicable, each Interest Rate) applicable to the Principal Amount (as it may have been reduced pursuant to Condition 49 hereof) shall not be increased by more than thirty (30) basis points in the aggregate.

Each Interest Rate Adjustment shall be evidenced by an Extension Agreement which John Hancock shall provide and Borrower shall execute. The Extension Agreement shall set forth the period for which the Interest Rate (or if applicable, each Interest Rate) is locked, the Interest Rate (or, if applicable, each Interest Rate) as adjusted by the applicable Interest Rate Adjustment, the monthly loan payment, the revised outside date for Closing, and if applicable, the revised lock out period. Each Extension Agreement shall result in an Interest Rate Adjustment, which shall be cumulative.  Borrower acknowledges that the Interest Rate Adjustments may affect the calculations under Condition 49 which may affect (a) the Borrower Portion; (b) the Rental Achievement Reserve Amount and/or (c) John Hancock's obligation to close the Loan.

### CONDITION 51 – ADDITIONAL APPLICATION FEE (Regarding Condition 30(b))

After the Interest Rate for the Loan is locked, if  the yield for the "on the run" 10-year U.S. Treasury Security ("10-Year Treasury Rate") is for a period of five (5) consecutive business days at least 45 basis points below the 10-Year Treasury Rate that was used to determine the locked Interest Rate for the Loan ("Initial Treasuries Trigger Point"), Borrower is required to deposit with John Hancock an additional 1% of the entire Principal Amount of the Loan within three (3) business days after written notice of such fact from John Hancock.  Such additional amount shall be added to, and be deemed a part of, the Application Fee. Further, Borrower shall deposit with John Hancock an additional 1% of the entire Principal Amount of the Loan within three (10) business days after written notice from John Hancock for any additional 15-basis point drop below the Initial Treasuries Trigger Point which lasts for a period of five (5) consecutive business days. Any such additional amounts shall be added to, and be deemed a part of, the Application Fee. Regardless of how low the 10-Year Treasury Rate declines after Rate Lock, the amount of additional Application Fee which Borrower shall be obligated to add to the existing Application Fee shall be limited to 2% of the Loan amount ($640,000).

In the event that any additional deposit(s) for the Application Fee are made as outlined above, and subsequently, the 10-Year Treasury Rate rises above the threshold(s) for the additional deposit(s) for a period of five (5) consecutive business days, John Hancock will return the applicable portion of such

Application No.6518467

# MONTGOMERY SQUARE PARTNERSHIP
## (AVENEL AT MONTGOMERY SQUARE)
## SUPPLEMENT TO APPLICATION
### Page 7 of 18

additional deposit for the Commitment Fee to the Borrower. In no event shall John Hancock be obligated to return an amount to Borrower which leaves less than $640,000 as the Application Fee being held by John Hancock.

Any additional deposit(s) for the ADDITIONAL APPLICATION FEEmade pursuant to this Condition 51 shall be held, retained and disbursed by John Hancock pursuant to and in accordance with the terms and conditions applicable to the Commitment Fee described in this Application.

## CONDITION 52 - PAYMENT OF THE APPLICATION, COMMITMENT FEE OR ADDITIONAL APPLICATION FEE (LETTER OF CREDIT)

Condition Nos. 30(b) and (c) and Supplemental Condition No. 77 are expanded as follows: All of the Commitment Fee and all of the Application Fee required to be deposited under this Application may consist of one or more unconditional, irrevocable and transferable Letters of Credit, both in form and substance, and drawn on a commercial bank satisfactory, to John Hancock. Any and all Letters of Credit delivered to John Hancock in connection with this provision shall be in a form and subject to the conditions described in the last grammatical paragraph of Condition 49 of this Application.

## CONDITION 53 - FORWARD COMMITMENT COMPONENT: COMPLIANCE WITH TERMS AND CONDITIONS; SUBMISSION OF DOCUMENTS

Applicant and John Hancock acknowledge and agree that, in the ordinary course, (a) the Interest Rate is locked for a period of (60) days in accordance with, and subject to, the terms and conditions of this Application; and (b) the Closing is obligated to occur within such time period.

Borrower and Applicant desire that the Interest Rate be locked for more than a period of sixty (60) days. Accordingly, Applicant and John Hancock agree to amend the Application as follows to accommodate such longer period to close the Loan:

*A. Extension of Rate Lock.* The following language is deleted from the first paragraph of Condition 3(c) of the Application:

> In the event the Rate Lock Confirmation is issued and accepted as set forth above, the Interest Rate will be locked for a period of sixty (60) days (the "Rate Lock") subject to receipt of the fee required pursuant to Condition 30(c) (the "Commitment Fee") within the time period provided in said Condition 30(c).

and is replaced with the following:

> In the event the Rate Lock Confirmation is issued and accepted as set forth above, the Interest Rate will be locked for a period of three hundred sixty five (365) days (the "Rate Lock") subject to receipt of the fee required pursuant to the terms and conditions of this Application (the "Commitment Fee") within the applicable time periods provided herein.

*B. Additional Modifications to Application to Adjust Time Frames of Deliveries to Extended Rate Lock Period*

1. Section 7(c) is amended as follows:

## MONTGOMERY SQUARE PARTNERSHIP
## (AVENEL AT MONTGOMERY SQUARE)
## SUPPLEMENT TO APPLICATION
### Page 8 of 18

    (i) delete "prior to Applicant's requesting that the interest rate be locked,", and insert the following in its place: "no fewer than seventy-five (75) days prior to the expiration of Rate Lock."

    (ii) delete "immediately" in the second sentence, and insert the following after the words "Rate Lock: "but in no event fewer than seventy-five (75) days prior the expiration of Rate Lock."

2. Section 7(d) is amended by deleting "no later than twenty-one (21) days from the date of Rate Lock" and inserting in its place: "no fewer than forty-five (45) days prior to the expiration of Rate Lock."

3. Section 7(e) is amended by deleting "no later than twenty-one (21) days from the date of Rate Lock" and inserting in its place: "no fewer than forty-five (45) days prior to the expiration of Rate Lock."

4. Section 8(b) is amended as follows:

    (i) delete "prior to Applicant's requesting that the interest rate be locked,", and insert the following in its place: "no fewer than seventy-five (75) days prior to the expiration of Rate Lock."

    (ii) delete "immediately" in the second sentence, and insert the following after the words "Rate Lock: "but in no event fewer than seventy-five (75) days prior to the expiration of Rate Lock."

5. Section 8(d) is amended by deleting "no later than twenty-one (21) days from the date of Rate Lock" and inserting in its place: "no fewer than forty-five (45) days prior to the expiration of Rate Lock."

6. Section 9(a) is amended as follows:

    (i) delete the words "no later than fourteen (14) days from the date of acceptance by John Hancock of this Application" and insert "in no event fewer than forty-five (45) days prior to the expiration of Rate Lock".

    (ii) delete the words "no later than thirty (30) days from the date of acceptance by John Hancock of this Application" and insert "no fewer than forty-five (45) days prior to the expiration of Rate Lock".

7. Section 10 is amended by deleting the words "within twenty-one (21) days of Rate Lock" in the first sentence and inserting the following in its place: "no fewer than forty-five (45) days prior to the expiration of Rate Lock."

8. Section 13 is amended by deleting the words "within thirty (30) days of the date of Rate Lock" in the first line and inserting the following in its place: "no fewer than forty-five (45) days prior to the expiration of Rate Lock."

9. Section 19 is amended by deleting the words "Within twenty-one (21) days of the date of Rate Lock" in the first sentence and inserting the following in its place: "No fewer than forty-five (45) days prior to the expiration of Rate Lock."

Application No.6518467

# MONTGOMERY SQUARE PARTNERSHIP
## (AVENEL AT MONTGOMERY SQUARE)
## SUPPLEMENT TO APPLICATION
### Page 9 of 18

10. Section 20 is amended by deleting the words "Within twenty-one (21) days of the date of Rate Lock" in the first sentence and inserting the following in its place: "No fewer than forty-five (45) days prior to the expiration of Rate Lock."

11. Section 23 is amended by deleting the words "no later than fourteen (14) days from the date of acceptance of this Application by John Hancock" and replacing it with: "no fewer than forty-five (45) days prior to the expiration of Rate Lock."

## CONDITION 54 – FLOATING RATE OPTION IN THE 11TH YEAR

Borrower shall have the option to extend the term of the Loan for one (1) period of twelve (12) months from the maturity date of the Loan upon delivering to John Hancock written notice of the desire to so extend not less than one hundred eighty (180) days prior to the maturity date. The Loan shall accrue interest during such extended period at a variable rate. Notwithstanding the foregoing, the Loan shall only be extended if all of the following conditions are satisfied:

(a) There is no default then continuing under the Loan Documents;
(b) John Hancock and Borrower agree to terms for the extension period (including without limitation an interest rate index and spread and acceptable LTV and DSCR ratio given the then amount of the Loan and any subordinate financing which may be in place on the Security) no less than one hundred twenty (120) days prior to the then maturity date of the Loan;
(c) Borrower satisfies all of the conditions of John Hancock then imposed in its sole but reasonable discretion to extend the Loan;
(d) The Loan remains prior to any other lien, mortgage or encumbrance on the Security;
(e) Borrower satisfies all conditions of, and executes and delivers documents for, such extension on or before the then maturity date of the Loan;
(f) Borrower pays all of John Hancock's costs associated with such extension (including without limitation all attorneys' fees); and
(g) John Hancock is still making variable rate commercial mortgage loans on properties of similar size, credit quality, character, type and location at the time of such extension.

## CONDITION 55 – LOAN TERMS

Condition 3(g)- The 4th paragraph is deleted and replaced with, "The Loan will be open to prepayment without premium during the last 120 days of the term of the Loan".

Condition 3(h) is deleted in its entirety.

## CONDITION 56 – ASSIGNMENT OF LEASES

In Condition 5(b)(ii) insert in the last line "for more than two months" between "rent" and "will.

## CONDITION 57 – LOAN DOCUMENTS

Condition 6(a) delete 5% and insert 4%.

JH 00995

## MONTGOMERY SQUARE PARTNERSHIP
### (AVENEL AT MONTGOMERY SQUARE)
### SUPPLEMENT TO APPLICATION
### Page 10 of 18

Condition 6(b) delete 7% and insert 5%.

Condition 6(c) delete "without interest" at the end of the paragraph and insert "with interest at the prevailing rate with Borrower responsible for any set-up and annual maintenance fees.

### CONDITION 58 – ANNUAL FINANCIAL STATEMENTS PROVIDED BY THE BORROWER

Condition No. 6(e): ANNUAL FINANCIAL STATEMENTS is amended by adding the following: The Loan Documents will provide that John Hancock will accept a statement of annual income and expense prepared and certified by the Borrower, the Borrower's accountant or a financial officer of the Borrowing entity within 120 days after the end of each fiscal year, provided that the statement certified by a certified public accountant is not available and there has not been a default by the Borrower in the performance of any of its obligations under the Loan Documents.

### CONDITION 59 – DUE ON SALE: CHANGE IN OWNERSHIP OR CONTROL

#### TRANSFER OF OWNERSHIP WITHIN THE PARTNERSHIP

Borrower represents that the description of the Borrower and all constituent entities and the list of names, types of interests and percentages thereof of all persons having ownership interests in the Borrower and in such entities are accurately described on Exhibit F attached to this Commitment. It is understood that the following amendment to Condition 6(f) is conditioned upon the accuracy and completeness of the information provided on said Exhibit F.

Condition No. 6(f): DUE ON SALE is amended to add the following: The transfer of partnership interests shall be permitted between partners and their families as long as any of the existing partners as of Closing controls at least 51% of the combined general and limited partnership interests of the Borrower; provided:

1.  There shall be no default under the Loan Documents,

2.  John Hancock shall be provided with prior written notice of such transfer, together with a diagram showing the structure of the Borrower and all constituent entities after the contemplated transfer and a list of the names, types of interests and percentages of ownership of all owners of interests in the Borrower and any constituent entities after the contemplated transfer, and an administrative fee of $5,000, which shall be deemed fully earned upon receipt, and

3.  All fees and costs in connection with the transaction, including without limitation, John Hancock's attorneys' fees, shall be paid by the Borrower.

### CONDITION 60 – DUE ON SALE

Condition 6(f)- In the last sentence delete "one-time" and replace with "two-time".    JRL

Application No.6518467

# MONTGOMERY SQUARE PARTNERSHIP
## (AVENEL AT MONTGOMERY SQUARE)
### SUPPLEMENT TO APPLICATION
#### Page 11 of 18

Condition 6(f)(vii)- In the 2nd and 3rd lines delete "concerning the effect of any change in the real estate taxes to result from the sale and the effect of such change"

Condition 6(f)(vii)- Delete the 4th line and insert at the end of the 3rd line after "ratio", the words "of not less than 1.25:1 as determined by John Hancock".

Condition 6(f)(viii) is amended by inserting the following at the beginning of such section: "If the Loan is made part of a secondary market transaction,".

## CONDITION 61 – SUBORDINATE FINANCING

Condition No. 6(f) SECONDARY FINANCING is amended to add the following: Notwithstanding the foregoing, John Hancock ("Lender") will permit secondary financing one time, provided that:

1. No default exists under the Loan Documents,

2. The Loan Documents contain a covenant whereby Borrower agrees not to make payments to the holder of any secondary financing during any period in which a monetary default exists under the Loan Documents,

3. The secondary financing will consist of a single mortgage which will be the only loan secured by the Security other than the Loan,

4. The secondary financing, by its terms, shall be and remain completely subject and subordinate to the Loan Documents and any additional fundings, extensions, modifications and amendments thereof, and to any subsequent advances made by the first mortgagee, whether obligatory or optional and Borrower and the secondary financing lender shall enter into such Subordination and Intercreditor Agreements as requested by Lender,

5. The secondary financing shall not violate the terms of any leases, and by its terms, shall be and remain subordinate to all present and future leases, and shall, by its terms, prohibit the second mortgagee from joining any tenants in any foreclosure action it may institute,

6. A default under the secondary financing will be a default under the Loan,

7. The secondary financing shall have a maturity date coterminous with or longer than the maturity date of the Loan,

8. The secondary financing shall be held by a regulated financial institution acceptable to Lender,

9. The secondary financing may be at a fixed or floating rate, but in either case shall have a constant amortization and require that all payments be on a current basis with no accruals for

Application No.6518467

# MONTGOMERY SQUARE PARTNERSHIP
## (AVENEL AT MONTGOMERY SQUARE)
### SUPPLEMENT TO APPLICATION
#### Page 12 of 18

interest or additional principal or advances. Furthermore, if the secondary financing has a floating rate of interest, the Borrower must purchase an interest rate cap and the debt service coverage ratio condition set forth below shall be calculated using the maximum interest rate achievable considering such cap and amortizing such secondary financing using the lesser of the (a) the actual amortization schedule and (b) a thirty (30) year amortization schedule.

10. The secondary financing must not be given in satisfaction of or to evidence any judgments or claims against the Borrower,

11. The secondary financing shall not be cross-defaulted or cross-collateralized with any loans encumbering any security other than the Security,

12. The holder of the secondary financing shall not be in any way affiliated with the Borrower,

13. The debt service coverage ratio for the combined loan payments of the secondary financing and the Loan (including without limitation any additional funding) shall not result in a debt service coverage ratio of less than 1.25:1, calculated to the satisfaction of Lender, and the loan-to-value ratio for the combined proposed mortgage and the Lender's mortgage (including without limitation any additional funding) shall not exceed 75%, calculated to the satisfaction of Lender.

14. Such secondary financing shall provide that all insurance proceeds and condemnation awards shall be applied solely as described in the Loan Documents,

15. The entire Rental Achievement Reserve Amount has been disbursed and released to Borrower and none has been applied to the Loan,

16. The mortgagee under such secondary financing shall have agreed in writing (a) to give simultaneous copies to Lender of any notices given by such mortgagee under said secondary financing, including without limitation, notices of default, (b) to collect no income, rents, issues, profits or proceeds from the Security, whether directly or through a receiver, unless the prior written consent of Lender is obtained, and (c) to be bound by any extensions, modifications or amendments to the Loan Documents,

17. All information necessary to determine whether or not the conditions provided herein have been satisfied shall be provided to Lender at the time of the request, together with an administrative fee of $5,000 which shall be deemed fully earned on the date of receipt and shall be retained by Lender regardless of whether or not the junior financing is obtained and whether or not consent is given,

18. The Non-Recourse Carve-Out Obligations shall be expanded to include liability for an amount equal to the sum of all payments made by Borrower to junior lienholders during any period in which a default exists under the Loan.

JH 00998

# MONTGOMERY SQUARE PARTNERSHIP
## (AVENEL AT MONTGOMERY SQUARE)
## SUPPLEMENT TO APPLICATION
### Page 13 of 18

19. All costs and expenses in connection with the request for approval shall be paid by the Borrower, including, without limitation, Lender's attorneys' fees.

## CONDITION 62 – FEES

Condition 6(j)- Insert in the first line after "administrative fees", the words "not to exceed $5,000".

## CONDITION 63 – SPE WAIVER/TOTAL

Condition 9(c): BORROWER REQUIREMENTS is amended by deleting Condition 9(c).

## CONDITION 64 – COMPLIANCE WITH ZONING

Condition 10- In the 4th line from the bottom after "certificates of occupancy" the words "or such temporary certificates of occupancy necessary to operate the security until final certificates are available".

## CONDITION 65 – COMPLIANCE WITH ENVIRONMENTAL LAWS

Condition 11(b)- In the first sentence insert "reasonably" before the word "satisfactory".

Condition 11(d)(ii)(cc)- Insert at the end of the paragraph, "This indemnification shall not apply to situations where the liability is as a result of or caused by conditions that exist or occur on real estate adjoining the Real Estate Security owned by the Borrower".

## CONDITION 66 – COMPLETION

Condition 12- Insert between "completed" and "to" the words "other than normal punch list items and final landscaping",

## CONDITION 67 – REPRESENTATIONS AND WARRANTIES

Condition 25- In the 3rd line after "complete" insert "in all material respects".

Condition 25- In the 7th line delete the words "and have been prepared consistent with proper accounting standards";

Condition 25- Insert in the 2nd line, 2nd paragraph after "all" the word "material".

Application No.6518467

# MONTGOMERY SQUARE PARTNERSHIP
## (AVENEL AT MONTGOMERY SQUARE)
### SUPPLEMENT TO APPLICATION
#### Page 14 of 18

## CONDITION 68 – TERMINATION OF THIS INSTRUMENT

Condition 29(a)(ii)- In the 2nd and 3rd lines delete "or against any tenant under any Space lease or Other Lease referred to in Condition 15(a) hereof".

Condition 29(a)(iii)- At the end of the sentence delete "or of any tenant referred to in Condition 15(a) hereof".

Condition 29(a)(iii)- Define "material adverse change in the financial condition" as an event or occurrence which causes the combined net worth of the Guarantors to decline below $10,000,000.

## CONDITION 69 – APPLICATION, PROCESSING AND COMMITMENT FEES

Condition 30(b)(ii)- Delete "sixty (60) and insert twenty one (21).

## CONDITION 70 – LIMITATION ON LIABILITY

Condition 36(f) - In the first line after "taxes" insert "excluding taxes escrowed by John Hancock".

Condition 36(h) - Delete in its entirety.

## CONDITION 71 – ADDITIONAL FUNDING

1.  Additional Funding. Borrower shall have the right to request additional loan proceeds in the minimum amount of $1,000,000 ("Additional Funding") once between the 2nd and the end of the 5th Loan Years, provided the following conditions are satisfied:

    a.  The rental and debt service coverage requirements of Condition 16 and the loan-to-value ratio requirement of Condition 14 are satisfied as of the date of the request for and the funding of the Additional Funding, as determined by John Hancock, taking into consideration the Loan and the Additional Funding;

    b.  No default has occurred and is continuing under the Loan Documents;

    c.  There shall be no partial funding of the Additional Funding;

    d.  There shall be no subordinate financing requested for, or then in place on, the Security;

    e.  The entire Rental Achievement Reserve Amount has been disbursed and released to Borrower and none has been applied to the Loan

    f.  A request for Additional Funding shall be made in accordance with Section 2 below;

    g.  John Hancock is continuing to finance loans of the same size, property type, location, character and credit quality as the Loan and the Additional Funding, and the interest rate on the Additional Funding shall be as set forth in Section 2 below and shall be established

*JRK*

Application No.6518467

# MONTGOMERY SQUARE PARTNERSHIP
## (AVENEL AT MONTGOMERY SQUARE)
## SUPPLEMENT TO APPLICATION
### Page 15 of 18

as a fixed rate equal to the then interest rate being offered by John Hancock for loans of the same size, property type, location, character and credit quality;

h.  Except as set forth herein or in the Rate Lock Confirmation described below, the Additional Funding shall be on the same terms and conditions as the Loan and shall be evidenced by an amendment to the existing Loan Documents or by a second note and mortgage on the Security as determined by John Hancock. The Loan Documents shall be satisfactory to John Hancock;

i.  The Additional Funding shall be amortized over the remaining term of Loan (e.g. if drawn at the end of the 2nd year, with 28 years remaining on the Loan term, then Additional Funding will be amortized over 28 years); and

j.  The Additional Funding shall have the same loan maturity date as initial Loan maturity date.

2.  <u>Rate Lock Process.</u>

Upon receipt of sufficient and satisfactory information from Borrower, including, but not limited to, (i) a rent roll for the Security certified by the Borrower which is no more than thirty (30) days old, (ii) current operating statements for the Security in form and for periods as John Hancock may reasonably request; (iii) financial statements from the Borrower, its Principals, Guarantors and Indemnitors, as set forth in Condition 20 of the Application, and (iv) current color photographs of the Security which are not more than thirty (30) days old showing the Security in a manner reasonably satisfactory to John Hancock ("Quote Package"), John Hancock may, in John Hancock's sole discretion, issue a Rate Lock Confirmation to Borrower in a form substantially shown on Exhibit D to the Application and the process described in Section 3(c) of the Application shall be followed. The Rate Lock Confirmation shall also set forth any Application Fee or Commitment Fee that must be paid in connection with the Additional Funding. John Hancock shall be under no obligation to issue a Rate Lock Confirmation for the Additional Funding, and any Additional Funding shall be subject to approval by John Hancock's internal committees.

3.  <u>Due Diligence Matters.</u>

<u>The following shall be conditions precedent to the Additional Funding:</u>

a.  *Title, Title Evidence and Title Insurance.* Borrower shall provide an endorsement to the loan title insurance policy issued to John Hancock in connection with the initial closing of the Loan ("Title Endorsement"), reflecting the Additional Funding and satisfactory in form and content to John Hancock.

b.  *Survey.* Borrower shall provide a certificate from the Borrower and Guarantors, certifying that no exterior changes to the buildings or improvements have occurred on the Security since the date of the Survey. A recertification and update of the Survey will be required in form and substance satisfactory to John Hancock, dated within sixty (60) days of the Closing for the Additional Funding if (i) the Title Endorsement reveals any new title matters that are plottable; or (ii) there are any exterior additions, alterations or other changes to the Security,.

JH 01001

## MONTGOMERY SQUARE PARTNERSHIP
### (AVENEL AT MONTGOMERY SQUARE)
### SUPPLEMENT TO APPLICATION
### Page 16 of 18

c. *Borrower Requirements.*  Borrower shall provide a certificate from the Borrower, certifying that Borrower and its constituent entities continue to comply with the requirements of Condition 9 of the Application. Borrower will also provide a certified copy of all organizational documents pertaining to the Borrower and, if requested by John Hancock, its constituent entities.

d. *Compliance with Environmental Laws; Loan Documents.*  Borrower shall provide a certificate from the Borrower and the Guarantors in form and substance satisfactory to John Hancock, certifying that there have been no changes to any matters contained in the Environmental Certificate, to any of the representations and warranties regarding environmental matters contained in the Loan Documents or to any other environmental matter related to the Security. In addition, John Hancock shall obtain at Borrower's expense, a report from an environmental database confirming that there have been no changes to the environmental conditions or listings at the Security or any adjacent property since the date of the last verification of the environmental database.

At John Hancock's option, Borrower shall provide an update to the environmental site assessment that Borrower delivered to John Hancock prior to the Loan Closing Date in form satisfactory to John Hancock and prepared by an engineer approved by John Hancock, confirming that any identified matters in the initial assessment have been remediated as required and that otherwise there have been no changes to the environmental conditions or listings at the Security or any adjacent property since the date of the initial assessment.

e. *Compliance with Zoning, Building Laws. Subdivision and Other Laws, Regulations etc. and Separate Tax Parcel.*

Borrower shall provide a certificate from the Borrower and Guarantors, certifying that no exterior changes to the buildings or improvements have occurred on the Security and no changes of use or access or the parking have occurred, in each case since the initial funding of the Loan. In addition, Borrower shall provide (i) an updated letter from the municipality dated no earlier than thirty (30) days before the Closing Date for the Additional Funding, evidencing that the Security and the use thereof comply with all applicable zoning, subdivision and other laws, ordinances, rules and regulations, that there are no outstanding violations pending against the Security and that there is no action or proceeding pending before any court, quasi-judicial body or administrative agency relating thereto, and (ii) if a title endorsement covering zoning matters in a form satisfactory to John Hancock is not issued in the jurisdiction, both an updated opinion of counsel in form and substance satisfactory to John Hancock and its counsel and the aforementioned letter from the municipality will be required. If not previously furnished, John Hancock shall also be furnished with evidence satisfactory to John Hancock and its counsel that the Security has a tax map designation separate and distinct from that of any other property and is a separate legally subdivided parcel.

f. *Third Party Inspections.*  Borrower shall provide a certificate from the Borrower and Guarantors, certifying that since the initial Loan no changes to the buildings or improvements have occurred on the Security and no significant repairs or replacements in any one instance have occurred which were not expressly contemplated in the Property Condition Assessment or pursuant to, and in compliance with, one of the reserve agreements established at the Closing of the Loan. Any matters disclosed by the original Property Condition Assessment which the Borrower agreed to remedy will be re-inspected by John Hancock or an engineer acceptable to John Hancock, at Borrower's

## MONTGOMERY SQUARE PARTNERSHIP
### (AVENEL AT MONTGOMERY SQUARE)
#### SUPPLEMENT TO APPLICATION
#### Page 17 of 18

expense. John Hancock shall also have the right to re-inspect the Security to verify the condition of the Security and to assure that no adverse changes have occurred at the Security.

If requested by John Hancock, Borrower shall provide an update to the property condition report that Borrower delivered to John Hancock in connection with the Loan ("Initial PCR") in form satisfactory to John Hancock and prepared by an engineer approved by John Hancock, confirming that any identified matters in the Initial PCR have been remedied and corrected as required and that otherwise there have been no adverse changes to the conditions at the Security since the date of the Initial PCR.

g. *Lease Requirements.* Borrower, not more than fourteen (14) days prior to the Closing Date for the Additional Funding, shall provide an updated rent roll certified by Borrower identifying any changes to the rent roll submitted as part of the Quote Package.

h. *Appraisal.* An update of the Appraisal prepared by the appraiser who prepared the original Appraisal. The update must be acceptable to John Hancock.

i. *Reserve Funds.* The amounts, deposits and payments into the reserve accounts required by Section 18 and Section 49 of the Application will be evaluated and may be adjusted as part of the Rate Lock Process based upon the information obtained or revealed during the Rate Lock Process and subsequent due diligence and evaluation of John Hancock prior to the Additional Funding.

j. *Opinion of Counsel.* Borrower shall provide an update to all opinions issued in connection with the Loan satisfactory in form and substance to John Hancock dated as of the Closing of the Additional Funding from an attorney approved by John Hancock and its counsel opining to the matters set forth in Section 23 of the Application; provided, however, that any opinion issued regarding the Loan Documents shall apply to the loan documents executed in connection with the Additional Funding.

4. Closing and Other Costs.

An additional sentence is added to the end of Condition 21 of the Application as follows: "The definition of "Costs" shall be deemed to include all costs pertaining to the Additional Funding."

5. Except as modified by this Supplement, the Terms and Conditions of the Application shall apply to the Additional Funding, including, but not limited to, Condition 39 of the Application.

## CONDITION 72 – BORROWER COVENANT REGARDING OTHER HOLDINGS

Borrower, Montgomery Square Partnership, a general partnership, also owns two (2) vacant pieces of land in the vicinity of the Security and identified as Exhibit X. Borrower agrees (a) not to acquire any other real estate or other assets during the term of the Loan, other than those necessary to conduct the ordinary business of the Security and (b) not to incur indebtedness on these

Application No.6518467

# MONTGOMERY SQUARE PARTNERSHIP
## (AVENEL AT MONTGOMERY SQUARE)
### SUPPLEMENT TO APPLICATION
#### Page 18 of 18

properties during the term of the Loan unless ownership of the two properties is transferred to a third party not owned or controlled by the Borrowing Entity.

## CONDITION 73 – OPINION OF COUNSEL

Condition 23(e)- Delete the next to last paragraph referencing "Conditions 9(c)(ix) and (x)" in its entirety.

Avenel_Supplement_7-29-04.doc

JH 01004

# EXHIBIT 1

## EXAMPLES OF RESERVE CALCULATIONS

AVENEL @ MONTGOMERY SQUARE

|  | Units | 256 | | EXAMPLE 1 | | EXAMPLE 2 | | EXAMPLE 3 |
|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | |
| Base Rent | | | | $4,638,600 | | $4,638,600 | | $4,638,600 |
| Parking Income | | | | $0 | | $0 | | $0 |
| Other Income | | | | $312,213 | | $312,213 | | $312,213 |
| Gross Income | | | | $4,950,813 | | $4,950,813 | | $4,950,813 |
| Vacancy | @ | | 20% | $990,163 | 15% | $742,622 | 9.00% | $445,573 |
| Effective Gross Income | | | | $3,960,650 | | $4,208,191 | | $4,505,240 |
| **EXPENSES** | | | | | | | | |
| Operating Expenses | | | | | | | | |
| Real Estate Taxes | | | | $480,000 | | $480,000 | | $480,000 |
| Property Insurance | | | | $82,480 | | $82,480 | | $82,480 |
| Utilities | | | | $87,749 | | $87,749 | | $87,749 |
| Repairs & Maintenance | | | | $182,741 | | $182,741 | | $182,741 |
| Janitorial | | | | $0 | | $0 | | $0 |
| Management Fees @ 3.75% | | | | $148,524 | 3.75% | $157,807 | 3.75% | $168,946 |
| Payroll & Benefits | | | | $294,781 | | $294,781 | | $294,781 |
| Advertising & Marketing | | | | $59,713 | | $59,713 | | $59,713 |
| Professional Fees | | | | $5,000 | | $5,000 | | $5,000 |
| General & Administrative | | | | $45,969 | | $45,969 | | $45,969 |
| Other Expenses | | | | $0 | | $0 | | $0 |
| Total Operating Expenses | | | | $1,386,957 | | $1,396,240 | | $1,407,379 |
| NET OPERATING INCOME | | | | $2,573,693 | | $2,811,951 | | $3,097,860 |
| Value @ 7.25% Cap | | | | $35,499,214 | | $38,785,529 | | $42,729,108 |
| Maximum Loan or 75.00% LTV | | | | $26,620,000 | | $29,090,000 | | $32,050,000 |
| Round To | | | | $26,620,000 | | $29,090,000 | | $32,000,000 |
| Locked Amount | | | | $32,000,000 | | $32,000,000 | | $32,000,000 |
| **RESERVE** | | | | $5,380,000 | | $2,910,000 | | $0 |
| Base Rent Required | | | | $3,710,880 | | $3,942,810 | | $4,221,126 |

JH 01005

Application No.

**EXHIBIT B**
**DESCRIPTION OF PROPERTY**

| SECTION A: | | LOCATION | | | | | |
|---|---|---|---|---|---|---|---|
| Property Name: | Avenel at Montgomery Square | | | | | | |
| Address: 1100 Avenel Boulevard | | City: | North Wales *Montgomery Township* | County: | Montgomery | State: | Pennsylvania |
| Zoning: ECPOD | | Streets: private | | Water: | public | Gas: | Yes |

| | LAND | | | | |
|---|---|---|---|---|---|
| Frontage: 1,220 Ft. | Depth: *TREECOLAR* 0 Ft. | | Area: 799,116 Sq.ft. | Filled: | |
| Rights of Way: Describe: | see title report | | | | |
| Easements: Describe: | see title report - Gas, electric, sewer, water, phone, cable | | | | |
| Special Assessments: Describe: N/A | | | | | |

| | PROPERTY OVERVIEW | | | |
|---|---|---|---|---|
| Net Rentable Area: 276,710 Sq.ft. | # of Buildings: | # of Stories: 3/4 | # Bays: | |
| Year Built: 2004 | Year Last Renovated: 0 | | Current Occupancy Rate: | |
| Property Manager: Bozzuto Management | | Fee: 3.75% | | |

| | CURRENT OWNER PURCHASE INFORMATION | | |
|---|---|---|---|
| Purchase Price: | Amount Financed: | Seller: | |
| Purchase Date: | | | |

| | EXISTING FINANCING | | |
|---|---|---|---|
| Holder: | Original Amount: | Rate: | Date: |
| Wilmington Trust of Pennsylvania | $30,732,000.00 | Floating - Libor | May 15, 2003 |
| Balance: | | | |

Application No.

