UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> VESTMONT LIMITED PARTNERSHIP, VESTMONT LIMITED PARTNERSHIP II, VESTMONT LIMITED PARTNERSHIP III, and VESTERRA CORPORATION d/b/a MONTGOMERY SQUARE PARTNERSHIP, <br><br> Defendants/Counterclaim Plaintiffs. | CIVIL ACTION NO. 05-11614-WGY |

## PLAINTIFF JOHN HANCOCK LIFE INSURANCE COMPANY'S REPLY TO DEFENDANTS' OPPOSITION TO JOHN HANCOCK'S MOTION FOR REIMBURSEMENT OF LEGAL EXPENSES

Plaintiff John Hancock Life Insurance Company ("John Hancock" or "Hancock") submits this brief Reply in response to defendant Vestmont Limited Partnership's (collectively, "Vestmont" or the "Defendants") Memorandum of Law in Opposition to Hancock's Motion for Reimbursement of its Legal Expenses incurred in this action ("Defendants' Opposition"). Once again, Vestmont attempts to disown an explicit agreement that it entered into with John Hancock. This time around, Vestmont is endeavoring to disown its pre-trial agreement with Hancock that, "[t]o the extent the issue of recovery of fees becomes relevant for either party," the parties would "put that issue" to the Court, not the jury, to resolve. And, once again, Vestmont is bound by its agreement with Hancock.

That being the case, the Defendants are obliged under the plain terms of the Loan Commitment that they executed back in July 2004 to make John Hancock whole for *"all ... expenses,"* including "attorneys' fees" and other legal expenses incurred by Hancock in vindicating its rights, *"whether or not the Loan closes."* Loan Commitment, Conditions 21 and 30(d) (emphasis added). Hancock asks only that the Defendants be made, once and for all, to live up to their commitments.

## Argument

I. THE PARTIES EXPRESSLY AGREED, PRIOR TO TRIAL, TO PRESENT THE "ISSUE OF THE RECOVERY OF FEES" TO THE COURT FOR RESOLUTION AFTER TRIAL.

Vestmont's argument that John Hancock cannot recover its attorneys' fees and other legal expenses because Hancock's entitlement to those expenses was not proved at trial is erroneous and misleading. While John Hancock is familiar with the case law and Advisory Committee Notes to Fed. R. Civ. P. 54 cited by the Defendants, John Hancock did not present evidence regarding its legal expenses to the jury *because the parties reached an express agreement prior to trial that the issue of the recovery of fees would be left for this Court to resolve, if necessary, after trial.* John Hancock relied on opposing counsel's representations regarding this issue, and crafted its trial strategy in accordance with this agreement.

Vestmont apparently does not deny that it entered into *some* agreement on the issue of fees with John Hancock prior to trial. *See, e.g.*, Defendants' Opposition at 1-2. Throughout its Opposition, however, Vestmont mischaracterizes the scope of that agreement. As the Affidavit of Paul D. Popeo, Esq. ("Popeo Aff."), filed herewith, and the parties' e-mail correspondence attest, Mr. Popeo and Mr. Scher discussed in court on May 1, 2006, John Hancock's proposal that the parties agree to reserve any and all questions relating to the

potential recovery of fees and other expenses for the Court (specifically, Judge Young) to resolve after trial. Popeo Aff., ¶ 2. At the time of that conversation, the Defendants had pending a counterclaim under M.G.L. c. 93A, and John Hancock had made known its intention to seek reimbursement of its legal expenses under the terms of the Loan Commitment. *Id.* Given the limited amount of time available for testimony and the potential confusion that the issue of legal fees might cause for the jury, the proposal seemed mutually beneficial. *Id.*