---

**SECTION B: (To be completed in all cases)**

## BUILDING FRAMEWORK

Wood: ☒   Reinforced Concrete ☐   Steel: ☒   Solid Masonry: ☐

Other: (explain):  Manor Building includes some steel

## BUILDING CONSTRUCTION

Sidewall Construction:  2*4 Stud with 1/2" plywood sheathing

Exterior Sidewall Finish:  Brick, vinyl, hardy board

Floor Construction:  Engineered wood truss with pylwood and gypsum floor

Roof Construction:  Engineered wood truss and sheathing sytem

Roofing Material:  25 yr asphalt shingle

Window Type & Material:  vinyltech window

Exterior Door Type:  metal over foam core

## MECHANICAL

Heating Type:  Aquatherm    Fuel:  Gas    Unit Location:  each unit

Air Conditioning Type:  Carrier    Unit Location:  Each unit

# of Elevators:  1    Type:  Hydraulic Schindler

Fire Protection:  Wet Sprinkler in accordance with NFPA 13

Security System: N/A

Sewerage System:  ☒ Public    ☐ Private

Water System:  ☒ Public    ☐ Private

---

**SECTION C: ( To be completed for Apartment Buildings Only)**

Balcony Construction: (describe framing, flooring, railings):  ACQ framing and flooring with steel railings

Exterior Stairway Construction: (describe framing, flooring, railings):  Steel framing and railings with concrete treads

Interior Partitions:  2* 4 stud wit 1/2" drywal

Sound Proofing:

Between Apartments:    insulated wall with sound batting

Between Floors:    Channel system with gypsum floor

Insulation Method:  Exterior walls - R15 vapor barrier - Attic - R30

---

Application No.

| Finish Schedule | Floor | Walls | Ceiling | Trim |
|---|---|---|---|---|
| Living Room: | Carpet | Paint | Paint | Wood |
| Bedroom: | Carpet | Paint | Paint | Wood |
| Dining Room: | Carpet | Paint | Paint | Wood |
| Kitchen: | Vinyl | Paint | Paint | Wood |
| Baths: | Vinyl | Paint | Paint | Wood |
| Public Areas: | Ceramic/Wood | | | |

## KITCHEN EQUIPMENT

Range: GE - JGBP28WGH    Oven: GE - JVM1441WH    Refrigerator: GE - GFC325F    Dishwasher: GSDY200J

Disposal: GE- WX9X18    Hood & Fan: GE- JN327    Other:

Counter Tops: Formica    Cabinets: wood

## SECTION D: ( To be completed for Buildings Other than Apartments )

Divisional Partitions: (Describe)

Ceiling System: (Describe)

Interior Wall Finish:

Floor Covering:

Sprinkler System:

Electric Lighting Fixture Type:

Toilet Rooms: (Describe fixture standards, room finish, number of locations, ADA compliance)

## SECTION E:
## PARKING AND ON-SITE IMPROVEMENTS

Covered Parking Spaces: 112    Location: 32 Attached, 80 detached

Construction: Concrete and stud

Open Parking Spaces: 404

Swimming Pool: Yes

Other On-Site Improvements: Landscaping, fountain, compactor pad

Application No.

**SECTION F: (To be completed for all property types)**

**RENT ROLL**

Correspondent will attach one copy of the rent roll for the Real Estate Security.  Correspondent will sign this Exhibit on the appropriate signature line below.

**CORRESPONDENT CERTIFICATION**

I have examined the property operating statements, rent roll, and any other supporting information given to me by the Applicant and have analyzed the Loan in accordance with such information.  In addition, I have examined the leases listed on the rent roll and have satisfied myself that the space is occupied as indicated, that there are no existing concessions, free rent, or rebates unless shown on the attached rent roll, and the rents are currently collectable under such leases.  I believe that all information heretofore submitted to John Hancock in connection with the Loan is complete, correct and accurately reflects the physical, leasing and financial status and history of the Real Estate Security.

Correspondent: _JHREF / BLUE BELL_

By: _JOHN P. FERRIO, REG. V.P._

Name: _____

Title _REGIONAL  V.P._

Application No.

### EXHIBIT C
### ENVIRONMENTAL QUESTIONNAIRE AND CERTIFICATE

DEFINITIONS. The following two terms have the following meanings when used in this Questionnaire.

A. "Hazardous Materials" includes hazardous waste, as that term is defined by the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §6903(5); hazardous substances, as that term is defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §9601(14); pollutants or contaminants, as those terms are defined by CERCLA, 42 U.S.C. §9601(33), in each case, as those statutes may be amended from time to time, asbestos-containing materials ("ACM"), and volatile organic compounds, including oil and petroleum products.

B. "The Real Estate Security" means the land, the buildings thereon, and the other improvements thereon which are to be the security for the Loan from John Hancock being applied for by Borrower in the attached Application ("the Loan").

1. Are any Hazardous Materials generated, stored, treated, or disposed of or expected to be generated, stored, treated, or disposed of on the Real Estate Security?

   Yes ☐    No ☒

2. To the best of your knowledge, have any Hazardous Materials been disposed of or released at, on, or under the Real Estate Security, or at, on, or under land abutting the Real Estate Security, in the past, or have any such materials migrated from other land to the Real Estate Security?

   Yes ☐    No ☒

3. a. Are there any underground or other storage tanks on the Real Estate Security?

   Yes ☐    No ☒

   b. If the answer to 3.a. is Yes, state the type and quantity of material that is being stored and the location and age of each tank; describe the leak detection system and the inventory control system which are being maintained for each tank; and describe the corrosion protection and spill/overfill protection methods which are being used for each tank. (Attach additional pages if necessary.)

   c. If the answer to 3.a. is Yes, state when each tank was last tested for tightness; state whether each tank is registered with any government entity, and attach copies of the most recent test results for each tank and all registration materials.

JHLICO
Ed 3/2/00

1

JH 01010

Application No.

    d.  Are there any empty or unused tanks on the Real Estate Security? (If yes, state the location of each.)

        Yes ☐    No ☒

        Location:

    e.  To your knowledge, have any tanks been removed from the Real Estate Security?

        Yes ☐    No ☒   *To the best of our knowledge there were no underground tanks.*

    f.  If the answer to 3.e. is Yes, state when each tank was removed; describe the location from which it was removed; and state whether during or after the removal any Hazardous Materials were found in the soil or groundwater.

4.  a.  Has there ever been an operating dry cleaner at the Real Estate Security?

        Yes ☐    No ☒

    b.  If the answer to 4.a. is Yes, state the name of the dry cleaner and the years in which it has operated.

5.  a.  Have any of the buildings at the Real Estate Security been tested for the presence of ACM?

        Yes ☐    No ☒

    b.  Do any of the buildings at the Real Estate Security contain ACM?

        Yes ☐    No ☒

6.  Are there any transformers or other electrical equipment on the Real Estate Security which contain PCB's?

        Yes ☐    No ☒

7.  (To be answered for multi-family residential properties:)

    a.  Has the Real Estate Security ever been tested for the presence of radon gas?

        Yes ☐    No ☒

    b.  Have any of the buildings at the Real Estate Security ever been tested for the presence of lead paint?

        Yes ☐    No ☒

JHLICO
Ed 3/2/00

2

JH 01011

Application No.

c.   Has any of the water at the Real Estate Security ever been tested for the presence of lead?

Yes ☐   No ☒

d.   If the answer to 7.a., b., or c. is yes, attach copies of test results.

8.   a.   What is the name of the seller from whom you bought the Real Estate Security?

b.   Describe the use of the Real Estate Security at the time you acquired it.

9.   State the year in which each building at the Real Estate Security was constructed.

2004

10.  a.   Was the Real Estate Security transferred out of or described as part of a larger parcel within the past five years?

Yes ☐   No ☒

b.   If the answer to 10.a. is Yes, describe by boundaries the larger parcel of which the Real Estate Security was a part.

11.  Has an environmental assessment report been prepared for the Real Estate Security, or any part of it, within the last ten years?  (If yes, attach copies of each report.)

Yes ☒   No ☐

12.  Has the Real Estate Security ever been the subject of a notice of non-compliance, abatement or clean-up order, or lawsuit, relating to Hazardous Materials?

Yes ☐   No ☒

13.  If the answer to any of questions 1, 2, 5.b., 6, 7, or 12 is Yes, explain in detail the nature of these items in the area below and on additional pages if necessary.

I/We certify (a) that each of the above answers is true and complete; (b) that to the best of my/our knowledge there is no violation of federal, state, or local environmental laws on the Real Estate Security, except as described herein; and (c) that I/we will immediately notify John Hancock if at any time while the Loan is outstanding I/we learn that any of the above answers either was not true when made or is no longer true.

JHLICO
Ed 3/2/00

3

JH 01012

Application No.

I/We understand that the answers to any of the above questions may cause John Hancock to require, as a condition or conditions to Closing the Loan, (a) satisfactory responses to further inquiries by John Hancock, and/or (b) further investigation of the Real Estate Security, including, in John Hancock's sole discretion, sampling and/or monitoring of soil, groundwater, air, water, or building materials, with results satisfactory to John Hancock, in its sole discretion.

APPLICANT: MONTGOMERY SQUARE PARTNERSHIP

By: VESTMONT LIMITED PARTNERSHIP

By: VESTERRA CORPORATION

By: _____
               James R. Koller

Title: President

Date: _____

GUARANTOR(S):

_____
James R. Koller

Date: _____

_____
Frank C. Palopoi

Date: _____

_____
Joseph P. Kelly

Date: _____

*File*

# Memo

**To:**   Jim Koller

**From:**   Joe Kelly

**Date:**   6/11/2003

**Re:**   Montgomery Square Apartments – Land Development Agreement and Declaration of Covenants and Restrictions

---

Please note that the parcel and unit numbers recited in the Land Development Agreement and the Declaration of Covenants and Restrictions are not correct. The parcel and unit reference should be as follows:

| Address | Parcel | Block | Unit | Parcel # |
|---------|--------|-------|------|----------|
| 512 DeKalb Pike | 46-00-00784-00-7 | 011 | 048 | 00784007 |
| 500 DeKalb Pike | 46-00-00778-00-4 | 011 | 035 | 00778004 |
| 440 DeKalb Pike | 46-00-00772-00-1 | 011 | 028 | 00772001 |
| 440A DeKalb Pike | 46-00-00775-00-7 | 011 | 031 | 00775007 |
| 436 DeKalb Pike | 46-00-00769-00-4 | 011 | 047 | 00769004 |
| 430 DeKalb Pike | 46-00-00766-00-7 | 011 | 055 | 00766007 |
| 426 DeKalb Pike | 46-00-00763-001 | 011 | 027 | 00763001 |
| HDR | 46-00-00316-21-4 | 011c | 014 | 00316214 |
| 502 DeKalb Pike [Included ins HDR] | 46-00-00781-001 | 011 | 051 | 00781001 |

Attached is a copy of the real estate tax bills.

1

JH 01014

# PLYMOUTH ENVIRONMENTAL CO., INC.
## ENVIRONMENTAL CONTRACTORS

923 Haws Avenue • Norristown, PA 19401 • 610-239-9920 • FAX 610-239-9921

August 27, 2003

 FILE COPY

Mr. Don Elly
Allen A. Myers, Inc.
1805 Berks Road
P.O. Box 98
Worcester, PA 19490

RE: Asbestos Abatement
    Lead Paint Soil Remediation
    Montgomery Square Partnership

Dear Mr. Elly:

Attached is the manifest for the lead paint soil remediation work at the above project.

Don, should you have any questions please feel free to call.

Best regards,

James Kelly, President

JH 01015

Asbestos Abatement • Lead Abatement • Hazardous Waste Remediation

ep-19-03 10:46A ALLAN A. MYERS            6103618D62           PAGE B2     P.02
09/18/2003 13:40  6103789921      PLYMOUTH ENVIRONMENT —

# PLYMOUTH ENVIRONMENTAL CO., INC.
## ENVIRONMENTAL CONTRACTORS

923 Haws Avenue • Norristown, PA 19401 • 610-239-9920 • FAX 610-239-9921

September 18, 2003

Mr. Don Elly
Allan A. Myers, Inc.
1805 Berks Road
P.O. Box 98
Worcester, PA 19490

RE: Asbestos Abatement
    Lead Paint Abatement
    Montgomery Square Partnership
    Montgomery Township

Dear Mr. Elly:

This letter will certify that Plymouth Environmental Co., Inc.
properly abated all asbestos containing materials and lead in soil
as noted in RT Environmental Services, Inc. survey reports. All
work was performed in accordance with all prevailing federal, state
and local regulations. Waste manifests and project air management
report was previously supplied to you.

Don, should you have any questions please feel free to call.

Best regards,

James Kelly, President

Asbestos Abatement • Lead Abatement • Hazardous Waste Remediation

JH 01016

08/27/2003  13:53    +733BBBBBBBBBBBB-B    00000000    PAGE  B2

Bureau of Land Recycling and Waste Management
P.O. Box 8550
Harrisburg, PA 17105-8550
OFFICIAL PENNSYLVANIA MANIFEST FORM

Form approved.
OMB No. 2050-0039

| UNIFORM HAZARDOUS -WASTE MANIFEST | 1. Generator's US EPA ID No. P A D E P 0 0 1 0 6 3 9 | Manifest Document No. 16776 | | A. State Manifest Document Number PAH    016776 |
|---|---|---|---|---|

2. Generator's Name and Mailing Address
MONTGOMERY SQUARE PARTNERSHIP
490 NORRISTOWN ROAD
BLUE BELL PA 19422

B. State Gen. ID  SAME

3. Generator's Phone (  610 )  238-0400

C. State Trans. ID
PA-AH    0317

5. Transporter 1 Company Name
REPUBLIC ENV SYS (TRANS GROUP)  | P A D 9 8 2 6 6 1 3 8 1    6. US EPA ID Number

D. Transporter's Phone   215-822-2676

7. Transporter 2 Company Name    8. US EPA ID Number

E. State Trans. ID
PA-AH

F. Transporter's Phone (   )  -

9. Designated Facility Name and Site Address
REPUBLIC ENV SYS (PA) , INC.
2869 SANDSTONE DRIVE
HATFIELD PA 19440  | P A D 0 8 5 6 9 0 5 9 2

G. State Facility's ID

H. Facility's Phone ( 215) 822-8995

| 11. US DOT Description (including Proper Shipping Name, Hazard Class, and ID Number) HM | 12. Containers No. | Type | 13. Total Quantity | 14. Unit Wt/Vol | I. Waste No. |
|---|---|---|---|---|---|
| a. RQ HAZARDOUS WASTE, SOLID, N.O.S.,9,NA3077, PG III, (LEAD ),(D008) | X 1 | DM | Y 100 | 1 | D008 |
| b. | | | | | |
| c. | | | | | |
| d. | | | | | |

| J. Additional Descriptions for Materials Listed Above | K. Handling Codes for Wastes Listed Above |
|---|---|
| S    1D64444 | a. S01    c. |
| | b.    d. |

15. Special Handling Instructions and Additional Information

EMERGENCY PHONE _____

16. GENERATOR'S CERTIFICATION: I hereby declare that the contents of this consignment are fully and accurately described above by proper shipping name and are classified, packed, marked and labeled and are in all respects in proper condition for transport by highway according to applicable international and national governmental regulations. If I am a large quantity generator, I certify that I have a program in place to reduce the volume and toxicity of waste generated to the degree I have determined to be economically practicable and that I have selected the practicable method of treatment, storage, or disposal currently available to me which minimizes the present and future threat to human health and the environment; OR, if I am a small quantity generator, I have made a good faith effort to minimize my waste generation and select the best waste management method that is available to me and that I can afford.

| Printed/Typed Name | Signature | Month | Day | Year |
|---|---|---|---|---|
| Jim Keller | Jim Keller | 07 | 03 | 03 |

17. Acknowledgement of Receipt of Materials

| Printed/Typed Name | Signature | Month | Day | Year |
|---|---|---|---|---|
| Robert Passow | | 07 | 03 | 03 |

18. Acknowledgement of Receipt of Materials

| Printed/Typed Name | Signature | Month | Day | Year |
|---|---|---|---|---|

18. Discrepancy Indication Space

20. Facility Owner or Operator: Certification of receipt of hazardous materials covered by this manifest except as noted in Item 18.

| Printed/Typed Name | Signature | Month | Day | Year |
|---|---|---|---|---|
| | | 07 | 11 | 03 |

AE5884 1/1

JH 01017

Sep-17-03 03:49P ALLAN A. MYERS    610361806 19    P.02

08/27/2003  13:53    +733BBBBBBBBBBBBBB-B          DDDDDDDD                    PAGE  03

REPUBLIC ENV SYS (PA) INC.
FM I.D. PAHM1590052

2569 SANDSTONE DRIVE / HATFIELD, PA 19440 / 215-822-8895

FM I.D. PAHM1590052

C E R T I F I C A T E   O F   W A S T E   D I S P O S A L     N o .   4 6 5 8 8 4

THIS IS TO CERTIFY THAT WASTE MATERIAL RECEIVED FROM:

Generator       MONTGOMERY SQUARE PARTNERSHIP
E.P.A. ID.      PADEP0010639
Address         690 MORRISTOWN ROAD / BLUE BELL, PA 19422

AS REFERENCED ON MANIFEST NUMBER:   PAH016776

HAS BEEN ANALYZED AND ACCEPTED AS SPECIFIED UNDER THE FACILITY'S WASTE ANALYSIS PLAN.
ALL MATERIALS REPRESENTED HEREIN SHALL BE STORED, TREATED, MANAGED AND/OR
DISPOSED OF IN ACCORDANCE WITH ALL APPLICABLE LOCAL
STATE AND FEDERAL REGULATIONS IN THE MANNER DESCRIBED BELOW.

Lab Code/Clin #
1064444    RQ HAZARDOUS WASTE, SOLID, N.O.S.
           (D008)

D.O.T./E.P.A. Description
REPUBLIC ENV SYS (PA), INC.
Representative - Title:Document Control)

Mary C. Steinborn

Storage/Treatment/Disposal Method
H111 H132

07/11/2003

JH 01018

**Exhibit D**

**Rate Lock Confirmation**

Date:   **August 2, 2004**

TO:     JOHN HANCOCK LIFE INSURANCE COMPANY

RE:     JOHN HANCOCK APPLICATION NO. 6518467

Property Address:  Avenel @ Montgomery Square Apartments
1100 Avenel Blvd.,
Montgomeryville, PA 19454

John Hancock is willing to lock the interest rate in connection with the above-captioned Application on the terms set forth below:

(a)   the Interest Rate will be locked on August 2, 2004 at 6.18% per annum for a period of 365 days from the Rate Lock Date (as hereinafter defined), subject to receipt by John Hancock of $320,000, the Commitment Fee, no later than five (5) days after the date of acceptance of the Application by John Hancock,

(b)   the amount of the Monthly Payment is $195,574.96,

(c)   the Amortization Period is 360 months,

(d)   the date of the Application is amended to be August 2, 2004,

(e)   the outside date for Closing is August 1, 2005, and

(f)   the Application is hereby modified to incorporate the terms and conditions hereof, time still being of the essence. In the event of any conflict between the terms hereof and those contained in the Application, the terms of this Rate Lock Confirmation shall prevail;

provided that:

(g)   Applicant accepts and confirms said Interest Rate, subject to the above terms,

(h)   makes the representations set forth below,

(i)   telecopies this Rate Lock Confirmation back to John Hancock so that it is received no later than 4:30 PM, Boston time, on August 2, 2004 (the "Rate Lock Date"), and

(j)   time being of the essence hereof.

JOHN HANCOCK LIFE INSURANCE COMPANY

By: _____

Name:  Timothy J. Malik

Title:  Senior Investment Officer

Date:  August 2, 2004

1

JH 01019

The undersigned hereby:

(i)   requests that John Hancock lock the Interest Rate in connection with the above-captioned Application at the rate set forth above and accepts all of the terms and conditions set forth above, and agrees that the Application remains unchanged and in full force and effect, except as modified by the terms set forth above;

(ii)  acknowledges that, notwithstanding the locking of the Interest Rate, John Hancock is not obligated to make the Loan contemplated by and pursuant to the Application unless and until the Loan has been authorized by the John Hancock loan committees and John Hancock has accepted said Application by signing the Application in the place provided therein;

_EXCEPT AS AMENDED BY THE APPLICATION,_

_ORL_ (iii)  ʃ certifies that the title company designated by the undersigned in Condition 7(b) of the Application and, if applicable, approved by John Hancock ("Title Company") and the surveyor designated by the undersigned in Condition 8(c) of the Application (the "Surveyor") have received and acknowledged receipt of John Hancock's title requirements and survey requirements, respectively, and have agreed to deliver a title policy and materials and a survey, complying with said requirements, respectively, within twenty-one (21) days of receipt of notification to proceed from the undersigned; and

_EXCEPT AS MODIFIED BY THE APPLICATION_

_ORL_ (iv)  ʃ agrees to give the Title Company notice to proceed with the title and the Surveyor notice to proceed with the survey, and to provide John Hancock with a copy of said notice, no later than the next business day after the date at the tope of this Rate Lock Confirmation.


APPLICANT:

Montgomery Square Partnership

By: Vestmont Limited Partnership

By: Vesterra Corporation

By: _____

Name: _JAMES R. KOLLER_____

Title: _PRESIDENT_____


2


JH 01020

Application No.

## EXHIBIT F

### BORROWER REPRESENTATION

Date:

Correspondent:

Please provide the following.  Attach additional sheets as needed.

1. A diagram of the Borrower/Applicant and all constituent entities
2. A list of the owners and their respective percentage interest in each entity and type of interest.
3. With respect to Partnerships, please designate the General Partner(s), the Limited Partner(s), and the Managing General Partner.
4. With respect to Limited Liability Companies, please designate the members and the managing members.

The Applicant/Borrower certifies that the information provided above is true, accurate and complete.

BORROWER: MONTGOMERY SQUARE PARTNERSHIP
BY: WESTMONT LIMITED PARTNERSHIP
BY: VESTERRA CORPORATION

By: _____
        James R. Koller

Title: President

JH 01021

Montgomery Square Partnership
Ownership Structure

Montgomery Square Partnership  (general partnership)

**Ownership**

1    33.33%    *Vestmont Limited Partnership  (limited partnership)*

**Ownership**

| | | | | |
|---|---|---|---|---|
| 1 | 1.0% | Vesterra Corporation - general partner | 23-2388602 | 490 Norristown Road, Suite 151, Blue Bell, PA  19422 |
| 2 | 44.50% | James R. Koller - limited partner | 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 | 900 Andorra Road, Lafayette Hill, PA  19444 |
| 3 | 44.50% | Frank C. Palopoli - limited partner | 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 | 1017 Lorien Drive, Gwynedd, PA  19437 |
| 4 | 10.0% | Joseph P. Kelly - limited partner | 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 | 851 Wright Drive, Maple Glen, PA  19002 |

2    33.33%    *Vestmont Limited Partnership II (limited partnership)*

| | | | | |
|---|---|---|---|---|
| 1 | 1.0% | Vesterra Corporation - general partner | 23-2388602 | 490 Norristown Road, Suite 151, Blue Bell, PA  19422 |
| 2 | 38.28% | James R. Koller - limited partner | 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 | 900 Andorra Road, Lafayette Hill, PA  19444 |
| 3 | 38.28% | Frank C. Palopoli - limited partner | 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 | 1017 Lorien Drive, Gwynedd, PA  19437 |
| 4 | 22.44% | Joseph P. Kelly - limited partner | 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 | |

2    33.33%    *Vestmont Limited Partnership III (limited partnership)*

| | | | | |
|---|---|---|---|---|
| 1 | 1.0% | Vesterra Corporation - general partner | 20-0671819 | 490 Norristown Road, Suite 151, Blue Bell, PA  19422 |
| 2 | 66.17% | Koller Kelly Partnership - limited partnership | 20-0671932 | 490 Norristown Road, Suite 151, Blue Bell, PA  19422 |
| 3 | 32.83% | FCP GROUP LP | 20-0671819 | 490 Norristown Road, Suite 252, Blue Bell, PA  19422 |

JH 01022

Application No.

## EXHIBIT G
## BORROWER DUE DILIGENCE

Correspondent:

The Borrower, Applicant, the Guarantors, the Indemnitors, and Principal(s) of the Borrower and the Applicant, the Guarantors and the Indemnitors shall be responsible for completing or responding to Part I and Part II of this Exhibit H at the time of submission of the Application to John Hancock Life Insurance Company ("John Hancock").

The Principal(s) of the Borrower, the Applicant, the Guarantor(s) and the Indemnitor(s) are determined as follows:

- Any entity and/or individual who possesses management or operational control of the Borrower, the Applicant, the Guarantor(s) or the Indemnitor(s),
- Any person or entity possessing at least 25% of the ownership interest in the Borrower, the Applicant, the Guarantor(s) or the Indemnitor(s),
- In addition, for a general or limited partnership, the Principal(s) will be all general partners and the majority shareholder(s) of any corporate general partner,
- In addition, for a corporation, the Principal(s) will be the majority shareholder(s) of the Borrower,
- In addition, for a limited liability company, the Principal(s) will be the members and the general partners of any partnership member and the majority shareholder(s) of any corporate member.

## PART I

Provide John Hancock with the following information for each of the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), and each of their Principal(s),:

1) Financial statements (certified by a certified public accountant, if available) for the last year with a statement not more than 90 days old that there have been no material adverse changes since the date of the most recent statement. Such statements must include liquid assets (cash, stocks, bonds, marketable securities), non-liquid assets (real estate owned, businesses owned, ownership interests in other enterprises), cash flow (interest income, dividend income, wages, other income), liabilities and obligations (any refinancings during the term of the proposed mortgage, any partnership contributions or loans not yet made, any law suits, any personal guarantees or other contingent liabilities, current and potential tax obligations, any circumstances which may affect the individual or entity.)

2) For a corporate Borrower, Applicant, Guarantor(s), Indemnitor(s), corporate Principal(s) thereof, and major tenants or a REIT:

   a) Annual report for the last two years along with the most recent quarterly report (ex., 10K or 10Q for publicly traded companies and complete certified financial statements for the last two years for privately held companies).

   b) If not in the annual report, a detailed description of the business of the corporation,

3) Provide a social security number or tax identification number for each of the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), and each of their Principals.

4) Provide the country of domicile of each of the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), and each of their Principals and the home address of each Principal and the Guarantor(s) and the Indemnitor(s). USA

5) List other real estate assets in which the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), and each of their Principal(s) have an interest, including:

Application No.

    a)    Property type, location, size and occupancy.
    b)    Estimated market value, cash flow information, including effective gross income, expenses and net operating income.
    c)    Mortgage loan obligations, including each balance, rate (indicate whether fixed or floating), annual debt service, lender and whether recourse or non-recourse.
    d)    Any defaults, historically or currently.
    e) ·    Any modifications or restructurings, historically or currently.
    f)    Percentage of ownership interest.

6)    Describe the property management experience of the Borrower, the Applicant and their Principal(s), including property type, locations, sizes and conditions and ownership interest in any management companies. (If managed by other than the Borrower, the Applicant and each of their Principal(s), a description of the firm, including the year organized, type and variety of properties it manages, estimated number of units/square feet they manage).

7)    For the subject property, provide a statement of the acquisition or construction budget, including land acquisition cost, and a detailed list of subsequent capital expenditures, including when made. Include copies of internally or externally prepared audits indicating the capital improvements which should be made, if any, and a statement as to the capital improvements which are planned and their anticipated costs.

8)    Describe fully any financing which is secured by the Borrower's or the Applicant's interest in the entity which owns the subject real estate. (For example, debt which has as its collateral a limited partner's partnership interest or a corporate member's shares in the corporation.)

## TO BE COMPLETED BY EACH PRINCIPAL OF THE APPLICANT, BORROWER, GUARANTOR(S) AND INDEMNITOR(S)

### PART II

The Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), and each of their Principal(s) must each complete the questionnaire which appears below and, for that reason, several copies are attached. By their signature each of them hereby represents and warrants that the responses to the following questions are accurate and complete with regard to each of them and the undersigned acknowledges John Hancock's reliance thereon. The Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), and each of their Principal(s), agree to provide John Hancock with prompt written notice of any change in financial condition. Otherwise, John Hancock will be entitled to rely on the continuing accuracy of the information provided.

If a response to a question is "yes," provide a written explanation supplementing the answer.

| YES | NO | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1.) | Does the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), or any of their Principal(s) have any contingent liabilities (ex., endorser or co-maker on notes or guarantees, current or potential tax liabilities)? *See Financial Statements* |
| ☒ | ☐ | 2.) | Are any of the current assets of the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), or any of their Principal(s) pledged as collateral (ex., cash, marketable securities, certificates of deposit)? *See Financial Statements* |

JH 01024

Application No.

☐ ☑ 3.) Has the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), or any of their Principal(s) or any entity in which they hold or have held an ownership interest, been involved in any lawsuits which might result in financial judgments against them? *Not covered by insurance*

☐ ☑ 4.) Does the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), or any of their Principal(s), or any entity in which they hold or have held an ownership interest, have any unsatisfied judgments against them?

☐ ☑ 5.) Has the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), or any of their Principal(s), or any entity in which they hold or have held an ownership interest, been or are they in bankruptcy/insolvency/reorganization (whether voluntary or involuntary)?

☐ ☑ 6.) Has the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), or any of their Principal(s), or any entity in which they hold or have held an ownership interest, been foreclosed on or given deeds in lieu of foreclosure?

☐ ☑ 7.) Has the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), or any of their Principal(s), or any entity in which they hold or have held an ownership interest, been in default or been given relief (workout or restructuring by the lender under the terms of any mortgage loan, deed of trust or other financing agreement)?

☐ ☑ 8.) Has the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), or any of their Principal(s), or any entity in which they hold or have held an ownership interest, been or convicted of a felony or been the subject of a complaint or indictment charging a felony?

☐ ☑ 9.) Has the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), or any of their Principal(s), or any entity in which they hold or have held an ownership interest, ever borrowed funds from John Hancock or any affiliate of John Hancock? What is the status of those borrowings, regardless of whether outstanding or paid off?

☐ ☑ 10.) Do the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), or any. of their Principal(s), or any entity in which they hold or have held an ownership interest, hold an ownership interest in any of the tenants at the Real Estate Security?

Provide a list of banking and financial relationships of the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), and each of their Principals and provide at least three specific lender references for the Borrower, the Applicant, the Guarantor(s), the Indemnitor(s), and each of their Principals (individual contacts' names, addresses and telephone numbers) below. Include contact name and telephone number for the lender(s) holding the current mortgage(s) on the Real Estate Security.

Greg Hartid
Wilmington Trust of Pennsylvania
116 East Court Street
Doylestown, PA 18901
(267) 880-7002

Glenn Gallagher
Wachovia Bank
PA 1245, 123 South Broad Street, 15th Floor
Philadelphia, PA 19109
215-670-6522

The undersigned certifies that all of the information provided is accurate and complete.

Application No.

---

Signature of Borrower
Montgomery Square Partnership
By: Vestmont Limited Partnership
By: Vesterra Corporation

By: _____
James R. Koller
Its: President

23-2865711
Taxpayer Identification No..

---

Signature of Guarantor
Name:    James R. Koller
         900 Andorra Road
         Lafayette Hill, PA 19444

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
Social Security No.

---

Signature of Guarantor
Name:    Frank C. Palopoli
         1017 Lorien Drive
         Gwynedd, PA 19437

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
Social Security No.

---

Signature of Guarantor
Name:    Joseph P. Kelly
         851 Wright Drive
         Maple Glen, PA 19002

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
Social Security No.

JH 01026

## Montgomery Square Apartments

### Loan Budget

|  | Project Costs | Equity | Budget |
|---|---|---|---|
| Land | $7,680,000 | $4,823,801 | $2,856,199 |
| Site Work | $3,284,000 |  | $3,284,000 |
| Building Costs | $17,844,124 |  | $17,844,124 |
| Sewer | $1,543,500 |  | $1,543,500 |
| Water | $234,640 |  | $234,640 |
| Building Permits & Township Fees | $278,104 |  | $278,104 |
| Design & Engineering | $530,000 |  | $530,000 |
| Construction Loan | $263,660 |  | $263,660 |
| Permanent Loan | $300,490 |  | $300,490 |
| Taxes and Insurance | $260,000 |  | $260,000 |
| Miscellaneous Contingency | $1,279,243 |  | $1,279,243 |
| Marketing | $481,600 |  | $481,600 |
| Developer's Fee | $550,000 |  | $550,000 |
| Debt Funded Operating Costs | $100,000 |  | $100,000 |
| Interest | $926,440 |  | $926,440 |
|  | $35,555,801 | $4,823,801 | $30,732,000 |

JH 01027

## REPRESENTATIVE PROJECTS

- *East Gate Square*: 850,000 square foot shopping center located at the ramp from Interstate 295 and Nixon Drive, Mt. Laurel and Moorestown Townships, New Jersey. Anchored by Home Depot, Shop Rite Supermarket, Barnes & Noble Bookstore, Best Buy, Dick's Sporting Goods, Old Navy, CompUSA, Michael's Arts & Crafts and many other national retailers.

- *Montgomery Square*: 400,000 square foot shopping center located at Route 309 and Knapp Road, Montgomeryville, PA, and 256-unit apartment project currently under construction.

- *Normandy Farm*: 75 acres located at Route 202 and Morris Road, Whitpain Township, PA. Created new zoning district to facilitate the development of 76 single-family homes selling in the $700,000 range and the preservation of the largest barn in Montgomery County, an historic mansion and several other historic homes, which will be used for offices and a conference and banquet center.

- *Fawn Creek*: 109 acres located in a bucolic setting with a stream flowing through it on Hollow Road, Worcester Township, Montgomery County, PA. Developed for large lot (1.5 to 4 acres) single-family homes whose prices range from $800,000 to $1,700,000.

- *Mercer Square*: 91,400 square foot shopping center located at Route 611 and Old Dublin Pike, Doylestown, Pennsylvania, anchored by 44,000 square foot Genuardi Supermarket.

- *New Britain Village Square*: 140,000 square foot shopping center located at the intersection of Route 202 and County Line Road, Chalfont, Pennsylvania, anchored by Genuardi Supermarket, CVS Drugstore, McDonalds and First Union Bank.

- *Towamencin Shopping Village*: 140,000 square foot shopping center located at Forty Foot Road and Allentown Road, Towamencin Township, Pennsylvania, anchored by Genuardi Supermarket, Thrift Drug, Blockbuster and Wendy's.

- *Warwick Square*: 92,000 square foot shopping center located on Old York Road, Warwick Township, PA, anchored by Genuardi Supermarket, Blockbuster and McDonald's.

- *Dresher Plaza*: 96,500 square foot shopping center located at Limekiln Pike and Dreshertown Road, Dresher, Pennsylvania.