Mr. Scher responded to John Hancock's proposal by telling Mr. Popeo, in court, that he (Mr. Scher) agreed that "the jury should not hear any evidence about attorneys' fees." Popeo Aff., ¶ 3. Later the same day after Mr. Popeo returned to his office, he sent Mr. Scher and his co-counsel, Brian McCormick, the e-mail message that is appended as Exhibit A to the Defendants' Memorandum of Law in Opposition to Hancock's Motion for Reimbursement of Legal Expenses. *Id.*, ¶ 4. In that e-mail message, Mr. Popeo expressly sought to confirm the parties' oral agreement that, "[t]o the extent the issue of recovery of fees becomes relevant for either party, we will put that issue to Judge Young." *Id.* Mr. McCormick subsequently sent Mr. Popeo a responsive e-mail message in which he (Mr. McCormick) stated, "[t]his will confirm our agreement as stated below." *Id.*

Neither Mr. Popeo's discussion with Mr. Scher on May 1, 2006, nor the agreement that the parties reached that day concerning the presentation of evidence on the issue of legal expenses, was limited to evidence regarding the *amount* of attorneys' fees. Popeo Aff., ¶ 5. Mr. Popeo made it clear in his discussion with Mr. Scher that John Hancock's proposal pertained to *any* evidence concerning the issue of fees, and Mr. Scher acknowledged his

understanding of Hancock's proposal when he stated that the Defendants did not want the jury to "hear any evidence" on the issue. *Id.*

Mr. Popeo took the step of securing written proof of the parties' agreement concerning fees from the Defendants on May 1, 2006, because he knew that John Hancock would rely on the agreement in presenting its evidence at trial beginning on May 2. Popeo Aff., ¶ 6. He felt that it was appropriate to rely on his written e-mail correspondence with Mr. Scher and Mr. McCormick to memorialize the parties' agreement, rather than prepare a more formal document, because Mr. Popeo believed that, as officers of the Court, Mr. Scher and Mr. McCormick would live up to their word. *Id.* Because that agreement was reached on May 1, John Hancock did not present any evidence regarding its right to recover fees and other legal expenses from the Defendants at trial. *Id.*

Completely disregarding counsels' prior discussions in court as recounted by Mr. Popeo in his sworn affidavit, Vestmont tries valiantly, but unsuccessfully, to parse the language of Mr. Popeo's May 1, 2006 e-mail message in an attempt to limit the apparent scope of the parties' agreement concerning legal expenses only to the "amount of fees." Defendants' Opposition at 1-2. Mr. Popeo's e-mail is explicit, however, that the parties' agreement encompassed *"the issue of recovery of fees,"* not just the amount of fees to be awarded. *Id.*, Exhibit A (emphasis added). Vestmont ignores this further language in its Opposition papers, but cannot escape its obvious meaning. To the extent that Vestmont ever had any argument that the issue of recovery of fees by John Hancock was a matter for determination by the jury under Fed. R. Civ. P. 54(d)(2)(A), Vestmont waived that argument prior to trial by expressly agreeing to "put that issue" to the Court for resolution. Accordingly, John Hancock is not precluded from seeking reimbursement of its legal expenses by motion after trial.

II.  THE TERMS OF THE LOAN COMMITMENT EXPRESSLY PROVIDE FOR THE RECOVERY OF "ALL ... EXPENSES" AND OTHER COSTS BY JOHN HANCOCK, INCLUDING ATTORNEYS' FEES, "WHETHER OR NOT THE LOAN CLOSES."

Vestmont contends, and John Hancock does not dispute, that Massachusetts follows the American Rule concerning the award of attorneys' fees. *See* Defendants' Opposition at 7-9. However, that Rule, which generally instructs that attorneys' fees are not recoverable, has several important exceptions. One of these exceptions, and the one that is relevant here, is when an enforceable contract provides for the recovery of such fees. Sigma Systems, Inc. v. Rasamsetti, 19 Mass. L. Rptr. 734, 2005 WL 2462009, *3 (Mass. Super. 2005). Here, the enforceable contract took the form of a Loan Commitment, and that document provides for the recovery of attorneys' fees by stating that John Hancock is entitled to "recover from [the Defendants] all damages, costs, losses and expenses suffered or incurred by John Hancock." Loan Commitment, 30(d).[1] Defendants contend that the language of this provision is ambiguous, but there is no ambiguity. Reasonably construed, "all ... expenses" means *all expenses*, including without limitation John Hancock's legal expenses. Defendants are bound by the plain language of the contract that they negotiated and signed. *See, e.g.,* Hiller v. Submarine Signal Co., 325 Mass. 546, 550 (1950) ("[P]arties are bound by the plain terms of their contract").