JH 01028

# TAB 2


**PARIS HILL**
**Realty Advisors**

<u>Invoice</u>   FTID# 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

May 10, 2006

Brian Davis, Esq.
Paul Popeo, Esq.
Choate Hall & Stewart LLP
Two International Place
Boston, MA 02110

<u>March, 2006 through May 5, 2006</u>

For Services Rendered as Expert Witness in Matter of John Hancock vs. Vesmont
Limited Partnership *et. al.*

Reviewing Materials,
Meetings with Counsel,
Expert Report Preparation,
Expert Testimony Preparation
Giving Expert Testimony in deposition,
And Preparing for Trial

31 Hours x $ 350 per hour

**Total Due:**   $ 10,850

*Please Make Checks Payable to Walter E. Mercer*   Walter E Mercer

*THANKS FOR YOUR BUSINESS!*

173 Oakleigh Road • Newton, MA 02458
(617) 721-5403 • (617) 965-9462 FAX
weverett1@aol.com



### Expert Witness Report of Walter E. Mercer

I currently am self-employed as a consultant under the name of Paris Hill Realty Advisors. I consult with real estate developers, owners, and other service firms on real estate capital matters. In that capacity I am involved in seeking and reviewing lender permanent debt commitments. In the immediate past, I was Senior Vice President in charge of Structured Finance at Spaulding & Slye in Boston. One of our primary businesses was the placement of permanent debt. Previously, I was an Executive Vice President at Fleet Bank in charge of Commercial Real Estate lending for Northern New England out of Boston (1992-1996). Before that, I was a Vice President, Regional Manager, and Division Credit Officer for the East Coast in the Commercial Real Estate Lending Group of Citicorp. In each of these positions I worked with long-term debt commitments for real estate projects. A copy of my curriculum vitae is attached.

I have been requested by John Hancock Life Insurance Company to address the following topics in my testimony.

### (1) The Standard Application Process for Commercial Real Estate Loans in the Industry.

For some time now, the commercial real estate industry has used an application process. Typically, a borrower would directly approach lenders to determine their interest in providing a loan. Alternatively, a borrower would hire a mortgage broker to approach a number of lending institutions on their behalf. A borrower would normally provide financials (both historical and prospective), a description of the property, some information on the market, and background as well as evidence of financial creditworthiness of the sponsors. In a number of cases lenders will issue a term sheet to a borrower, and if accepted the borrower will sign and return with a minimal deposit indicating their desire to proceed with that lender. That deposit is returnable if the lender does not issue a commitment in substantially the terms and condition outlined in the term sheet. The risk of this type of application process is that the loan is not yet fully underwritten, subject to much more due diligence, and subject to credit approval.

In the case of some life insurance companies, a more thorough process is used. In this instance, Hancock issued an application letter that when executed gave a full picture

1



of all the terms and conditions of the prospective loan.

(2) The John Hancock Commitment Which is the Subject of this Case.

Hancock has historically successfully utilized a more thorough application process than most of its industry competitors. While the underwriting is more thorough, and the time to agree on an application could be lengthier, when Hancock agrees to an application, a borrower knows they have seen the full extent of the offered commitment. Hancock's use of the application and supplement format is common to Hancock and not unusual in the industry. In the case of other lenders, many times the agreed application or commitment is not as thorough and key details such as representations and warranties, covenants, *etc.* have to be hammered out later.

(3) The Nature and Benefit of a Forward Commitment

The forward commitment is a common tool among long term lenders offered to borrowers. It essentially locks in the interest rate at which a borrower will close their loan at a later date. The benefit that flows to a borrower is substantial: it allows them to avoid future increase in rates even though they will not close the loan until some time in the future. Essentially, the lender commits to a fixed rate today for a future closing, and eliminates the risk to the borrower of heavier repayments due to higher interest rates.

This element of risk is clearly taken by the lender. While the borrower enters into a commitment and is afforded the protection against higher rates, they also give up their right to benefit if rates go down. Historically, many commercial real estate borrowers want the certainty of knowing how their property will financially perform.

2

(4) Contingencies in Loan Commitments.

In the commercial real estate industry, the vast majority of loan commitments contain future terms and conditions the outcomes of which are not yet known. In return for knowing they have a commitment for a loan, the borrower is aware that closing is still subject to some terms and conditions. At the time of commitment, no one can foresee the results of all final underwriting events. For example, most commitments are subject to third party appraisals of the property's value, and third party environmental reports. The lender wants to make sure they have not proposed a loan in excess of the market value or a loan on a site with environmental issues.

These are standard contingencies in a commitment and their final outcome is subject to the lender's sole satisfaction with their results. This is common practice in the commercial real estate lending industry, and experienced developers/borrowers are used to these common contingencies.

In the case of Hancock, developers know that when they have a Hancock commitment in hand, they know they have a real commitment fully explained and underwritten. Certainly no lender, including Hancock, would enjoy a good reputation if they had a common practice of issuing a commitment, not closing the loan due to some contingency, and taking the fees.

(5) Hancock's Underwriting Criteria and Use of it.

I have reviewed Hancock's underwriting criteria in effect at the time of this transaction. These are clearly intended as guidelines and not as hard and fast rules; and none of them are outside the usual criteria in the industry.

(6) Hancock's Use of its Underwriting Guidelines and the 10% Constant Were Normal in the Industry

The purpose of underwriting guidelines is to have a common template by which to assess the risk of a loan. No one can anticipate in a policy manual all of the exceptions that may come up in reality. Hence, underwriting criteria are intended as guidelines only. In most instances, a proposed loan never meets all of a lender's written guidelines; they

3

In most instances, a proposed loan never meets all of a lender's written guidelines; they are too numerous and not always applicable. Lenders need to decide which criteria are applicable and important in a particular case. Hancock, like other lenders regularly reviews it guidelines and it's both normal and appropriate to bend them to get a deal done. Lenders like Hancock often regularly review and update their criteria.

Internally, many lenders routinely change the assumptions upon which they judge the risk and use the guidelines. In this particular case, Hancock used as a benchmark a 10% underwriting constant. Many lenders use a common constant as one of many tools to judge a loan's creditworthiness. In fact, in looking at various ways to assess risk, different individuals within a lender will use different benchmarks. This is commonplace and works well as long as lenders do not change a commitment after its issuance. I see no evidence that Hancock changed its commitment in this case.

Commercial real estate lenders are in the business to make loans, create loyal customers, and attract repeat business. Hence, they need to have flexible templates. Indeed, in this instance Hancock went outside their criteria to approve this loan. This is customary and usual for lenders trying to close a loan.

### (7) Hancock's Behavior was Reasonable

Hancock is a longstanding successful long-term lender in commercial real estate that enjoys an excellent reputation in the industry. In this case, they issued a very thorough forward commitment. None of their actions as outlined in the case information appear to me to be unreasonable, unfair, or deceptive. Their actions appear to be consistent with what I am familiar with in relationships between experienced lenders and sophisticated commercial real estate owners/developers.

Walter S. Mercer
Walter E. Mercer

Date: March 24, 2006

4

# WALTER E. MERCER
173 Oakleigh Road
Newton, MA 02158
E-Mail: WEVERETT1@aol.com
Home: 617-969-1669
Office: 617-721-5403

## EXPERIENCE

| | |
|---|---|
| 2002-Present | **Paris Hill Realty Advisors** |

Founded own consulting firm working with developers, owners, and corporations on wide array of corporate and real estate capital issues.
Currently have six corporate and developer clients and actively engaged in raising over $600mm in equity and debt.

1998 – 2002    **SPAULDING & SLYE**
Boston, MA

Senior Vice President, Structured Finance Team

Recruited to start up a Structured Finance Team focusing on raising equity, debt, and advisory work for national and regional real estate developers. Designed and implemented a Corporate Real Estate Finance program for Corporations. Company Results (including D.C. office):

- Executed  over $1.4Bn in total transactions for clients in last two years
- Placed  $ 795MM in debt.
- Initiated concentrated Sale-Leaseback effort resulting in global placements of $ 310MM
- Succesfully placed over $ 330 MM in equity.

1992 - 1998    **FLEET NATIONAL BANK**
Boston, MA

Executive Vice President, Commercial Real Estate

Brought in to build a new commercial real estate division in Northern New England.  Initiated critical strategic changes resulting in Fleet becoming leading commercial real estate bank in Massachusetts.

- Segmented, targeted and converted 61 new customers in three years.
- Realized $1.9B in new commitments over three years.
- Designed and implemented cash management strategy, quadrupling service fees to $2MM in three years.
- Personally brought in over $300MM in deposits in 1997.
- Redesigned sales force delivery team which resulted in expense elimination of over $1MM.
- Created and initiated Fleet's national base of success in the Low Income Housing Tax Credit business with over $400MM in new commitments.

Resume - Walter E. Mercer
Page 2

- Consolidated equity investments in Low Income Housing Tax Credits realizing a $5MM gain.
- Successful integration of Shawmut Real Estate Group and reorganization which eliminated $1MM in operating expenses.

1991 - 1992        **CREAMER REALTY CONSULTANTS**
New York/Boston

Regional Director

One of three original employees of this start-up firm that broke even after seven months of operation.

- Successfully completed over $1.5B of real estate debt and equity restructures; achieved debt and equity commitments for new mixed use project in Hungary.
- Tripled running rate of billings in 15 months to over $750M personally.
- Won contract and completed total evaluation and restructure of the real estate group for a $10B bank.

1989-1990        Bank of New England

SVP in charge of Boston Real Estate Group

1973 - 1991        CITICORP/CITIBANK
New York/Boston

1989-1991        Deputy Division Credit officer

Directed credit activities of 13 offices on East Coast with total portfolio of $7.5B. Final approval for all new transactions, restructures and Oreo sales. Led real estate team in 1990 negotiations with OCC for determining loss provision.

1985-1989        Regional Director

Responsible for Boston then Connecticut commercial real estate offices. Built portfolio from $125MM to $1.65B.

1982-1985        Relationship Manager and Team Leader

Responsible for commercial customers on East Coast and in New England.

1980-1981        Vice President
1978-1980        Assistant Vice President
1976-1978        Account Officer

Resume - Walter E. Mercer
Page 3

## EDUCATION

| 1973 | AB | HARVARD COLLEGE<br>Boston, MA<br>Degree:  History, *cum laude* |
|---|---|---|
| 1982 | | UNIVERSITY OF PITTSBURGH<br>Pittsburgh, PA<br>Advanced Management Program |

## AWARDS AND RECOGNITIONS

| 1997 | Recipient - Legends Award from The New England Affordable Housing Association |
|---|---|
| 1992 - Present | Director of Massachusetts Housing Investment Corporation.  Recently Vice Chairman of the Board. Chairman of Credit Committee |
| 1990 - 1991 | President, Business Associates Club<br>(100 distinguished young Boston area business leaders 40 and under) |

| 1997-Present | Trustee, Fessenden School |
|---|---|
| 1996-2003 | YMCA of Greater Boston, Past Director, and member Real Estate Committee |
| 1992-Present | Mass. Housing Investment Corp.-Director |
| 2004-Present | Trustee, Kents Hill School |

| Member | REFA, NAIOP, MBA, ULI |
|---|---|

JOHN HANCOCK LIFE INSURANCE COMPANY V. VESTERRA, ET AL.

### List of Documents Reviewed by Walter E. Mercer

- Complaint (8/3/05).

- Defendants' Answer and Counterclaim (9/6/05).

- Plaintiff John Hancock Life Insurance Company's Motion for Preliminary Injunctive Relief Prohibiting Defendants from Disposing of Certain Assets (2/8/06).

- Plaintiff John Hancock Life Insurance Company's Memorandum of Law in Support of Its Motion for Preliminary Injunctive Relief Prohibiting Defendants from Disposing of Certain Assets (2/8/06).

- Affidavit of Brian A. Davis in Support of Plaintiff John Hancock Life Insurance Company's Motion for Preliminary Injunctive Relief Prohibiting Defendants from Disposing of Certain Assets (2/8/06).

- Affidavit of John P. Ferrie in Support of Plaintiff John Hancock Life Insurance Company's Motion for Preliminary Injunctive Relief Prohibiting Defendants from Disposing of Certain Assets (2/8/06).

- Affidavit of Timothy J. Malik in Support of Plaintiff John Hancock Life Insurance Company's Motion for Preliminary Injunctive Relief Prohibiting Defendants from Disposing of Certain Assets (2/13/06).

- Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction (2/13/06).

- Plaintiff John Hancock Life Insurance Company's Motion for Summary Judgment and supporting documents (3/1/06).

- Plaintiff John Hancock Life Insurance Company's Memorandum of Law in Support of Its Motion for Summary Judgment (3/1/06).

- John Hancock Real Estate Finance Group Lending Guidelines (1/25/05).

- John Hancock Life Insurance Co. and John Hancock Real Estate Finance, Inc. Lending Guidelines (MFC Investment Guidelines effective 11/4/04).

- Manulife Financial Mortgage Credit Policy (April 2004).

- Manulife Credit Procedures (Investment Guidelines effective 4/26/04).

# TAB 3



**STONETURN**
GROUP

March 28, 2006
Invoice No:    2235

Brian A. Davis, Esq.
Choate, Hall & Stewart LLP
Two International Place
Boston, MA  02110

Matter        M01.CHHS01        Choate Hall Stewart / Hancock Life Ins.

<u>**Professional Services rendered from March 1, 2006 to March 31, 2006**</u>

**Professional Services**

|  | Hours | Rate | Amount |  |
|---|---|---|---|---|
| Platt, Simon | 22.90 | 425.00 | 9,732.50 |  |
| Michaud, Carolyn | 52.70 | 250.00 | 13,175.00 |  |
| Totals | 75.60 |  | 22,907.50 |  |
|  |  |  |  | **22,907.50** |

**Invoice Total:    $22,907.50**



**STONE TURN**
GROUP

May 12, 2006
Invoice No:    2309

Brian A. Davis, Esq.
Choate, Hall & Stewart LLP
Two International Place
Boston, MA  02110

Matter        M01.CHHS01        Choate Hall Stewart / Hancock Life Ins.

**Professional Services rendered from March 1, 2006 to May 31, 2006**

**Professional Services**

| | Hours | Rate | Amount | |
|---|---|---|---|---|
| Partner | | | | |
| Platt, Simon | 70.50 | 425.00 | 29,962.50 | |
| | | | | |
| Manager | | | | |
| Michaud, Carolyn | 75.45 | 250.00 | 18,862.50 | |
| | | | | |
| Sr. Consultant | | | | |
| Dennis, Joshua | 5.25 | 150.00 | 787.50 | |
| Wilson, Brad | 1.50 | 200.00 | 300.00 | |
| | | | | |
| Totals | 152.70 | | 49,912.50 | |
| | | | | **49,912.50** |

| | | | | |
|---|---|---|---|---|
| **Reimbursable Expenses** | | | | |
| Car/Cab/Parking | | | 45.00 | |
| | | | **45.00** | **45.00** |
| | | | | |
| | | | **Invoice Total:** | **49,957.50** |

**Less Cash received 4/25/2006**                                   **(22,907.50)**

**Total Due**                                                       **$27,050.00**

## Billing Backup

**StoneTurn Group, LLP**                    **Invoice 2309 Dated 5/12/06**

| Matter | M01.CHHS01 | Choate Hall Stewart / Hancock Life Ins. |

| **Professional Services:** | **Hours** | **Rate** | **Amount** |
|---|---|---|---|
| *Various Meetings with Counsel* | | | |
| Simon Platt | 6.40 | 425.00 | 2,720.00 |
| Carolyn Michaud | 9.50 | 250.00 | 2,375.00 |
| | | | 5,095.00 |
| *Various Meetings and discussions with company personnel* | | | |
| Simon Platt | 7.40 | 425.00 | 3,145.00 |
| Carolyn Michaud | 8.00 | 250.00 | 2,000.00 |
| | | | 5,145.00 |
| *Review of relevant documents including loan contract, depositions, etc.* | | | |
| Simon Platt | 7.80 | 425.00 | 3,315.00 |
| Carolyn Michaud | 12.00 | 250.00 | 3,000.00 |
| | | | 6,315.00 |
| *Calculations and analysis of loan cash flows and alternative investments* | | | |
| Simon Platt | 9.70 | 425.00 | 4,122.50 |
| Carolyn Michaud | 13.00 | 250.00 | 3,250.00 |
| | | | 7,372.50 |
| *Research regarding various debt instruments, cash positions, etc.* | | | |
| Carolyn Michaud | 2.00 | 250.00 | 500.00 |
| Brad Wilson | 1.50 | 200.00 | 300.00 |
| Joshua Dennis | 5.25 | 150.00 | 787.50 |
| | | | 1,587.50 |

| Matter | M01.CHHS01 | Choate Hall Stewart / Hancock Life Ins. | | Invoice 2309 | |
|---|---|---|---|---|---|

| Billing Backup | Invoice 2309 Dated 5/12/06 | | | *Friday, May 12, 2006 - 12:09:46 PM* |
|---|---|---|---|---|

### *Preparation of Expert Report*

| | | | |
|---|---|---|---|
| Simon Platt | 3.50 | 425.00 | 1,487.50 |
| Carolyn Michaud | 10.20 | 250.00 | 2,550.00 |
| | | | 4,037.50 |

### *Preparation for and testimony at deposition*

| | | | |
|---|---|---|---|
| Simon Platt | 13.70 | 425.00 | 5,822.50 |
| Carolyn Michaud | 6.50 | 250.00 | 1,625.00 |
| | | | 7,447.50 |

### *Provided assistance with the deposition of opposing expert*

| | | | |
|---|---|---|---|
| Simon Platt | 7.30 | 425.00 | 3,102.50 |
| Carolyn Michaud | 3.75 | 250.00 | 937.50 |
| | | | 4,040.00 |

### *Preparation for and testimony at trial*

| | | | |
|---|---|---|---|
| Simon Platt | 14.70 | 425.00 | 6,247.50 |
| Carolyn Michaud | 10.50 | 250.00 | 2,625.00 |
| | | | 8,872.50 |

| | | | | |
|---|---|---|---|---|
| Totals | 152.70 | | 49,912.59 | |
| | | | | 49,912.50 |

**Reimbursable Expenses**
Car/Cab/Parking

| | | | |
|---|---|---|---|
| EX 0000449 | 4/12/06 Michaud, Carolyn | 12.00 | |
| EX 0000474 | 5/4/06 Michaud, Carolyn / Trial | 33.00 | |
| | | 45.00 | 45.00 |

| | |
|---|---|
| **Total Amount Due** | 49,957.50 |

| | |
|---|---|
| Less Cash received 4/25/2006 | (22,907.50) |

| | |
|---|---|
| **Total Due** | $27,050.00 |

| | |
|---|---|
| In re: John Hancock Life Insurance Company v. | ) |
| Vestmont Limited Partnership, Vestmont Limited | ) |
| Partnership II, Vestmont Limited Partnership III, | ) |
| and Vesterra Corporation d/b/a Montgomery Square | ) |
| Partnership | ) |

**AMENDED EXPERT REPORT OF SIMON PLATT**
**On Behalf of Plaintiff John Hancock Life Insurance Company**

**(FED. R. CIV. P. 26(a)(2)(B))**

**EXHIBIT**

CE

tabbies

## I.    INTRODUCTION

I, Simon Platt, am a Partner in the Boston office of StoneTurn Group, LLP ("StoneTurn"). StoneTurn is a national Forensic Accounting and Dispute Consulting firm. Specifically, I provide accounting and financial consulting services primarily to companies and to counsel to companies. I am a Certified Public Accountant and Fellow of the Institute of Chartered Accountants in England & Wales, with over twenty five years of audit and forensic accounting experience. Prior to joining StoneTurn, I was a partner at Deloitte & Touche LLP ("Deloitte"). During my tenure with Deloitte I led the Global Forensic Audit Assistance program, the National Forensic Investigative Services Group and the New York and Boston Dispute Consulting practices. At Deloitte, as both an audit partner and a forensic partner, I worked with a wide range of clients from large multinational public companies to smaller, privately held enterprises.

At StoneTurn, I have led many client projects including financial and damage analyses, forensic accounting engagements and forensic technology projects. A complete copy of my current curriculum vitae, which summarizes my qualifications and professional experience, is attached as **Tab 1**. Attached as **Tab 2** to this report is a listing, to the best of my recollection, of my deposition, arbitration and trial testimony over the preceding five years. A listing of the articles I have published and presentations made in the past ten years is attached as **Tab 3**.

StoneTurn has been compensated in this matter based on the number of hours incurred plus out-of-pocket costs. Our fees for this engagement are not contingent on the results in this matter, and have been charged based on hourly rates ranging from $250 to $450, depending upon the level of the professional staff involved. My firm will bill approximately $20,000 through the date of this report in connection with this matter.

This analysis has been prepared based upon the information available to date; in the event additional information becomes available I reserve the right to amend my opinion.

## II.    ENGAGEMENT

StoneTurn has been retained by the law firm of Choate Hall & Stewart LLP ("Counsel") to assist Counsel in their representation of John Hancock Life Insurance Company ("Hancock") in the matter of *In re: John Hancock Life Insurance Company v. Vestmont Limited Partnership et al.* and to offer certain opinions in this matter. Specifically, I (and others working under my direction, collectively "we") have been asked to offer an opinion as to the amount of damages reasonably incurred by Hancock as a result of the failure of Vestmont Limited Partnership et al.

("Defendants") to close the Commitment for a First Mortgage Loan (the "Loan").

## III.    WORK PERFORMED AND INFORMATION CONSIDERED

In order to assess the amount of damages, if any, incurred by Hancock as a result of the Defendants' failure to close the Loan, we considered information from a variety of sources in the course of our work. A listing of the documents primarily relied upon in forming my opinion is attached as **Tab 4**. In addition we also:

- Obtained and reviewed the Loan Application No. 6518467 submitted to Hancock on or about July 30, 2004 ("Loan Commitment")

- Obtained and analyzed financial data relating to the Loan

- Reviewed the interest rate of 10 year Treasury Bills and Prime Rate in 2004 and 2005

- Met with Ms. Joan Uzadavinis, Hancock's Corporate Designee, and reviewed Ms. Uzadavinis's deposition transcript

- Obtained and reviewed various legal filings and pleadings in this matter

- Reviewed the website at www.avenelapartments.com.

## IV.    BACKGROUND

Hancock is one of the country's largest insurance companies. Hancock provides a broad array of insurance and investment products to retail and institutional customers, primarily in North America. The Real Estate Investment Group of Hancock principally provides variable and fixed rate commercial mortgage loans on substantial properties, including large residential apartment complexes.

We understand Vesterra Corporation is the general partner of Vestmont Limited Partnership, Vestmont Limited Partnership II, and Vestmont Limited Partnership III. Vestmont Limited Partnership, Vestmont Limited Partnership II, and Vestmont Limited Partnership III are each General Partners of Montgomery Square Partners ("Montgomery").

Montgomery is the owner of a 256-unit residential apartment complex located in North Wales, Pennsylvania. On or about August 17, 2004, Hancock and Montgomery entered into the Loan Commitment, whereby Hancock agreed to finance, and Montgomery agreed to accept, a

mortgage loan on the residential apartment complex, mentioned above, in the amount of $32,000,000 (the "Loan").

Montgomery applied for the Loan on or about July 30, 2004 by completing the "Application to John Hancock Life Insurance Company for a First Mortgage Loan" ("Application"). We understand the Application was accepted by Hancock on August 17, 2004. Section 27 (b) of the Loan Commitment requires that, once Hancock accepts the Application and forwards an executed copy to Montgomery, Montgomery is committed to close the Loan within twelve months and draw the committed funds.

Once the Application was accepted and approved, Hancock allocated such assets for funding the Loan in August 2004 for close by August 1, 2005, unless extended by Montgomery (which we understand did not occur).

## V.    SUMMARY OF OPINION

Based on the information and the documents that we have reviewed and the procedures and analyses performed as discussed herein, I have found Hancock reasonably suffered net damages aggregating approximately $4,600,000 as a result of the Defendants' failure to close the Loan. Alternative measures of Hancock's damages amount to approximately $2,700,000 and $6,900,000; it is my opinion that the $4,600,000 is the most reasonable of these alternatives.

## VI.    BASIS FOR OPINION

Overall, Hancock has incurred damages in connection with the Loan, which did not close as committed, resulting from:

- The difference between the interest Hancock would have earned on the Loan and earnings on alternative investment vehicles, and

- the costs of hedging the forward element of the Loan (Hancock's twelve month interest rate commitment at August 2004 contained in the Loan)

Hancock had much more than sufficient cash to fund this Loan. As a result of the Defendants' failure to close the Loan, Hancock lost the opportunity to lend at the agreed upon interest rates. Therefore, Hancock had to invest the $32,000,000 as part of the overall Hancock Money Market operation, which earns significantly lower returns than commercial real estate loans, and than the Loan's rate.

### *Absence of Alternative Investment Opportunities*

Based on our review of Hancock's cash balances and through discussions with Joan Uzdavinis, Assistant Vice President, Hancock had funds significantly in excess of Hancock's minimum liquidity guideline of $250,000,000[1]. Hancock's cash balance as of June 30, 2005 was approximately $715,000,000. Accordingly, Hancock's commitment to fund the $32,000,000 Loan did not impact Hancock's ability to participate in any similar commercial real estate loans.

Additionally, based on discussions with Ms. Uzdavinis, Hancock has not been fully invested under its' internal liquidity guidelines, and in 2004 and 2005 was actively looking for additional suitable investment opportunities.

Generally, many companies are facing difficulties in finding appropriate investment opportunities; there was a lot of capital available to be invested in 2004 and 2005:

- *"S&P 500 companies are sitting on $601 billion in cash and cash equivalents".* ("Flush with cash, Corporate America Sits Tight", Reuters News, February 25, 2005)

- *"Wall Street's top investment banks are accelerating stock buybacks to boost returns on equity that face being weighed down by growing cash piles boosted by robust earning and waning investment opportunities in the fixed-income sector."* ("Wall St. Banks Boost Buybacks as Cash Piles Up", Reuters News, February 10, 2005)

- *"The biggest factor pressuring companies to initiate or increase dividends is money. Executives are swimming in excess cash and don't know what to do with it. Growth opportunities are limited, so companies are reluctant to spend aggressively to expand or buy other companies"*("Fall and Rise of Dividends", The Boston Globe, November 2, 2004)

- *"In my view, however, companies are not truly hoarding cash; rather, they are swimming in it......More broadly, however, the explosion in cash has been so intense that even profligate companies haven't been able to invest it fast enough. The accumulation of the excess has given companies massive liquidity and concurrently produces a dearth of corporate borrowing."* ("What Will Corporate America Do with the Cash?" Morgan Stanley Webcast, August 6, 2004)

---

[1] JH01382 – JH01384

We have considered three alternative bases of measuring the damages reasonably incurred by Hancock as a result of the Defendants' failure to close the Loan (see exhibit A). Each alternative takes the interest Hancock would have earned on the Loan, offset by interest Hancock would have earned by investing the $32,000,000 of committed funds in:

- Hancock's Money Market operation (short-term investment pool, which includes investments in overnight balances and certificates of deposit)

- Ten year Treasury Bills, and

- A hypothetical commercial real estate loan of $32,000,000 over ten years on or about August 1, 2005 at the then current interest rates

Clearly, it is possible for interest rates to vary widely over short time periods both generally and in the period of the Loan Commitment.

Money Market Operations (Exhibit A-1)

At August 1, 2005, the Money Market Operations at Hancock were investing funds and generating returns of approximately 3.47%[2]. Investing the $32,000,000 which was made available by the failure to close the Loan, in Money Market Funds results in net damages due Hancock of approximately $6,904,000.

Ten year Treasury Bills (Exhibit A-2)

The rate on ten year Treasury Bills on August 1, 2005 was 4.30%[3]. Investing the $32,000,000, made available by the failure to close the Loan, in ten year Treasury Bills (the same term as the Loan) results in net damages due Hancock of approximately $4,600,000.

Hypothetical Commercial Real Estate Loan (Exhibit A-3)

Members of Hancock's Real Estate Investment Group considered a hypothetical comparable real estate deal based on rates in June 2005, which is when we understand Hancock was notified that the Defendants were unlikely to close the Loan. This hypothetical investment results in net damages due Hancock of approximately $2,700,000, based on the June 2005 current market rate for a ten year commercial real estate loan of $32,000,000 (ten year Treasury Bill rate plus 120 basis points). However, based on discussions with Hancock employees, such a comparable investment was not available, and Hancock had surplus cash to invest in any such investment, irrespective of the funds made available by the Defendants' failure to close the Loan.

---

[2] Actual average earning rate for John Hancock's money market fund for the month of August, 2005

[3] Opening Interest Rate for US Ten Year Treasury Bills on August 1, 2005

*Hedging the Interest Rate Commitment*

During the period of the twelve month Loan Commitment (August 2004 to August 2005), Hancock had committed to fund the Loan at an agreed-upon interest rate of 6.18%. This rate would not have changed, regardless of the then-current rates on the date of the Loan close. The ten year Treasury Bill rate was approximately 4.48% on August 2, 2004 and approximately 4.34% on August 2, 2005. To offset interest-rate risks generally, for the Loan and all Hancock anticipated cash flow obligations, Hancock enters into various hedging instruments[4]. Hancock has estimated the cost of hedging the Loan at August 2004 would have been approximately $86,000. However, as it is not possible to specifically match a hedge to this Loan, we have not included any such amount in our damage calculation.

## VII.    CONCLUSION

Under the three alternative damage calculations, the Money Market calculation does not match the fixed term of the Loan, and accordingly may not be the best measure of Hancock's actual damages over the term of the Loan. Similarly, the hypothetical real estate transaction was not realistically available at August 1, 2005 and does not include the effect of a twelve month forward interest rate lock included in the Loan, and therefore likely understates Hancock's damages. Based on the information and the documents that I have reviewed and the analyses performed by StoneTurn as discussed herein, I have calculated Hancock reasonably suffered net damages of approximately $4,600,000 as a result of the Defendants' failure to close the Loan, based on the mitigation that would have been offered by ten year Treasury Bills at August 1, 2005, the same term as the Loan.

Signed this 21st day of April, 2006 in Boston, Massachusetts.

_____

Simon D. Platt

---

[4] Deposition of Joan Uzadavinis, Draft Version, page 72

# TAB 1



**SIMON D. PLATT, CPA, FCA**
**Partner**

**CAREER HIGHLIGHTS**

Simon co-founded StoneTurn Group in March, 2004 after more than twenty three years with Deloitte. Simon joined Deloitte's UK audit practice in 1980, transferring to the Boston office in 1985. He became a US audit partner in 1995, serving principally retail, consumer product and professional service clients. He formed and led the Boston office Financial Advisory Services practice, then principally litigation support, in 1998 while still in the audit practice, fully transitioning his audit responsibilities in 2000. Simon led that practice, which ultimately included more than sixty forensic accounting, litigation support, reorganization and economic consulting professionals, through 2003, when he transferred to lead the combined 250 person New York and Boston practices. Additionally, Simon served as the National Partner for the Forensic and Investigative Services Group, leading more than 300 professionals (including 25 computer forensic specialists) across the US, and started and led the firm's Forensic Audit Assistance program from 2002 through 2004.

His extensive audit background includes working with a wide range of companies, from large multi-national public companies to smaller, privately held enterprises on a variety of business issues. This background has allowed Simon the ability to work with a variety of different industries in a variety of matters, including business analysis, damage quantification, market analysis, revenue recognition concerns, accounting record reconstruction, purchase price disputes, SEC investigations, royalty and license commitments and entitlements and fraud investigations. Simon has experience in all aspects of dispute consulting, including strategy discussions, pre-trial analysis and testimony in traditional judicial, arbitration and mediation proceedings.

Simon has extensive litigation consulting, forensic and auditing experience. A brief description of some of his relevant experiences follows:

**PROFESSIONAL**
**EXPERIENCE:**

- Has participated in, managed and led a number of engagements dealing with damage analysis and consideration of market forces, including quantifying the value of disputed Summer Olympic sponsorship by a prominent sportswear manufacturer, the analysis of a local insurance market and quantifying the benefit of promotional sponsorship for a major US beer importer and distributor.

- Has served as an expert witness in various matters dealing with multi-million dollar claims, including where the contested issues involved the application of Generally Accepted Accounting Principles. These matters have included testimony concerning revenue recognition criteria as well as the accepted application of the definition of various balance sheet accounts (see attached testimony details.)

- Has participated in, managed and led multiple engagements on behalf of Deloitte dealing with SEC reporting issues. These engagements have included the assessment of revenue recognition policies and the propriety of financial reporting for public companies. These engagements have included the assessment of revenue recognition criteria including accounting for reserves, capitalization issues, promotional allowances, Software Revenue Recognition criteria (SOPs 91-1 and 97-2) and those standards enumerated in Staff Accounting Bulletin 101.



**SIMON D. PLATT, CPA, FCA**
**Partner**

- Has led multiple forensic accounting investigations performed at the request of the Boards of Directors. These engagements have included the assessment of revenue recognition policies of a software company, assessment of an alleged fraudulent financial reporting issues including recognition of revenue from software and hardware sales, sales practices and terms, round trip transactions and expense capitalization, concluding in reports to the Audit Committee and Board.

- Has served as an audit partner for clients in the distribution, publishing, high-tech and consumer product industries. These clients have included software company audits and have required analyses of royalty agreements, the assessment of the application revenue recognition standards and the assessment of software capitalization (see attached summary of audit experience.)