Other language in Condition 30(d) provides direct support for John Hancock's contention that the Loan Commitment grants Hancock the right to recovery its legal expenses. In addition to stating that John Hancock is entitled to recover "all damages, costs, losses and

---

[1] A true copy of the Loan Commitment was appended to the Davis Affidavit at Tab 1, filed with the court with Plaintiff John Hancock Life Insurance Company's Motion for Reimbursement of Legal Expenses on May 25, 2006, for the convenience of the Court.

expenses suffered or incurred" as a result of the Defendants' failure to close, Condition 30(d) states that the Defendants "shall also continue to remain liable for all Costs." "Costs" are defined in Condition 21 of the Loan Commitment as "all costs pertaining to the Loan and the closing, including ... all *attorneys' fees* and costs of John Hancock," which fees and costs are recoverable *"whether or not the Loan closes."* Loan Commitment, Condition 21 (emphasis added). Reading this language reasonably and in accordance with its ordinary meaning, the phraseology illustrates the express commitment by Vestmont to make John Hancock whole for all of its costs, attorneys' fees and other expenses incurred with respect to this transaction, including all of Hancock's Legal Expenses, regardless of whether the Defendants ever actually closed the contemplated Loan.

In an attempt to avoid the plain language of Condition 21, Vestmont offers an irrational and unreasonable interpretation of that provision. It argues that the parties intended Condition 21 to apply solely to "'Costs' relating to the time period before closing or failure to close...." Defendants' Opposition at 7. The language of Condition 21 does not impose such a restriction, however, and implying such restriction would be directly contrary to the broad language of Condition 30(d), which empowers Hancock to recover "all damages, costs, losses and expenses suffered or incurred," *inter alia*, as a result of the Defendants' failure to close. Under Massachusetts law, contractual terms must be construed, whenever practicable, so that lead to a "workable and harmonious" result. Sarvis v. Cooper, 40 Mass. App. Ct. 471, 475-476 (*quoting* Charles I. Hosmer, Inc. v. Commonwealth, 302 Mass. 495, 501 (1939)). The

interpretation of Condition 21 proffered by Vestmont would violate this longstanding and basic rule of construction and, thus, should be rejected.[2]

### Conclusion

For the foregoing reasons and for the reasons stated in its original Memorandum in Support, John Hancock requests that its Motion for Reimbursement of Legal Expenses be granted by this Court.

> JOHN HANCOCK LIFE INSURANCE
> COMPANY
>
> By its attorneys,
>
> /s/ Brian A. Davis
> _____
> Brian A. Davis (BBO No. 546462)
> Paul D. Popeo (BBO No. 567727)
> Meghan L. Rhatigan (BBO No. 663039)
> CHOATE, HALL & STEWART LLP
> Two International Place
> Boston, MA 02110
> Tele: 617-248-5000
> Fax: 617-248-4000

Date:  June 6, 2006

4088560.1

---

[2] Vestmont's further argument that John Hancock did not precisely plead "that it was seeking to recover 'Costs' as defined in Condition 21" is a classic red herring. Defendants' Opposition at 6. In its Complaint, John Hancock specifically requested compensation for all "losses and monetary damages, including interest, costs and attorneys' fees, to which it is entitled under the Loan Commitment and by law." Complaint at 6 (Prayer (b)). This language is more than sufficient to put the Defendants on notice that John Hancock wished to recover all of its fees and "Costs" -- capitalized or otherwise -- to the full extent permitted by the Loan Commitment.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 6, 2006.

/s/ Brian A. Davis
Brian A. Davis

4088560v1