**PREVIOUS EXPERIENCE:**

Deloitte & Touche LLP (1980 – 2004)
    Partner-in-Charge – New York and Boston Dispute Consulting Groups
    National Partner-in-Charge - Forensic and Investigative Services
    Global Partner-in-Charge – Forensic Audit Assistance program
    Member – Deloitte's Managing Partner Advisory Committee
    Member – Deloitte's Innovation Service Board
    Audit Partner

**PROFESSIONAL AFFILIATIONS/ OTHER:**

- Member, American Institute of Certified Public Accountants
- Member, Massachusetts Society of Certified Public Accountants
- Fellow, Institute of Chartered Accountants in England and Wales
- Licensed CPA in Massachusetts and New York
- Board Member, Appleseeds
- Former Member and Chair, Town of Carlisle Finance Committee
- Working knowledge of French and Spanish

**EDUCATION:**

B.A. (Econ.), University of Manchester, U.K.
Advanced Management Program, Harvard Business School

# TAB 2



**SIMON D. PLATT, CPA, FCA**
Partner

## TESTIMONY:

| | | |
|---|---|---|
| **2000** | *Sullivan et al v. Utica Insurance* | Engaged as an expert to perform a lost customers/lost profits damages analysis<br>Deposition and Massachusetts State Court Testimony |
| **2001** | *Arthur Blasberg, Jr., as Successor Trustee v. Oxbow Power Corporation* | Engaged as an expert in a partnership accounting dispute<br>Deposition Testimony |
| | *Berkshire Manufacturing v. Doug Molin, et al* | Engaged as an expert in a purchase price dispute matter that involved various revenue recognition and accounting issues<br>Arbitration Testimony |
| | *Guinness Bass Import Company v. Fleadh Festivals LLC* | Engaged as an expert to determine damages in a breach of contract dispute regarding market issues<br>Deposition Testimony<br>Case No. 01 CV 3069 (SAS) (JCF) |
| | *Varian, Inc. v. Varian Semi-Conductor* | Engaged as an expert in Generally Accepted Accounting Principles in a matter revolving around accounting definitional issues<br>Deposition and Arbitration Testimony<br>American Arbitration Association Proceeding #74-Y-181-00506-00 |
| **2002** | *Fugio, Ltd. v. John A. Bersani* | Engaged as an expert in a partnership accounting dispute<br>Deposition Testimony<br>Case No. 01-10601-REK |



**STONETURN**
GROUP

SIMON D. PLATT, CPA, FCA
Partner

| | | |
|---|---|---|
| **2004** | *Jarvis et al v. Royal Numico N.V. et al* | Engaged as a rebuttal expert to damages analysis including accounting and statistical analysis of consumer product sales and markets<br>Deposition Testimony<br>Case No. CGC-02-403532 |
| | *Eric Jaeger v. Enterasys Networks, Inc.* | Engaged as witness to certain accounting and financial reporting matters<br>Arbitration Testimony<br>American Arbitration Association<br>Proceeding # 11 116 01405 04 |
| **2005** | *Nigel Carr v. Kirshenbaum Bond & Partners, Inc. et al* | Engaged as expert witness in an employment matter, relating to an analysis of certain business operations.<br>Deposition Testimony<br>Superior Court of California<br>Case No. CGC-04-428805 |
| | *Enterasys Networks, Inc. v. Gulf Insurance Company and Clarendon National Insurance Company* | Fact witness in an insurance claim matter relating to costs of prior forensic accounting engagement<br>Deposition Testimony<br>U.S. District Court<br>Case # 1:04-CV-27-SM |
| | *Woods Hole Endowment Fund et al. v. Lipper Holdings, LLC et al.* | Expert witness in a damage claim arising from losses incurred following fraudulent financial reporting<br>Arbitration Testimony<br>NASD Dispute Resolution<br>Case No. 04-00933 |
| **2006** | *Applera Corporation v. Beckman Coulter, Inc.* | Engaged as expert witness to damages in a licensing dispute in the medical device field<br>Deposition Testimony<br>Superior Court of California<br>Case No. 05-438449 |

# TAB 3

# STONETURN
### GROUP

**SIMON D. PLATT, CPA, FCA**
**Partner**

## REPRESENTATIVE PRESENTATIONS:

- Several presentations to Boston College JD/MBA course - "Internal Controls and Causes of Fraud." - 1996 through 2000, "Forensic Accounting Concepts and Principles" – 2005.

- Training for Federal Judges - "Accounting and Financial Reporting" - 1998

- Boston College Distinguished Speaker to the Carroll Business School - "Accountants' Role in Corporate Governance." - 1998

- Association of Government Accountants, Boston -"Causes of Financial and Mitigating Controls." - 1999

- Financial Management Association Annual Meeting – "Role of Financial Experts in Complex Litigation." - 2000

- Fixed Income Analysts Society of New York, Securities Industry Forum – "Developments in Forensic Corporate Investigations" – 2003

- MCLE Panel – "Arbitration of Complex Business Cases" – 2006

- Presented at many Deloitte internal conferences and training sessions on forensic investigations, Sarbanes-Oxley requirements and forensic audit framework and techniques.

## PUBLICATIONS:

- "Investigative Accountants Waging the War on Corporate Fraud", Boston Business Journal 1999

- "Blue Ribbon Blues – A Discussion of the New Audit Committee Requirements for Public Companies." – 2000

# TAB 4

**Listing of Documents Considered – Tab 4**

- John Hancock Life Insurance Company v. Vestmont Limited Partnership et al. Complaint, Amended Counterclaim and Plaintiff's Response to Defendants' First Set of Interrogatories

- Supplemental Affidavit of Timothy J. Malik in Support of Plaintiff John Hancock Life Insurance Company's Motion for Summary Judgment

- Application to John Hancock Life Insurance Company for a First Mortgage Loan, Application No. 6518467

- Various Loan Documents (JH01128 – JH01148)

- The following websites: www.federalreserve.gov and www.avenelapartments.com

- "Flush with Cash, Corporate America Sits Tight", Reuters News, February 25, 2005

- "Wall St. Banks Boost Buybacks as Cash Piles Up", Reuters News, February 10, 2005

- "Fall and Rise of Dividends", The Boston Globe, November 2, 2004

- "What Will Corporate America Do with the Cash?", Morgan Stanley Webcast, August 6, 2004

- Deposition Transcripts of Ms. Uzadavinis, Mr. Kohler, Mr. Malik, Mr. Ferrie, Mr. Palopoli and Mr. Kelly

- John Hancock Cash Balances (JH01382 – JH01420)

# EXHIBIT A

**Hancock's Damages Resulting from the Defendants' Failure to Close the Loan**
**Alternative 1 - Money Market Fund**

| | |
|---|---:|
| Loan Term | 120 |
| Monthly Constant Payments | 119 |
| Loan Amount | 32,000,000.00 |
| Monthly Constant | 195,574.96 |
| Balloon Payment | 27,102,623.63 |
| Money Market Interest Rate for August 2005 | 3.47% |
| Discount Rate | 0.0028709810 |

### *Calculation of Hancock's Damages*

| | | |
|---|---|---:|
| PV Monthly Constant | $ | 19,690,659 |
| PV of Balloon Payment | | 19,213,371 |
| | | |
| Total PV of Payments | | 38,904,030 |
| Less Loan amount | | (32,000,000) |
| | | |
| Total Damages | $ | 6,904,030 |

**Hancock's Damages Resulting from the Defendants' Failure to Close the Loan**
**Alternative 2 - Ten Year Treasury Bills**

| | |
|---|---|
| Loan Term | 120 |
| Monthly Constant Payments | 119 |
| Loan Amount | 32,000,000.00 |
| Monthly Constant | 195,574.96 |
| Balloon Payment | 27,102,623.63 |
| 10 yr. Treasury rate as of 8/1/05 | 4.3% |
| Discount Rate | 0.0035516480 |

### *Calculation of Hancock's Damages*

| | | |
|---|---|---|
| PV Monthly Constant | $ | 18,953,634 |
| PV of Balloon Payment | | 17,711,034 |
| | | |
| Total PV of Payments | | 36,664,668 |
| Less Loan amount | | (32,000,000) |
| | | |
| Total Damages | $ | 4,664,668 |

**Hancock's Damages Resulting from the Defendants' Failure to Close the Loan**
**Alternative 3 – Comparable Real Estate Investment**

| | |
|---|---:|
| Loan Term | 120 |
| Monthly Constant Payments | 119 |
| Loan Amount | 32,000,000.00 |
| Monthly Constant | 195,574.96 |
| Balloon Payment | 27,102,623.63 |
| Interest Rate on Comparable Loan | 5.09% |
| Discount Rate | 0.0041973750 |

*Calculation of Hancock's Damages*

| | | |
|---|---|---:|
| PV Monthly Constant | $ | 18,289,485 |
| PV of Balloon Payment | | 16,395,381 |
| | | |
| Total PV of Payments | | 34,684,866 |
| Less Loan amount | | (32,000,000) |
| | | |
| Total Damages | $ | 2,684,866 |

**GRAPH - 10 YR T-BILLS & PRIME RATE**
**Period of August 2, 2004 - March 13, 2006**

| DATE | 10 YR T-BILL RATE | PRIME RATE |
|------|-------------------|------------|
| 8/2/04 | 4.48 | 4.25 |
| 8/3/04 | 4.45 | 4.25 |
| 8/4/04 | 4.45 | 4.25 |
| 8/5/04 | 4.43 | 4.25 |
| 8/6/04 | 4.24 | 4.25 |
| 8/9/04 | 4.28 | 4.25 |
| 8/10/04 | 4.32 | 4.50 |
| 8/11/04 | 4.30 | 4.50 |
| 8/12/04 | 4.27 | 4.50 |
| 8/13/04 | 4.22 | 4.50 |
| 8/16/04 | 4.26 | 4.50 |
| 8/17/04 | 4.21 | 4.50 |
| 8/18/04 | 4.23 | 4.50 |
| 8/19/04 | 4.22 | 4.50 |
| 8/20/04 | 4.24 | 4.50 |
| 8/23/04 | 4.28 | 4.50 |
| 8/24/04 | 4.28 | 4.50 |
| 8/25/04 | 4.26 | 4.50 |
| 8/26/04 | 4.22 | 4.50 |
| 8/27/04 | 4.23 | 4.50 |
| 8/30/04 | 4.19 | 4.50 |
| 8/31/04 | 4.13 | 4.50 |
| 9/1/04 | 4.13 | 4.50 |
| 9/2/04 | 4.20 | 4.50 |
| 9/3/04 | 4.30 | 4.50 |
| 9/7/04 | 4.26 | 4.50 |
| 9/8/04 | 4.18 | 4.50 |
| 9/9/04 | 4.22 | 4.50 |
| 9/10/04 | 4.19 | 4.50 |
| 9/13/04 | 4.16 | 4.50 |
| 9/14/04 | 4.15 | 4.50 |
| 9/15/04 | 4.18 | 4.50 |
| 9/16/04 | 4.08 | 4.50 |
| 9/17/04 | 4.14 | 4.50 |
| 9/20/04 | 4.07 | 4.50 |
| 9/21/04 | 4.05 | 4.75 |
| 9/22/04 | 4.00 | 4.75 |
| 9/23/04 | 4.02 | 4.75 |
| 9/24/04 | 4.04 | 4.75 |
| 9/27/04 | 4.01 | 4.75 |

| | | |
|---|---|---|
| 9/28/04 | 4.02 | 4.75 |
| 9/29/04 | 4.10 | 4.75 |
| 9/30/04 | 4.14 | 4.75 |
| 10/1/04 | 4.21 | 4.75 |
| 10/4/04 | 4.19 | 4.75 |
| 10/5/04 | 4.18 | 4.75 |
| 10/6/04 | 4.23 | 4.75 |
| 10/7/04 | 4.26 | 4.75 |
| 10/8/04 | 4.15 | 4.75 |
| 10/12/04 | 4.12 | 4.75 |
| 10/13/04 | 4.09 | 4.75 |
| 10/14/04 | 4.03 | 4.75 |
| 10/15/04 | 4.07 | 4.75 |
| 10/18/04 | 4.07 | 4.75 |
| 10/19/04 | 4.07 | 4.75 |
| 10/20/04 | 4.01 | 4.75 |
| 10/21/04 | 4.01 | 4.75 |
| 10/22/04 | 4.00 | 4.75 |
| 10/25/04 | 3.99 | 4.75 |
| 10/26/04 | 4.01 | 4.75 |
| 10/27/04 | 4.11 | 4.75 |
| 10/28/04 | 4.09 | 4.75 |
| 10/29/04 | 4.05 | 4.75 |
| 11/1/04 | 4.11 | 4.75 |
| 11/2/04 | 4.10 | 4.75 |
| 11/3/04 | 4.09 | 4.75 |
| 11/4/04 | 4.10 | 4.75 |
| 11/5/04 | 4.21 | 4.75 |
| 11/8/04 | 4.22 | 4.75 |
| 11/9/04 | 4.22 | 4.75 |
| 11/10/04 | 4.25 | 5.00 |
| 11/12/04 | 4.20 | 5.00 |
| 11/15/04 | 4.20 | 5.00 |
| 11/16/04 | 4.21 | 5.00 |
| 11/17/04 | 4.14 | 5.00 |
| 11/18/04 | 4.12 | 5.00 |
| 11/19/04 | 4.20 | 5.00 |
| 11/22/04 | 4.18 | 5.00 |
| 11/23/04 | 4.19 | 5.00 |
| 11/24/04 | 4.20 | 5.00 |
| 11/26/04 | 4.24 | 5.00 |
| 11/29/04 | 4.34 | 5.00 |
| 11/30/04 | 4.36 | 5.00 |
| 12/1/04 | 4.38 | 5.00 |
| 12/2/04 | 4.40 | 5.00 |
| 12/3/04 | 4.27 | 5.00 |

| | | |
|---|---|---|
| 12/6/04 | 4.24 | 5.00 |
| 12/7/04 | 4.23 | 5.00 |
| 12/8/04 | 4.14 | 5.00 |
| 12/9/04 | 4.19 | 5.00 |
| 12/10/04 | 4.16 | 5.00 |
| 12/13/04 | 4.16 | 5.00 |
| 12/14/04 | 4.14 | 5.25 |
| 12/15/04 | 4.09 | 5.25 |
| 12/16/04 | 4.19 | 5.25 |
| 12/17/04 | 4.21 | 5.25 |
| 12/20/04 | 4.21 | 5.25 |
| 12/21/04 | 4.18 | 5.25 |
| 12/22/04 | 4.21 | 5.25 |
| 12/23/04 | 4.23 | 5.25 |
| 12/27/04 | 4.30 | 5.25 |
| 12/28/04 | 4.31 | 5.25 |
| 12/29/04 | 4.33 | 5.25 |
| 12/30/04 | 4.27 | 5.25 |
| 12/31/04 | 4.24 | 5.25 |
| 1/3/05 | 4.23 | 5.25 |
| 1/4/05 | 4.29 | 5.25 |
| 1/5/05 | 4.29 | 5.25 |
| 1/6/05 | 4.29 | 5.25 |
| 1/7/05 | 4.29 | 5.25 |
| 1/10/05 | 4.29 | 5.25 |
| 1/11/05 | 4.26 | 5.25 |
| 1/12/05 | 4.25 | 5.25 |
| 1/13/05 | 4.20 | 5.25 |
| 1/14/05 | 4.23 | 5.25 |
| 1/18/05 | 4.21 | 5.25 |
| 1/19/05 | 4.20 | 5.25 |
| 1/20/05 | 4.17 | 5.25 |
| 1/21/05 | 4.16 | 5.25 |
| 1/24/05 | 4.14 | 5.25 |
| 1/25/05 | 4.20 | 5.25 |
| 1/26/05 | 4.21 | 5.25 |
| 1/27/05 | 4.22 | 5.25 |
| 1/28/05 | 4.16 | 5.25 |
| 1/31/05 | 4.14 | 5.25 |
| 2/1/05 | 4.15 | 5.25 |
| 2/2/05 | 4.15 | 5.50 |
| 2/3/05 | 4.18 | 5.50 |
| 2/4/05 | 4.09 | 5.50 |
| 2/7/05 | 4.07 | 5.50 |
| 2/8/05 | 4.05 | 5.50 |
| 2/9/05 | 4.00 | 5.50 |

| | | |
|---|---|---|
| 2/10/05 | 4.07 | 5.50 |
| 2/11/05 | 4.10 | 5.50 |
| 2/14/05 | 4.08 | 5.50 |
| 2/15/05 | 4.10 | 5.50 |
| 2/16/05 | 4.16 | 5.50 |
| 2/17/05 | 4.19 | 5.50 |
| 2/18/05 | 4.27 | 5.50 |
| 2/22/05 | 4.29 | 5.50 |
| 2/23/05 | 4.27 | 5.50 |
| 2/24/05 | 4.29 | 5.50 |
| 2/25/05 | 4.27 | 5.50 |
| 2/28/05 | 4.36 | 5.50 |
| 3/1/05 | 4.38 | 5.50 |
| 3/2/05 | 4.38 | 5.50 |
| 3/3/05 | 4.39 | 5.50 |
| 3/4/05 | 4.32 | 5.50 |
| 3/7/05 | 4.31 | 5.50 |
| 3/8/05 | 4.38 | 5.50 |
| 3/9/05 | 4.52 | 5.50 |
| 3/10/05 | 4.48 | 5.50 |
| 3/11/05 | 4.56 | 5.50 |
| 3/14/05 | 4.52 | 5.50 |
| 3/15/05 | 4.54 | 5.50 |
| 3/16/05 | 4.52 | 5.50 |
| 3/17/05 | 4.47 | 5.50 |
| 3/18/05 | 4.51 | 5.50 |
| 3/21/05 | 4.53 | 5.50 |
| 3/22/05 | 4.63 | 5.75 |
| 3/23/05 | 4.61 | 5.75 |
| 3/24/05 | 4.60 | 5.75 |
| 3/28/05 | 4.64 | 5.75 |
| 3/29/05 | 4.60 | 5.75 |
| 3/30/05 | 4.56 | 5.75 |
| 3/31/05 | 4.50 | 5.75 |
| 4/1/05 | 4.46 | 5.75 |
| 4/4/05 | 4.47 | 5.75 |
| 4/5/05 | 4.48 | 5.75 |
| 4/6/05 | 4.44 | 5.75 |
| 4/7/05 | 4.49 | 5.75 |
| 4/8/05 | 4.50 | 5.75 |
| 4/11/05 | 4.45 | 5.75 |
| 4/12/05 | 4.38 | 5.75 |
| 4/13/05 | 4.38 | 5.75 |
| 4/14/05 | 4.37 | 5.75 |
| 4/15/05 | 4.27 | 5.75 |
| 4/18/05 | 4.27 | 5.75 |

| | | |
|---|---|---|
| 4/19/05 | 4.21 | 5.75 |
| 4/20/05 | 4.22 | 5.75 |
| 4/21/05 | 4.32 | 5.75 |
| 4/22/05 | 4.26 | 5.75 |
| 4/25/05 | 4.26 | 5.75 |
| 4/26/05 | 4.28 | 5.75 |
| 4/27/05 | 4.25 | 5.75 |
| 4/28/05 | 4.19 | 5.75 |
| 4/29/05 | 4.21 | 5.75 |
| 5/2/05 | 4.21 | 5.75 |
| 5/3/05 | 4.21 | 6.00 |
| 5/4/05 | 4.20 | 6.00 |
| 5/5/05 | 4.19 | 6.00 |
| 5/6/05 | 4.28 | 6.00 |
| 5/9/05 | 4.29 | 6.00 |
| 5/10/05 | 4.23 | 6.00 |
| 5/11/05 | 4.21 | 6.00 |
| 5/12/05 | 4.18 | 6.00 |
| 5/13/05 | 4.12 | 6.00 |
| 5/16/05 | 4.13 | 6.00 |
| 5/17/05 | 4.12 | 6.00 |
| 5/18/05 | 4.07 | 6.00 |
| 5/19/05 | 4.11 | 6.00 |
| 5/20/05 | 4.13 | 6.00 |
| 5/23/05 | 4.07 | 6.00 |
| 5/24/05 | 4.04 | 6.00 |
| 5/25/05 | 4.08 | 6.00 |
| 5/26/05 | 4.08 | 6.00 |
| 5/27/05 | 4.08 | 6.00 |
| 5/31/05 | 4.00 | 6.00 |
| 6/1/05 | 3.91 | 6.00 |
| 6/2/05 | 3.89 | 6.00 |
| 6/3/05 | 3.98 | 6.00 |
| 6/6/05 | 3.96 | 6.00 |
| 6/7/05 | 3.92 | 6.00 |
| 6/8/05 | 3.95 | 6.00 |
| 6/9/05 | 3.98 | 6.00 |
| 6/10/05 | 4.05 | 6.00 |
| 6/13/05 | 4.09 | 6.00 |
| 6/14/05 | 4.13 | 6.00 |
| 6/15/05 | 4.12 | 6.00 |
| 6/16/05 | 4.09 | 6.00 |
| 6/17/05 | 4.09 | 6.00 |
| 6/20/05 | 4.11 | 6.00 |
| 6/21/05 | 4.06 | 6.00 |
| 6/22/05 | 3.95 | 6.00 |

| | | |
|---|---|---|
| 6/23/05 | 3.96 | 6.00 |
| 6/24/05 | 3.92 | 6.00 |
| 6/27/05 | 3.90 | 6.00 |
| 6/28/05 | 3.97 | 6.00 |
| 6/29/05 | 3.99 | 6.00 |
| 6/30/05 | 3.94 | 6.25 |
| 7/1/05 | 4.06 | 6.25 |
| 7/5/05 | 4.11 | 6.25 |
| 7/6/05 | 4.08 | 6.25 |
| 7/7/05 | 4.05 | 6.25 |
| 7/8/05 | 4.11 | 6.25 |
| 7/11/05 | 4.11 | 6.25 |
| 7/12/05 | 4.15 | 6.25 |
| 7/13/05 | 4.17 | 6.25 |
| 7/14/05 | 4.19 | 6.25 |
| 7/15/05 | 4.18 | 6.25 |
| 7/18/05 | 4.22 | 6.25 |
| 7/19/05 | 4.20 | 6.25 |
| 7/20/05 | 4.17 | 6.25 |
| 7/21/05 | 4.28 | 6.25 |
| 7/22/05 | 4.23 | 6.25 |
| 7/25/05 | 4.25 | 6.25 |
| 7/26/05 | 4.24 | 6.25 |
| 7/27/05 | 4.27 | 6.25 |
| 7/28/05 | 4.20 | 6.25 |
| 7/29/05 | 4.28 | 6.25 |
| 8/1/05 | 4.32 | 6.25 |
| 8/2/05 | 4.34 | 6.25 |
| 8/3/05 | 4.30 | 6.25 |
| 8/4/05 | 4.32 | 6.25 |
| 8/5/05 | 4.40 | 6.25 |
| 8/8/05 | 4.42 | 6.25 |
| 8/9/05 | 4.41 | 6.50 |
| 8/10/05 | 4.40 | 6.50 |
| 8/11/05 | 4.32 | 6.50 |
| 8/12/05 | 4.24 | 6.50 |
| 8/15/05 | 4.27 | 6.50 |
| 8/16/05 | 4.23 | 6.50 |
| 8/17/05 | 4.28 | 6.50 |
| 8/18/05 | 4.21 | 6.50 |
| 8/19/05 | 4.21 | 6.50 |
| 8/22/05 | 4.22 | 6.50 |
| 8/23/05 | 4.20 | 6.50 |
| 8/24/05 | 4.19 | 6.50 |
| 8/25/05 | 4.18 | 6.50 |
| 8/26/05 | 4.20 | 6.50 |

| | | |
|---|---|---|
| 8/29/05 | 4.20 | 6.50 |
| 8/30/05 | 4.16 | 6.50 |
| 8/31/05 | 4.02 | 6.50 |
| 9/1/05 | 4.02 | 6.50 |
| 9/2/05 | 4.03 | 6.50 |
| 9/6/05 | 4.09 | 6.50 |
| 9/7/05 | 4.15 | 6.50 |
| 9/8/05 | 4.15 | 6.50 |
| 9/9/05 | 4.14 | 6.50 |
| 9/12/05 | 4.18 | 6.50 |
| 9/13/05 | 4.14 | 6.50 |
| 9/14/05 | 4.17 | 6.50 |
| 9/15/05 | 4.22 | 6.50 |
| 9/16/05 | 4.26 | 6.50 |
| 9/19/05 | 4.25 | 6.50 |
| 9/20/05 | 4.26 | 6.75 |
| 9/21/05 | 4.19 | 6.75 |
| 9/22/05 | 4.19 | 6.75 |
| 9/23/05 | 4.25 | 6.75 |
| 9/26/05 | 4.30 | 6.75 |
| 9/27/05 | 4.30 | 6.75 |
| 9/28/05 | 4.26 | 6.75 |
| 9/29/05 | 4.29 | 6.75 |
| 9/30/05 | 4.34 | 6.75 |
| 10/3/05 | 4.39 | 6.75 |
| 10/4/05 | 4.38 | 6.75 |
| 10/5/05 | 4.36 | 6.75 |
| 10/6/05 | 4.37 | 6.75 |
| 10/7/05 | 4.35 | 6.75 |
| 10/11/05 | 4.39 | 6.75 |
| 10/12/05 | 4.45 | 6.75 |
| 10/13/05 | 4.48 | 6.75 |
| 10/14/05 | 4.48 | 6.75 |
| 10/17/05 | 4.50 | 6.75 |
| 10/18/05 | 4.49 | 6.75 |
| 10/19/05 | 4.47 | 6.75 |
| 10/20/05 | 4.46 | 6.75 |
| 10/21/05 | 4.39 | 6.75 |
| 10/24/05 | 4.45 | 6.75 |
| 10/25/05 | 4.54 | 6.75 |
| 10/26/05 | 4.60 | 6.75 |
| 10/27/05 | 4.57 | 6.75 |
| 10/28/05 | 4.58 | 6.75 |
| 10/31/05 | 4.57 | 6.75 |
| 11/1/05 | 4.58 | 7.00 |
| 11/2/05 | 4.61 | 7.00 |

| | | |
|---|---|---|
| 11/3/05 | 4.65 | 7.00 |
| 11/4/05 | 4.66 | 7.00 |
| 11/7/05 | 4.65 | 7.00 |
| 11/8/05 | 4.57 | 7.00 |
| 11/9/05 | 4.64 | 7.00 |
| 11/10/05 | 4.55 | 7.00 |
| 11/14/05 | 4.61 | 7.00 |
| 11/15/05 | 4.56 | 7.00 |
| 11/16/05 | 4.49 | 7.00 |
| 11/17/05 | 4.46 | 7.00 |
| 11/18/05 | 4.50 | 7.00 |
| 11/21/05 | 4.46 | 7.00 |
| 11/22/05 | 4.43 | 7.00 |
| 11/23/05 | 4.47 | 7.00 |
| 11/25/05 | 4.43 | 7.00 |
| 11/28/05 | 4.41 | 7.00 |
| 11/29/05 | 4.48 | 7.00 |
| 11/30/05 | 4.49 | 7.00 |
| 12/1/05 | 4.52 | 7.00 |
| 12/2/05 | 4.52 | 7.00 |
| 12/5/05 | 4.57 | 7.00 |
| 12/6/05 | 4.49 | 7.00 |
| 12/7/05 | 4.52 | 7.00 |
| 12/8/05 | 4.47 | 7.00 |
| 12/9/05 | 4.54 | 7.00 |
| 12/12/05 | 4.56 | 7.00 |
| 12/13/05 | 4.54 | 7.25 |
| 12/14/05 | 4.45 | 7.25 |
| 12/15/05 | 4.47 | 7.25 |
| 12/16/05 | 4.45 | 7.25 |
| 12/19/05 | 4.45 | 7.25 |
| 12/20/05 | 4.47 | 7.25 |
| 12/21/05 | 4.49 | 7.25 |
| 12/22/05 | 4.44 | 7.25 |
| 12/23/05 | 4.38 | 7.25 |
| 12/27/05 | 4.34 | 7.25 |
| 12/28/05 | 4.38 | 7.25 |
| 12/29/05 | 4.37 | 7.25 |
| 12/30/05 | 4.39 | 7.25 |
| 1/3/06 | 4.37 | 7.25 |
| 1/4/06 | 4.36 | 7.25 |
| 1/5/06 | 4.36 | 7.25 |
| 1/6/06 | 4.38 | 7.25 |
| 1/9/06 | 4.38 | 7.25 |
| 1/10/06 | 4.43 | 7.25 |
| 1/11/06 | 4.46 | 7.25 |

| | | |
|---|---|---|
| 1/12/06 | 4.42 | 7.25 |
| 1/13/06 | 4.36 | 7.25 |
| 1/17/06 | 4.34 | 7.25 |
| 1/18/06 | 4.34 | 7.25 |
| 1/19/06 | 4.38 | 7.25 |
| 1/20/06 | 4.37 | 7.25 |
| 1/23/06 | 4.36 | 7.25 |
| 1/24/06 | 4.40 | 7.25 |
| 1/25/06 | 4.49 | 7.25 |
| 1/26/06 | 4.53 | 7.25 |
| 1/27/06 | 4.52 | 7.25 |
| 1/30/06 | 4.54 | 7.25 |
| 1/31/06 | 4.53 | 7.50 |
| 2/1/06 | 4.57 | 7.50 |
| 2/2/06 | 4.57 | 7.50 |
| 2/3/06 | 4.54 | 7.50 |
| 2/6/06 | 4.55 | 7.50 |
| 2/7/06 | 4.57 | 7.50 |
| 2/8/06 | 4.56 | 7.50 |
| 2/9/06 | 4.54 | 7.50 |
| 2/10/06 | 4.59 | 7.50 |
| 2/13/06 | 4.58 | 7.50 |
| 2/14/06 | 4.62 | 7.50 |
| 2/15/06 | 4.61 | 7.50 |
| 2/16/06 | 4.59 | 7.50 |
| 2/17/06 | 4.54 | 7.50 |
| 2/21/06 | 4.57 | 7.50 |
| 2/22/06 | 4.53 | 7.50 |
| 2/23/06 | 4.56 | 7.50 |
| 2/24/06 | 4.58 | 7.50 |
| 2/27/06 | 4.59 | 7.50 |
| 2/28/06 | 4.55 | 7.50 |
| 3/1/06 | 4.59 | 7.50 |
| 3/2/06 | 4.64 | 7.50 |
| 3/3/06 | 4.68 | 7.50 |
| 3/6/06 | 4.74 | 7.50 |
| 3/7/06 | 4.74 | 7.50 |
| 3/8/06 | 4.73 | 7.50 |
| 3/9/06 | 4.74 | 7.50 |
| 3/10/06 | 4.76 | 7.50 |

# TAB 4

# CHOATE

CHOATE HALL & STEWART LLP

Nathaniel Margolis, Esq.
John Hancock Financial Services, Inc.
200 Clarendon Street
T-30
Boston, MA 02117

September 29, 2005
Client/Matter No. 2004810-0004
Invoice No. 1235751
Brian A. Davis

## INVOICE SUMMARY
(See attached pages for detail)

**Re: John Hancock v. Avenel**

FOR PROFESSIONAL SERVICES rendered through August 31, 2005 in
connection with the above matter as more fully detailed on the attached pages:

| | |
|---|---:|
| Total Professional Services | $10,579.70 |
| Total Expenses | 715.79 |
| **Total Amount of this Invoice** | **$11,295.49** |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 2
September 29, 2005
Invoice No. 1235751

## SUMMARY OF PROFESSIONAL SERVICES

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| Brian A. Davis | 11.30 | $494.00 | $5,582.20 |
| Lisa M. Gaulin | 15.00 | $299.25 | $4,488.77 |
| Jennifer E. Tracy | 2.10 | $242.25 | $508.73 |
| **Total Professional Services** | **28.40** | | **$10,579.70** |

## SUMMARY OF EXPENSES

| Code | Description | Total |
|---|---|---|
| 010 | Courier | $23.75 |
| 150 | Photocopies | $83.25 |
| 206 | On-Line Legal Research | $1.04 |
| 209 | Filing and Fees | $250.00 |
| 211 | Other Professional Services | $357.75 |
| | **Total Expenses** | **$715.79** |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 3
September 29, 2005
Invoice No. 1235751

## HOURS DETAIL

| <u>Date</u> | <u>Timekeeper</u> | <u>Description of Work</u> | <u>Hours</u> | <u>Rate</u> | <u>Amount</u> |
|---|---|---|---|---|---|
| 07/26/05 | B. Davis | John Hancock/Avenel: Conf. with client; review background materials. | 1.00 | $494.00 | $494.00 |
| 08/01/05 | L. Gaulin | (John Hancock) Conference with BAD regarding                              .; review of client documents and communications; drafted complaint. | 5.10 | $299.25 | $1,526.18 |
| 08/01/05 | B. Davis | T.c. to J. Leveroni; review LOC materials; t.c. to N. Greenspan; t.c. with T. Rogers re                         .; t.c. w. client re                     ; disc. w. L. Gaulin re | 1.80 | $494.00 | $889.20 |
| 08/02/05 | L. Gaulin | Attention to complaint, including review and edits to same; multiple conferences with BAD regarding              research regarding . preparation for filing complaint. | 3.90 | $299.25 | $1,167.08 |
| 08/02/05 | J. Tracy | Meet with B. Davis; research on | 2.10 | $242.25 | $508.73 |
| 08/02/05 | B. Davis | Review and revise draft Complaint against Avenel; forward same to clients; meeting with client re                   ; make further revisions to Complaint; | 4.00 | $494.00 | $1,976.00 |
| 08/03/05 | B. Davis | Attend to filing of Complaint; disc. w. L. Gaulin re :     ; e-mail to client re | 0.70 | $494.00 | $345.80 |
| 08/03/05 | L. Gaulin | (John Hancock) Attention to filing complaint, cover sheet and category sheet; e-mails to B. Davis regarding | 3.10 | $299.25 | $927.68 |
| 08/04/05 | B. Davis | Check on status of LOC; e-mails to White and Williams re same; t.c. with client; t.c. to B. Friedman re new action; | 0.70 | $494.00 | $345.80 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 4
September 29, 2005
Invoice No. 1235751

| <u>Date</u> | <u>Timekeeper</u> | <u>Description of Work</u> | <u>Hours</u> | <u>Rate</u> | <u>Amount</u> |
|---|---|---|---|---|---|
| 08/08/05 | B. Davis | Rev. corresp.; t.c. to B. Friedman re | 0.30 | $494.00 | $148.20 |
| 08/09/05 | B. Davis | T.c. w. client re ; ; t.c. w. clients re same; revise and send out same; | 1.00 | $494.00 | $494.00 |
| 08/12/05 | B. Davis | T.c. to opposing counsel; prep. and send to clients; disc. w. L. Gaulin re | 0.60 | $494.00 | $296.40 |
| 08/12/05 | L. Gaulin | Attention to serving summonses and complaint; calls and e-mail to B. Davis regarding | 2.60 | $299.25 | $778.05 |
| 08/16/05 | B. Davis | Rev. e-mail from client; respond to same; t.c. to same. | 0.30 | $494.00 | $148.20 |
| 08/22/05 | B. Davis | Check on status of service of summons and complaint; t.c. to client re same; | 0.30 | $494.00 | $148.20 |
| 08/22/05 | L. Gaulin | Telephone call with B. Davis regarding | 0.10 | $299.25 | $29.93 |
| 08/26/05 | B. Davis | Disc. w. L. Gaulin re t | 0.20 | $494.00 | $98.80 |
| 08/26/05 | L. Gaulin | Attention to issues regarding | 0.20 | $299.25 | $59.85 |
| 08/29/05 | B. Davis | Rev. message re : t.c. w. opposing counsel re appearance and timing of response; t.c. to client re | 0.40 | $494.00 | $197.60 |
| | | **Total Hours and Amount** | **28.40** | | **$10,579.70** |

# CHOATE

CHOATE HALL & STEWART LLP

# REMITTANCE

Nathaniel Margolis, Esq.
John Hancock Financial Services, Inc.
200 Clarendon Street
T-30
Boston, MA 02117

September 29, 2005
Client/Matter No. 2004810-0004
Invoice No. 1235751
Brian A. Davis

---

**Re: John Hancock v. Avenel**

For professional services rendered through August 31, 2005.

**Total Amount of this Invoice**                          **$11,295.49**

---

## PLEASE RETURN THIS PAGE WITH YOUR PAYMENT.

*Payment is due upon receipt.*

**Mailed/Check Remittance**

Payable to:   Choate, Hall & Stewart LLP
Address:      Two International Place
              Boston, MA 02110-4104
Attn:         Collections Department

**Wire Instructions**

Bank:         Bank of America
Address:      100 Federal Street
              Boston, MA 02110
ABA #:        0260-0959-3
For Credit To:  Choate, Hall & Stewart LLP
              Account #00000542-2720
Please Reference in Wiring   1235751 /
Information:   2004810-0004

# CHOATE

CHOATE HALL & STEWART LLP

Nathaniel Margolis, Esq.
John Hancock Financial Services, Inc.
200 Clarendon Street
T-30
Boston, MA 02117

November 30, 2005
Client/Matter No. 2004810-0004
Invoice No. 1238826
Brian A. Davis

## INVOICE SUMMARY

**Re:    John Hancock v. Avenel**

FOR PROFESSIONAL SERVICES rendered through October 31, 2005 in
connection with the above matter as more fully detailed on the attached pages:

| | |
|---|---:|
| Total Professional Services | $13,562.70 |
| Total Expenses | 1,070.75 |
| **Total Amount of this Invoice** | **$14,633.45** |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 2
November 30, 2005
Invoice No. 1238826

## SUMMARY OF PROFESSIONAL SERVICES

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| Brian A. Davis | 15.40 | $494.00 | $7,607.60 |
| Lisa M. Gaulin | 19.90 | $299.25 | $5,955.10 |
| **Total Professional Services** | **35.30** | | **$13,562.70** |

## SUMMARY OF EXPENSES

| Code | Description | Total |
|---|---|---|
| 010 | Courier | $27.50 |
| 115 | Lexis Research | $442.00 |
| 155 | WestLaw Research | $596.13 |
| 206 | On-Line Legal Research | $5.12 |
| | **Total Expenses** | **$1,070.75** |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 3
November 30, 2005
Invoice No. 1238826

## HOURS DETAIL

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 09/06/05 | L. Gaulin | Reviewed defendants' answer and counterclaim; telephone call with B. Davis regarding | 0.30 | $299.25 | $89.78 |
| 09/06/05 | B. Davis | Receive and review defendants' Answer and Counterclaim; discussion with L. Gaulin re: | 0.60 | $494.00 | $296.40 |
| 09/07/05 | B. Davis | E-mail to client re: | 0.20 | $494.00 | $98.80 |
| 09/12/05 | L. Gaulin | Research regarding | 0.20 | $299.25 | $59.85 |
| 09/14/05 | L. Gaulin | Attention to drafting answer to counterclaim and affirmative defenses. | 3.40 | $299.25 | $1,017.45 |
| 09/18/05 | L. Gaulin | Research regarding | 1.00 | $299.25 | $299.25 |
| 09/19/05 | B. Davis | Review and revise draft Answer to Counterclaim; circulate same to client. | 0.80 | $494.00 | $395.20 |
| 09/21/05 | B. Davis | Review client e-mail; telephone call with client; telephone call to opposing counsel re: possible sale of property; e-mail to client re: | 0.60 | $494.00 | $296.40 |
| 09/21/05 | L. Gaulin | Attention to preparation for scheduling conference; e-mail to client regarding | 1.40 | $299.25 | $418.95 |
| 09/22/05 | B. Davis | Conference call with opposing counsel re: rumored sale of property; telephone call to client re:        ; e-mail to opposing counsel re: same. | 0.60 | $494.00 | $296.40 |
| 09/22/05 | L. Gaulin | Attention to review of plaintiff's answer to counterclaim and e-mails to B. Davis and client regarding | 0.10 | $299.25 | $29.93 |
| 09/26/05 | L. Gaulin | Attention to reviewing Answer to Counterclaim; filed and served same. | 1.80 | $299.25 | $538.65 |



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                      Page 4
Re: John Hancock v. Avenel                       November 30, 2005
Client/Matter No. 2004810-0004                     Invoice No. 1238826

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 09/26/05 | B. Davis | Review and revise Answer to counterclaim. | 0.60 | $494.00 | $296.40 |
| 09/27/05 | L. Gaulin | Attention to initial disclosures. | 0.50 | $299.25 | $149.63 |
| 09/28/05 | L. Gaulin | Attention to drafting initial disclosures. | 1.20 | $299.25 | $359.10 |
| 09/29/05 | L. Gaulin | Attention to initial disclosures. | 0.80 | $299.25 | $239.40 |
| 10/03/05 | B. Davis | E-mail to opposing counsel re Scheduling Conf.; | 0.20 | $494.00 | $98.80 |
| 10/04/05 | B. Davis | E-mail to opposing counsel re scheduling order; | 0.10 | $494.00 | $49.40 |
| 10/06/05 | B. Davis | Review corresp. re pro hac vice motions; respond to same; | 0.10 | $494.00 | $49.40 |
| 10/12/05 | L. Gaulin | Attention to Rule 16 joint statement. | 0.20 | $299.25 | $59.85 |
| 10/12/05 | B. Davis | Telephone call with R. Hillman re: conference with opposing counsel re: discovery scheduling; telephone call to client re: | 0.40 | $494.00 | $197.60 |
| 10/13/05 | B. Davis | Discussion with L. Gaulin re: conference with opposing counsel; begin preparation for scheduling conference. | 0.50 | $494.00 | $247.00 |
| 10/13/05 | L. Gaulin | Attention to drafting joint statement; e-mail to B. Davis regarding | 1.90 | $299.25 | $568.58 |
| 10/14/05 | L. Gaulin | Conference with defendants' counsel regarding | 0.20 | $299.25 | $59.85 |
| 10/14/05 | B. Davis | Prepare for conference call with opposing counsel; finish revisions to Joint Statement; circulate to opposing counsel; telephone call to client re:          e-mail to same; participate in conference call with opposing counsel; telephone call to client re: | 2.60 | $494.00 | $1,284.40 |
| 10/17/05 | B. Davis | Telephone call to client re:          draft First Request for Production. | 2.00 | $494.00 | $988.00 |
| 10/18/05 | L. Gaulin | Reviewed initial disclosures and draft document requests; conference with B. Davis regarding          ; drafted Rule 16 certification. | 1.80 | $299.25 | $538.65 |

# C|H|O|A|T|E|

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                    Page 5
Re: John Hancock v. Avenel                                   November 30, 2005
Client/Matter No. 2004810-0004                              Invoice No. 1238826

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 10/18/05 | B. Davis | Revise draft Initial Disclosures; discussion with L. Gaulin re: | 1.20 | $494.00 | $592.80 |
| 10/20/05 | B. Davis | Review correspondence from client; e-mail to client re: telephone call to client re: | 0.50 | $494.00 | $247.00 |
| 10/21/05 | B. Davis | Prepare for, participate in conference call with clients re: ; e-mail to opposing counsel re: request for property list. | 0.80 | $494.00 | $395.20 |
| 10/21/05 | L. Gaulin | Conference call with defendants' counsel regarding initial disclosures; edits to same. | 0.60 | $299.25 | $179.55 |
| 10/24/05 | B. Davis | Review and revise Initial Disclosures and First Request for Production; disc. w. L. Gaulin re | 1.10 | $494.00 | $543.40 |
| 10/24/05 | L. Gaulin | Attention to serving initial disclosures and document requests on defendants; e-mails to B. Davis regarding | 0.60 | $299.25 | $179.55 |
| 10/25/05 | B. Davis | T.c. w. opposing counsel re status of request for information re Vesterra assets; draft and send certification materials to client; | 0.80 | $494.00 | $395.20 |
| 10/26/05 | B. Davis | Rev. corresp. re proposed Stipulated Protective Order; review proposed changes; e-mail to opposing counsel re same; t.c. to client re | 0.50 | $494.00 | $247.00 |
| 10/26/05 | L. Gaulin | Attention to research regarding | 1.80 | $299.25 | $538.65 |
| 10/27/05 | L. Gaulin | Attention to research regarding | 1.70 | $299.25 | $508.73 |
| 10/27/05 | B. Davis | Prep. certification materials for client; e-mail to client re   ; rev. corresp. re Stipulated Protective Order; letter to opposing counsel re same; t.c. w. client re | 0.70 | $494.00 | $345.80 |
| 10/28/05 | B. Davis | Disc. w. L. Gaulin re :   e-mail to opposing counsel re status of Joint Disclosures and list of Vesterra properties; | 0.50 | $494.00 | $247.00 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                    Page 6
Re: John Hancock v. Avenel                                    November 30, 2005
Client/Matter No. 2004810-0004                                Invoice No. 1238826

| <u>Date</u> | <u>Timekeeper</u> | <u>Description of Work</u> | <u>Hours</u> | <u>Rate</u> | <u>Amount</u> |
|---|---|---|---|---|---|
| 10/28/05 | L. Gaulin | Attention to filing stipulated protective order. | 0.40 | $299.25 | $119.70 |
| | | **Total Hours and Amount** | **35.30** | | **$13,562.70** |

# CHOATE

CHOATE HALL & STEWART LLP

# REMITTANCE

Nathaniel Margolis, Esq.
John Hancock Financial Services, Inc.
200 Clarendon Street
T-30
Boston, MA 02117

November 30, 2005
Client/Matter No. 2004810-0004
Invoice No. 1238826
Brian A. Davis

---

**Re:    John Hancock v. Avenel**

For professional services rendered through October 31, 2005.

Total Amount of this Invoice                                        $14,633.45

---

## PLEASE RETURN THIS PAGE WITH YOUR PAYMENT.

*Payment is due upon receipt.*

| **Mailed/Check Remittance** | | **Wire Instructions** | |
|---|---|---|---|
| Payable to: | Choate, Hall & Stewart LLP | Bank: | Bank of America |
| Address: | Two International Place | Address: | 100 Federal Street |
| | Boston, MA 02110-4104 | | Boston, MA 02110 |
| Attn: | Collections Department | ABA #: | 0260-0959-3 |
| | | For Credit To: | Choate, Hall & Stewart LLP |
| | | | Account #00000542-2720 |
| | | Please Reference in Wiring Information: | 1238826 / 2004810-0004 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

Nathaniel Margolis, Esq.
John Hancock Financial Services, Inc.
200 Clarendon Street
T-30
Boston, MA 02117

December 14, 2005
Client/Matter No. 2004810-0004
Invoice No. 1239565
Brian A. Davis

## INVOICE SUMMARY

**Re:**   **John Hancock v. Avenel**

FOR PROFESSIONAL SERVICES rendered through November 30, 2005 in
connection with the above matter as more fully detailed on the attached pages:

| | |
|---|---:|
| Total Professional Services | $19,466.04 |
| Total Expenses | 80.13 |
| **Total Amount of this Invoice** | **$19,546.17** |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 2
December 14, 2005
Invoice No. 1239565

## SUMMARY OF PROFESSIONAL SERVICES

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| Brian A. Davis | 17.30 | $494.00 | $8,546.20 |
| Lisa M. Gaulin | 15.90 | $299.25 | $4,758.12 |
| Meghan L. Rhatigan | 25.20 | $242.25 | $6,104.72 |
| Stephanie J. Snow | 0.40 | $142.50 | $57.00 |
| **Total Professional Services** | **58.80** | | **$19,466.04** |

## SUMMARY OF EXPENSES

| Code | Description | Total |
|---|---|---|
| 135 | Telecopier/Fax | $16.00 |
| 140 | Telephone | $1.58 |
| 150 | Photocopies | $62.55 |
| | **Total Expenses** | **$80.13** |



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                    Page 3
Re: John Hancock v. Avenel                                    December 14, 2005
Client/Matter No. 2004810-0004                               Invoice No. 1239565

## HOURS DETAIL

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 11/01/05 | B. Davis | Rev. corresp. | 0.10 | $494.00 | $49.40 |
| 11/02/05 | B. Davis | Rev. corresp. re Vesterra properties; e-mail to client re ; e-mail to opposing counsel re valuation data. | 0.40 | $494.00 | $197.60 |
| 11/03/05 | B. Davis | T.c. to T. Rogers re ; e-mail to B. McCormick re same; t.c. w. client re | 0.40 | $494.00 | $197.60 |
| 11/03/05 | L. Gaulin | Attention to certifications for joint statement. | 0.10 | $299.25 | $29.93 |
| 11/04/05 | B. Davis | Review corresp.; arrange t.c. with opposing counsel re security issues. | 0.30 | $494.00 | $148.20 |
| 11/07/05 | L. Gaulin | Review of and filing Rule 16 joint statement and certifications. | 0.60 | $299.25 | $179.55 |
| 11/08/05 | M. Rhatigan | Researched | 5.90 | $242.25 | $1,429.28 |
| 11/08/05 | B. Davis | Prep. for, participate in conf. call with opposing counsel re security issues; disc. w. M. Rhatigan re research on ; review Vesterra settlement proposal; e-mail to clients re | 1.30 | $494.00 | $642.20 |
| 11/08/05 | L. Gaulin | Research regarding conference call with Buchanan Ingersoll regarding using of other property to secure potential damages. | 0.80 | $299.25 | $239.40 |
| 11/09/05 | B. Davis | Rev. e-mail corresp. | 0.10 | $494.00 | $49.40 |
| 11/09/05 | M. Rhatigan | Researched | 5.20 | $242.25 | $1,259.70 |
| 11/10/05 | S. Snow | RHATIGAN: research on | 0.40 | $142.50 | $57.00 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 4
December 14, 2005
Invoice No. 1239565

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 11/10/05 | M. Rhatigan | Researched | 6.80 | $242.25 | $1,647.30 |
| 11/10/05 | B. Davis | Response to client inquiry; draft and send response to Vesterra settlement proposal; disc. w. M. Rhatigan re research on | 0.90 | $494.00 | $444.60 |
| 11/10/05 | L. Gaulin | Legal research regarding e-mail to B. Davis regarding same; e-mail to M. Rhatigan regarding | 0.50 | $299.25 | $149.63 |
| 11/11/05 | B. Davis | Review caselaw re ; disc. w. M. Rhatigan re ; review Mass. cases on ; t.c. w. opposing counsel re scheduling conf. on Monday. | 3.80 | $494.00 | $1,877.20 |
| 11/11/05 | M. Rhatigan | Researched | 4.30 | $242.25 | $1,041.68 |
| 11/11/05 | L. Gaulin | Conference with M. Rhatigan regarding ; e-mails to N. Margolis regarding | 0.30 | $299.25 | $89.78 |
| 11/14/05 | L. Gaulin | Conference with B. Davis regarding , reviewed defendant's discovery requests. | 0.60 | $299.25 | $179.55 |
| 11/14/05 | B. Davis | Prep. for scheduling conf.; meeting with opposing counsel; attend scheduling conf.; t.c. to client re | 3.70 | $494.00 | $1,827.80 |
| 11/15/05 | B. Davis | E-mail to opposing counsel re proposed settlement terms. | 0.30 | $494.00 | $148.20 |
| 11/15/05 | M. Rhatigan | Reviewed and analyzed requests for interrogatories and document production. Compiled preliminary list of documents necessary to satisfy the request. | 1.70 | $242.25 | $411.83 |
| 11/16/05 | L. Gaulin | Conference with M. Rhatigan regarding | 0.20 | $299.25 | $59.85 |
| 11/16/05 | M. Rhatigan | Reviewed materials for document production and met with Lisa to discuss | 1.30 | $242.25 | $314.93 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 5
December 14, 2005
Invoice No. 1239565

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 11/17/05 | B. Davis | T.c. w. opposing counsel re production date for Vesterra docs.; | 0.20 | $494.00 | $98.80 |
| 11/18/05 | L. Gaulin | Responding to document requests. | 2.10 | $299.25 | $628.43 |
| 11/21/05 | L. Gaulin | Document collection; conference with B. Davis regarding | 0.50 | $299.25 | $149.63 |
| 11/21/05 | B. Davis | Disc. w. L. Gaulin re | 0.40 | $494.00 | $197.60 |
| 11/22/05 | B. Davis | Finish disc. w. L. Gaulin re | 0.40 | $494.00 | $197.60 |
| 11/22/05 | L. Gaulin | Document collection; meeting with B. Davis regarding | 0.80 | $299.25 | $239.40 |
| 11/23/05 | B. Davis | Revise list of documents to be collected; disc. w. L. Gaulin re | 0.70 | $494.00 | $345.80 |
| 11/23/05 | L. Gaulin | Document production. | 0.50 | $299.25 | $149.63 |
| 11/28/05 | L. Gaulin | Document production and interrogatory response; multiple e-mails to N. Margolis and B. Davis and calls with N. Margolis and T. Rogers regarding | 3.90 | $299.25 | $1,167.08 |
| 11/28/05 | B. Davis | Disc. w. L. Gaulin re ; draft and send letter to opposing counsel re agreement to provide notification of possible sale of property; begin drafting First Set of Ints. | 2.20 | $494.00 | $1,086.80 |
| 11/29/05 | B. Davis | T.c. w. H. Scher re settlement positions; resend e-mail to same; status report to client rev. corresp. re document collection; disc. w. L. Gaulin re | 1.00 | $494.00 | $494.00 |
| 11/29/05 | L. Gaulin | Document production; multiple e-mails to B. Davis, N. Margolis, T. Rogers, and T. Malik regarding | 4.50 | $299.25 | $1,346.63 |
| 11/30/05 | L. Gaulin | Document production; call with court clerk regarding errors in modified joint schedule; reviewed John Hancock's interrogatories. | 0.50 | $299.25 | $149.63 |
| 11/30/05 | B. Davis | Finish First Req. for Production to Defs.; letter to opposing counsel re same; arrange meeting with JH financial rep. | 1.10 | $494.00 | $543.40 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
File No. 2004810-0004
Re: John Hancock v. Avenel

Page 6
December 14, 2005
Invoice No. 1239565

| | | |
|---|---|---|
| **Total Hours and Amount** | **58.80** | **$19,466.04** |

# CHOATE

CHOATE HALL & STEWART LLP

# REMITTANCE

Nathaniel Margolis, Esq.
John Hancock Financial Services, Inc.
200 Clarendon Street
T-30
Boston, MA 02117

December 14, 2005
Client/Matter No. 2004810-0004
Invoice No. 1239565
Brian A. Davis

---

**Re:    John Hancock v. Avenel**

For professional services rendered through November 30, 2005.

Total Amount of this Invoice                    $19,546.17

---

### PLEASE RETURN THIS PAGE WITH YOUR PAYMENT.

*Payment is due upon receipt.*

| **Mailed/Check Remittance** | | **Wire Instructions** | |
|---|---|---|---|
| Payable to: | Choate, Hall & Stewart LLP | Bank: | Bank of America |
| Address: | Two International Place | Address: | 100 Federal Street |
| | Boston, MA 02110-4104 | | Boston, MA 02110 |
| Attn: | Collections Department | ABA #: | 0260-0959-3 |
| | | For Credit To: | Choate, Hall & Stewart LLP |
| | | | Account #00000542-2720 |
| | | Please Reference in Wiring | 1239565 / |
| | | Information: | 2004810-0004 |

---

Two International Place I Boston MA 02110 I t 617-248-5000 I f 617-248-4000 I choate.com

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

Nathaniel Margolis, Esq.
John Hancock Financial Services, Inc.
200 Clarendon Street
T-30
Boston, MA 02117

January 31, 2006
Client/Matter No. 2004810-0004
Invoice No. 1241882
Brian A. Davis

## INVOICE SUMMARY

**Re:    John Hancock v. Avenel**

FOR PROFESSIONAL SERVICES rendered through December 31, 2005 in
connection with the above matter as more fully detailed on the attached pages:

| | |
|---|---:|
| Total Professional Services | $20,732.36 |
| Total Expenses | 2,064.31 |
| **Total Amount of this Invoice** | **$22,796.67** |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                     Page 2
Re: John Hancock v. Avenel                      January 31, 2006
Client/Matter No. 2004810-0004                Invoice No. 1241882

## SUMMARY OF PROFESSIONAL SERVICES

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| Brian A. Davis | 6.60 | $494.00 | $3,260.40 |
| Lisa M. Gaulin | 57.90 | $299.25 | $17,326.61 |
| Meghan L. Rhatigan | 0.60 | $242.25 | $145.35 |
| **Total Professional Services** | **65.10** | | **$20,732.36** |

## SUMMARY OF EXPENSES

| Code | Description | Total |
|---|---|---|
| 010 | Courier | $40.00 |
| 045 | Cab Fare | $22.00 |
| 135 | Telecopier/Fax | $2.00 |
| 140 | Telephone | $2.66 |
| 150 | Photocopies | $1,449.30 |
| 155 | WestLaw Research | $548.35 |
| | **Total Expenses** | **$2,064.31** |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 3
January 31, 2006
Invoice No. 1241882

## HOURS DETAIL

| <u>Date</u> | <u>Timekeeper</u> | <u>Description of Work</u> | <u>Hours</u> | <u>Rate</u> | <u>Amount</u> |
|---|---|---|---|---|---|
| 12/01/05 | L. Gaulin | Attention to document review and production. | 4.60 | $299.25 | $1,376.55 |
| 12/01/05 | B. Davis | E-mail to client re          t.c. w. client. | 0.30 | $494.00 | $148.20 |
| 12/05/05 | L. Gaulin | Attention to document review. | 3.20 | $299.25 | $957.60 |
| 12/07/05 | L. Gaulin | Attention to document review, including review of client documents; multiple e-mails regarding | 5.40 | $299.25 | $1,615.95 |
| 12/08/05 | B. Davis | Meeting w. L. Gaulin re attend client meeting re | 2.50 | $494.00 | $1,235.00 |
| 12/08/05 | L. Gaulin | Attention to document production. | 1.80 | $299.25 | $538.65 |
| 12/12/05 | L. Gaulin | Attention to document production. | 0.20 | $299.25 | $59.85 |
| 12/13/05 | M. Rhatigan | Met with Lisa to discuss | 0.60 | $242.25 | $145.35 |
| 12/13/05 | L. Gaulin | Conference with B. Davis regarding          ; e-mail to B. Hillman regarding discovery extension. | 0.50 | $299.25 | $149.63 |
| 12/14/05 | B. Davis | E-mail to opposing counsel re depo. scheduling. | 0.10 | $494.00 | $49.40 |
| 12/16/05 | B. Davis | Conf. call with opposing counsel re deposition dates and document issues; disc. w. L. Gaulin re | 0.40 | $494.00 | $197.60 |
| 12/19/05 | L. Gaulin | Attention to drafting interrogatory responses; attention to scheduling depositions for T. Malik and J. Ferrie and conference with B. Davis regarding | 2.20 | $299.25 | $658.35 |
| 12/19/05 | B. Davis | Confirm availability of JH witnesses for depos. | 0.20 | $494.00 | $98.80 |
| 12/20/05 | L. Gaulin | Attention to discovery requests and scheduling depositions, including multiple emails to T. Malik, T. Rogers and N. Margolis. | 2.80 | $299.25 | $837.90 |



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                                Page 4
Re: John Hancock v. Avenel                                                  January 31, 2006
Client/Matter No. 2004810-0004                                             Invoice No. 1241882

| <u>Date</u> | <u>Timekeeper</u> | <u>Description of Work</u> | <u>Hours</u> | <u>Rate</u> | <u>Amount</u> |
|------|------------|-------------------|-------|------|--------|
| 12/20/05 | B. Davis | Rev. corresp. from opposing counsel; respond to same; meeting with L. Gaulin | 0.80 | $494.00 | $395.20 |
| 12/21/05 | L. Gaulin | Attention to discovery requests, including e-mails to N. Margolis, T. Malik and J. Uzdavinis. | 0.30 | $299.25 | $89.78 |
| 12/22/05 | B. Davis | Disc. w. L. Gaulin re ⋯ e-mail to opposing counsel re same. | 0.30 | $494.00 | $148.20 |
| 12/22/05 | L. Gaulin | Attention to review of documents for production; telephone calls with N. Margolis and J. Ferrie regarding | 3.90 | $299.25 | $1,167.08 |
| 12/23/05 | L. Gaulin | Attention to document production. | 4.70 | $299.25 | $1,406.48 |
| 12/26/05 | L. Gaulin | Attention to drafting written responses to Avenel interrogatory and document requests; attention to document production. | 7.20 | $299.25 | $2,154.60 |
| 12/27/05 | L. Gaulin | Attention to document production, including review of lending guidelines; attention to written response to document requests; call with N. Margolis and e-mail to J. Uzdavinis regarding | 6.10 | $299.25 | $1,825.43 |
| 12/28/05 | L. Gaulin | Attention to interrogatories and document production; conference with B. Davis, call to N. Margolis, and multiple e-mails to N. Margolis and J. Uzdavinis regarding ⋯ ; reviewed lending guidelines. | 5.60 | $299.25 | $1,675.80 |
| 12/28/05 | B. Davis | Request and obtain extension of deadline to respond to Vesterra discovery requests; disc. w. L. Gaulin re ⋯ :; review and revise draft Responses to Ints. | 2.00 | $494.00 | $988.00 |
| 12/29/05 | L. Gaulin | Attention to document production and privilege log; attention to composing witness binders for deposition preparation; e-mails to N. Margolis and J. Uzdavinis regarding | 5.50 | $299.25 | $1,645.88 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                    Page 5
Re: John Hancock v. Avenel                                    January 31, 2006
Client/Matter No. 2004810-0004                              Invoice No. 1241882

| <u>Date</u> | <u>Timekeeper</u> | <u>Description of Work</u> | <u>Hours</u> | <u>Rate</u> | <u>Amount</u> |
|---|---|---|---|---|---|
| 12/30/05 | L. Gaulin | Attention to privilege log and preparation of documents for production; telephone call with J. Uzdavinis regarding , e-mail to B. Davis regarding | 3.90 | $299.25 | $1,167.08 |
| | | **Total Hours and Amount** | **65.10** | | **$20,732.36** |

# C H O A T E

CHOATE HALL & STEWART LLP



Nathaniel Margolis, Esq.
John Hancock Financial Services, Inc.
200 Clarendon Street
T-30
Boston, MA 02117

January 31, 2006
Client/Matter No. 2004810-0004
Invoice No. 1241882
Brian A. Davis

---

**Re:**    **John Hancock v. Avenel**

For professional services rendered through December 31, 2005.

**Total Amount of this Invoice**                      **$22,796.67**

---

### PLEASE RETURN THIS PAGE WITH YOUR PAYMENT.

*Payment is due upon receipt.*

<table>
<tr><td colspan="2"><strong>Mailed/Check Remittance</strong></td><td colspan="2"><strong>Wire Instructions</strong></td></tr>
<tr><td>Payable to:</td><td>Choate, Hall & Stewart LLP</td><td>Bank:</td><td>Bank of America</td></tr>
<tr><td>Address:</td><td>Two International Place</td><td>Address:</td><td>100 Federal Street</td></tr>
<tr><td></td><td>Boston, MA 02110-4104</td><td></td><td>Boston, MA 02110</td></tr>
<tr><td>Attn:</td><td>Collections Department</td><td>ABA #:</td><td>0260-0959-3</td></tr>
<tr><td></td><td></td><td>For Credit To:</td><td>Choate, Hall & Stewart LLP<br>Account #00000542-2720</td></tr>
<tr><td></td><td></td><td>Please Reference in Wiring<br>Information:</td><td>1241882 /<br>2004810-0004</td></tr>
</table>

# CHOATE

CHOATE HALL & STEWART LLP

Nathaniel Margolis, Esq.
John Hancock Financial Services, Inc.
200 Clarendon Street
T-30
Boston, MA 02117

February 28, 2006
Client/Matter No. 2004810-0004
Invoice No. 1243201
Brian A. Davis

# INVOICE SUMMARY

**Re:    John Hancock v. Avenel**

FOR PROFESSIONAL SERVICES rendered through January 31, 2006 in
connection with the above matter as more fully detailed on the attached pages:

| | |
|---|---|
| Total Professional Services | $41,446.18 |
| Total Expenses | 1,819.89 |
| **Total Amount of this Invoice** | **$43,266.07** |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 2
February 28, 2006
Invoice No. 1243201

## SUMMARY OF PROFESSIONAL SERVICES

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| Brian A. Davis | 40.90 | $494.00 | $20,204.60 |
| Lisa M. Gaulin | 52.80 | $299.25 | $15,800.43 |
| Meghan L. Rhatigan | 21.50 | $242.25 | $5,208.39 |
| Deborah J. Dion | 1.00 | $232.75 | $232.76 |
| **Total Professional Services** | **116.20** | | **$41,446.18** |

## SUMMARY OF EXPENSES

| Code | Description | Total |
|---|---|---|
| 010 | Courier | $178.85 |
| 041 | Mileage/Rental Cars | $31.15 |
| 044 | Parking | $20.00 |
| 045 | Cab Fare | $64.00 |
| 135 | Telecopier/Fax | $10.00 |
| 140 | Telephone | $1.77 |
| 150 | Photocopies | $880.05 |
| 155 | WestLaw Research | $634.07 |
| | **Total Expenses** | **$1,819.89** |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 3
February 28, 2006
Invoice No. 1243201

## HOURS DETAIL

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 01/02/06 | B. Davis | Disc. w. L. Gaulin re | 0.20 | $494.00 | $98.80 |
| 01/03/06 | L. Gaulin | Call with N. Margolis and J. Ferrie regarding , e-mails to T. Malik and J. Uzdavinis regarding ; review of documents produced by J. Ferrie; and J. Uzdavinis; attention to privilege log; attention to witness folders; conference with B. Davis. | 5.10 | $299.25 | $1,526.18 |
| 01/03/06 | B. Davis | Disc. w. L. Gaulin re ; t.c. w. opposing counsel re delivery of documents; review and sign final responses. | 0.60 | $494.00 | $296.40 |
| 01/04/06 | L. Gaulin | Attention to finalizing document production and interrogatory answers; multiple calls with N. Margolis and conferences with B. Davis regarding | 6.60 | $299.25 | $1,975.05 |
| 01/05/06 | B. Davis | E-mail to opposing counsel re deposition dates. | 0.10 | $494.00 | $49.40 |
| 01/05/06 | L. Gaulin | Attention to document production. | 1.00 | $299.25 | $299.25 |
| 01/06/06 | B. Davis | E-mail with opposing counsel re depo. scheduling issues. | 0.20 | $494.00 | $98.80 |
| 01/09/06 | B. Davis | Deal with deposition scheduling issues; disc. w. D. Dion re | 0.30 | $494.00 | $148.20 |
| 01/09/06 | L. Gaulin | Conference with B. Davis regarding e-mail to T. Malik regarding | 0.20 | $299.25 | $59.85 |
| 01/10/06 | D. Dion | Prepare notice of deposition of Koller; arrange for conference room at Morgan Lewis | 0.50 | $232.75 | $116.38 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 4
February 28, 2006
Invoice No. 1243201

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 01/10/06 | L. Gaulin | E-mails to B. Davis and T. Malik regarding | 0.10 | $299.25 | $29.93 |
| 01/10/06 | B. Davis | Rev. corresp. from opposing counsel re potential sale of Avenel property; t.c. to same; e-mail to same; revise and send out Notice of Depo. for James Koller. | 0.80 | $494.00 | $395.20 |
| 01/11/06 | B. Davis | Prep. for, participate in conf. call with opposing counsel re discovery and security issues; t.c. to client re | 0.50 | $494.00 | $247.00 |
| 01/11/06 | L. Gaulin | Conference call with defendants' counsel regarding outstanding discovery issues and potential sale of Avenel property. | 0.20 | $299.25 | $59.85 |
| 01/12/06 | B. Davis | Rev. corresp. re depos. | 0.10 | $494.00 | $49.40 |
| 01/13/06 | B. Davis | E-mail exchange with opposing counsel re expert disclosures and supplemental Vesterra production; e-mail to client re | 0.50 | $494.00 | $247.00 |
| 01/13/06 | L. Gaulin | Attention to review of documents produced by defendants; prepared witness binder for James Koller deposition; attention to deposition outline for Koller deposition; conference with BAD regarding | 5.20 | $299.25 | $1,556.10 |
| 01/16/06 | B. Davis | Exchange e-mails with client re :; begin prep. for Koller depo. | 2.40 | $494.00 | $1,185.60 |
| 01/17/06 | B. Davis | Prep. for Koller depo. | 3.80 | $494.00 | $1,877.20 |
| 01/18/06 | L. Gaulin | Reviewed defendants' privilege log. | 0.10 | $299.25 | $29.93 |
| 01/18/06 | B. Davis | Prep. for, take deposition of J. Koller in Philadelphia; t.c. to client re , rev. Vesterra privilege log; e-mail to opposing counsel re depo. schedule. | 8.50 | $494.00 | $4,199.00 |
| 01/19/06 | B. Davis | Prep. for T. Malik depo. prep.; t.c. with client re ..; deal with issues re potential experts. | 2.20 | $494.00 | $1,086.80 |
| 01/19/06 | M. Rhatigan | Met with Brian Davis to discuss . Began drafting Motion and supporting memorandum. | 2.50 | $242.25 | $605.63 |

Two International Place I Boston MA 02110 I t 617-248-5000 I f 617-248-4000 I choate.com



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                    Page 5
Re: John Hancock v. Avenel                                    February 28, 2006
Client/Matter No. 2004810-0004                                Invoice No. 1243201

| <u>Date</u> | <u>Timekeeper</u> | <u>Description of Work</u> | <u>Hours</u> | <u>Rate</u> | <u>Amount</u> |
|---|---|---|---|---|---|
| 01/19/06 | L. Gaulin | Attention to Malik deposition preparation; conference with B. Davis regarding<br><br>reviewed Koller deposition transcript; attention to privilege log. | 5.40 | $299.25 | $1,615.95 |
| 01/20/06 | M. Rhatigan | Reviewed research for and began reviewing transcript of Koller deposition. | 2.30 | $242.25 | $557.18 |
| 01/20/06 | B. Davis | Prep. for session with T. Malik; t.c.s to potential experts; disc. w. W. Mercer; e-mail case materials to same; e-mail to client re ; attend depo. prep. session with T. Malik; e-mails to opposing counsel re depo. scheduling. | 4.80 | $494.00 | $2,371.20 |
| 01/20/06 | L. Gaulin | Attention to Malik deposition preparation; conference with B. Davis regarding | 1.10 | $299.25 | $329.18 |
| 01/20/06 | D. Dion | Prepare notice of deposition of Kelly | 0.50 | $232.75 | $116.38 |
| 01/21/06 | L. Gaulin | Attention to privilege log; review of Koller deposition transcript. | 1.80 | $299.25 | $538.65 |
| 01/22/06 | L. Gaulin | Attention to privilege log; drafted memorandum regarding | 1.80 | $299.25 | $538.65 |
| 01/23/06 | L. Gaulin | Attention to John Hancock's second request for production of documents. | 3.20 | $299.25 | $957.60 |
| 01/23/06 | B. Davis | Prep. for, attend meeting with proposed expert (W. Mercer); t.c. to client re begin drafting Second Req. for Production to Defs.; e-mails with opposing counsel re expert designations; letter to opposing counsel re expert designation. | 2.30 | $494.00 | $1,136.20 |
| 01/23/06 | M. Rhatigan | Completed review of Koller deposition transcript. Worked on draft of Motion for Preliminary Injunction. | 3.20 | $242.25 | $775.20 |
| 01/24/06 | L. Gaulin | Attention to privilege log. | 2.20 | $299.25 | $658.35 |
| 01/24/06 | M. Rhatigan | Worked on draft of Memo supporting Motion for Preliminary Injunction. | 3.00 | $242.25 | $726.75 |
| 01/25/06 | L. Gaulin | Attention to privilege log. | 4.00 | $299.25 | $1,197.00 |



# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 6
February 28, 2006
Invoice No. 1243201

| <u>Date</u> | <u>Timekeeper</u> | <u>Description of Work</u> | <u>Hours</u> | <u>Rate</u> | <u>Amount</u> |
|---|---|---|---|---|---|
| 01/25/06 | B. Davis | T.c. w. T. Rogers re ; draft and send letter to opposing counsel re Mercer testimony; disc. w. L. Gaulin re | 1.20 | $494.00 | $592.80 |
| 01/25/06 | M. Rhatigan | Worked on draft of Motion for Preliminary Injunction. | 7.60 | $242.25 | $1,841.10 |
| 01/26/06 | L. Gaulin | Attention to privilege log; legal research regarding attention to third party subpoenas. | 8.50 | $299.25 | $2,543.63 |
| 01/27/06 | M. Rhatigan | Conducted research. Completed draft of Motion for Preliminary Injunction and supporting Memorandum. | 2.70 | $242.25 | $654.08 |
| 01/27/06 | L. Gaulin | Attention to Ferrie deposition preparation; attention to third party subpoenas. | 0.80 | $299.25 | $239.40 |
| 01/27/06 | B. Davis | Review and revise JH Privilege Log; prep. for, defend depo. of T. Malik; t.c. to client re ; disc. w. L. Gaulin re ; t.c. to J. Ferrie re | 7.50 | $494.00 | $3,705.00 |
| 01/30/06 | L. Gaulin | Attention to third party subpoenas duces tecum; attention to Ferrie deposition preparation. | 4.00 | $299.25 | $1,197.00 |
| 01/30/06 | B. Davis | Review and revise draft subpoenas to 3rd parties; e-mail to L. Gaulin re | 0.40 | $494.00 | $197.60 |
| 01/31/06 | M. Rhatigan | Spoke to Lisa about | 0.20 | $242.25 | $48.45 |
| 01/31/06 | B. Davis | Prep. J. Ferrie for upcoming deposition; t.c. w. T. Malik re work on revising draft PI materials. | 4.50 | $494.00 | $2,223.00 |
| 01/31/06 | L. Gaulin | Attention to service of third party subpoenas; e-mail to defendants regarding outstanding documents. | 1.50 | $299.25 | $448.88 |
| | | **Total Hours and Amount** | **116.20** | | **$41,446.18** |

# CHOATE

CHOATE HALL & STEWART LLP



Nathaniel Margolis, Esq.
John Hancock Financial Services, Inc.
200 Clarendon Street
T-30
Boston, MA 02117

February 28, 2006
Client/Matter No. 2004810-0004
Invoice No. 1243201
Brian A. Davis

**Re:    John Hancock v. Avenel**

For professional services rendered through January 31, 2006.

**Total Amount of this Invoice**                    **$43,266.07**

## PLEASE RETURN THIS PAGE WITH YOUR PAYMENT.

### *Payment is due upon receipt.*

| **Mailed/Check Remittance** | | **Wire Instructions** | |
|---|---|---|---|
| Payable to: | Choate, Hall & Stewart LLP | Bank: | Bank of America |
| Address: | Two International Place | Address: | 100 Federal Street |
| | Boston, MA 02110-4104 | | Boston, MA 02110 |
| Attn: | Collections Department | ABA #: | 0260-0959-3 |
| | | For Credit To: | Choate, Hall & Stewart LLP |
| | | | Account #00000542-2720 |
| | | Please Reference in Wiring Information: | 1243201 / 2004810-0004 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

Nathaniel Margolis, Esq.
John Hancock Financial Services, Inc.
200 Clarendon Street
T-30
Boston, MA 02117

March 31, 2006
Client/Matter No. 2004810-0004
Invoice No. 1245172
Brian A. Davis

# INVOICE SUMMARY

**Re:**   **John Hancock v. Avenel**

FOR PROFESSIONAL SERVICES rendered through February 28, 2006 in
connection with the above matter as more fully detailed on the attached pages:

|  |  |
|---|---|
| Total Professional Services | $96,287.42 |
| Total Expenses | 8,459.94 |
| **Total Amount of this Invoice** | **$104,747.36** |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 2
March 31, 2006
Invoice No. 1245172

## SUMMARY OF PROFESSIONAL SERVICES

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| Brian A. Davis | 61.50 | $494.00 | $30,381.00 |
| Paul D. Popeo | 58.75 | $446.50 | $26,231.92 |
| Lisa M. Gaulin | 35.50 | $299.25 | $10,623.42 |
| Elizabeth Page Wilkins | 42.30 | $299.25 | $12,658.30 |
| Meghan L. Rhatigan | 66.90 | $242.25 | $16,206.58 |
| Deborah J. Dion | 0.80 | $232.75 | $186.20 |
| **Total Professional Services** | **265.75** | | **$96,287.42** |

## SUMMARY OF EXPENSES

| Code | Description | Total |
|---|---|---|
| 010 | Courier | $45.23 |
| 022 | Lunch/Dinner/Breakfast Mtg. | $42.05 |
| 042 | Hotel | $578.37 |
| 043 | Airfares | $637.40 |
| 044 | Parking | $38.50 |
| 045 | Cab Fare | $5.95 |
| 122 | Overtime Secretary 1 | $80.00 |
| 130 | Postage | $2.22 |
| 135 | Telecopier/Fax | $345.00 |
| 140 | Telephone | $2.36 |
| 145 | Velobind/Special Duplicating | $4.50 |
| 150 | Photocopies | $2,945.85 |
| 155 | WestLaw Research | $1,753.71 |
| 502 | Court Reporter Service | $1,978.80 |

# C|H|O|A|T|E|

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 3
March 31, 2006
Invoice No. 1245172

| Code | Description | Total |
|------|-------------|-------|
| | **Total Expenses** | **$8,459.94** |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 4
March 31, 2006
Invoice No. 1245172

## HOURS DETAIL

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|------------|---------------------|-------|------|--------|
| 02/01/06 | B. Davis | Defend depo. of J. Ferrie; t.c. to client re ; work on PI papers; review corresp. from Vesterra's counsel. | 7.50 | $494.00 | $3,705.00 |
| 02/02/06 | M. Rhatigan | Reviewed case documents including Second Set of Document Requests and Interrogatories. | 0.30 | $242.25 | $72.68 |
| 02/02/06 | B. Davis | Rev. corresp.; review latest discovery requests from Vesterra; review proposed Amended Complaint; e-mail to client re | 0.80 | $494.00 | $395.20 |
| 02/03/06 | B. Davis | Work on Preliminary Injunction motion papers; t.c. with client re | 8.50 | $494.00 | $4,199.00 |
| 02/03/06 | M. Rhatigan | Conducted research on | 2.70 | $242.25 | $654.08 |
| 02/04/06 | M. Rhatigan | Drafted correspondence regarding Reviewed edited documents. | 0.50 | $242.25 | $121.13 |
| 02/06/06 | M. Rhatigan | Edited and added citations to Memorandum in Support of Motion for Preliminary Injunctive Relief. Drafted Davis Affidavit. Also collected exhibits that will be attached to Davis Affidavit. | 9.00 | $242.25 | $2,180.25 |
| 02/06/06 | B. Davis | Disc. w. M. Rhatigan re ; draft Ferrie Affid.; work on revisions to PI papers; e-mail to clients re | 2.60 | $494.00 | $1,284.40 |
| 02/07/06 | B. Davis | Fax to T. Malik; t.c. with client; revise PI materials and prepare for filing; draft letter to opposing counsel re expert disclosures and discovery issues; e-mail to opposing counsel re same. | 3.10 | $494.00 | $1,531.40 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 5
March 31, 2006
Invoice No. 1245172

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 02/08/06 | B. Davis | T.c. with client re        ; revise PI papers for electronic filing; draft Motion to Impound; e-mail to opposing counsel re Motion to Impound; file motion papers; t.c. with court clerk re hearing date; e-mails to opposing counsel re same; t.c. with client. | 3.10 | $494.00 | $1,531.40 |
| 02/08/06 | M. Rhatigan | Drafted emails to Brian regarding              . Telephoned Brian regarding same. Contacted Lisa regarding | 0.20 | $242.25 | $48.45 |
| 02/08/06 | L. Gaulin | Conference with B. Davis regarding          ; reviewed preliminary injunction papers; phone call with counsel for Bozzuto Management regarding John Hancock's subpoena duces tecum; e-mail to B. Davis regarding | 1.00 | $299.25 | $299.25 |
| 02/09/06 | L. Gaulin | Reviewed T. Malik deposition transcript; call with T. Malik regarding             ; conference with B. Davis regarding | 2.40 | $299.25 | $718.20 |
| 02/09/06 | B. Davis | E-mails to client; e-mail to court re hearing; t.c. w. T. Malik re | 0.50 | $494.00 | $247.00 |
| 02/10/06 | L. Gaulin | Attention to preparation for preliminary injunction hearing; reviewed Vesterra's motion to amend and proposed new counterclaims; reviewed client information regarding | 4.40 | $299.25 | $1,316.70 |
| 02/10/06 | B. Davis | Disc. w. L. Gaulin re | 0.30 | $494.00 | $148.20 |
| 02/11/06 | M. Rhatigan | Pulled cases from Defendants' Motion to Amend. Began research on | 3.30 | $242.25 | $799.43 |
| 02/12/06 | L. Gaulin | Reviewed Malik deposition testimony; attention to drafting Malik affidavit in support of John Hancock's motion for injunctive relief. | 2.50 | $299.25 | $748.13 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 6
March 31, 2006
Invoice No. 1245172

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 02/12/06 | M. Rhatigan | Reviewed and highlighted cases | 2.60 | $242.25 | $629.85 |
| 02/13/06 | L. Gaulin | Attention to Malik affidavit and preparation for preliminary injunction hearing; review of defendants' papers opposing motion for preliminary injunction. | 5.20 | $299.25 | $1,556.10 |
| 02/13/06 | B. Davis | Prep. for PI motion hearing; various t.c.s and e-mails re            .; revise Malik affidavit; review Vesterra opposition papers; meeting with L. Gaulin and M. Rhatigan re | 8.30 | $494.00 | $4,100.20 |
| 02/13/06 | M. Rhatigan | Drafted cover memo for cases cited in Defendant's Memo in Support of Motion to File Amended Counterclaim. Delivered research to Lisa. Conducted research on                          Delivered research to Brian. Met with Brian and Lisa to discuss              Retrieved needed cases. Reviewed Malik affidavit for | 4.70 | $242.25 | $1,138.58 |
| 02/14/06 | B. Davis | Prep. for, attend court hearing on PI motion; t.c.s to client re      disc. w. LG and MR re | 4.40 | $494.00 | $2,173.60 |
| 02/14/06 | L. Gaulin | Attention to preparation for preliminary injunction hearing; attended hearing; attention to motion for summary judgment; calls regarding third party subpoenas. | 2.50 | $299.25 | $748.13 |
| 02/15/06 | M. Rhatigan | Received transcript and requested check for invoice. | 0.30 | $242.25 | $72.68 |
| 02/15/06 | L. Gaulin | Attention to response to interrogatories and document requests; calls regarding third party subpoenas. | 1.80 | $299.25 | $538.65 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 7
March 31, 2006
Invoice No. 1245172

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 02/16/06 | B. Davis | Prep. for, participate in conf. call with opposing counsel re discovery scheduling; rev. court notice; review various corresp. from opposing counsel; review and revise list of Vesterra commercial projects; e-mail to T. Rogers re | 2.80 | $494.00 | $1,383.20 |
| 02/16/06 | P. Popeo | Multiple conferences with L. Gaulin; conferences regarding ; review privilege log and documents; review counterclaim filing; review correspondence and documents supplied by B. Davis and L. Gaulin. | 3.25 | $446.50 | $1,451.13 |
| 02/16/06 | M. Rhatigan | Meeting with Brian and Page. Meeting with Page and Lisa regarding Worked on list of representative projects for Vesterra. Gave materials to Page for summary judgment motion. Reviewed Malik deposition transcript and exhibits for summary judgment motion. | 5.00 | $242.25 | $1,211.25 |
| 02/16/06 | E. Wilkins | Conference B. Davis regarding Review pleadings and case law in support of summary judgment. Conference L. Gaulin and M. Rhatigan re | 4.70 | $299.25 | $1,406.48 |
| 02/16/06 | L. Gaulin | Conference call with Vesterra, and conference with P. Popeo and B. Davis, regarding attention to summary judgment memorandum; attention to response to Vesterra letter regarding privilege log; attention to response to Vesterra discovery requests. | 4.50 | $299.25 | $1,346.63 |
| 02/17/06 | L. Gaulin | Attention to Vesterra's discovery requests; reviewed third party subpoena responses. | 1.50 | $299.25 | $448.88 |
| 02/17/06 | B. Davis | T.c.s with witnesses re deposition dates. | 0.30 | $494.00 | $148.20 |



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                      Page 8
Re: John Hancock v. Avenel                                        March 31, 2006
Client/Matter No. 2004810-0004                               Invoice No. 1245172

| <u>Date</u> | <u>Timekeeper</u> | <u>Description of Work</u> | <u>Hours</u> | <u>Rate</u> | <u>Amount</u> |
|---|---|---|---|---|---|
| 02/17/06 | P. Popeo | Conference with B. Davis; conference call with B. Davis and Avenel counsel regarding deposition scheduling; outstanding discovery issues; brief conference with P. Wilkinson; review correspondence; pleadings and documents; review Koller-Kelly response; conference with B. McCormick regarding same; conference with B. Davis; conference with D. Dion regarding ; message to Coyne regarding conference with Rogers regarding | 3.75 | $446.50 | $1,674.38 |
| 02/17/06 | E. Wilkins | Draft summary judgment brief. Research in support of the same. | 2.30 | $299.25 | $688.28 |
| 02/20/06 | L. Gaulin | Attention to Vesterra discovery requests, including emails to John Hancock regarding | 1.50 | $299.25 | $448.88 |
| 02/20/06 | M. Rhatigan | Began drafting response to defendants' amended counterclaim. | 2.20 | $242.25 | $532.95 |
| 02/20/06 | E. Wilkins | Draft motion for summary judgment. Correspond with M. Rhatigan re | 1.00 | $299.25 | $299.25 |
| 02/20/06 | D. Dion | Prepare revised notices of depositions for Kelly and Palopoli; conferences regarding | 0.80 | $232.75 | $186.20 |
| 02/21/06 | P. Popeo | Multiple conferences with L. Gaulin; review ADR order; conference with P. Coyne regarding and conference B. Davis regarding conference with D. Dion regarding | 3.25 | $446.50 | $1,451.13 |
| 02/21/06 | E. Wilkins | Draft memorandum in support of summary judgment motion. Conference M. Rhatigan regarding Review research. | 7.70 | $299.25 | $2,304.23 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 9
March 31, 2006
Invoice No. 1245172

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 02/21/06 | L. Gaulin | E-mails to T. Malik and N. Margolis regarding multiple e-mails to P. Popeo regarding ; conference with M. Rhatigan regarding attention to notices of deposition. | 1.50 | $299.25 | $448.88 |
| 02/21/06 | M. Rhatigan | Research for summary judgment. Met with Page to discuss Gathered case materials for Paul Popeo. Worked on answer to amended counterclaim. Met with Lisa to discuss | 7.90 | $242.25 | $1,913.78 |
| 02/22/06 | L. Gaulin | Attention to document review and production; reviewed Vesterra written response to John Hancock second set of document requests. | 1.20 | $299.25 | $359.10 |
| 02/22/06 | E. Wilkins | Revise memorandum in support of summary judgment. Review research in support. Prepare affidavit and motion is support of summary judgment. Prepare memo to B. Davis re | 4.70 | $299.25 | $1,406.48 |
| 02/22/06 | P. Popeo | Telephone conference with B. McCormick regarding discovery issues; review T. Rogers information regarding ; conference with L. Gaulin and review draft discovery responses; revise same; conference with B. Davis regarding ; conference with L. Gaulin regarding review transcripts and pleadings and document compilation. | 4.50 | $446.50 | $2,009.25 |
| 02/22/06 | M. Rhatigan | Review of summary judgment draft. Conducted additional research regarding Checked citations in summary judgment draft. Worked on answer and sent draft to Brian. Cite checked summary judgment draft. | 6.00 | $242.25 | $1,453.50 |
| 02/23/06 | M. Rhatigan | Met with Brian to discuss Attended team meeting regarding Began reviewing Vesterra documents. | 4.20 | $242.25 | $1,017.45 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                   Page 10
Re: John Hancock v. Avenel                                        March 31, 2006
Client/Matter No. 2004810-0004                               Invoice No. 1245172

| <u>Date</u> | <u>Timekeeper</u> | <u>Description of Work</u> | <u>Hours</u> | <u>Rate</u> | <u>Amount</u> |
|---|---|---|---|---|---|
| 02/23/06 | L. Gaulin | Attention to written discovery responses, including emails to T. Malik; conference with litigation team regarding conference with BM. Rhatigan regarding | 1.50 | $299.25 | $448.88 |
| 02/23/06 | P. Popeo | Review privilege log and underlying documents; review Avenel letter regarding same and prepare response; compile witness files for Kelly and Palopoli; Henderson; review transcripts; create deposition outline; review "hot" document binder and supplement; review Malik and Ferry exhibits; telephone conference with B. McCormick; telephone calls to Coyne and Nectow regarding                 conference with Avenel team regarding · | 5.75 | $446.50 | $2,567.38 |
| 02/23/06 | B. Davis | Revise and file Answer to Amended Counterclaim; revise draft summary judgment papers; disc. w. P. Popeo re                   ·; review corresp. from opposing counsel re deposition dates. | 6.40 | $494.00 | $3,161.60 |
| 02/23/06 | E. Wilkins | Attend internal meeting regarding                 Conference B. Davis regarding                 Prepare deposition preparation materials | 2.20 | $299.25 | $658.35 |
| 02/24/06 | E. Wilkins | Revise summary judgment brief. Attention to research in support. Finalize deposition preparation materials. Conference P. Popeo re            ·. Attend teleconference with opposing counsel regarding discovery matters. | 8.00 | $299.25 | $2,394.00 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 11
March 31, 2006
Invoice No. 1245172

| <u>Date</u> | <u>Timekeeper</u> | <u>Description of Work</u> | <u>Hours</u> | <u>Rate</u> | <u>Amount</u> |
|------|------|------|------|------|------|
| 02/24/06 | P. Popeo | Review pleadings/files and prepare for depositions; prepare for D. Henderson meeting; office conference with B. Davis and D. Henderson regarding ; compile documents and notes; conference with B. Davis; prepare for discovery conference; conference with B. Davis, H. Scher and B. McCormick regarding discovery disputes and outstanding items; draft and serve letter regarding same to Avenel counsel; multiple conferences with L. Gaulin and M. Rhatigan regarding | 6.25 | $446.50 | $2,790.63 |
| 02/24/06 | M. Rhatigan | Finished reviewing documents. Briefly met with Brian regarding · and met with Paul regarding · Corresponded with Lisa regarding Conducted additional research for | 4.10 | $242.25 | $993.23 |
| 02/24/06 | B. Davis | Attend meeting with D. Henderson; prep. for, participate in discovery scheduling conference with opposing counsel; disc. w. P. Wilkins re · rev. corresp. re depos. | 4.20 | $494.00 | $2,074.80 |
| 02/24/06 | L. Gaulin | Attention to document production and response to interrogatories; prepared witness binder and outline for Kelly and Palopoli depositions. | 2.50 | $299.25 | $748.13 |
| 02/25/06 | M. Rhatigan | Conducted research for Drafted email describing findings. Also reviewed additional documents from Vesterra's second document production. | 5.10 | $242.25 | $1,235.48 |
| 02/25/06 | P. Popeo | Review Hancock files and pleadings; review deposition transcripts of all witnesses; review documents; compile and revise deposition files and outlines and prepare for depositions in Philadelphia. | 7.25 | $446.50 | $3,237.13 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                    Page 12
Re: John Hancock v. Avenel                                          March 31, 2006
Client/Matter No. 2004810-0004                                  Invoice No. 1245172

| <u>Date</u> | <u>Timekeeper</u> | <u>Description of Work</u> | <u>Hours</u> | <u>Rate</u> | <u>Amount</u> |
|---|---|---|---|---|---|
| 02/26/06 | B. Davis | Review and revise summary judgment materials; e-mail to P. Wilkins re disc. w. P. Popeo re | 2.20 | $494.00 | $1,086.80 |
| 02/26/06 | P. Popeo | Review pleadings, documents and transcripts; revise file and outline and prepare for Kelly and Palopoli depositions in Philadelphia; conference with B. Davis regarding | 8.25 | $446.50 | $3,683.63 |
| 02/27/06 | P. Popeo | Conduct J. Kelly and F. Palopoli depositions; review notes and compile; conference with B. Davis; conference with H. Scher regarding scheduling and miscellaneous discovery matters. | 11.25 | $446.50 | $5,023.13 |
| 02/27/06 | M. Rhatigan | Gathered requested Vesterra documents for Brian. Spoke to Page regarding | 0.30 | $242.25 | $72.68 |
| 02/27/06 | B. Davis | Review and revise Suppl. Malik Affidavit; e-mails to client re    . conf. call with StoneTurn personnel re potential expert witness role; disc. w. P.W. re | 2.70 | $494.00 | $1,333.80 |
| 02/27/06 | E. Wilkins | Revise memorandum in support of summary judgment. Research regarding        Prepare statement of undisputed facts. | 8.20 | $299.25 | $2,453.85 |
| 02/28/06 | B. Davis | Attend    ,. meeting with Barry Nectow; disc. w. P. Popeo re        ; revise summary judgment materials; rev. corresp. from client. | 3.80 | $494.00 | $1,877.20 |
| 02/28/06 | L. Gaulin | Attention to issues related to document production. | 1.50 | $299.25 | $448.88 |
| 02/28/06 | M. Rhatigan | Proofread summary judgment papers and met with P. Wilkins to discuss Helped P. Wilkins finalize citations. Began reviewing documents for Hancock production. Drafted response to client questions regarding | 8.50 | $242.25 | $2,059.13 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                        Page 13
Re: John Hancock v. Avenel                                            March 31, 2006
Client/Matter No. 2004810-0004                                    Invoice No. 1245172

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|--------------------|-------|------|--------|
| 02/28/06 | E. Wilkins | Revise memo in support of summary judgment motion and statement of undisputed facts. Correspond with B. Davis re | 3.50 | $299.25 | $1,047.38 |
| 02/28/06 | P. Popeo | Conference with B. Nectow and B. Davis regarding          .; multiple conferences with L. Gaulin; review discovery requests/responses and document compilation; review 30(b)(6) notice and conference with B. Davis regarding          conference with Coyne and Nectow regarding conference with B. McCormick regarding same; review Malik e-mail and review documents/Kelly deposition notes regarding          telephone conference with B. Henderson regarding review summary judgment drafts; conference with M. Rhatigan regarding | 5.25 | $446.50 | $2,344.13 |
| **Total Hours and Amount** | | | **265.75** | | **$96,287.42** |



CHOATE HALL & STEWART LLP

# REMITTANCE

Nathaniel Margolis, Esq.
John Hancock Financial Services, Inc.
200 Clarendon Street
T-30
Boston, MA 02117

March 31, 2006
Client/Matter No. 2004810-0004
Invoice No. 1245172
Brian A. Davis

---

**Re:    John Hancock v. Avenel**

For professional services rendered through February 28, 2006.

**Total Amount of this Invoice**                                **$104,747.36**

---

## PLEASE RETURN THIS PAGE WITH YOUR PAYMENT.

*Payment is due upon receipt.*

| **Mailed/Check Remittance** | | **Wire Instructions** | |
|---|---|---|---|
| Payable to: | Choate, Hall & Stewart LLP | Bank: | Bank of America |
| Address: | Two International Place | Address: | 100 Federal Street |
| | Boston, MA 02110-4104 | | Boston, MA 02110 |
| Attn: | Collections Department | ABA #: | 0260-0959-3 |
| | | For Credit To: | Choate, Hall & Stewart LLP |
| | | | Account #00000542-2720 |
| | | Please Reference in Wiring | 1245172 / |
| | | Information: | 2004810-0004 |

# TAB 4 (Part II)

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

Nathaniel Margolis, Esq.
John Hancock Financial Services, Inc.
200 Clarendon Street
T-30
Boston, MA 02117

April 28, 2006
Client/Matter No. 2004810-0004
Invoice No. 1246664
Brian A. Davis

## INVOICE SUMMARY

**Re:    John Hancock v. Avenel**

FOR PROFESSIONAL SERVICES rendered through March 31, 2006 in
connection with the above matter as more fully detailed on the attached pages:

| | |
|---|---:|
| Total Professional Services | $113,608.74 |
| Total Expenses | 12,878.02 |
| **Total Amount of this Invoice** | **$126,486.76** |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                Page 2
Re: John Hancock v. Avenel                                    April 28, 2006
Client/Matter No. 2004810-0004                          Invoice No. 1246664

## SUMMARY OF PROFESSIONAL SERVICES

| Timekeeper | Hours | Rate | Amount |
|------------|-------|------|--------|
| Brian A. Davis | 68.60 | $494.00 | $33,888.40 |
| Paul D. Popeo | 109.50 | $446.50 | $48,891.83 |
| Lisa M. Gaulin | 6.20 | $299.25 | $1,855.36 |
| Meghan L. Rhatigan | 106.90 | $242.25 | $25,896.57 |
| Elizabeth A. Castellani | 12.70 | $242.25 | $3,076.58 |
| **Total Professional Services** | **303.90** | | **$113,608.74** |

## SUMMARY OF EXPENSES

| Code | Description | Total |
|------|-------------|-------|
| 010 | Courier | $100.05 |
| 022 | Lunch/Dinner/Breakfast Mtg. | $83.56 |
| 042 | Hotel | $347.39 |
| 043 | Airfares | $610.60 |
| 045 | Cab Fare | $29.00 |
| 135 | Telecopier/Fax | $10.00 |
| 145 | Velobind/Special Duplicating | $3.00 |
| 150 | Photocopies | $2,901.75 |
| 155 | WestLaw Research | $2,923.95 |
| 502 | Court Reporter Service | $5,379.72 |
| 506 | Subpoena/Sheriff Fee | $489.00 |
| | **Total Expenses** | **$12,878.02** |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                    Page 3
Re: John Hancock v. Avenel                                         April 28, 2006
Client/Matter No. 2004810-0004                            Invoice No. 1246664

## HOURS DETAIL

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 03/01/06 | P. Popeo | Morning conference with D. Henderson; defend Henderson deposition; conference regarding discovery matters with H. Scher; conference with B. Davis regarding ⸱ review summary judgment papers and correspondence; review J. Hancock draft discovery responses and conference with M. Rhatigan regarding ⸱ revise and edit; conference with B. McCormick regarding discovery disputes, event scheduling; conference with W. Mercer. | 6.75 | $446.50 | $3,013.88 |
| 03/01/06 | M. Rhatigan | Discussed ⸱ with L. Gaulin. E-mailed P. Popeo to discuss ⸱ Met with P. Popeo to discuss | 1.40 | $242.25 | $339.15 |
| 03/01/06 | L. Gaulin | Attention to document production and response to interrogatories. | 0.50 | $299.25 | $149.63 |
| 03/01/06 | B. Davis | Revise and finalize summary judgment papers; t.c.s w. T. Malik and N. Margolis re | 5.00 | $494.00 | $2,470.00 |
| 03/02/06 | M. Rhatigan | Worked on responses to document requests and interrogatories. Talked to L. Gaulin about ⸱ . Send drafts to P. Popeo. Met with P. Popeo and updated responses. | 5.60 | $242.25 | $1,356.60 |
| 03/02/06 | L. Gaulin | Attention to response to Vesterra discovery requests, including review of draft interrogatory and document requests; attention to case transition. | 2.50 | $299.25 | $748.13 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                    Page 4
Client/Matter No. 2004810-0004                                    April 28, 2006
Re: John Hancock v. Avenel                                    Invoice No. 1246664

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 03/02/06 | P. Popeo | Review Court Order; conference with Brian Davis regarding          conference with Brian Davis regarding                    ; multiple conferences with Meghan Rhatigan; review and revise draft discovery responses; review documents collected for production; review privileged documents; conference with Lisa Gaulin regarding                                     review Kelly transcript; review Palopoli transcript; multiple conferences with Coyne/Nectau; conference with Urdavinus regarding                    multiple conferences with McCormick; conference with B. Davis regarding | 6.75 | $446.50 | $3,013.88 |
| 03/02/06 | B. Davis | Rev. court corresp.; t.c. to J. Ferrie re          ; e-mail to clients re meeting with StoneTurn personnel re damage calculations. | 1.80 | $494.00 | $889.20 |
| 03/03/06 | P. Popeo | Conference call with B. Davis; conference with MR regarding finalize discovery responses/obtain client verification; conference with Scher regarding finance/mortgage policy documents and draft letter agreement regarding confidentiality; conference with B. Davis regarding          conference with B. McCormick regarding privilege log/document issues; conference with L. Gaulin regarding                    ; conference with B. Nectow regarding                    conference with Coyne regarding          ; review Malick/Ferrie transcripts; conference with Scher regarding timing of depositions; review documents to be produced/withheld. | 7.75 | $446.50 | $3,460.38 |
| 03/03/06 | M. Rhatigan | Finalized responses to Second Set of Interrogatories and Document Requests. Sent same to opposing counsel. Organized document production. Facilitated mailing of documents. | 8.00 | $242.25 | $1,938.00 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Client/Matter No. 2004810-0004
Re: John Hancock v. Avenel

Page 5
April 28, 2006
Invoice No. 1246664

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|--------------------|-------|------|--------|
| 03/03/06 | B. Davis | Disc. w. P. Popeo re ,participate in conf. call with opposing counsel re discovery issues; disc. w. M. Rhatigan re ,review and revise discovery responses. | 1.10 | $494.00 | $543.40 |
| 03/03/06 | L. Gaulin | Attention to response to Vesterra discovery requests, including multiple e-mails with T. Malik and N. Margolis and conferences with M. Rhatigan regarding | 3.00 | $299.25 | $897.75 |
| 03/06/06 | L. Gaulin | Attention to case transition. | 0.20 | $299.25 | $59.85 |
| 03/06/06 | M. Rhatigan | Delivered documents for deposition preparation. Drafted cover letter to mail discovery responses with original signature pages. Corresponded with Rob Hillman regarding document production. Spoke to L. Gaulin regarding · | 0.50 | $242.25 | $121.13 |
| 03/06/06 | P. Popeo | Conference with B. McCormick regarding discovery issues; office meeting with P. Coyne regarding ; conference with Uzdavinis; conference with B. Davis; conference with B. McCormick regarding scheduling and regarding protective order/confidentiality issues; review letter; confer with B. Davis regarding e-mail McCormick regarding proposed deposition dates; conference with Uzdavinis; conference with Scher; review ; Coyne; conference with Nectow. | 7.25 | $446.50 | $3,237.13 |
| 03/06/06 | B. Davis | Rev. corresp.; participate in meeting with P. Coyne. | 0.80 | $494.00 | $395.20 |
| 03/07/06 | B. Davis | T.c. with opposing counsel re Defs' proposed motion for summary judgment; disc. w. P. Popeo re · disc. w. M. Rhatigan re research on t.c. to Joan Uzdavinis re | 1.00 | $494.00 | $494.00 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Client/Matter No. 2004810-0004
Re: John Hancock v. Avenel

Page 6
April 28, 2006
Invoice No. 1246664

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 03/07/06 | M. Rhatigan | Met with Brian Davis to discuss                   Spoke to Lisa Gaulin regarding | 0.40 | $242.25 | $96.90 |
| 03/08/06 | M. Rhatigan | Researched drafted e-mail regarding same. | 4.30 | $242.25 | $1,041.68 |
| 03/08/06 | P. Popeo | Conference with M. Rhatigan regarding conference with C. Michaud regarding multiple conferences with B. McCormick regarding scheduling issues; e-mail B. McCormick regarding 30(b)(6) matters; review Vesterra letter and notices; conference to Malik regarding review case law; conference with B. Davis regarding conference with Scher regarding deposition issues; e-mail to B. McCormick regarding scheduling and designations. | 3.25 | $446.50 | $1,451.13 |
| 03/08/06 | B. Davis | Review corresp. from opposing counsel; rev. client e-mails. | 0.10 | $494.00 | $49.40 |
| 03/09/06 | M. Rhatigan | Reviewed correspondence from L. Gaulin. Organized documents that were produced to Vesterra. | 0.30 | $242.25 | $72.68 |
| 03/09/06 | P. Popeo | Conference with B. Davis regarding draft mediation statement; conference with Nectow; conference with B. McCormick regarding scheduling issues; review Vesterra correspondence and conference with B. Davis regarding conference with Malik; conference with B. Davis regarding conference with Nectow regarding ; conference with C. Michaud regarding Uzdavinis meeting. | 4.25 | $446.50 | $1,897.63 |
| 03/09/06 | B. Davis | Review corresp.; t.c. w. court clerk re case stated proposal; disc. w. opposing counsel re same; disc. w. P. Popeo re          e-mail to client re | 0.60 | $494.00 | $296.40 |



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                                          Page 7
Client/Matter No. 2004810-0004                                                         April 28, 2006
Re: John Hancock v. Avenel                                                    Invoice No. 1246664

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 03/10/06 | B. Davis | Rev. corresp.; e-mail to client re disc. w. P. Popeo re | 0.40 | $494.00 | $197.60 |
| 03/10/06 | P. Popeo | Meeting with Coyne; defend Coyne deposition; conference with Nectau; defend Nectau deposition; review Vestmont correspondence; conference with B. Davis regarding      and regarding strategy/response; prepare mediation statement. | 10.25 | $446.50 | $4,576.63 |
| 03/13/06 | M. Rhatigan | Began organizing documents for summary judgment hearing. | 0.80 | $242.25 | $193.80 |
| 03/13/06 | B. Davis | T.c. w. opposing counsel re case stated procedure and discovery dispute; disc. w. P. Popeo re     ; t.c. w. opposing local counsel re open issues. | 0.80 | $494.00 | $395.20 |
| 03/13/06 | P. Popeo | Review roughs of Coyne and Nectow depositions; conference with CM regarding expert meeting schedule; conference with B. McCormick regarding 30(b)(6) letter; conference with B. Davis regarding      review      cases from M. Rhatigan. | 2.25 | $446.50 | $1,004.63 |
| 03/14/06 | P. Popeo | Multiple conferences with Brian Davis regarding   review Vesterra summary judgment and conference with Brian Davis regarding      conference with Walt Mercer      etc.; multiple conferences with McCormack regarding discovery dispute; J. Uzdavinis deposition; conference with J. Uzdavinis; conference with financial experts; review submissions and court mediation order; draft mediation memorandum; review MR compilation; review case law regarding      ; conference with Hillman. | 5.00 | $446.50 | $2,232.50 |
| 03/14/06 | M. Rhatigan | Conducted research      . Researched case law discussing | 7.30 | $242.25 | $1,768.43 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                    Page 8
Client/Matter No. 2004810-0004                                   April 28, 2006
Re: John Hancock v. Avenel                                   Invoice No. 1246664

| <u>Date</u> | <u>Timekeeper</u> | <u>Description of Work</u> | <u>Hours</u> | <u>Rate</u> | <u>Amount</u> |
|---|---|---|---|---|---|
| 03/14/06 | B. Davis | Disc. w. P. Popeo re                      t.c. with W. Mercer; meeting with W. Mercer review Avenel opposition papers; prepare for argument on summary judgment motion; t.c. with client. | 4.00 | $494.00 | $1,976.00 |
| 03/15/06 | P. Popeo | Conference with M. Rhatigan regarding draft/finalize and conference with B. Davis regarding          ; conference with C. Michaud; conference with J. Uzdavinis regarding session; expert conference and deposition; review documents withheld on privilege grounds and conference with B. McCormick regarding same; conference with H. Scher regarding scheduling issues; conference with B. McCormick regarding 30(b)(6) post designations; sale transaction; review cases; conference regarding summary judgment prep. | 3.25 | $446.50 | $1,451.13 |
| 03/15/06 | M. Rhatigan | Continued to research . Reviewed Opposition papers. Organized attachments for mediation statement. Researched Summary Judgment hearing preparation. Researched | 10.20 | $242.25 | $2,470.95 |
| 03/15/06 | B. Davis | Work on draft Confidential Mediation Statement; circulate same to client; deal with I. Thomas depo. and prep. scheduling. | 2.60 | $494.00 | $1,284.40 |
| 03/16/06 | B. Davis | Prep. for, attend court hearing on Motion for Summary Judgment; e-mail and t.c.s to client re          ; disc. w. client re · disc. w. P. Popeo re | 4.40 | $494.00 | $2,173.60 |

# CHOATE

CHOATE HALL & STEWART LLP

| | | |
|---|---|---|
| John Hancock Financial Services, Inc. | | Page 9 |
| Client/Matter No. 2004810-0004 | | April 28, 2006 |
| Re: John Hancock v. Avenel | | Invoice No. 1246664 |

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 03/16/06 | P. Popeo | Conference with B. McCormick; conference with M. Rhatigan regarding ; multiple conferences with B. Davis regarding review and compile favorable deposition excerpts for same; hearing before Judge Young at federal court; conference with NM regarding multiple conferences with C. Michaud; J. Uzdavinis regarding review documents regarding preparation for same; conference with J. Uzdavinis regarding | 5.75 | $446.50 | $2,567.38 |
| 03/16/06 | M. Rhatigan | Follow-up on research. Preparation for hearing. . Drafted Opposition to Vesterra's Cross-Motion for Summary Judgment. Helped with preparation for meeting with financial experts. | 4.50 | $242.25 | $1,090.13 |
| 03/17/06 | P. Popeo | Multiple conferences with B. Davis; review court order and conference with B. Davis regarding conference with experts and Uzdavinis; office conference with J. Uzdavinis regarding review case law; conference with M. Rhatigan regarding | 4.75 | $446.50 | $2,120.88 |
| 03/17/06 | M. Rhatigan | Pulled together documents to send to Walter Mercer. Retrieved documents for deposition preparation. | 1.80 | $242.25 | $436.05 |
| 03/17/06 | B. Davis | T.c. with client re | 0.20 | $494.00 | $98.80 |
| 03/20/06 | M. Rhatigan | Reviewed summary judgment ruling and discussed ADR hearing. | 0.10 | $242.25 | $24.23 |



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Client/Matter No. 2004810-0004
Re: John Hancock v. Avenel

Page 10
April 28, 2006
Invoice No. 1246664

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 03/20/06 | P. Popeo | Conference call with C. Michaud; spreadsheet/breakage cost review; review Vesterra cross motion; conference with B. Davis regarding            conference with B. McCormick regarding expert issues; conference with B. Davis regarding            Vesterra request for conference; review Judge Young's Memorandum and Order; conference with B. Davis regarding ·        ; conference with B. Davis and B. McCormick regarding expert discovery agreement; review transcripts; conference with Uzdavinis;            with B. Davis; review Coyne transcript; review case law regarding            ·; conference with H. Scher. | 4.25 | $446.50 | $1,897.63 |
| 03/20/06 | B. Davis | Review and revise Opposition to Vesterra Motion for Partial Summary Judgment; file same; disc. w. P. Popeo re            .; t.c. with damages expert            t.c. with J. Uzdavinis; rev. court order re SJ motion; t.c. w. client re            attend            with I. Thomas. | 2.90 | $494.00 | $1,432.60 |
| 03/21/06 | B. Davis | Prep. for, attend mediation session in USDC; e-mails with opposing counsel re Thomas depo.; review client corresp. | 5.30 | $494.00 | $2,618.20 |
| 03/21/06 | M. Rhatigan | Reviewed pretrial scheduling order. Reviewed financial information | 0.20 | $242.25 | $48.45 |
| 03/21/06 | P. Popeo | Conference with Brian Davis; prepare for mediation; Federal Court mediation before Magistrate Judge Sorokin with N. Margolis and B. Davis; conference with J. Uzdavinis regarding ;            : defend J. Uzdavinis deposition; conference with B. Davis regarding conference with B. McCormick; review transcripts and pre-trial order; conference with C. Michaud at Stoneturn. | 10.00 | $446.50 | $4,465.00 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                    Page 11
Client/Matter No. 2004810-0004                       April 28, 2006
Re: John Hancock v. Avenel                     Invoice No. 1246664

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 03/22/06 | B. Davis | Various t.c.s and e-mails with client; prep. for, attend meeting with damages experts; t.c. to industry expert; disc. w. P. Popeo and M. Rhatigan re _____; e-mails w. opposing counsel re Thomas depo. | 2.40 | $494.00 | $1,185.60 |
| 03/22/06 | P. Popeo | Conference with B. Davis regarding _____ ; review _____ review expert report information; office conference with B. Davis and Stoneturn _____ conference with C. Michaud _____ review materials regarding pretrial memorandum and draft same; conference with W. Mercer; review Mercer draft report; conference with B. Davis _____ conference with B. McCormick regarding deposition scheduling issues; review motion for leave and conference regarding same; conference with Malik regarding _____ ; conference with J. Uzdavinis regarding _____ | 3.25 | $446.50 | $1,451.13 |
| 03/22/06 | M. Rhatigan | Reviewed documents to _____ . Met with Brian Davis and Paul Popeo to discuss _____ Spoke to Judge Young's clerk regarding trial scheduling. Began research on _____ . Aided preparation of pre-trial memorandum. | 8.40 | $242.25 | $2,034.90 |
| 03/23/06 | M. Rhatigan | Drafted opposition to Vesterra's motion to file second amended complaint. Began research on _____ | 5.60 | $242.25 | $1,356.60 |
| 03/23/06 | B. Davis | Deal with scheduling of I. Thomas depo.; e-mails to client re _____ ; t.c. to industry expert; review report; t.c. w. StoneTurn. | 1.50 | $494.00 | $741.00 |



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                                Page 12
Client/Matter No. 2004810-0004                                                   April 28, 2006
Re: John Hancock v. Avenel                                               Invoice No. 1246664

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 03/23/06 | P. Popeo | Conference with B. Davis regarding; conference with B. McCormick regarding pretrial issues and drafting; telephone conference with C. Michaud conference with Malik; compile and send documents to Stoneturn; conference with H. Scher regarding deposition scheduling issues; review expert reports and conference with C. Michaud : | 4.50 | $446.50 | $2,009.25 |
| 03/24/06 | M. Rhatigan | Researched : Compiled exhibits to be used at trial. | 5.90 | $242.25 | $1,429.28 |
| 03/24/06 | P. Popeo . | Telephone conference with B. McCormick regarding exchange of expert report and e-mail regarding same; multiple conferences with B. Davis regarding ; draft/revise pretrial memo; draft stipulated facts and send to McCormick; review Mercer report and copy to B. Davis; multiple conferences with Stoneturn , transmit electronically to B. McCormick. | 4.75 | $446.50 | $2,120.88 |
| 03/24/06 | B. Davis | Draft and send to client; meeting w. expert re reports; e-mail to opposing counsel re same; finalize and send out expert reports; review Defs' expert reports. | 2.80 | $494.00 | $1,383.20 |
| 03/25/06 | M. Rhatigan | Researched | 1.30 | $242.25 | $314.93 |
| 03/27/06 | B. Davis | T.c. w. client; make final arrangements for Thomas depo.; disc. w. P. Popeo re , revise opposition to second motion to amend. | 1.60 | $494.00 | $790.40 |



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                    Page 13
Client/Matter No. 2004810-0004                                    April 28, 2006
Re: John Hancock v. Avenel                                 Invoice No. 1246664

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 03/27/06 | P. Popeo | Review Vesterra expert reports and provide to Mercer/Stoneturn; conference with B. Davis regarding          ; multiple conferences with B. McCormick regarding miscellaneous discovery matters; tracking down deposition exhibits, scheduling matters and pre-trial issues; conference with M. Rhatigan regarding conference with B. Davis regarding ; conference with B. McCormick; review documents revise pretrial memoranda. | 2.50 | $446.50 | $1,116.25 |
| 03/27/06 | M. Rhatigan | Corresponded with various individuals regarding deposition exhibits. Forwarded to P. Popeo. Researched Began research on . Found citations for opposition to defendants' motion to file second amended counterclaim. | 6.40 | $242.25 | $1,550.40 |
| 03/28/06 | M. Rhatigan | Found citations for opposition to motion to file second amended counterclaim. Organized documents to be sent to Tom Rogers for         . Compiled deposition exhibits for pre-trial memorandum. Conference call to discuss pre-trial matters. Reviewed . Compiled Exhibit B to accompany pre-trial memorandum. | 13.40 | $242.25 | $3,246.15 |
| 03/28/06 | P. Popeo | Multiple conferences with Brian Davis regarding conference with B. McCormick regarding exhibits, missing documents; revise pre-trial memo; review documents produced and compile list of trial exhibits; multiple conferences with B. Davis regarding conference with Buchanan Ingersoll regarding pre-trial matter; revise/supplement draft pretrial order; review deposition transcripts regarding trial prep. matters; review Order; Motion to Amend. | 6.25 | $446.50 | $2,790.63 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                   Page 14
Client/Matter No. 2004810-0004                                    April 28, 2006
Re: John Hancock v. Avenel                                  Invoice No. 1246664

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|--------------------|-------|------|--------|
| 03/28/06 | B. Davis | Review expert materials and depo. transcripts; work on draft Pre-Trial Memo materials; rev. e-mail; e-mail to clients re ; t.c. w. StoneTurn re expert reports; t.c. w. T. Rogers re conf. call with opposing counsel re Pre-Trial Issues. | 7.80 | $494.00 | $3,853.20 |
| 03/29/06 | P. Popeo | Conference with Davis regarding ; multiple conferences with B. McCormick regarding pretrial edits; expert deposition and scheduling; conference to Mercer; conference with M.R. regarding review transcripts, trial exhibits. | 4.25 | $446.50 | $1,897.63 |
| 03/29/06 | M. Rhatigan | Edited proposed trial exhibits list. E-mailed John Ferrie about . Organized exhibits. Reviewed Reply brief and Order regarding Motion to File Second Amended Counterclaim. | 6.00 | $242.25 | $1,453.50 |
| 03/29/06 | B. Davis | Revise proposed Joint Pre-Trial Order; disc. w. P. Popeo; t.c. with client; e-mail drafts to opposing counsel; t.c. w. H. McCole; t.c. w. T. Malik; make further revisions to Joint Pre-Trial Memo; t.c.s and e-mails w. opposing counsel re same. | 6.00 | $494.00 | $2,964.00 |
| 03/29/06 | E. Castellani | Research for B. Davis and P. Popeo re | 2.80 | $242.25 | $678.30 |
| 03/30/06 | M. Rhatigan | Corresponded with J. Ferrie regarding Reviewed 30(b)(6) documents and pre-trial memorandum. Researched . Researched | 6.90 | $242.25 | $1,671.53 |
| 03/30/06 | B. Davis | Prep. for final pre-trial conf.; review Defendants' Motion to Compel; review court decision on Defs' Motion; meeting with P. Popeo re : attend final pre-trial conf.; report to client re prep. for defending I. Thomas depo.; review corresp. re 30(b)(6) issues. | 7.00 | $494.00 | $3,458.00 |

# C H O A T E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.

Client/Matter No. 2004810-0004

Re: John Hancock v. Avenel

Page 15

April 28, 2006

Invoice No. 1246664

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 03/30/06 | E. Castellani | Research for B. Davis and P. Popeo re

research for P. Popeo re | 7.10 | $242.25 | $1,719.98 |
| 03/31/06 | M. Rhatigan | Met with P. Popeo to discuss

Began cite checking of defendants' 30(b)(6) motion. Continued research on
and drafted e-mail describing findings and attaching cases. | 7.60 | $242.25 | $1,841.10 |
| 03/31/06 | B. Davis | Prep. for, defend deposition of I. Thomas; report to client re       review corresp. re 30(b)(6) issues. | 8.50 | $494.00 | $4,199.00 |
| 03/31/06 | P. Popeo | Multiple conferences with Rhatigan and Castollani regarding       ; review case law; review Vesterra brief and review cited case law; review transcripts; draft brief regarding motion to reconsider; conference with Mercer; draft letters to B. McCormick; conference with Scher. | 2.50 | $446.50 | $1,116.25 |
| 03/31/06 | E. Castellani | Finished research for P. Popeo regarding | 2.80 | $242.25 | $678.30 |

|  | **Total Hours and Amount** | **303.90** |  | **$113,608.74** |
|--|--|--|--|--|

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

Nathaniel Margolis, Esq.
John Hancock Financial Services, Inc.
200 Clarendon Street
T-30
Boston, MA 02117

May 25, 2006
Client/Matter No. 2004810-0004
Invoice No. 1247911
Brian A. Davis

# INVOICE SUMMARY

**Re:    John Hancock v. Avenel**

FOR PROFESSIONAL SERVICES rendered through May 8, 2006 in connection
with the above matter as more fully detailed on the attached pages:

| | |
|---|---|
| Total Professional Services | $333,867.98 |
| Total Expenses | 35,541.44 |
| **Total Amount of this Invoice** | **$369,409.42** |
| Amount Outstanding *(not including any payment in transit)* | 126,486.76 |
| **Total Amount Due** | **$495,896.18** |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 2
May 25, 2006
Invoice No. 1247911

## SUMMARY OF PROFESSIONAL SERVICES

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| Brian A. Davis | 215.30 | $527.25 | $113,516.98 |
| Paul D. Popeo | 218.00 | $470.25 | $102,514.52 |
| Paul D. Popeo | 8.25 | $446.50 | $3,683.63 |
| Meghan L. Rhatigan | 190.70 | $251.75 | $48,008.79 |
| Elizabeth A. Castellani | 135.00 | $251.75 | $33,986.32 |
| Deborah J. Dion | 127.40 | $247.00 | $31,467.80 |
| David B. Baldwin | 4.15 | $166.25 | $689.94 |
| **Total Professional Services** | **898.80** | | **$333,867.98** |

## SUMMARY OF EXPENSES

| Code | Description | Total |
|---|---|---|
| 010 | Courier | $429.00 |
| 041 | Mileage/Rental Cars | $80.10 |
| 042 | Hotel | $843.18 |
| 043 | Airfares | $4,950.57 |
| 044 | Parking | $71.50 |
| 045 | Cab Fare | $427.00 |
| 060 | Outside Copies | $780.72 |
| 098 | Miscellaneous | $350.00 |
| 122 | Overtime Secretary 1 | $816.00 |
| 123 | Overtime Secretary 2 | $480.00 |
| 130 | Postage | $8.67 |
| 135 | Telecopier/Fax | $41.00 |
| 145 | Velobind/Special Duplicating | $36.00 |
| 150 | Photocopies | $5,705.10 |
| 155 | WestLaw Research | $9,227.95 |
| 206 | On-Line Legal Research | $112.24 |
| 211 | Other Professional Services | $647.26 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 3
May 25, 2006
Invoice No. 1247911

| Code | Description | Total |
|------|-------------|-------|
| 401 | Medical Records - Copies | $986.16 |
| 502 | Court Reporter Service | $9,169.63 |
| 820 | Foreign Associate Fee | $379.36 |
| | **Total Expenses** | **$35,541.44** |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Re: John Hancock v. Avenel
Client/Matter No. 2004810-0004

Page 4
May 25, 2006
Invoice No. 1247911

## HOURS DETAIL

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|--------------------|-------|------|--------|
| 03/07/06 | P. Popeo | Conference with B. Davis regarding review case law; conference with B. McCormick; review Vesterra letter; confer with Coyne; conference with Uzdavinis. | 2.25 | $446.50 | $1,004.63 |
| 03/30/06 | P. Popeo | Hancock pre-trial conference; conference with H. Scher and B. McCormick; letter to H. Scher regarding 30(b)(6) issue sand cooperation; conference with B. Davis regarding ; research regarding review transcripts; conference with J. Uzdavinis; review case law regarding . ; conferences with E. Castellani; M. Rhatigan. | 6.00 | $446.50 | $2,679.00 |
| 04/01/06 | P. Popeo | Review transcripts, notes, correspondence, e-mails; draft Motion for Reconsideration. | 7.75 | $470.25 | $3,644.44 |
| 04/02/06 | P. Popeo | Review case law and supplement research; review transcripts; draft brief regarding reconsideration. | 4.25 | $470.25 | $1,998.56 |
| 04/03/06 | B. Davis | Disc. w. P. Popeo re . review cases for Motion to Dismiss new fraud counterclaim; disc. w. L. Castellani re | 1.90 | $527.25 | $1,001.78 |
| 04/03/06 | M. Rhatigan | Met with P. Popeo to discuss . Follow-up research for motion for reconsideration. Gathered deposition transcripts for P. Popeo. Researched | 6.10 | $251.75 | $1,535.68 |
| 04/03/06 | E. Castellani | Researched case law and drafted for B. Davis John Hancock's Rule 12(b)(6) Motion to Dismiss | 6.50 | $251.75 | $1,636.38 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Client/Matter No. 2004810-0004
Re: John Hancock v. Avenel

Page 5
May 25, 2006
Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 04/03/06 | P. Popeo | Research and review case law; multiple conferences with Meghan Rhatigan and Brian Davis; conference with Brian McCormick; conference with Harold Scher; draft letter to Scher; review expert reports; conference with Mercer; draft and revise brief; conference regarding amended complaint and related matters; conference call with McCormick. | 6.75 | $470.25 | $3,174.19 |
| 04/04/06 | M. Rhatigan | Researched | 5.40 | $251.75 | $1,359.45 |
| 04/04/06 | E. Castellani | Drafted for B. Davis John Hancock's Rule 12(b)(6) Motion to Dismiss Pennsylvania fraud claim in Avenel litigation. | 7.10 | $251.75 | $1,787.43 |
| 04/04/06 | B. Davis | Review Defs' Second Amended Complaint; e-mails to experts re expert reports; work on Motion for Reconsideration concerning 30(b)(6) deposition Order. | 2.20 | $527.25 | $1,159.95 |
| 04/04/06 | P. Popeo | Review case law, and draft and revise brief; multiple conferences with B. Davis; review transcripts regarding same; multiple conferences with B. McCormick. | 6.25 | $470.25 | $2,939.06 |
| 04/05/06 | E. Castellani | Drafted and edited John Hancock's Rule 12(b)(6) Motion to Dismiss Pennsylvania fraud claim in Avenel litigation. | 6.80 | $251.75 | $1,711.90 |
| 04/05/06 | B. Davis | Work on motion for reconsideration. | 2.00 | $527.25 | $1,054.50 |
| 04/05/06 | P. Popeo | Hancock; review and respond to correspondence; brief conference with B. Davis regarding | 0.50 | $470.25 | $235.13 |
| 04/05/06 | M. Rhatigan | Edited and added citations to Motion for Reconsideration. Conducted additional research to supplement Motion for Reconsideration. Reviewed Popeo declaration and organized exhibits. Researched               Follow-up research | 11.40 | $251.75 | $2,869.95 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                        Page 6
Client/Matter No. 2004810-0004                                         May 25, 2006
Re: John Hancock v. Avenel                                     Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 04/06/06 | M. Rhatigan | Finalized research. Researched . Tracked down documents to be cited in Motion for Reconsideration. Researched | 4.30 | $251.75 | $1,082.53 |
| 04/06/06 | B. Davis | Draft Motion for Reconsideration; disc. w. M. Rhatigan re work on assembling supporting materials for Motion to Reconsider; review corresp. re Rule 30(b)(6) depo. issues; draft and send response to same. | 7.80 | $527.25 | $4,112.55 |
| 04/07/06 | B. Davis | Finalize draft Motion for Reconsideration; various letters to opposing counsel re discovery issues; t.c.s with opposing counsel re same; t.c.s with experts re depositions; t.c. with client re arrange for filing of same; deal with potential depo. of W. Thomson. | 8.80 | $527.25 | $4,639.80 |
| 04/07/06 | M. Rhatigan | Drafted deposition notices and document request. Follow-up research on . Verified filing date of second amended complaint and calculated date to file response. Edited Motion for Reconsideration and prepared same for filing. Filed Motion for Reconsideration. | 8.10 | $251.75 | $2,039.18 |
| 04/10/06 | B. Davis | Work on Motion to Dismiss PA fraud claim; e-mail to W. Mercer re list of documents reviewed; letter to opposing counsel re timing of Motion to Dismiss. | 5.80 | $527.25 | $3,058.05 |
| 04/10/06 | M. Rhatigan | Reviewed Motion to Dismiss and suggested possible edits. Reviewed correspondence with opposing counsel. | 0.40 | $251.75 | $100.70 |
| 04/10/06 | P. Popeo | Review motion to dismiss; conference with B. Davis regarding conference with Nectow; review transcripts; multiple conferences with B. McCormick regarding discovery issues; missing exhibits; conference with W. Mercer; review and collect Mercer documents for production; conference with M. Rhatigan; review Thomas transcript. | 2.75 | $470.25 | $1,293.19 |



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                          Page 7
Client/Matter No. 2004810-0004                                          May 25, 2006
Re: John Hancock v. Avenel                                     Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 04/11/06 | E. Castellani | Research for B. Davis re | 9.40 | $251.75 | $2,366.45 |
| | | Hancock's Motion to Dismiss Vestmont's Second Amended Counterclaim for Fraud under PA law; e-filed Motion, emailed pdf copies and overnighted hard copies to opposing counsel | | | |
| 04/11/06 | P. Popeo | Office conference with Michaud, Platt, Davis regarding Platt deposition preparation/defense; review Court Order and conference regarding same; collect and produce Platt and Mercer documents; reviewed and exchanged with CHS; conference regarding with B. Davis and file same; review Henderson transcript; exhibit issues; review Judge Young correspondence. | 5.00 | $470.25 | $2,351.25 |
| 04/11/06 | B. Davis | Work on Motion to Dismiss PA Fraud Claim; rev. Defs' corresp. to court; draft and send letter to Judge Young re Defs' request to postpone motion hearing; finalize and file Motion to Dismiss. | 5.20 | $527.25 | $2,741.70 |
| 04/12/06 | B. Davis | Rev. court order re Motion for Reconsideration; disc. w. P. Popeo re ; t.c. with client re ; t.c. w. W. Mercer; attend deposition prep. session with W. Mercer; begin prep. for expert depos. and continued depo. of J. Koller. | 5.10 | $527.25 | $2,688.98 |
| 04/12/06 | M. Rhatigan | Met with P. Popeo and B. Davis to discuss Reviewed revised deposition notices. | 0.60 | $251.75 | $151.05 |
| 04/12/06 | P. Popeo | Office conference with W. Mercer regarding deposition preparation; review report; cross issues; Spevacek report etc.; multiple conferences with B. McCormick regarding missing exhibits; document deficiencies and exchange; conference with B. Davis; conference with J. Uzdavinis; conference with Michaud; conference regarding Judge Young Order; deposition defense. | 4.25 | $470.25 | $1,998.56 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.  
Client/Matter No. 2004810-0004  
Re: John Hancock v. Avenel

Page 8  
May 25, 2006  
Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 04/13/06 | P. Popeo | | 0.00 | $470.25 | $0.00 |
| 04/13/06 | E. Castellani | | 0.00 | $251.75 | $0.00 |
| 04/13/06 | M. Rhatigan | Compiled documents consulted by Ms. Spevacek. Organized document productions so that it could be moved to B. Davis' office. Reviewed and edited deposition notices for Koller and Spevacek. Reviewed expert reports. | 3.20 | $251.75 | $805.60 |
| 04/13/06 | B. Davis | Work on depo. outlines for Spevacek and Koller; review and revise Notice of Depo. for Spevacek; e-mails to client re : e-mail to client re | 4.80 | $527.25 | $2,530.80 |
| 04/14/06 | D. Dion | Prepare notice of depositions for Spevacek, Koller and Johnson; prepare e-mail to counsel with notices | 0.80 | $247.00 | $197.60 |
| 04/14/06 | D. Dion | Compile and organize documents for Spevacek deposition | 3.40 | $247.00 | $839.80 |
| 04/14/06 | E. Castellani | | 0.00 | $251.75 | $0.00 |
| 04/14/06 | B. Davis | Meeting with P. Popeo and W. Mercer re ; attend and defend S. Platt deposition; | 5.30 | $527.25 | $2,794.43 |
| 04/14/06 | P. Popeo | Defend Mercer deposition; conference with B. Davis and S. Platt regarding deposition; conference with M. Rhatigan. | 7.75 | $470.25 | $3,644.44 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                    Page 9
Client/Matter No. 2004810-0004                                      May 25, 2006
Re: John Hancock v. Avenel                                   Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 04/17/06 | B. Davis | | 0.00 | $527.25 | $0.00 |
| 04/17/06 | E. Castellani | | 0.00 | $251.75 | $0.00 |
| 04/18/06 | E. Castellani | | 0.00 | $251.75 | $0.00 |
| 04/18/06 | P. Popeo | Review Vesterra Opposition brief and exhibits; conference with B. Davis regarding same; review motion to compel; review Opposition to motion to dismiss; conference with C. Michaud; conference with R. Ross; review Coyne exhibits; draft affidavits. | 4.50 | $470.25 | $2,116.13 |
| 04/19/06 | P. Popeo | ; review Platt report; review Uzdavinis transcript; multiple conferences with C. Michaud regarding revised report; review Coyne and Malik. | 4.50 | $470.25 | $2,116.13 |
| 04/19/06 | E. Castellani | | 0.00 | $251.75 | $0.00 |
| 04/19/06 | B. Davis | review Defs' opposition to Motion to Dismiss; begin preparing for motion hearing. | 1.50 | $527.25 | $790.88 |
| 04/20/06 | D. Dion | Prepare revised notice of deposition for Larry Johnson; prepare e-mail to counsel with notice | 1.00 | $247.00 | $247.00 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                    Page 10
Client/Matter No. 2004810-0004                                    May 25, 2006
Re: John Hancock v. Avenel                                    Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 04/20/06 | M. Rhatigan | Met with Brian Davis to discuss | 13.10 | $251.75 | $3,297.93 |
|  |  | Pulled                    documents for Paul Popeo. Met with Brian Davis and Paul Popeo to discuss                    Gave documents to Debbie Dion for organization for trial. Phoned Tom Rogers regarding ·                    Phoned Bonnie Smith to determine due date for motions in limine. Began research to support motions in limine                    Researched case law regarding |  |  |  |
| 04/20/06 | P. Popeo | Review Thomas deposition and prepare for court hearing; conference with B. Davis regarding                    conference with Malik regarding      ·; multiple conferences with Stoneturn regarding draft amended report;                    hearing before Judge Young on motion to dismiss and pretrial matters; conference to clients and witnesses regarding same; trial preparation conference; strategy and action plan; conference with Uzdavinis; conference with Stoneturn and finalize report; conference with B. Davis regarding | 7.00 | $470.25 | $3,291.75 |
| 04/20/06 | B. Davis | Prep. for, attend motion hearing on motion to dismiss; prepare for deposition of L. Spevacek and J. Koller; t.c. with client re         ; team meeting to discussion          '; t.c.s to potential witnesses re trial schedule. | 7.00 | $527.25 | $3,690.75 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Client/Matter No. 2004810-0004
Re: John Hancock v. Avenel

Page 11
May 25, 2006
Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 04/20/06 | E. Castellani | Research for B. Davis re _____ in preparation for motion in limine to exclude Spevacek testimony from trial (3.1); _____ discussed _____ with B. Davis, P. Popeo, M. Rhatigan, _____ and outlined Spevacek motion in limine (5.1) | 7.70 | $251.75 | $1,938.48 |
| 04/21/06 | D. Dion | Revise trial exhibit list | 2.40 | $247.00 | $592.80 |
| 04/21/06 | P. Popeo | Multiple conferences with B. Davis regarding _____ McCormick letter regarding discovery issues; sales documents; _____ ; multiple conferences with C. Michaud; _____ ; draft letter to R. Ross and track down Mercer documents; conference with B. Davis; review document list and documents; transcripts. | 7.25 | $470.25 | $3,409.31 |
| 04/21/06 | M. Rhatigan | Finalized research on _____ Determined which documents were marked confidential in first production. Researched _____ Worked on motion in limine with respect to _____ Began research on _____ | 11.80 | $251.75 | $2,970.65 |
| 04/21/06 | B. Davis | Prep. for, take depositions of L. Spevacek and J. Koller in Philadelphia; _____ , rev. corresp.; t.c. to client re _____ | 9.00 | $527.25 | $4,745.25 |
| 04/21/06 | E. Castellani | Researched case law and began draft of motion in limine re _____ , to exclude Spevacek testimony from trial; drafted final trial brief documents re proposed jury instructions, special verdict form and voir dire questions | 8.70 | $251.75 | $2,190.23 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Client/Matter No. 2004810-0004
Re: John Hancock v. Avenel

Page 12
May 25, 2006
Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 04/22/06 | D. Dion | Team meeting | 1.00 | $247.00 | $247.00 |
| 04/22/06 | M. Rhatigan | Case team trial preparation meeting. Researched c . Researched . Worked on motion in limine with respect to і і. Pulled information on | 9.50 | $251.75 | $2,391.63 |
| 04/22/06 | E. Castellani | Met with case team to discuss ;; drafted final trial brief documents re proposed jury instructions, special verdict form and voir dire questions | 6.90 | $251.75 | $1,737.08 |
| 04/22/06 | P. Popeo | Trial team meeting; . multiple conferences with Brian Davis. | 5.75 | $470.25 | $2,703.94 |
| 04/22/06 | B. Davis | Trial preparation and . . . . | 5.50 | $527.25 | $2,899.88 |
| 04/23/06 | P. Popeo | review and prepare trial experts; multiple conferences with B. Davis regarding conference with B. McCormick regarding miscellaneous expert issues; in court a/u issues; attention to miscellaneous trial preparation matters. | 6.50 | $470.25 | $3,056.63 |
| 04/23/06 | D. Dion | Trial preparation | 6.80 | $247.00 | $1,679.60 |
| 04/23/06 | B. Davis | Trial preparation and · review proposed trial exhibits; e-mail to opposing counsel re Thomson deposition; e-mail to client re | 5.80 | $527.25 | $3,058.05 |
| 04/23/06 | M. Rhatigan | Worked on motion in limine regarding Met with Brian Davis and Paul Popeo to discuss . Reviewed Coyne deposition for Researched | 5.70 | $251.75 | $1,434.98 |



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                          Page 13
Client/Matter No. 2004810-0004                             May 25, 2006
Re: John Hancock v. Avenel                            Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 04/23/06 | E. Castellani | drafted final trial brief documents re proposed jury instructions, special verdict form and voir dire questions; researched for Motion to Compel Spevacek draft expert report | 2.50 | $251.75 | $629.38 |
| 04/24/06 | E. Castellani | Researched case law and drafted Motion to Compel draft of Spevacek expert report; drafted proposed jury instruction on Ch.93A counterclaim. | 8.10 | $251.75 | $2,039.18 |
| 04/24/06 | P. Popeo | conference with Henderson; conference with Nectow; review motion for preliminary injunction/compliance with escrow mandate and assist regarding filing same; attention to trial preparation including exhibit review; deposition transcript review; outline testimony et al. | 8.00 | $470.25 | $3,762.00 |
| 04/24/06 | D. Dion | Trial preparation; organize trial exhibits; prepare exhibit list | 6.80 | $247.00 | $1,679.60 |
| 04/24/06 | M. Rhatigan | Spoke to Brian Davis and Debbie Dion about ' Forwarded to Patricia Coyne. Edited motion in limine with respect to Confirmed date for Reviewed the first Koller deposition transcript for Reviewed a portion of Spevacek's deposition transcript. Researched Researched | 13.00 | $251.75 | $3,272.75 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Client/Matter No. 2004810-0004
Re: John Hancock v. Avenel

Page 14
May 25, 2006
Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 04/24/06 | B. Davis | Rev. corresp.; prep. for trial; e-mail to opposing counsel re Spevacek draft and status of Avenel Apartments property; various t.c.s w. client; deal w. Defs' violation of escrow agreement; draft and file emergency motion re same. | 8.80 | $527.25 | $4,639.80 |
| 04/25/06 | E. Castellani | Drafted Motion in Limine to exclude parts of Spevacek expert report and deposition testimony and preclude related testimony at trial; r.   . . .  ; drafted proposed jury instructions on breach of contract and Ch. 93A counterclaim. | 9.50 | $251.75 | $2,391.63 |
| 04/25/06 | D. Dion | Trial preparation; organize trial exhibits; revise exhibit list; several e-mail exchanges with opposing counsel regarding exhibits | 6.30 | $247.00 | $1,556.10 |
| 04/25/06 | M. Rhatigan | Consolidated        research. Continued research on  .      . Began drafting motion in limine regarding references to Vesterra's efforts to lease the property. | 10.70 | $251.75 | $2,693.73 |
| 04/25/06 | B. Davis | Prepare for L. Johnson deposition; meeting with S. Platt re       rev. corresp. from opposing counsel; e-mails to opposing counsel; t.c.s with client; t.c. w. court clerk re emergency motion re escrow funds. | 6.50 | $527.25 | $3,427.13 |
| 04/25/06 | P. Popeo |        trial prep. issues; conference with B. McCormick regarding Court/media issues; coordinate with D. Dion;       review voir dire draft and revise; review Mercer transcript; Platt transcript. | 7.75 | $470.25 | $3,644.44 |



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                          Page 15
Client/Matter No. 2004810-0004                                            May 25, 2006
Re: John Hancock v. Avenel                                          Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 04/26/06 | M. Rhatigan | Created file of cases regarding      Worked on motion in limine regarding evidence of efforts to lease property. Reviewed court documents pertaining to emergency motion. Researched      Reviewed loan commitment for information pertaining to      . Researched | 10.30 | $251.75 | $2,593.03 |
| 04/26/06 | B. Davis | work on voir dire questions; rep. for L. Johnson depo.; rev. correspondence re discovery and pretrial issues; draft and file reply memo re escrow fund; prep. for, attend meeting w. W. Thomson. | 7.50 | $527.25 | $3,954.38 |
| 04/26/06 | E. Castellani | Drafted Motion in Limine to exclude parts of Spevacek expert report and deposition testimony and preclude related testimony at trial; drafted trial brief | 8.90 | $251.75 | $2,240.58 |
| 04/26/06 | D. Dion | Trial preparation; organize deposition exhibits; revise exhibit list | 6.30 | $247.00 | $1,556.10 |
| 04/26/06 | P. Popeo | .·. meeting with Thomson, J. Hancock; multiple conferences with B. Davis;      review transcripts; review voir dire; conference regarding Thomson deposition; review documents regarding trial; conference with B. McCormick regarding exhibit list; revise same with D. Dion; add objections; review/revise Trial Brief; review Kelly transcript regarding outline. | 9.75 | $470.25 | $4,584.94 |
| 04/27/06 | D. Dion | Trial preparation; organize exhibits; revise exhibit list; conferences regarding technology for the courtroom | 5.40 | $247.00 | $1,333.80 |
| 04/27/06 | B. Davis | Prep. for, take deposition of Defs' damage expert (L. Johnson) in Washington, DC; work on trial brief; disc. w. S. Platt re Johnson depo.; disc. w. P. Popeo re | 7.80 | $527.25 | $4,112.55 |



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Client/Matter No. 2004810-0004
Re: John Hancock v. Avenel

Page 16
May 25, 2006
Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 04/27/06 | M. Rhatigan | Researched case law | 8.20 | $251.75 | $2,064.35 |
| 04/27/06 | E. Castellani | Revised Motion in Limine to exclude parts of Spevacek expert report and deposition testimony and preclude related testimony at trial; filed jury voir dire questions | 8.00 | $251.75 | $2,014.00 |
| 04/27/06 | P. Popeo | Review Kelly outline and prepare cross-examination outline; travel to Toronto and pre-deposition conference with Mr. Warren Thomson; defend Mr. Thomson's deposition; conference with Brian McCormick concerning miscellaneous exhibit and trial logistics matters; conference with B. Davis regarding | 7.25 | $470.25 | $3,409.31 |
| 04/28/06 | D. Dion | Trial preparation | 9.25 | $247.00 | $2,284.75 |
| 04/28/06 | B. Davis | Prep. for trial; visit courtroom to review presentation set-up; work on witness outlines; revise trial brief; revise Motion to Compel; revise Renewed Motion for Summary Judgment; t.c.s w. clients and various witnesses. | 7.70 | $527.25 | $4,059.83 |
| 04/28/06 | D. Baldwin | Prepare attorney laptops for realtime transcript recording, transfer deposition transcripts to laptops | 4.15 | $166.25 | $689.94 |
| 04/28/06 | M. Rhatigan | Discussed with Brian | 12.10 | $251.75 | $3,046.18 |

Began drafting motion in limine regarding amendment. Located Ferrie e-mail regarding Researched
Requested transcript of Motion to Dismiss hearing. Reviewed final trial brief. Attended team meeting. Researched

Found documents Liz needed to file motion to compel. Researched



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                                   Page 17
Client/Matter No. 2004810-0004                                       May 25, 2006
Re: John Hancock v. Avenel                                     Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 04/28/06 | E. Castellani | Drafted and filed motion to compel documents re sale of Avenel Apartment; drafted and filed renewed motion for summary judgment on Defendants' Ch.93A counterclaim; met with case team to discuss | 11.70 | $251.75 | $2,945.48 |
| 04/28/06 | P. Popeo | Multiple conferences with Brian McCormick and Deb Dion concerning trial exhibits and related preparation and logistics; review and revise trial brief; review and revise summary judgment brief; review miscellaneous evidence issues; review case law regarding limine motions; review and revise same; review deposition of Thomas; multiple conferences with Brian Davis regarding , attend to trial preparation. | 12.25 | $470.25 | $5,760.56 |
| 04/29/06 | D. Dion | Trial preparation, compile exhibits for witnesses; revise exhibit list; several email exchanges with opposing counsel regarding exhibits and exhibit list | 8.60 | $247.00 | $2,124.20 |
| 04/29/06 | M. Rhatigan | Researched .: Researched case law on `Began research on Requested transcript from summary judgment hearing. Drafted cover memos for several research files. | 10.40 | $251.75 | $2,618.20 |
| 04/29/06 | B. Davis | Prep. for trial. | 8.50 | $527.25 | $4,481.63 |
| 04/30/06 | E. Castellani | Assembled legal documents for Renewed Summary Judgment Motion; reviewed Avenel sales documents for researched , revised final set of proposed jury instructions and special jury verdict form | 9.50 | $251.75 | $2,391.63 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Client/Matter No. 2004810-0004
Re: John Hancock v. Avenel

Page 18
May 25, 2006
Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 04/30/06 | M. Rhatigan | Researched `  ` Finalized `  ` Drafted cover memorandums for research files. Organized cases for research files. Researched . Added citations to motions in limine. | 11.60 | $251.75 | $2,920.30 |
| 04/30/06 | D. Dion | Trial preparation; update trial exhibit list; organize trial exhibits; several e-mails exchanges with opposing counsel regarding exhibits and exhibit list; participate in Animation Technologies demonstration | 9.75 | $247.00 | $2,408.25 |
| 04/30/06 | B. Davis | Prep. for trial; meeting w. J. Ferrie. | 10.00 | $527.25 | $5,272.50 |
| 04/30/06 | P. Popeo | Draft motions in limine; draft jury instruction and verdict form; review deposition transcripts; review exhibits; multiple conferences with B. Davis regarding ; conference with B. McCormick; multiple conferences with D. Dion, M. Rhatigan, L. Castellani; prepare for trial; outline Malek; review Uzdavinis deposition and affidavit. | 7.25 | $470.25 | $3,409.31 |
| 05/01/06 | M. Rhatigan | Edited the Motions in Limine. Worked on Thomas examination outline. Reviewed Thomson deposition and pulled and highlighted portions of exhibits used therein. Drafted McCole examination outline. | 8.00 | $251.75 | $2,014.00 |
| 05/01/06 | E. Castellani | Outlined portions of Koller depositions for use in cross-examination; helped revise and coordinate filing of proposed jury instructions and special verdict form; outlined direct examination of Joan Uzdavinis; edited and assembled motions in limine and supporting materials. | 10.90 | $251.75 | $2,744.08 |
| 05/01/06 | D. Dion | Attend trial; organize exhibits for trial; revise exhibit list and send to opposing counsel | 12.80 | $247.00 | $3,161.60 |



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Client/Matter No. 2004810-0004
Re: John Hancock v. Avenel

Page 19
May 25, 2006
Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 05/01/06 | P. Popeo | Jury selection in Hancock trial; conference with clients and prepare witnesses, Malik and Ferry; multiple conferences regarding trial strategy and prep. for opening statement; review transcripts and prepare for cross exam issues; prepare witness outlines; review exhibits and multiple conferences with B. Davis and trial team; attention to trial preparation; finalize and confer regarding motions in limine; jury instructions and verdict form and file same; conference to J. Uzdavinis; conference with Margolis. | 14.75 | $470.25 | $6,936.19 |
| 05/01/06 | B. Davis | Prep. for, participate in jury selection; prep. for 1st day of trial; T. Malik witness prep.; further J. Ferrie witness prep.; various t.c.s with client re | 10.20 | $527.25 | $5,377.95 |
| 05/02/06 | B. Davis | Prep. for, participate in Day 1 of trial; further T. Malik witness prep.; prep. I. Thomas for testimony; various t.c.s with client re trial. | 12.80 | $527.25 | $6,748.80 |
| 05/02/06 | P. Popeo | Hancock trial and trial preparation, including review of trial transcript; witness preparation and examination outlines; research review; conference with J. Uzdavinis; prepare W. Mercer and review expert issues; conference with B. McCormick regarding various matters; conference with B. Davis regarding | 11.00 | $470.25 | $5,172.75 |
| 05/02/06 | D. Dion | Attend trial; organize exhibits for trial | 9.20 | $247.00 | $2,272.40 |
| 05/02/06 | M. Rhatigan | Prepped courtroom. Drafted trial subpoena for sale documents. Drafted Mercer examination outline. | 6.00 | $251.75 | $1,510.50 |
| 05/02/06 | E. Castellani | Outlined portions of Koller depositions for use in cross-examination; | 2.60 | $251.75 | $654.55 |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Client/Matter No. 2004810-0004
Re: John Hancock v. Avenel

Page 20
May 25, 2006
Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 05/03/06 | M. Rhatigan | Met with Paul Popeo to discuss · Relayed information regarding to L. Castellani. Worked on Palopoli outline. Researched Reviewed sale documents. | 6.20 | $251.75 | $1,560.85 |
| 05/03/06 | E. Castellani | Research organized excerpts from Kelly deposition for use in cross-examination; preparation for Koller cross-examination; | 5.30 | $251.75 | $1,334.28 |
| 05/03/06 | B. Davis | Prep. for, participate in Day 2 of trial; T. Rogers witness prep.; participate in H. McCole witness prep.; various t.c.s with client re trial; prep. Koller cross-exam; S. Platt direct prep. session; follow up on documents re actual sale of Avenel property. | 13.00 | $527.25 | $6,854.25 |
| 05/03/06 | P. Popeo | Trial and trial preparation. | 14.25 | $470.25 | $6,701.06 |
| 05/03/06 | D. Dion | Trial preparation; attend trial; update exhibit list; compile and organize exhibits for witnesses | 10.60 | $247.00 | $2,618.20 |
| 05/04/06 | P. Popeo | Multiple conferences with B. McCormick and review subpoenaed documents; conference with H. Scher regarding witness order and miscellaneous issues; trial and trial preparation including Uzdavinis and Kelly examinations; prepare Kelly cross and review depositions, documents and trial transcripts; conference with B. Davis regarding ; prepare W. Mercer; review and revise direct verdict draft; assist B. Davis regarding | 14.25 | $470.25 | $6,701.06 |
| 05/04/06 | B. Davis | Review docs. re actual sale of Avenel property; prep. for, participate in Day 3 of jury trial; prep. Spevacek and Johnson cross-exams; various t.c.s with client; review Motions in Limine re Spevacek. | 12.50 | $527.25 | $6,590.63 |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
Client/Matter No. 2004810-0004
Re: John Hancock v. Avenel

Page 21
May 25, 2006
Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 05/04/06 | D. Dion | Trial preparation; attend trial | 9.50 | $247.00 | $2,346.50 |
| 05/04/06 | E. Castellani | Researched and drafted motion for directed verdict on John Hancock's breach of contract claim and Vesterra's ch.93A counterclaim; pull research on Vesterra's response to motion in limine on Spevacek testimony; | 3.40 | $251.75 | $855.95 |
| 05/04/06 | M. Rhatigan | . Highlighted excerpts of Johnson deposition. Reviewed Vesterra production for   . Reviewed Spevacek deposition testimony. | 7.10 | $251.75 | $1,787.43 |
| 05/05/06 | B. Davis | Prep. for, participate in Day 4 of trial; various t.c.s with client re   arrange for return of H. McCole for testimony. | 8.60 | $527.25 | $4,534.35 |
| 05/05/06 | E. Castellani | | 0.00 | $251.75 | $0.00 |
| 05/05/06 | D. Dion | Trial preparation; attend trial | 5.80 | $247.00 | $1,432.60 |
| 05/05/06 | P. Popeo | Trial and trial preparation; client conferences; conference with H. McCole and assist regarding travel arrangements and schedule; conference with B. Depolis; review exhibits; review Spevacek and revise planned testimony. | 7.25 | $470.25 | $3,409.31 |
| 05/05/06 | M. Rhatigan | Reviewed court transcript for   Helped with courtroom set-up. Requested copy of jury charge from Don Womack. Reviewed exhibit list for closing arguments. | 2.70 | $251.75 | $679.73 |
| 05/06/06 | B. Davis | Prepare outline for closing argument; e-mails to opposing counsel re $5 million. | 7.40 | $527.25 | $3,901.65 |
| 05/06/06 | P. Popeo | Trial preparation; review exhibits; review trial transcript; prepare McCole direct and cross; assist B. Davis regarding | 7.75 | $470.25 | $3,644.44 |



CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.                Page 22
Client/Matter No. 2004810-0004                       May 25, 2006
Re: John Hancock v. Avenel                          Invoice No. 1247911

| Date | Timekeeper | Description of Work | Hours | Rate | Amount |
|------|-----------|---------------------|-------|------|--------|
| 05/07/06 | P. Popeo | Preparation meeting with H. McCole for testimony; review trial transcript, Spevacek testimony and exhibits concerning cross examination issues; refine McCole examination; assist B. Davis regarding multiple conferences with trial team concerning | 8.75 | $470.25 | $4,114.69 |
| 05/07/06 | B. Davis | Prepare and practice outline for closing argument; deal with jury instruction issues; review and revise Motion for Directed Verdict. | 9.30 | $527.25 | $4,903.43 |
| 05/07/06 | D. Dion | Compile and organize exhibits admitted in evidence; revise trial exhibit list; review Spevacek testimony for admitted exhibits for H. McCole preparation; participate in mock closing argument; compile and organize exhibits used in closing | 5.30 | $247.00 | $1,309.10 |
| 05/07/06 | E. Castellani | Run-through of closing argument with case team | 1.50 | $251.75 | $377.63 |
| 05/07/06 | M. Rhatigan | Reviewed trial transcript to determine when renewed motion for judgment as a matter of law needs to be made. Listened to closing argument and made comments. | 1.70 | $251.75 | $427.98 |
| 05/08/06 | M. Rhatigan | Reviewed Federal Rules to determine . Requested bills regarding Hancock matter. Began research regarding | 3.10 | $251.75 | $780.43 |
| 05/08/06 | E. Castellani | | 0.00 | $251.75 | $0.00 |
| 05/08/06 | P. Popeo | Hancock trial; McCole examination, closing and client conferences; receive verdict. | 7.00 | $470.25 | $3,291.75 |
| 05/08/06 | B. Davis | Prep. for, attend Day 5 of trial; deal with jury questions; receive jury verdict; various t.c.s with clients and witnesses re | 7.00 | $527.25 | $3,690.75 |
| 05/08/06 | D. Dion | Trial preparation; attend trial; update exhibit list | 6.40 | $247.00 | $1,580.80 |
| | | **Total Hours and Amount** | **898.80** | | **$333,867.98** |

# CHOATE

CHOATE HALL & STEWART LLP

John Hancock Financial Services, Inc.
File No. 2004810-0004
Re: John Hancock v. Avenel
Patent Application No.:

Page 23
May 25, 2006
Invoice No. 1247911

## INVOICES OUTSTANDING

| Invoice Date | Invoice Number | Original Amount | Payment to Date | Remaining Balance |
|---|---|---|---|---|
| 04/28/06 | 1246664 | $126,486.76 | $0.00 | $126,486.76 |

|  |  |
|---|---|
| **Amount Outstanding:** | **$126,486.76** |
| **Total Amount of This Invoice:** | **369,409.42** |
| **Total Amount Due:** | **$495,896.18** |

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP



Nathaniel Margolis, Esq.
John Hancock Financial Services, Inc.
200 Clarendon Street
T-30
Boston, MA 02117

May 25, 2006
Client/Matter No. 2004810-0004
Invoice No. 1247911
Brian A. Davis

**Re:    John Hancock v. Avenel**

For professional services rendered through May 8, 2006.

| | |
|---|---|
| Total Amount of this Invoice | $369,409.42 |
| Amount Outstanding *(not including any payment in transit)* | 126,486.76 |
| **Total Amount Due** | **$495,896.18** |

## PLEASE RETURN THIS PAGE WITH YOUR PAYMENT.

*Payment is due upon receipt.*

| **Mailed/Check Remittance** | | **Wire Instructions** | |
|---|---|---|---|
| Payable to: | Choate, Hall & Stewart LLP | Bank: | Bank of America |
| Address: | Two International Place | Address: | 100 Federal Street |
| | Boston, MA 02110-4104 | | Boston, MA 02110 |
| Attn: | Collections Department | ABA #: | 0260-0959-3 |
| | | For Credit To: | Choate, Hall & Stewart LLP |
| | | | Account #00000542-2720 |
| | | Please Reference in Wiring Information: | 1247911 / |
| | | | 2004810-0004 |

# TAB 5

# *LITIGATION DOCUMENT PRODUCTIONS, INC.*

*(617) 542-7333*
*61 Batterymarch Street*
*Boston, MA 02110*

# Invoice

FED ID 04-3215305

| DATE: | 5/2/2006 | INVOICE #: | 43965 |
|---|---|---|---|
| CLIENT/MATTER: | 2004810-0004 | REQUESTOR: | D. Dion |

| SERVICE DATE: |
|---|
| 4/29/2006 |

BILL TO: Choate, Hall & Stewart
Ms. Deborah Dion
Two International Place
Boston, MA 02110
VENDOR #11475

SHIP TO:    S A M E

| DESCRIPTION | ORIGINALS | SIZE | SETS | COPIES | PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| Copying | 4,775 | Varia. | 4 | 19,100 | 0.118 | 2,253.80 |
| Copying | 4,775 | Varia. | 6 | 28,650 | 0.113 | 3,237.45 |
| Tabs (A-Z) | 1 | 8½X11 | 4 | 4 | 2.90 | 11.60 |
| Blank Tabs (with captions) | 69 | 8½x11 | 4 | 276 | 0.50 | 138.00 |
| Tabs (1-125) | 1 | 8½x11 | 4 | 4 | 13.50 | 54.00 |
| Drilling, 3-hole (4 sets) | | | | 19,100 | 0.005 | 95.50 |
| 3-Ring Binders(3") | | | | 9 | 7.99 | 71.91 |
| Delivery to Boston Harbor Hotel (no charge) | | | | 1 | 0.00 | 0.00 |
| | | | | | | |
| COMMENTS: | | | | | | |
| * Make 4 copies of exhibits # 1 through # 106 and A through CQ. | | | | | | |
| * Insert 8½x11 laminated tabs, as in originals. | | | | | | |
| * Copy all documents size for size. | | | | | | |
| * Three-hole drill copies and place into customer supplied binders, LDP supplied 9 binders for one set. | | | | | | |
| * Return the bound sets to Choate, Hall & Stewart by 8:30 am, 04/29/06. | | | | | | |
| * Expedite. | | | | | | |
| * Make 6 copies of the same exhibits again. | | | | | | |
| * Copy all documents size for size. | | | | | | |
| * Staple as stapled; clip as clipped. | | | | | | |
| * Finish as follows: place 3 copies behind original into original folders, place 3 copies into customer | | | | | | |
| supplied file folders, do not collate. | | | | | | |
| * Return these originals and 6 copies to Choate, Hall & Stewart by 10:00 am. 04/29/06. | | | | | | |
| * Pick up 2 sets of exhibits from Choate, Hall & Stewart and deliver to the concierge desk at the Boston | | | | | | |
| Harbor Hotel. | | | | | | |
| * Expedite. | | | | | | |
| MA State Sales Tax | | | | | 5.00% | 288.34 |

| **YOU MAY DEDUCT A CASH DISCOUNT OF: $** | 293.11 | **IF PAID BY:** | 5/12/2006 | **Total:** | $6,150.60 |
|---|---|---|---|---|---|

Please note our terms: 5% CASH DISCOUNT 10 DAYS - NET 30.
ANY ACCOUNT OVER 30 DAYS WILL BE ASSESSED A MONTHLY SERVICE CHARGE OF 1½% (18% Annually).

# *LITIGATION DOCUMENT PRODUCTIONS, INC.*

*(617) 542-7333*
*61 Batterymarch Street*
*Boston, MA 02110*

# Invoice

FED ID 04-3215305

| DATE: | 5/2/2006 | INVOICE #: | 43965 |
|---|---|---|---|

CLIENT/MATTER:  2004810-0004     REQUESTOR:  D. Dion

SERVICE DATE:
4/29/2006

BILL TO:  Choate, Hall & Stewart
Ms. Deborah Dion
Two International Place
Boston, MA 02110
VENDOR #11475

SHIP TO:   S A M E

| DESCRIPTION | ORIGINALS | SIZE | SETS | COPIES | PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| Copying | 4,775 | Varia. | 4 | 19,100 | 0.118 | 2,253.80 |
| Copying | 4,775 | Varia. | 6 | 28,650 | 0.113 | 3,237.45 |
| Tabs (A-Z) | 1 | 8½X11 | 4 | 4 | 2.90 | 11.60 |
| Blank Tabs (with captions) | 69 | 8½x11 | 4 | 276 | 0.50 | 138.00 |
| Tabs (1-125) | 1 | 8½x11 | 4 | 4 | 13.50 | 54.00 |
| Drilling, 3-hole (4 sets) | | | 4 | 19,100 | 0.005 | 95.50 |
| 3-Ring Binders(3") | | | | 9 | 7.99 | 71.91 |
| Delivery to Boston Harbor Hotel (no charge) | | | | 1 | 0.00 | 0.00 |

COMMENTS:
* Make 4 copies of exhibits # 1 through # 106 and A through CQ.
* Insert 8½x11 laminated tabs, as in originals.
* Copy all documents size for size.
* Three-hole drill copies and place into customer supplied binders, LDP supplied 9 binders for one set.
* Return the bound sets to Choate, Hall & Stewart by 8:30 am, 04/29/06.
* Expedite.
* Make 6 copies of the same exhibits again.
* Copy all documents size for size.
* Staple as stapled; clip as clipped.
* Finish as follows: place 3 copies behind original into original folders, place 3 copies into customer supplied file folders, do not collate.
* Return these originals and 6 copies to Choate, Hall & Stewart by 10:00 am. 04/29/06.
* Pick up 2 sets of exhibits from Choate, Hall & Stewart and deliver to the concierge desk at the Boston Harbor Hotel.
* Expedite.

| MA State Sales Tax | | | | | 5.00% | 288.34 |

**YOU MAY DEDUCT A CASH DISCOUNT OF: $**  293.11  **IF PAID BY:**  5/12/2006     **Total:**  $6,150.60

Please note our terms: 5% CASH DISCOUNT 10 DAYS - NET 30.
ANY ACCOUNT OVER 30 DAYS WILL BE ASSESSED A MONTHLY SERVICE CHARGE OF 1½% (18% Annually).

AO44
(Rev. 12/89)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

INVOICE NO:  20060130

**MAKE CHECKS PAYABLE TO:**

Brian A. Davis, Esq.
Choate, Hall & Stewart
Two International Place
100-150 Oliver Street
Boston, MA 02110

Phone:   (617) 248-5000
FAX:     (617) 248-4000

DONALD E. WOMACK, RMR
Official Court Reporter
P.O. Box 1704
Plainville, MA 02762

Phone:

Tax ID:   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
womack@megatran.com

| | DATE ORDERED: | DATE DELIVERED: |
|---|---|---|
| ☐ CRIMINAL   ☒ CIVIL | 05-02-2006 | 05-23-2006 |

**Case Style:** 05-11614-WGY, John Hancock v Vestmont
Furnishing Mr. Davis electronic transcripts of proceedings heard in the
above-entitled matter on May 2-5 and 8, 2006
THIS INVOICE REPRESENTS ONE-HALF OF TOTAL FEES FOR SERVICES RENDERED
NOTE:   THIS INVOICE DUE IMMEDIATELY UPON RECEIPT

| CATEGORY | ORIGINAL | | | 1ST COPY | | | 2ND COPY | | | TOTAL CHARGES |
|---|---|---|---|---|---|---|---|---|---|---|
| | PAGES | PRICE | SUBTOTAL | PAGES | PRICE | SUBTOTAL | PAGES | PRICE | SUBTOTAL | |
| Ordinary | 347 | 3.30 | 1,145.10 | 347 | 0.83 | 288.01 | | | | 1,433.11 |
| Expedited | | | | | | | | | | |
| Daily | | | | | | | | | | |
| Hourly | | | | | | | | | | |
| Realtime | | | | | | | | | | |

| | |
|---|---|
| Misc. Desc. | MISC. CHARGES: |
| | TOTAL:   1,433.11 |
| LESS DISCOUNT FOR LATE DELIVERY: | |
| TAX (If Applicable): | |
| LESS AMOUNT OF DEPOSIT: | |
| TOTAL REFUND: | |
| Date Paid:        Amt: | TOTAL DUE:   $1,433.11 |

ADDITIONAL INFORMATION
  Full price may be charged only if the transcript is delivered within the required time frame. For example, if an order
for expedited transcript is not completed and delivered within seven (7) calendar days, payment would be at the
ordinary delivery rate.

CERTIFICATION
  I certify that the transcript fees charged and page format used comply with the requirements of this court and the
Judicial Conference of the United States.

| SIGNATURE | DATE |
|---|---|
| | |

*(All previous editions of this form are
cancelled and should be destroyed)*



**Esquire Deposition Services, LLC**
**A Hobart West Company**
Tax ID # 22-3779684          6301     ESQUP01
99 Summer Street, Suite 804
Boston, Massachusetts 02110
617-956-9920     FAX 617-956-9911

| | INVOICE NUMBER | DATE |
|---|---|---|
| | 7174EBO | 05/17/06 |

To:
Choate, Hall & Stewart
Two International Place
30th Floor
Boston, MA 02110

ATTN : Brian Davis, Esq.

| | Due Upon Receipt | AMOUNT DUE | ENCL. |
|---|---|---|---|

YOUR REFERENCE NUMBER:

CAPTION:

JOHN HANCOCK V VESTMONT LIMITED PARTENE

SERVICES PROVIDED ON 04/21/06:

Videotaped Deposition of:
Linda Spevacek & James Koller
Video set-up/strike                          250.00
Video hours - addt'l                         750.00
10:04am-4:59pm
Master Tape (Archived 3 years)                15.00
Shipping & Handling                           15.75
Thank you

| | BALANCE DUE | TOTAL | 1,030.75 | Thank You! |
|---|---|---|---|---|

Any amounts not paid within 30 days of the invoice will be considered past
due and a late charge will accrue on any unpaid balance at the lesser of
one and one-half percent (1.5%) per month or the maximum rate allowed by law.
Contact us immediately with questions or corrections regarding billing or payment.
No adjustments or refunds will be made after 120 days from date of payment.

For Invoice Questions,
Please Call
(617) 956-9920
Fax (617) 956-9911

Please detach and send with payment

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Remit To:

**Esquire Deposition Services, LLC**       JOB: 6301  TOT: $1030.75
P.O. Box 827829                            INVOICE #: 7174EBO
Philadelphia,PA 19182-7829                 DATE: 05/17/06
Tax ID # 22-3779684

Choate, Hall & Stewart
Attn: Brian Davis, Esq.
Two International Place
30th Floor
Boston, MA 02110



LINKING TESTIMONY, TRADITION AND TECHNOLOGY



**Esquire Deposition Services, LLC**
**A Hobart West Company**
Tax ID # 22-3779684          6302    ESQUP01
99 Summer Street, Suite 804
Boston, Massachusetts 02110
617-956-9920    FAX 617-956-9911

ESQUIRE
DEPOSITION SERVICES®
A HOBART WEST COMPANY

To:

Choate, Hall & Stewart
Two International Place
30th Floor
Boston, MA 02110

| INVOICE NUMBER | DATE |
|---|---|
| 7176EBO | 05/17/06 |

ATTN : Brian Davis, Esq.          Due Upon Receipt

| AMOUNT DUE | ENCL. |
|---|---|

YOUR REFERENCE NUMBER:

CAPTION:
    JOHN HANCOCK V VESTMONT LIMITED PARTENE

| | AMOUNT DUE | ENCL. |
|---|---|---|
| SERVICES PROVIDED ON 04/21/06: | | |
| Linda Spevacek | 1,025.95 | O+1 |
| James Koler | 216.55 | O+1 |
| | | |
| 5 day turnaround          60% | 745.50 | |
| Video deposition rep surcharge | 105.00 | |
| Rough ascii disk | 525.00 | |
| Exhibits & tabs B&W | 369.50 | |
| Condensed Transcript NO CHARGE | | |
| CD w/Ascii, E-tran & Exhibts | 10.00 | |
| Archiving Fee | 15.00 | |
| Shipping & Handling | 15.75 | |
| Thank you | | |

**BALANCE DUE**          TOTAL    **3,028.25**    *Thank You!*

Any amounts not paid within 30 days of the invoice will be considered past
due and a late charge will accrue on any unpaid balance at the lesser of
one and one-half percent (1.5%) per month or the maximum rate allowed by law.
Contact us immediately with questions or corrections regarding billing or payment.
No adjustments or refunds will be made after 120 days from date of payment.

**For Invoice Questions,**
**Please Call**
**(617) 956-9920**
**Fax (617) 956-9911**

Please detach and send with payment

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Remit To:

**Esquire Deposition Services, LLC**          JOB: 6302  TOT: $3028.25
P.O. Box 827829                               INVOICE #: 7176EBO
Philadelphia, PA 19182-7829                   DATE: 05/17/06
Tax ID # 22-3779684

Choate, Hall & Stewart
Attn: Brian Davis, Esq.
Two International Place
30th Floor
Boston, MA 02110



ESQUIRE
DEPOSITION SERVICES®
A HOBART WEST COMPANY

LINKING TESTIMONY, TRADITION AND TECHNOLOGY